DUANE MORRIS LLP
Frederick D. Hyman (NY 2553832)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen*
*in their capacity as Joint Administrators and Foreign Representatives*
*for the Debtor BSG Resources Limited (in administration)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BSG RESOURCES LIMITED (in administration), | Case No. 19-11845 (_____) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED CHAPTER 15 PETITION FOR RECOGNITION OF**
**FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

William Callewaert and Malcolm Cohen (together, the "Joint Administrators") are the court-appointed joint administrators for BSG Resources Limited (in administration) (the "Debtor") in a proceeding under Part XXI of the Companies (Guernsey) Law, 2008, pending before the Royal Court of Guernsey (Ordinary Division) (the "Guernsey Administration"). The Joint Administrators are the duly authorized foreign representatives of the Debtor as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code").

On June 3, 2019, the Joint Administrators commenced this Chapter 15 case (the "Chapter 15 Case") by filing, on behalf of the Debtor and pursuant to sections 1504 and 1515 of the Bankruptcy Code, the following documents:

(i)     *Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief* along with the *Official Form 401* (*Chapter 15 Petition for Recognition of a Foreign Proceeding* (this "Verified Petition");

(ii)    *Application for an Order (I) Scheduling Recognition Hearing, (II) Specifying Deadline for Filing Objections and (III) Specifying Form and Manner of Notice* (the "Notice Application"); and

(iii)   *Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code* (the "Application for Provisional Relief" and, collectively with the Verified Petition and Notice Application, the "First Day Motions").

In support of the First Day Motions, the Joint Administrators have also filed a memorandum of law (the "Memorandum of Law") and a *Declaration of Malcolm Cohen* in support of the First Day Motions (the "Cohen Declaration").

### Preliminary Statement

1.      The Joint Administrators have commenced this Chapter 15 Case ancillary to the Guernsey Administration and, by and through their undersigned counsel, respectfully file this Verified Petition with the required accompanying documentation pursuant to sections 1504 and 1515 of the Bankruptcy Code.  By this Verified Petition, the Joint Administrators seek (a) recognition of the Joint Administrators as the foreign representative (the "Foreign Representative"), as defined in section 101(24) of the Bankruptcy Code, (b) recognition of the Guernsey Administration as a foreign main proceeding pursuant to sections 1515, 1517 and 1520

of the Bankruptcy Code and (c) recognition and enforcement of the Guernsey Administration Order (defined herein) in the United States.[1]

2.      The Joint Administrators seek recognition of the Guernsey Administration and related relief from this Court to protect the Debtor's assets in the United States while the Debtor pursues a comprehensive restructuring in Guernsey.  The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  A certified copy of the Guernsey Administration Order is attached hereto as **Exhibit A**, in fulfillment of the requirement of section 1515(b) of the Bankruptcy Code.  In addition to the First Day Motions, the following documents have been separately filed concurrently herewith in support of the Chapter 15 Case and this Verified Petition:

      a.      State*ment Identifying Foreign Proceedings Pursuant to 11 U.S.C. § 1515(c)* (the Section 1515(c) Statement);[2]

      b.      *Statement Pursuant to Bankruptcy Rule 1007(a)(4)* (the "Rule 1007(a)(4) Statement");[3] and

      c.      *Corporate Ownership Statement Pursuant to Bankruptcy Rules 1007(a)(4) and 7007.1* (the "Corporate Ownership Statement" and together with the Section 1515(c) Statement and the Rule 1007(a)(4) Statement, the "Required Disclosures").

3.      Based on the foregoing, including the Required Disclosures, and for the reasons described herein, the Joint Administrators submit they have satisfied the requirements for an order granting recognition of the Guernsey Administration under Chapter 15 of the Bankruptcy Code.

---

[1] Alternatively, if the Court does not recognize the Guernsey Administration as a foreign main proceeding, the Joint Administrators request that the Court grant the relief available under sections 1507 and 1521 of the Bankruptcy Code as a foreign non-main proceeding.

