## **EXHIBIT E**



Tel: +44 1481 724561  
Fax: +44 1481 711657  
mail@bdo.gg  
www.bdo.gg

PO Box 180  
Place du Pré  
Rue de Pré  
St Peter Port  
Guernsey  
GY1 3LL

7 March 2019

**TO ALL KNOWN AND CONTINGENT CREDITORS**

Please ask for  
Christopher Sandall  
0207 893 3792

Dear Sirs

**BSG Resources Limited (the "Company") - In Administration**

In accordance with the Order of the Royal Court of Guernsey ("the Administration Order") handed down on 6 March 2018, I am reporting the progress made in the Administration for the period from 6 September 2018 to 5 March 2019, that being the second six months of the Administration.

**1      Statutory Information**

The Joint Administrators are William Callewaert and Malcolm Cohen of BDO Limited and BDO LLP, respectively, (the "Joint Administrators") who were appointed in respect of the Company on 6 March 2018.

The Joint Administrators were appointed by The Royal Court of Guernsey ("the Court") on an application made by the Company.

The Company's registered office address is West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX and the Company's registered number is 46565.

**2      Background to the Administration**

Full details of the background to the appointment of the Joint Administrators were provided in the first report dated 5 September 2018.

In summary, the directors took the decision to place the Company into Administration with a view to realising its two major contingent assets, the ICSID arbitration against the Republic of Guinea and the claim against George Soros and other related parties in the United States, for the purpose of the survival of the Company, and the whole or any part of its undertaking, as a going concern.

BDO Limited     Registered in Guernsey number 29684  
Directors       J M Hallett FCA  S M Phillips FCA CPA  R M Searle FCA C.Dir  A M Trebert FCCA

BDO Limited is registered to carry out audit work in the UK by The Institute of Chartered Accountants in England and Wales.

BDO Limited, a limited liability company incorporated in Guernsey, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

### 3 Approach to the Administration

As we stated in our first report, the Joint Administrators' role is to fulfil the purpose of the Administration Order as detailed above. In order to achieve this, the Joint Administrators have been working closely with the Company's directors and advisors with the aim of fulfilling the purpose of the Administration Order.

The affairs of the Company, particularly the litigation matters, are varied, complex and largely interrelated and the Joint Administrators and their team have spent a considerable amount of time in consultation with the Company's management, advisors and the lawyers instructed on each individual matter to progress those matters with the overall aim of fulfilling the purpose of the Administration Order.

As advised in our previous report, the Joint Administrators have retained the Company's premises in Guernsey and its existing employees in order to maintain the historic knowledge and cooperation of these key individuals and to ensure the best prospects of a successful outcome for the Administration.

### 4 Litigation Matters

An overview of each of the major litigation matters is set out below.

#### 4.1 Claim against the Republic of Guinea

The Company is a claimant in an arbitration proceeding against the Republic of Guinea ("Guinea"), conducted through the International Centre for Settlement of Investment Disputes ("ICSID"). In summary, the claim relates to iron ore exploration and mining rights in the Simandou region, previously awarded to the Company by Guinea, which, it is alleged, were illegally expropriated by Guinea in 2014. The Company's claim seeks the restoration of those rights, together with damages.

In our first report the Joint Administrators informed creditors that the proceeding was fully briefed and that the decision of the tribunal was awaited.

At the time of preparing this report discussions regarding non-binding settlement terms are progressing which, if successful, will suspend the arbitration proceeding (without prejudice to the Company's rights to recommence the proceeding) whilst a definitive settlement agreement is negotiated, in order to provide a better opportunity to bring in realisations to the estate.

#### 4.2 Claim against George Soros

We previously reported that the Company had filed a complaint against George Soros and related parties in the United States District Court for the Southern District of New York in 2017. The complaint asserts various claims against George Soros and his Open Society Foundations and related entities arising out of or related to their alleged actions to intentionally deprive the Company of its iron ore mining interests in the Simandou region of Guinea. The complaint seeks US$10 billion in damages.

