DUANE MORRIS LLP
Frederick D. Hyman (NY 2553832)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen*
*in their capacity as Joint Administrators and Foreign Representatives*
*for the Debtor BSG Resources Limited (in administration)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BSG RESOURCES LIMITED (in administration), | Case No. 19-11845 (SHL) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF MATHEW NEWMAN IN SUPPORT OF THE JOINT**
**ADMINISTRATORS' MOTION PURSUANT TO**
**11 U.S.C. §§ 107(b) AND FED. R. BANKR. P. 9018 FOR AUTHORITY**
**TO FILE AND MAINTAIN CONFIDENTIAL INFORMATION UNDER SEAL**

I, Mathew Charles Newman, pursuant to 28 U.S.C. § 1746, hereby declare under

penalty of perjury as follows:

1.    I am a partner in the firm of Ogier (Guernsey) LLP ("Ogier") and head of the

dispute resolution team at Ogier in Guernsey.  I qualified as an English solicitor in 2002 (with

the firm which is now DLA Piper UK LLP) and as an advocate of the Royal Court of

Guernsey (the "Guernsey Court") in 2011 after I had joined Ogier.  I have significant

experience in Guernsey contentious insolvency and restructuring related matters.  I submit

this Declaration in connection with the *Joint Administrators' Motion Pursuant to 11 U.S.C.*

*§§ 107(B) and Fed. R. Bankr. P. 9018 for Authority to File and Maintain Confidential*

*Information Under Seal* [Docket No. 10] and in order to provide certain background

concerning the use of confidential information before the Guernsey Court.

2.      Ogier acted for BSG Resources Limited (the "Company") in relation to its

application to the Guernsey Court to place itself into administration in March 2018, and after

their appointment my firm acted for the joint administrators of the Company, Mr Cohen and

Mr Callewaert.  We no longer act for the Company but instead act for its joint administrators

in their capacity as such.  I was, and still am, the lead partner at Ogier on both matters.

3.      The purpose of this declaration is to address a short point about the type of

information that, in my experience, the Guernsey Court would agree to keep sealed on the

court file (*i.e.* not publicly available) in applications to the court to put a company into an

insolvency process such as administration or liquidation.  In this declaration I will concentrate

on applications for an administration order as this is relevant to the Company.

4.      When a company applies, or its directors apply, for an administration order

under part XXI of the Companies (Guernsey) Law, 2008 (as amended) ("Companies Law") it

will obviously have access to an abundance of information which it can place before the

Guernsey Court.   Most of this information will go to the test for the administration

application.   The test for an administration order in Guernsey under section 374 of the

Companies Law is (a) the company must be insolvent, or is likely to be insolvent, either on a

cash flow or balance sheet basis and (b) one of the statutory purposes of an administration

order may be achieved.  Those statutory purposes are the survival of the company and the

whole or any part of its undertaking, as a going concern, or a more advantageous realisation

of the company's assets than would be effected on a winding up.

5.      After those threshold tests, the Guernsey Court has a discretion as to whether

to grant the order or not, such discretion being dependant on the circumstances of the case and

more often than not this relates to the effect of the administration order, being protection from unsecured creditors and why it is necessary to have that protection. An administration order gives rise to a moratorium on unsecured creditor actions against the company (section 377 of the Companies Law) and the company will be applying for an administration order to give it a "breathing space" from its creditors, and management and control of the company is given over to court-appointed officers known as administrators who act independently and in the best interests of all creditors. The administrators' primary duties are to the Guernsey Court, as officers of it, but also to all creditors. Their functions are dependent on the purpose being sought in the administration order, but it will involve a degree of management of the company's business and then to manage or realise the company's property to the maximum extent possible (*see* sections 379 and 380 of the Companies Law and schedule 1 to the Companies Law).

6.      The information put before the Guernsey Court will often be commercially sensitive as it will relate to the company's financial position and the strategy of the proposed administrators. However it is necessary to put this type of information before the Guernsey Court in order to fulfil the threshold test, but also on the question of the court's discretion the court will often want to see the full picture.

7.      Whilst the default position before the Guernsey Court is that all proceedings must be in public and the court file must be open, there are exceptions to that rule where justice will be frustrated if the proceedings are conducted on that open basis. The Guernsey authority for that proposition is the decision in IFS Investments v Manor Park [2003-4] GLR 77. The case of Esquire Realty Holdings Limited [2014] GLR 77 is authority for such principles being applicable in the case of an administration application.

8.      In the Esquire case (in which I appeared), it was clear that the information before the Guernsey Court, if it fell into public hands, would destroy the very purpose of the

administration order which was to achieve a better realisation than would be effected on a winding up of the company because would be bidders of the assets of the company would know what those assets had been valued at by the company, and this would prevent the administrators from maximising realisations, ultimately in the best interests of creditors.  This principle has been applied many times in the Guernsey Court, in cases that I have appeared in, as recently as 30 April 2019 in relation to a care home holding company called Elli Investments Limited (where the court file remains sealed but the fact of the administration order is public knowledge).  In the case of the Company itself, the Guernsey Court agreed to seal the court file in its entirety for exactly those reasons.

9.      Types of material that I would, depending on the circumstances, expect to remain sealed on the court file due to commercial sensitivity would be accounts (company accounts are not public documents in Guernsey), other financial information which could impede the administrators' functions and duties as set out above, any agreement with creditors or other stakeholders to fund the administration process, and other document which points to the proposed strategy of the administrators if such strategy has a contentious theme or angle. Obviously, if the company in question is simply a property holding company then the strategy is clear (*i.e.* sell the property) and there is no commercial sensitivity to it, but in a complex case such as that of the Company, I would expect the Guernsey Court to agree to seal the court file in respect of any strategy document.

10.      In conclusion, it is my experience that anything that is likely to harm the purpose of the administration order is likely to be kept out of public view by the Guernsey Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _6th June_, 2019

Mathew Charles Newman