[2] By the Section 1515 Statement, the Joint Administrators represent that the Guernsey Administration is the only foreign proceeding pending with respect to the Debtor that is known to the Joint Administrators.

[3] The Rule 1007(a)(4) Statement contains the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, and all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of this Verified Petition

**Jurisdiction and Venue**

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) and (2), as (i) the Debtor's principal asset in the United States is located in this district, and (ii) an action is pending against the Debtor in this district.

5.    The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

**Background**

## I.    The Debtor's Business

### A.    Corporate Structure

6.    The Debtor is a non-cellular limited liability company incorporated in Guernsey. Cohen Declaration at ¶ 8. A chart showing the Debtor's corporate organization is annexed hereto as **Exhibit B**.

7.    The Debtor is engaged, through certain subsidiaries and associates, in activities related to the exploration, development, extraction, refinement and marketing of natural resource products, including diamonds and power generation. Cohen Declaration at ¶ 9. The Debtor previously also actively engaged in the iron ore and ferronickel sectors. *Id.*

8.    The Debtor's business and trading is limited to advisory and technical services provided to a number of its subsidiaries Cohen Declaration at ¶ 10. The business and trading interests of the Debtor's subsidiaries can be categorized as follows:

    a.    Diamond operation held through a subsidiary, Octea Limited (incorporated and registered in Guernsey) with mining operations in the Republic of Sierra Leone (the "Octea Diamond Operation"). The Octea Diamond Operation is operating under the supervision of its board and an observer to the board appointed by the Joint Administrators. However, it is not presently producing cash flows which are available to the Debtor.

DM3\5776983.2

b. A minority interest in a power generation operation held through a subsidiary, West African Power Limited (incorporated and registered in Guernsey), in the Federal Republic of Nigeria (the "West African Power Operation").  The Debtor does not have effective control of the underlying operating company which is a minority interest and the subject of dispute with the co-investor, Forte Oil plc. The disputes relate to the funding of West African Power Operation and the right to representation of West African Power Limited on the board of the Nigerian operating subsidiary. West African Power Limited, in consultation with the Debtor, is currently exploring options to resolve the dispute and to monetize the Debtor's indirect investment. Accordingly, the Debtor is not receiving any current cash flows from the West African Power Operation.

c. Iron ore operation held through a subsidiary, BSG Resources (Guinea) Limited (incorporated and registered in Guernsey) (the "Guinean Iron Ore Mining Operation").  As described in detail below, the Debtor's Guinean Iron Ore Mining Operation has ceased.

*Id.*

## B.     The Debtor's Guinean Mining Operations

9.      The Guinean Iron Ore Mining Operation relates to its interests in world-class iron ore deposits in the Republic of Guinea and comprise the following:

a. An iron ore mining concession granted to BSG Resources (Guinea) SARL ("BSGR Guinea") on March 19, 2010 over an area in Simandou South, near the village of Zogota (the "Zogota Mining Concession");

b. A mining and infrastructure agreement dated December 16, 2009 entered into by two subsidiaries of the Debtor, BSGR Guinea and VBG-Vale BSGR Ltd. (n/k/a BSG Resources (Guinea) Limited) ("VBG"), with the Republic of Guinea regarding the rights and obligations arising from the Zogota Mining Concession ("Basic Agreement"); and

c. A prospecting permit granted to BSGR Guinea over an area referred to as "Simandou Blocks 1 and 2" granted on December 9, 2008 ("Blocks 1 and 2 Permit").

Cohen Declaration at ¶ 11.