In November 2017, the presiding judge granted the defendants' request for a stay of the litigation pending resolution of the ICSID arbitration noted above, without otherwise ruling on the merits of a motion to dismiss the complaint, which had been submitted by the defendants.  As a result, the action has been stayed since that time.

The status conference which had been scheduled for October 2018 was postponed until November 2018 at the instance of the Court.  The Company had requested that the stay be lifted, at least partially, to enable discovery to proceed.  In the event the Court decided that the stay should remain in place until July 2019 (or such time as ICSID renders its decision, if earlier) at which point it indicated that it was likely to order discovery to proceed either fully or only in respect of documents.  The Joint Administrators will be making appropriate representations to the Court at the time of the next status conference.

### 4.3    Claim by Vale S.A.

As advised in the previous report, the Company is the respondent to an arbitration proceeding, conducted through the London Court of International Arbitration ("LCIA"), brought against it by Vale S.A. ("Vale").  The proceeding relates to alleged fraudulent misrepresentation by the Company in respect of a joint venture between Vale and the Company relating to the Simandou iron ore mining project in Guinea.  Vale seeks to recover its investment in the shares of the joint venture company (US$500m) and infrastructure investment (US$750m).  Its claims are based on alleged fraudulent misrepresentations on the part of the Company which led to Vale making its investment.  The Company denied these allegations.

As reported previously, the arbitration process is now complete and the Joint Administrators are awaiting the LCIA's decision, which could be issued by the tribunal at any time.

### 4.4    Cunico Litigation

As reported previously, the Company is a respondent to a Dutch proceeding brought by, amongst others, a Dutch registered company, Cunico Resources NV ("Cunico").  The claim is part of a wider dispute (and litigations in the Netherlands, Dubai and the Bahamas) between (amongst others) the shareholders (and their parent companies/beneficiaries) of Cunico and involves numerous parties, including but not limited to entities and persons directly or indirectly related to the Company.  The Company (and the co-defendants) contest the jurisdiction of the Court.  The Court is due to schedule a date for pleadings on that specific issue.  The Joint Administrators are engaging with the Dutch lawyers in this regard and, to the extent it is deemed necessary, will attend the hearing.

The Company is a co-claimant in appeal proceedings against Cunico (amongst others) and the Joint Administrators have undertaken research into the underlying assets in order to ascertain, as far as they are able, its underlying asset base to assess the likelihood of making recoveries even if it is successful in its appeal in respect of the Cunico litigation.

Any continuation of the appeal would be subject to obtaining litigation funding. Dutch attorneys have provided advice as to the likelihood of success of an appeal. The Joint Administrators are currently considering this advice in order to assess the likelihood of obtaining litigation funding, considering the prospects of success and any subsequent recovery.

In respect of the other litigation in which the Company is indirectly involved, these proceedings have been stayed, are subject to extensions, put on hold or discussions are taking place between the parties. Settlement discussions with the other parties continue with the objective of maximising the return, if any, to the Company.

The Joint Administrators will continue to monitor all aspects of the Cunico Litigation, whether the Company has a direct or indirect interest, in order to maximise the return (or minimise the loss), if any, to the Company.

### 4.5 Le Canard Enchaine ("Le Canard")

The Company, along with Mr Steinmetz and other entities connected to him, had made a claim in France prior to our appointment against Le Canard relating to an article which was alleged to be defamatory.

Judgement was given against Le Canard in September 2018 and damages and costs were awarded against it. The amount of this award is not substantial and is presently subject to appeal. Le Canard was also ordered to print retractions of the defamatory allegations in a number of French publications.

## 5 Assets

In addition to the potential litigation recoveries mentioned above, the other main assets of the Company are as follows:

### 5.1 Octea Limited and Subsidiaries

The Company holds a direct subsidiary company, Octea Limited ("Octea"), that acts as the holding company for a group of companies engaged in diamond mining, extraction and refinement based in Sierra Leone, as well as the marketing and sale of diamonds.