10.     In 2010, the Debtor entered into a joint venture with the Brazilian mining company Vale S.A. ("Vale") in relation to the development of the three rights and concessions described

5

above (the "Mining Rights"). Cohen Declaration at ¶ 12. The joint venture, VBG, is referred to above. *Id.*

11.     In 2011, Alpha Condé was elected President of the Republic of Guinea. Cohen Declaration at ¶ 13. Following President Condé's election, the Debtor, BSGR Guinea and VBG faced obstruction in developing the Mining Rights. *Id.* In 2012, the Debtor was informed that President Condé had set up a committee aimed at investigating how certain mining rights in Guinea (including the Mining Rights) had been obtained (the "Guinea Review Committee"). *Id.* Throughout the review process, the Debtor complained about the lack of due process and apparent prejudice being shown to it by the Guinea Review Committee. *Id.* The Debtor denied – and continues to deny – the allegations made against it by the Guinea Review Committee. *Id.*

12.     In response to an allegation of corruption made by the Guinea Review Committee against the Debtor and a wider group of its affiliates, the Debtor's board initiated a review using an independent professional accountancy firm to verify the accuracy of its internal controls, processes and payment procedures, including confirmation that payments made by the Debtor and its affiliates in connection with the Mining Rights were proportionate and of an appropriate business nature. Cohen Declaration at ¶ 14. According to the Debtor's board, this review has not revealed any matters that support the allegations of wrongdoing by the Guinea Review Committee. *Id.*

13.     However, in March 2014, the Guinea Review Committee recommended to the Strategy Committee of the Government of Guinea (the "Strategy Committee") that the Mining Rights be cancelled and expropriated, and the companies within the Debtor's control be prevented from being re-awarded the Mining Rights (the "Notification"). Cohen Declaration at ¶ 15.

DM3\5776983.2

14.     In April 2014, the Government of Guinea accepted the recommendations of the Strategy Committee to strip BSGR Guinea and VBG of the Mining Rights and to exclude the Debtor, BSGR Guinea and VBG from participating in the tender process to reallocate the Mining Rights. Cohen Declaration at ¶ 16.

15.     As a result of the Guinea Review Committee's recommendations and the actions of the Guinean government, the Debtor's Guinean mining operations have ceased. Cohen Declaration at ¶ 17.  Whether such operations will recommence is currently uncertain. *Id.*

16.     The Debtor had asserted, prior to the appointment of the Joint Administrators, that the basis of the Guinea Review Committee's recommendation was not legitimate. Cohen Declaration at ¶ 18.  The Debtor had also asserted that the decisions of the Guinea government were importuned, influenced, motivated and ultimately controlled by certain illegal conduct of George Soros and certain co-conspirators, which assertion is the basis of the Soros Claim (as defined and further described below). *Id.*

**C.     Litigation Following the Expropriation of the Debtor's Guinean Mining Interests**

**1.     The Guinea ICSID Proceeding**

17.     In August 2014, the Debtor initiated an arbitration proceeding with the International Centre for Settlement of Investment Disputes ("ICSID") against the Republic of Guinea. Cohen Declaration at ¶ 19.  In May 2015, the Debtor repurchased Vale's shares in VBG. *Id.*  VBG was thereafter renamed BSG Resources (Guinea) Limited. *Id.* On October 13, 2015, VBG also issued an ICSID claim against the Republic of Guinea in respect of the Mining Rights. *Id.* Subsequently, the two ICSID claims against the Republic of Guinea were consolidated and an Amended Statement of Claim was issued on behalf of the Debtor, VBG and BSGR Guinea on February 29, 2016 (generally, the "Guinea ICSID Proceeding"). *Id.* Through the Guinea ICSID Proceeding, the

7

Debtor and its subsidiaries are seeking the restitution of the Mining Rights, as well as damages arising out of the unlawful revocation and expropriation of the Mining Rights. *Id.*

18.     A hearing in the Guinea ICSID Proceeding was held in Paris, France between May 22 and June 2, 2017. Cohen Declaration at ¶ 20.  The briefing of the Guinea ICSID Proceeding was concluded in July 2018.