The Joint Administrators have carried out a detailed review of Octea's mining and sales operations, including a site visit to the mine by a BDO industry specialist. They continue to monitor Octea's performance on a monthly basis with its management and have observer status on its board.

On 2 January 2019, Octea's country of incorporation, and that of certain of its subsidiaries, were migrated from the British Virgin Islands to Guernsey.

The Company had previously advanced funds to Octea under the provisions of a loan combination agreement dated 31 July 2012. As at the date of this report, the balance owed by Octea to the Company is US$142,460,679.

Between January 2013 and September 2013, the Company paid expenses on behalf of Octea to the value of US$105,347.87 that remain outstanding.

Between January 2014 and February 2018, the Company paid expenses on behalf of Octea Diamonds Limited, a wholly owned subsidiary of Octea, to the value of US$1,436,081.89 that remain outstanding.

The repayment of the balances will be dependent on the financial success of the underlying diamond operations described above.

### 5.2    West African Power Limited

The Company holds a direct subsidiary company, West African Power Limited ("WAPL"), which ultimately holds, through a group of subsidiary undertakings, a minority investment in a power station located in Geregu, Nigeria.  WAPL has been in dispute for several years on a number of issues with its investee company and with the majority shareholder in the power station, which exercises *de facto* control over it and who, it is alleged, has denied WAPL its rights to participate in its management.

The Joint Administrators met with representatives of the majority shareholder and of the Company's management in November 2018 with a view to facilitating a resolution of the dispute.  It was agreed at that meeting that the shareholders would provide the Joint Administrators with the documentation to enable them to obtain a detailed understanding of the issues so that they could assist in resolving the dispute.  Some information was provided, but by no means all the required information, and the Joint Administrators remain in correspondence with the majority shareholder on this matter.

Between January 2017 and February 2018, the Company paid expenses on behalf of WAPL to the value of US$116,064.50. It is not clear to the Joint Administrators whether this balance will be recovered in full.

### 5.3    Roslindale PTE Ltd ("Roslindale")

The Company holds 64,826,482 redeemable preference shares in Roslindale.  The shares were issued at US$1 per share and carry the right to a preferential dividend which is payable as and when determined by Roslindale's board of directors.

The Company's management recognised an impairment to the value of these shares during 2016 to US$1,000 in aggregate, as a result of significant uncertainty over future cash flows attributable to this asset.

The Joint Administrators understand that the underlying asset of Roslindale is an undeveloped oil and gas field located in the Middle East.  The Joint Administrators further understand that no dividend has been received from this investment to date.

The Joint Administrators will continue to investigate whether this asset has any value to the Company and its creditors.

### 5.4 Bank Account

The Company holds a bank account with Banque J Safra Sarasin in Switzerland. At the date of appointment there was US$17,947 equivalent in this account, which is presently US$14,489 equivalent. The movement in this balance is attributable to bank charges and exchange differences (the underlying deposit is held in Swiss Francs).

### 5.5 Debtors

**BSG Capital Markets Limited ("Capital Markets"')**

Capital Markets is indebted to the Company for US$1.8m, which sum fell due for payment on 31 December 2018. The Joint Administrators demanded payment of this amount, but settlement has not been forthcoming due to inadequate liquidity in Capital Markets. The Joint Administrators are currently in discussions with the debtor regarding repayment and are expecting to receive formal repayment proposals.

**BSG Real Estate Limited ("Real Estates")**

The sum of US$32,823 is due to the Company in respect of rent receivable from Real Estates, which occupies part of the Company's offices in Guernsey. The Joint Administrators have demanded payment of this debt and are in discussions with Real Estates in relation to the settlement of the debt and the ongoing tenancy arrangements.

**Former Employee**

A former employee of two of the Company's subsidiaries was arrested in Israel in 2016. The Company loaned him US$290,000 equivalent, which was lodged as a bail bond. The bond was subsequently released, but was not paid to the Company. The Joint Administrators are investigating this matter in order to identify to whom the funds were released and to ascertain the prospects of recovery of this amount.