19.     In February 2019, a non-binding agreement was signed by the Debtor and two of its subsidiaries and the Government of Guinea to set out certain provisional matters which the parties would seek to progress as a means to resolve the Guinea ICSID Proceeding on a consensual basis. Cohen Declaration at ¶ 21. If such a consensual resolution is ultimately reached, it is anticipated that it will include the release of all of the Debtor's claims to the Simandou and Zogota licenses in return for the grant by the Government of Guinea of a new license over the Zogota deposits, to be exploited by a third party, with the Debtor to be entitled to participate in the revenues from this license, as well as a mutual withdrawal of allegations made by each party in the Guinea ICSID Proceeding.  *Id.* Work is proceeding towards the progression of the non-binding agreement into a formal, binding contractual arrangement. *Id.* While that work is on-going, the Guinea ICSID Proceeding is currently suspended (although may be recommenced by either party in the event that the negotiations between the parties do not result in consensual settlement). *Id.*

### 2.     The Vale LCIA Proceeding

20.     Separately, on April 28, 2014, prior to the Debtor's purchase of Vale's VBG Shares, Vale filed a Request for Arbitration against the Debtor in the London Court of International Arbitration (the "LCIA") seeking to recoup its investment in VBG which was allegedly lost as a result of the expropriation actions of the Guinean government (generally, the "Vale LCIA Proceeding"). Cohen Declaration at ¶ 22.

8

21.    Years later, on April 4, 2019, the LCIA tribunal entered an award in favor of Vale and against the Debtor in the amount of $1,246,580,846 plus pre- and post-award interest (the "LCIA Award"). Cohen Declaration at ¶ 23. A copy of the LCIA Award is annexed hereto as **Exhibit C**.

22.    The Debtor filed a timely challenge under Section 68 of the English Arbitration Act 1996 (the "UK Arbitration Challenge") to the LCIA Award with the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) on May 10, 2019. Cohen Declaration at ¶ 23.  The UK Arbitration Challenge is made on the basis that the LCIA tribunal was infected by apparent bias and/or failed to comply with its general duty to conduct the proceedings fairly and impartially which constitutes a "serious irregularity" under English law. *Id.* The primary relief sought by the Debtor in the UK Arbitration Challenge is that the LCIA Award be set aside and/or declared to be of no effect.  *Id.*

23.    Vale has obtained an order from the English High Court dated May 9, 2019 to enforce the LCIA Award in England and Wales (the "UK Enforcement Order"). Cohen Declaration at ¶ 25. However, the UK Enforcement Order has since been stayed by virtue of an application made by the Debtor to the English High Court on May 23, 2019 to set aside the UK Enforcement Order (the "Set Aside Application").  *Id.* The Set Aside Application was made on the basis that the Debtor has separately issued the UK Arbitration Challenge the effect of which, if successful, would be to set aside or annul the LCIA Award. *Id.* Vale is automatically stayed from enforcing the LCIA Award in England and Wales pending final determination of the Set Aside Application. *Id.*

24.    Notwithstanding the UK Arbitration Challenge and the stay issued in connection with the Set Aside Application, on April 23, 2019, Vale filed a *Petition for Recognition and*

*Enforcement of a Foreign Arbitration Award* (the "Vale Enforcement Petition") in the United States District Court for the Southern District of New York (the "District Court"). Cohen Declaration at ¶ 26. That action is docketed in the District Court as *Vale S.A. v. BSG Resources Limited*, Case No. 19-cv-3619-VSB. *Id.* Through the Vale Enforcement Petition, Vale is seeking recognition of the LCIA Award by the District Court, together with entry of judgment against the Debtor in an amount equal to the LCIA Award plus interest and costs. *Id.*

### 3.    The Soros Claim – the Debtor's Only U.S. Asset

25.    The Debtor's only asset in the United States is a contingent litigation interest against George Soros and certain entities he controls. Cohen Declaration at ¶ 27. As described further herein and in the Verified Petition and TRO Application, recognition of the Guernsey Administration is necessary in order to protect and preserve the Debtor's interest in this asset. *Id.*

26.    On April 14, 2017, the Debtor, VBG (n/k/a BSG Resources (Guinea) Limited), and BSGR Guinea filed a complaint in the District Court against George Soros and Open Society Foundations, which was later amended to include as defendants Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (collectively, the "Soros Defendants") asserting claims for illegal interference with contract, fraud, defamation and other matters relating to the Soros Defendants' involvement in the Guinean government's expropriation of the Debtor's Mining Interests (generally, the "Soros Claim"). Cohen Declaration at ¶ 28.