### 5.6 Investigation of Assets

The Joint Administrators have a duty to identify any potential assets of the Company other than those identified above. If you are aware of any asset or potential asset that is not included above, please provide relevant information to the Joint Administrators.

## 6 Creditors

### 6.1 Secured Creditors

**Standard Chartered Bank ("SCB")**

SCB is the historic lender to the Company and certain of its subsidiary undertakings and claims to have security over all proceeds flowing into the Company to the extent of the full amount of the debt owing to it.

The outstanding debt due to SCB prior to the appointment of the Joint Administrators was US$16m, allegedly rising to some US$75m (now in excess of US$81m including interest) as a result of the Company entering Administration. The Joint Administrators (on behalf of the Company) and SCB respectively have currently reserved all their rights in respect of the SCB position while they consider the legal position more fully.

**Star West Investments Limited ("Star West")**

Star West holds a charge over the shares of Octea as security for its loan of $151m to that company in respect of the Company's guarantees of Octea's obligations to Star West. These guarantees have not been called upon and at present there is no debt due to Star West by the Company.

### 6.2 Unsecured Creditors

The estimated unsecured creditors of the Company amount to US$7,491,893. These comprise inter-company or associated company creditors, general trade and expense creditors, the Guernsey Social Security Office and the Guernsey Income Tax Office.

### 6.3 Contingent Creditors

In addition to the creditors set out above there are two contingent creditors; Star West (in respect of the guarantee noted above) and Vale (in respect of its arbitration claim against the Company, noted above). The certainty, quantum and timing of these liabilities is currently unknown.

## 7   Receipts and Payments Account

Enclosed, for your information, is a summary of the receipts and payments account for the Administration to date (showing a nil balance in hand). I comment as follows:

### 7.1 Realisations

There have been no realisations in the Administration to date.

### 7.2 Funding

The Company has no liquid assets with which to fund the costs of the Administration.

A formal funding agreement between Nysco Management Corp. (the Company's immediate parent company) ("Nysco") and the Company was entered into on 18 December 2018 (the 'Funding Agreement'). The Funding Agreement sets out the terms on which Nysco has agreed to provide funding by way of loan facilities for certain aspects of the Administration. A summary account of the sums loaned to the Company is set out as Appendix 1.

### 7.3 Trading

The Company acted as an adviser and administration function for a number of its subsidiaries and has continued to do so to a limited extent.

Operational costs have been incurred, principally in respect of salaries and legal and professional fees.

Under the terms of a management agreement, a management fee may be payable to the Company from its direct subsidiary, Octea. The payment of this management fee is presently subject to uncertainty in terms of the quantum and timing of its receipt by the Company.

## 8  Joint Administrators' Remuneration

Following an application in September 2018 the Court approved the Joint Administrators' fee estimate for the first 12 months of the Administration in the amount of £901,239. This was an increase on the previously approved amount of £577,741. The increase in estimated fees was a result of unanticipated costs incurred in relation to the litigation matters referred to above. At the time of the increase to the fee budget, it was agreed that a discount of £75,856 would be applied to the time costs incurred to that date.

The tables at Appendix 2 summarise the Joint Administrators' time costs incurred from appointment and for the period of this report up to the date of preparation.

On 21 February 2019 the Joint Administrators made a request in accordance with the terms of the Funding Agreement for an amount of £194,034 to be paid to the Company in respect of fees and cost incurred. The amount requested includes £150,361 for payment of the Joint Administrators' fees. The balance of the request was to settle legal fees and disbursements and a sum of £25,000 to be an accrual and in anticipation of legal fees arising in relation to the current settlement negotiations with Guinea. Under the terms of the Funding Agreement the amount requested will be paid on or before 11 March 2019.

At the time of preparing this report, the Joint Administrators' fees have exceeded the budgeted amount by £181,322 of which £138,399 has been incurred since the beginning of February 2019 in respect of dealing with the Guinea/ICSID matter detailed above. A further Court approval will shortly be sought.