27.    By the Soros Claim, the Debtor and its co-plaintiffs seek to recover over $10 billion in damages arising from wrongful conduct of the Soros Defendants. Cohen Declaration at ¶ 29.

28.    The Soros Claim is docketed in the District Court as *BSG Resources Limited v. Soros*, Case No. 17-cv-02726-JFK-OTW (S.D.N.Y. Apr. 14, 2017). Cohen Declaration at ¶ 30. The Soros Claim, including discovery, is presently stayed pending the outcome of the Guinea

ICSID Proceeding. *Id.* A status conference is scheduled before the District Court on July 18, 2019 to determine the next steps in the litigation, including providing an update on the Guinea ICSID Proceeding and the possible recommencement of discovery. *Id.*

29.    The Joint Administrators have been informed that the Soros Claim is pledged as collateral to secure the Debtor's obligations under a certain Litigation Funding Agreement dated as of November 2017 (the "Funding Agreement") between Litigation Solutions Limited ("LSL") and the Debtor, VBG, and BSGR Guinea. Cohen Declaration at ¶ 31. Pursuant to a certain Security Agreement between these parties, the Debtor has pledged and granted LSL a security interest over a portion of any recoveries on the Soros Claim. *Id.* The continued effectiveness of the Funding Agreement is critical to the Debtor's restructuring efforts. *Id.* Without the proceeds from LSL, the Debtor would not have the resources to fund the costs necessary to pursue the Soros Claim. *Id.*

### D.    Standard Chartered Bank Assignment

30.    In addition to Vale and LSL, the Debtor has one additional alleged creditor that may have an interest in, or be affected by, this Chapter 15 Case. Together with certain of its affiliates, the Debtor is a party to a certain Implementation Agreement (as amended from time to time, the "SC Agreement") with Standard Chartered Bank ("Standard Chartered"). Cohen Declaration at ¶ 32. The SC Agreement relates to the restructuring of a $92,000,000 amortizing term loan facility extended by Standard Chartered to certain of the Debtor's affiliates. *Id.* Under the terms of the SC Agreement, Standard Chartered purports to have taken an assignment of any proceeds (including, in summary, receivables, dividends from subsidiaries or the proceeds from any claims) that may be paid to the Debtor now or in the future as security for such amounts as may be owed by the Debtor to Standard Chartered under the SC Agreement. *Id.* at ¶ 33.

E.      **Events Giving Rise to the Guernsey Administration**

31.     The events giving rise to the Guernsey Administration are described above. In summary, by February 2018, the Debtor's board determined that the Debtor was insolvent or likely to become insolvent, satisfying the requirements of the laws of Guernsey in respect of the making of an administration order against the Debtor by the Guernsey Court. Cohen Declaration at ¶ 34. This determination was based mainly on the expropriation of the Debtor's Guinean mining interests and the potential for an adverse judgment in the Vale LCIA Proceeding. *Id.*

II.     **Commencement of the Guernsey Administration**

32.     On or about February 27, 2018, the Debtor, acting by its directors at that time, submitted an *Application by the Company for an Administration Order* to the Guernsey Court pursuant to Part XXI of the Companies (Guernsey) Law, 2008 (the "Guernsey Administration Application"). Cohen Declaration at ¶ 35. The Guernsey Administration Application was supported by the *Affidavit of Peter Harold Driver in Support of Company's Application for an Administration Order* (the "Driver Affidavit") which was submitted to the Guernsey Court under seal by Peter Harold Driver, a director of the Debtor.[4] *Id.* Inasmuch as the Guernsey Administration Application and the Driver Affidavit contained confidential information and were submitted to the Guernsey Court under seal, the Guernsey Administration Application was heard *in camera* by the Guernsey Court on March 6, 2018. *Id.* On the same date, the Guernsey Court entered a *Court Order* commencing the Guernsey Administration and, among other things, appointing the Joint Administrators.[5] *Id.*; *see also,* Exhibit A.