## 9  Disbursements

Direct disbursements are recovered in respect of precise sums paid to third parties during the Administration. In the period covered by this report, disbursements of £2,579 (summarised in the loan account as "General Disbursements") have been incurred in respect of direct disbursements. These are detailed in the table below.

8

| Disbursement | Amount £ |
|---|---|
| Travel (Air) | 2,201 |
| Travel (Taxi/Tube) & Subsistence | 54 |
| Administrators' Insolvency Bond | 324 |
| | 2,579 |

Indirect disbursements for costs such as printing, photocopying and telephone calls that cannot be specifically allocated to the Administration have not been incurred or drawn by the Joint Administrators.

**10  Future of the Administration**

As mentioned above, the purpose of the Administration is the survival of the Company as a going concern.

The two contingent assets in this Administration are the ICSID arbitration against the Republic of Guinea and the US litigation against George Soros. The status of these two matters has been set out above to the fullest extent possible. The outcome of these matters will determine the future strategy of the Administration and whether or not it will be possible for the Joint Administrators to achieve the purpose of the Administration.

If you require any further information, please contact me or my colleague Christopher Sandall on 0207 893 3792 or email him on *christopher.sandall@bdo.co.uk* and *BSGR@bdo.co.uk*.

Yours faithfully
For and on behalf of
BSG Resources Limited

William Callewaert
Joint Administrator

**Appendix 1**
**Joint Administrators' Summary Receipts and Payments Account**

| | Notes | 6 September 2018 to 2 March 2019 | From appointment to 2 March 2019 |
|---|---|---|---|
| **ADMINISTRATION ACCOUNT** | | | |
| **Receipts** | | | |
| None | | nil | nil |
| | | nil | nil |
| **Payments** | | | |
| None | | nil | |
| | | nil | nil |
| **Balance held by Joint Administrators** | | **nil** | **nil** |
| **NYSCO POST-APPOINTMENT LOAN ACCOUNT** | | | |
| As at 2 March 2019 | | | |
| **Operating Costs** | | | |
| Staff costs including tax & social security contributions | 1 | ( 124,046) | ( 216,442) |
| Legal and professional fees and costs | 2 | ( 103,843) | ( 126,098) |
| General office costs | 3 | ( 15,160) | ( 15,529) |
| Insurance: D&O cover | 4 | ( 98,760) | ( 98,760) |
| | | ( 341,809) | ( 456,829) |
| **Legal Fees and Associated Costs** | | | |
| Legal fees and disbursements | 5 | ( 972,391) | ( 1,900,112) |
| IT services | 6 | ( 9,692) | ( 74,535) |
| | | ( 982,083) | ( 1,974,647) |
| **Joint Administrators' Fees & Disbursements** | | | |
| Joint Administrators' pre-appointment fees | 7 | nil | ( 64,500) |
| Joint Administrators' post-appointment fees | 7 | ( 451,228) | ( 748,008) |
| Joint Administrators' general disbursements | 8 | ( 479) | ( 3,654) |
| | | ( 451,707) | ( 816,162) |
| **Total loaned to BSG Resources Limited (In Administration)** | | **( 1,775,598)** | **( 3,247,637)** |

**NOTES**
1. The Company retains two members of staff who provide administrative and operational functions.
2. Legal and professional fees incurred in respect of operational matters.
3. Office costs included utility costs, office supplies, insurance (excluding D&O cover)
4. Director and Officer insurance indemnity cover has been obtained in respect of the retained employees.
5. Legal fees and costs incurred in relation to matters arising in the Administration.  This includes £258,363 in respect of the ICSID arbitration tribunal fees.
6. IT services includes the provision of cloud-based storage for data and digital documents relating to various legal proceedings.
7. The Joint Administrators' pre- and post-appointment fees have been approved by the Royal Court of Guernsey.  A request for fees of £150,361 has been made to Nysco but is unpaid.
8. Disbursements incurred are detailed in the body of the report.