---

[4] A copy of the Driver Affidavit, together with its supporting exhibits has been submitted to this Court under seal in support of this Chapter 15 Case and the First Day Motions.

[5] Shortly thereafter, the Guernsey Court issued a *Court Order* dated March 21, 2018, whereby it confirmed that it has administered to each of the Joint Administrators the affirmation of Joint Administrator, each with the power to act alone. The March 6 and March 21, 2018 orders are collectively referred to as the "Guernsey Administration Order". Cohen Declaration at ¶ 4.

DM3\5776983.2

33.     The Guernsey Administration is on-going. Cohen Declaration at ¶ 36. The statutory purpose of the Guernsey Administration as set forth in the Guernsey Administration Order is the survival of the Debtor and the whole or any part of its undertaking as a going concern. *Id.; see also,* Exhibit A. The Joint Administrators' role is to fulfil this purpose. *Id.* In order to achieve this, the Joint Administrators have been working closely with the Debtor's management and advisors to preserve and ultimately monetize the Debtor's valuable assets – including the Soros Claim and the Guinea ICSID Proceeding – and to defend against asserted liabilities (*e.g.*, the Vale LCIA Proceeding). *Id.; see also* Progress Reports of BSG Resources Limited – In Administration dated September 5, 2018 and March 7, 2019 annexed hereto as **Exhibits D** and **E**.

34.     The Joint Administrators have been advised of the definition of a "foreign proceeding" under Bankruptcy Code section 101(23) and are not aware of any other "foreign proceeding" within the meaning of Bankruptcy Code section 101(23) with respect to the Debtor. Cohen Declaration at ¶ 37.

## III.    Center of Main Interests of the Debtor

35.     The center of main interests, or "COMI" for the Debtor is in Guernsey.  The Debtor is organized under Guernsey law and has its registered office in Guernsey. Cohen Declaration at ¶ 38.

36.     Further, although the Guernsey Administration has the effect of suspending the management powers of the Debtor's directors and officers, the Debtor's main office and its chairman are resident in Guernsey.  Cohen Declaration at ¶ 39. Also, the Debtor's central decision-making function prior to its entry into the Guernsey Administration, both long-range and day-to-day, took place in Guernsey.  *Id.* Since the commencement of the Guernsey Administration, the Debtor's decision-making function has been carried out by the Joint Administrators, one of which is resident in Guernsey. *Id.* Because the other Joint Administrator is resident in London, England,

13

some of the Debtor's decision-making function may occur jointly in London and/or via telephone to Guernsey. *Id.* In any event, the Debtor's accounting function, as well as all of its corporate books and records, including documents of title, are located in Guernsey. *Id.*

37.     Accordingly, pursuant to Bankruptcy Code section 1516(c), the Debtor is entitled to the presumption that its COMI is Guernsey.

## Relief Sought

38.     By this Verified Petition, the Joint Administrators seek the following relief:

a.      recognition pursuant to section 1517 of the Bankruptcy Code of the Guernsey Administration as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

b.      recognition that the Joint Administrators are the "foreign representatives" on a final basis (as defined in section 101(24) of the Bankruptcy Code);

c.      through the extension of relief automatically available pursuant to section 1520 of the Bankruptcy Code, an order expressly barring, enjoining, and staying, pursuant to section 362 of the Bankruptcy Code, any action to interfere with the Debtor's assets located in the United States, specifically including but not limited to the Soros Claim;

d.      the extension of any provisional relief granted under section 1519(a) of the Bankruptcy Code pursuant to section 1521(a)(6); and

e.      such other and further relief as is appropriate under the circumstances pursuant to sections 105(a) and 1507 of the Bankruptcy Code.[6]

39.     To the extent the relief requested herein exceeds the relief available to the Joint Administrators with respect to the Debtor pursuant to section 1520 of the Bankruptcy Code, the Joint Administrators requests this relief pursuant to sections 1507 and 1521(a)(1) and (2).