**Appendix 2**
**BSG Resources Limited (In Administration)**
**Summary of Joint Administrators' Time Costs**

For the Period 6 March 2018 to 2 March 2019

| Grade<br>Average Rate | Partner<br>£699 per hour | | Principal/Director<br>£448 per hour | | Senior Manager/Manager<br>£367 per hour | | Executive<br>£203 per hour | | Totals<br>£439 per hour | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | 21.50 | 14,942.50 | 49.10 | 22,839.12 | 10.85 | 4,029.80 | - | - | 81.45 | 41,811 |
| Day One Matters | 6.50 | 4,526.41 | 33.90 | 12,987.00 | 45.50 | 16,212.23 | 0.30 | 33.48 | 86.20 | 33,759 |
| Litigation Matters | 295.20 | 209,108.19 | 353.25 | 167,817.51 | 165.95 | 64,860.75 | 22.00 | 7,623.00 | 836.40 | 449,409 |
| Trading Matters | 57.55 | 36,477.37 | 238.90 | 91,112.58 | 176.25 | 53,884.80 | 4.80 | 370.31 | 477.50 | 181,845 |
| Tax | 6.35 | 4,439.98 | 18.91 | 11,462.18 | 1.00 | 302.40 | 3.65 | 646.20 | 29.91 | 16,851 |
| Statutory Compliance | 1.75 | 1,277.33 | 70.20 | 26,787.60 | 36.75 | 12,064.50 | - | - | 108.70 | 40,129 |
| General Administration | 47.65 | 33,575.77 | 113.00 | 52,210.53 | 158.20 | 62,587.98 | 1.20 | 101.30 | 320.05 | 148,476 |
| Other Matters | 99.35 | 70,021.07 | 207.90 | 100,718.82 | 180.40 | 70,352.91 | 36.00 | 5,043.60 | 523.65 | 246,136 |
| Agreed Discount | | | | | | | | | | (75,856) |
| | 535.85 | 374,369 | 1,085.16 | 485,935 | 774.90 | 284,295 | 67.95 | 13,818 | 2,463.86 | 1,082,561 |

For the Period 6 September 2018 to 2 March 2019

| Grade<br>Average Rate | Partner<br>£692 per hour | | Principal/Director<br>£471 per hour | | Senior Manager/Manager<br>£329 per hour | | Executive<br>£138 per hour | | Totals<br>£399 per hour | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | | | | | | | | | | |
| Day One Matters | | | | | | | | | | |
| Litigation Matters | 127.60 | 90,701.72 | 141.65 | 69,016.05 | 44.75 | 14,694.98 | - | - | 314.00 | 174,412.74 |
| Trading Matters | 49.75 | 30,914.47 | 94.40 | 40,036.50 | 95.45 | 28,864.08 | 1.55 | 138.56 | 241.15 | 99,953.60 |
| Tax | 1.50 | 1,069.23 | 12.71 | 7,590.47 | 1.00 | 302.40 | 2.85 | 513.00 | 18.06 | 9,475.10 |
| Statutory Compliance | 1.75 | 1,277.33 | 23.80 | 10,579.14 | 32.00 | 9,982.58 | - | - | 57.55 | 21,839.04 |
| General Administration | 9.50 | 6,712.73 | 59.40 | 27,288.27 | 48.45 | 17,946.86 | 0.70 | 53.01 | 118.05 | 52,000.87 |
| Other Matters | 35.15 | 25,160.68 | 99.50 | 48,510.00 | 56.70 | 19,676.16 | - | - | 191.35 | 93,346.84 |
| Agreed Discount | | | | | | | | | | (75,856) |
| | 225.25 | 155,836 | 431.46 | 203,020 | 278.35 | 91,467 | 5.10 | 705 | 940.16 | 375,172 |

19-11845-smb    Doc 57    Filed 06/03/19    Entered 06/03/19 14:18:56    Exh
                              Pg 12 of 12