---

[6] The Joint Administrators, on behalf of the Debtor, have filed separately an Application for Provisional Relief and declaration in support of the Application for Provisional Relief, but reserves the right to request provisional relief on an expedited basis in the event any actions are brought against the Debtor during the interim period, or as otherwise necessary.

DM3\5776983.2

40.    In the event the Court were to determine the Guernsey Administration is not a foreign main proceeding, the Joint Administrators request that the Court nevertheless grant the relief requested above pursuant to sections 1521 and 1507 of the Bankruptcy Code.

**Basis for Relief**

41.    For the reasons set forth herein and in the Memorandum of Law, the Guernsey Administration is entitled to recognition under section 1517 of the Bankruptcy Code.   The Guernsey Administration is (i) a foreign proceeding within the meaning of Bankruptcy Code section 101(23) and (ii) a foreign main proceeding within the meaning of Bankruptcy Code section 1502(4).   As described above, the Debtor's registered office and its chairman are resident in Guernsey, which is the Debtor's center of main interests within the meaning of Bankruptcy Code section 1516(c).   The Joint Administrators are a foreign representative within the meaning of Bankruptcy Code section 101(24).   Moreover, the Verified Petition meets the requirements of Bankruptcy Code section 1515.

42.    The requested relief is also consistent with the goals of Chapter 15 of the Bankruptcy Code.   The Joint Administrators are informed and submit that granting the relief sought herein will aid the Guernsey Administration and will best assure an opportunity for the Debtor to conduct an orderly reorganization of its financial affairs consistent with the Guernsey Administration Order.   Through the Guernsey Administration, the Debtor is seeking to preserve and maximize value for the benefit of its stakeholders and to ensure the just treatment of all holders of claims against and interests in the Debtor.   These goals are aligned with the objectives of Chapter 15.   *See* 11 U.S.C. § 1501(a)(3).

43.    Moreover, granting recognition will promote the U.S. public policy of respecting foreign proceedings as articulated in, *inter alia*, Bankruptcy Code sections 1501(a) and 1508 and

15

does not violate section 1506.  Thus, the conditions for recognition of the Joint Administrator and the Guernsey Administration under Bankruptcy Code section 1517 have been satisfied.

44.     Finally, having a substantial asset within the United States, the Debtor qualifies as a "debtor" under section 109(a) of the Bankruptcy Code.  Accordingly, the Debtor qualifies as a Chapter 15 debtor under applicable Second Circuit authority.

## Notice

45.     Notice of this Verified Petition will be provided to all parties listed on Exhibit C to the Notice Application, which includes each of the parties identified in the Rule 1007(a)(4) Statement filed contemporaneously herewith.

## No Prior Request

46.     The Joint Administrators have not previously sought the relief requested herein from this or any other court.

*[Remainder of Page Left Intentionally Blank]*

DM3\5776983.2

**Conclusion**

WHEREFORE, the Joint Administrators respectfully request that this Court (a) grant the

relief requested in this Verified Petition and enter an order in the form attached hereto as **Exhibit**

**F** and (b) grant such other further relief and additional assistance as this Court may deem just and

proper.

Dated: June 3, 2019

DUANE MORRIS LLP

*/s/ Fredrick D. Hyman*
Frederick D. Hyman (NY 2553832)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and*
*Malcolm Cohen in their capacity as Joint*
*Administrators and Foreign Representatives*
*for the Debtor BSG Resources Limited (in*
*administration)*

17

## **VERIFICATION**

I, Malcolm Cohen, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1.     I am the duly appointed Joint Administrator and foreign representative for BSG Resources Limited (in administration) , a debtor in a foreign proceeding, and have full authority to verify the foregoing *Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief* (the "Verified Petition").

2.     I have read the foregoing Verified Petition, and am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 3, 2019

_____
Malcolm Cohen

*Joint Administrator and Foreign Representative for the Debtor BSG Resources Limited (in administration)*