Duane Morris LLP
Frederick D. Hyman (NY 2553832)
Michael R. Lastowski (NY 4214847)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com
MLastowski@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen*
*in their capacity as Joint Administrators and Foreign Representatives*
*for the Debtor BSG Resources Limited (in administration)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BSG RESOURCES LIMITED (in administration), | Case No. 19-11845 (SHL) |
| Debtor in a Foreign Proceeding. | |

**JOINT ADMINISTRATORS' REPLY**
**IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ..................................................................................................1

Procedural Posture and the Status of Discovery .........................................................3

Argument ....................................................................................................................6

    A.    Pre-Recognition Discovery Must Be Limited to BSGR's COMI During the Relevant Period ..................................................................... 6

        1.    COMI and the Relevant Period ....................................................7

        2.    Historic Allegations of Bad Faith Are Not Relevant ...................9

    B.    Vale's Opposition Is Not a Motion Pursuant to Which Vale May Seek Affirmative Relief ....................................................................... 11

        1.    The Joint Administrator's Request That Vale Conduct One Rule 30(b)(6) Deposition ...................................................................12

        2.    Vale's Objection to the Joint Administrator's Assertion of Privilege Is Premature ...............................................................13

        3.    The Joint Administrators Do Not Possess or Control Documents of BSGR's Parent-Affiliates ...........................................................13

        4.    Narrative Responses to Certain Vale Discovery Requests Are Appropriate ...............................................................................14

        5.    Discovery Concerning Non-COMI Issues Will Impose an Unnecessary and Disproportionate Burden on the Joint Administrators ............................................................................15

    C.    All Discovery Must Include Safeguards That Comply With the Requirements of the EU GDPR .......................................................... 16

    D.    The Protective Order Adequately Defines the Scope of Permissible Discovery ................................................................................ 17

Conclusion ................................................................................................................17

# Table of Authorities

## Cases

*In re Basis Yield Alpha Fund (Master)*,
  381 B.R. 37 (Bankr. S.D.N.Y. 2008)......................................................................................10

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007)......................................................................................9

*Carlson v. Geneva City Sch. Dist.*,
  277 F.R.D. 90 (W.D.N.Y. 2011)..............................................................................................15

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004) ............................................................................................15

*In re Creative Fin., Ltd. (In Liquidation)*,
  543 B.R. 498 (Bankr. S.D.N.Y. 2016).........................................................................2-3, 9-10

*Gerling Int'l Ins. Co. v. Comm'r Gerling Int'l Ins. Co.*,
  839 F.2d 131 (3d Cir. 1988).....................................................................................................14

*In re Millard*,
  501 B.R. 644 (Bankr. S.D.N.Y. 2013).................................................................................1, 3

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
  458 B.R. 63 (Bankr. S.D.N.Y. 2011).........................................................................................7

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
  714 F.3d 127 (2d Cir. 2013).............................................................................................4, 7, 9

*In re Oi Brasil Holdings Cooperatief U.A.*,
  578 B.R. 169 (Bankr. S.D.N.Y. 2017).....................................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  233 F.R.D. 143 (D. Del. 2005) ................................................................................................14

*S.E.C. v. Credit Bancorp, Ltd.*,
  194 F.R.D. 469 (S.D.N.Y. 2000) .............................................................................................14

*In re Serviços de Petróleo Constellation S.A.*,
  600 B.R. 237 (Bankr. S.D.N.Y. 2019)....................................................................................7-8

*In re SPhinX, Ltd.*,
  351 B.R. 103 (Bankr. S.D.N.Y. 2006)........................................................................................7

DM3\5979629.5

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.,*
    254 F.R.D. 227 (E.D. Pa. 2008) ................................................................12

*In re Suntech Power Holdings Co.,*
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ........................................................8

**Statutes**

11 U.S.C. § 101(23) .......................................................................................6

11 U.S.C. § 362 .........................................................................................2, 10

11 U.S.C. §1506 ...........................................................................................10

11 U.S.C. § 1516 ............................................................................................8

11 U.S.C. § 1517 .......................................................................................7, 9

11 U.S.C. § 1521 .......................................................................................6, 9

**Rules**

Fed. R. Civ. P. 11 .....................................................................................3, 11

Fed. R. Civ. P. 25 ..........................................................................................1

Fed. R. Civ P. 26 .........................................................................................15

Fed. R. Civ. P. 30 ........................................................................................12

Fed. R. Civ. P. 34 ..........................................................................................4

DM3\5979629.5

The Joint Administrators hereby reply in support of their *Motion for a Protective Order Pursuant to Fed. R. Civ. P. 25 Made Applicable to These Proceedings by Fed. R. Bankr. P. 9014* [Docket No. 27] (the "Motion")[1] and in response to Vale's *Opposition* [Docket No. 30] (the "Vale Opp.") as follows:

### Preliminary Statement

1.      This is a very simple case in which the Court will hold a Recognition Hearing that will address two simple issues (the "Recognition Hearing Issues"): (a) whether the Guernsey Administration meets the statutory definition of a "foreign proceeding" under the Bankruptcy Code; and (b) whether the Debtor's COMI is Guernsey.

2.      Vale's allegations of bad faith are far-fetched, far flung and call into question Vale's good faith.  They are also not relevant to the Recognition Hearing Issues. The page limits of a reply do not permit the Joint Administrators to rebut all of the bad faith insinuations set forth in the Opposition (*e.g.*, the suggestion that the Joint Administrators may be "perpetrating a fraud," *see* Vale Opp. at 2 n.3) and the Joint Administrators will not burden the Court with a hearsay laden, 100-page appendix/declaration of counter-facts and arguments. *See Declaration of Lisa M. Schweitzer* [Docket No. 31] (the "Schweitzer Declaration").  However, the Court should be made aware of the frivolity of Vale's allegations of bad faith relating to the Guernsey Administration. In this regard, Vale raises four issues.

3.      First, Vale notes that the Guernsey Administration was initiated to thwart Vale's execution on a judgment, or, to use Judge Gerber's words, to protect "U.S. assets from being grabbed."  *In re Millard*, 501 B.R. 644, 655  (Bankr. S.D.N.Y.  2013).  If this motive were recognized as a basis for a finding of a bad faith filing under chapter 15 or chapter 11, every case

---

[1] Capitalized terms not otherwise defined herein are intended to have the meaning set forth in the Motion.

DM3\5979629.5

in which a debtor sought to avail itself of the automatic stay set forth in section 362 of the Bankruptcy Code would be subject to dismissal.

4.      Second, Vale refers to the debtor's insiders negotiating a proposed settlement of the International Centre for Settlement of Investment Disputes ("ICSID") arbitration involving BSGR and the Republic of Guinea (insinuating that the Joint Administrators are not in control of the Debtor's affairs).  The Joint Administrators have produced to Vale documents which demonstrate that the Joint Administrators have actively prevented any settlement absent their review and approval.  Currently, there is at most a "non-binding" settlement that remains subject to thorough diligence, review, and perhaps termination or renegotiation by the Joint Administrators.  This document, which has been produced to Vale, demonstrates the Joint Administrators' independence from the debtor's insiders. Vale shamelessly attempts to turn the document on its head by arguing the contrary.

5.      Third, Vale suggests that assets have been dissipated during the Guernsey Administration.  Vale refers to reports that BSGR had "assets" in the approximate amount of $132 million in early 2018.  Vale counter poses these reports with the Joint Administrators' statement that, as of March 7, 2019, BSGR had no "liquid assets."  Vale is either so naïve that it does not know the difference between "liquid" and "non-liquid" assets or is so cynical that, knowing the difference, it has deliberately made a frivolous argument.

6.      Fourth, Vale states that Vale paid to BSGR $500 million and argues that this payment is not analyzed in any of the Joint Administrators' progress reports.  *This payment was made nine years ago, in 2010.*  While this archeological fact may pique Vale's curiosity, it provides no evidence that the Joint Administrators have not been fulfilling their statutory duties.[2]

---

[2] Through insinuation and innuendo, Vale vainly attempts to analogize this case to *In re Creative Fin., Ltd. (In Liquidation),* 543 B.R. 498, 518 (Bankr. S.D.N.Y. 2016).  In *Creative Finance,* an English court issued a draft opinion

7.      As set forth below, if Vale actually intends to pursue its bad faith theory, it can only

do so post-recognition in the context of a motion to dismiss or for relief from the automatic stay.

However, any such allegations will be subject to the requirements of Rule 11 of the Federal Rules

of Civil Procedure, under which the Joint Administrators will seek sanctions if Vale pursues claims

in bad faith.

### Procedural Posture and the Status of Discovery

8.      Vale has obtained a judgment in the United Kingdom.  It seeks to have that

judgment registered in the United States and, to that end, has filed a *Petition for Recognition and*

*Enforcement of a Foreign Arbitration Award* (the "Vale Enforcement Petition") in the United

States District Court for the Southern District of New York (the "District Court").[3]  The Joint

Administrators filed this chapter 15 proceeding to prevent Vale from executing on a separate

litigation claim which they are pursuing in the District Court (the "Soros Claim").[4]  In the words

of Judge Gerber, the Joint Administrators are "protecting U.S. assets from being grabbed."

*Millard*, 501 B.R. at 655.

9.      Vale has repeatedly dismissed the Soros Claim as worthless. In its Opposition, Vale

characterizes the Soros Claim  as a "far-fetched claim."  Vale Opp. at ¶ 26.  Given that Vale does

not see any value in the Soros Claim, it should not hesitate to stipulate that it will not execute on

the Soros Claim. Such a stipulation would preserve the Soros Claim and protect against Vale's

---

advising the parties of its intent to enter a judgment against the debtor in the amount of $5.6 million.  The court directed the debtor to pay the amount of the judgment within nineteen (19) days and "restrained actions to thwart the judgment that was about to be entered."  *Id.* at 502.   In response to this order, the debtor transferred all of its liquid assets out of the United Kingdom.  The facts of *Creative Finance* bear no resemblance to this case.  Vale is attempting to fit a square peg into a round hole.

[3] *Vale S.A. v. BSG Resources Limited*, Case No. 19-cv-3619-VSB (S.D.N.Y. 2019).

[4] *BSG Resources Limited v. Soros*, Case No. 17-cv-02726-JFK-OTW (S.D.N.Y. 2017).

3

interference, allowing the Joint Administrators to pursue a significant asset of BSGR for the benefit of its creditors (including Vale). It would also render moot the need for this chapter 15 proceeding.

10.     Unfortunately, Vale will not agree to refrain from executing on, or otherwise interfering with, the Soros claim. It thus appears that Vale is opposing recognition primarily to obtain discovery in aid of execution on its judgment and not to develop facts relating to the matters at issue at the Recognition Hearing, namely COMI.

11.     The Vale Discovery seeks information well beyond the scope of the Recognition Hearing Issues.[5] In its Opposition, Vale attempts to complicate the Recognition Hearing Issues and prejudice this Court against the Joint Administrators by weaving (through inadmissible hearsay) a tale of international intrigue and conspiracy. These allegations are not relevant to the matters the Court will consider at the Recognition Hearing.

12.     Discovery in this matter is proceeding. Vale served sixty-eight (68) requests for production of documents, eight (8) interrogatories and four (4) deposition notices on June 14, 2019. The Joint Administrators' responses to the written discovery requests would have been due no earlier than July 14, 2019. *See* Fed. R. Civ. P. 34(b)(2)(A). Still, within less than two weeks, on June 27, 2019, the Joint Administrators produced over 1,000 pages of relevant documents. On July

---

[5] As summarized by the Second Circuit:

> In a nutshell: for a proceeding to be recognized as a "foreign main proceeding," it must be "pending in the country where the debtor has the center of its main interests." That determination is based on a debtor's COMI at the time the Chapter 15 petition is filed. A court may look at the period between the commencement of the foreign proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith, but there is no support for [the opposing creditor's] contention that a debtor's entire operational history should be considered.

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),* 714 F.3d 127, 138 (2d Cir. 2013) (internal citations omitted).

DM3\5979629.5

3, 2019 – nearly two weeks *before* their responses to the Vale Discovery were due – the Joint Administrators served their Objections. The Joint Administrators filed the Motion on the same date in order to limit the scope of discovery to COMI issues.

13.    Importantly, the Joint Administrators do not seek to deny Vale the ability to conduct limited appropriate discovery in connection with the Recognition Hearing. Indeed, in the Objections, the Joint Administrators state that they will produce non-privileged documents responsive to at least 18 requests. *See, e.g.* Objection Nos. 1, 2, 5, 6, 10, 13, 19, 23, 26, 27, 31, 50, 51, 52, 63, 66, 67, and 68. For example, categories of responsive documents the Joint Administrators will produce (or have already produced) include documents sufficient to identify BSGR's assets; corporate and organizational information; the identification of employees (subject to EU GDPR restrictions); bank account information; documents concerning subsidiary management; administration budgets; company and litigation funding agreements; a memorandum of understanding with Niron; agreements executed by the Joint Administrators; and other documents upon which the Joint Administrators intend to rely at the Recognition Hearing.

14.    The Joint Administrators' review of the documents and information in their possession continues. At the same time, the Joint Administrators are working to address certain confidentiality issues arising in connection with their anticipated production of documents, including ensuring compliance with the EU GDPR. These efforts include negotiating a comprehensive confidentiality agreement with Vale in order to facilitate the exchange of documents.[6] The Joint Administrators cannot proceed with further production until the EU GDPR issues are resolved.  Likewise, given that Vale and BSGR are industry competitors and aggrieved

---

[6] While the parties continue to negotiate the terms of stipulated protective order in good faith, it appears they may have reached an impasse concerning the designation of certain materials as "Outside Attorney's Eyes Only." The parties may determine to submit this disagreement to the Court for resolution.

joint venture partners, a comprehensive confidentially agreement that limits access to certain documents to the parties, and in some instances only the parties' attorneys, is essential. These are not dilatory tactics. On the contrary, these steps are a required exercise of the Joint Administrators' fiduciary responsibility to preserve the value of BSGR and are necessary to protect the Joint Administrators' ongoing efforts to administer BSGR and its assets.[7]

Argument

A.     **Pre-Recognition Discovery Must Be Limited to BSGR's COMI During the Relevant Period**

15.     At the Recognition Hearing, the Court will review two issues: (a) whether the Guernsey Administration qualifies as a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code; and (b) the Debtor's COMI on the date the chapter 15 case was commenced. Vale does not contest that the first issue is a legal issue which does not provide a basis for discovery. Rather, Vale attempts to characterize each of the nearly eighty (80) Vale Discovery Requests as targeted to address BSGR's COMI or, more obliquely, whether the Joint Administrators have pursued chapter 15 recognition of the Guernsey Administration in bad faith.[8] *See* Vale Opp. at ¶ 35. While the former may be an appropriate topic subject to pre-recognition discovery by a creditor in a chapter 15 case, the latter is not.

---

[7] Negotiating a stipulated protective order has not been easy. As the parties have exchanged drafts, Vale has introduced revisions which delete earlier concessions. Vale will not even concede that trade secrets are entitled to "Outside Attorney's Eyes Only" protection. Vale's unwillingness to compromise is understandable. In this case, discovery is likely to be a one-way street, in which Vale may not be producing documents.

[8] In its Opposition, Vale concedes that Document Requests No. 2, 19, 29, 47-50, 54-56, and 60 do not directly pertain to BSGR's COMI. Rather, Vale suggests in a footnote and without explanation that these requests are "nonetheless relevant to the examination of BSGR's bad faith under COMI or more generally as part of the Court's grant of discretionary relief under 11 U.S.C. § 1521." Vale Opp. at 19-20 n.42.

### 1.    COMI and the Relevant Period

16.    According to Vale, almost any historic act of a debtor at any point in time should be considered by this Court in determining whether recognition of a foreign insolvency proceeding is required or appropriate under section 1517 of the Bankruptcy Code. *See* Vale Opp. at ¶ 37 (suggesting that courts may consider "any relevant activities" of the debtor in performing a COMI analysis). This is not the case. To be sure, in *In re SPhinX, Ltd.*, the Court established the basic parameters to be considered in connection with a COMI analysis, including:

(1)    the location of the debtor's headquarters;

(2)    the location of those who actually manage the debtor;

(3)    the location of the debtor's primary assets;

(4)    the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or

(5)    the jurisdiction whose law would apply to most disputes.

351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). Of course, this list of factors is not exhaustive nor dispositive. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 714 F.3d at 137; *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 272-77 (Bankr. S.D.N.Y. 2019). However, there are boundaries to a COMI analysis.

17.    In fact, the scope of a COMI analysis – and thus the permissible scope of COMI-related discovery – will be case and fact-specific. *See, e.g., Fairfield Sentry Ltd.*, 714 F.3d at 137 (recognizing that the determination of COMI is a case-by-case analysis). Moreover, the *SPhinX* factors have not evolved into a vastly different standard; they remain the framework by which courts in this district analyze COMI. *See, e.g., Serviços de Petróleo Constellation S.A.,* 600 B.R. at 272-77 (considering COMI factors that track the criteria established in *Sphinx*); *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 77 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R.

7

88 (S.D.N.Y. 2012) (considering location of debtor's primary assets, including investment property and liquid assets in COMI analysis). Even in cases where courts have focused on the location of the debtor's "nerve center," the relevant factual inquiry reflects the *SPhinX* framework. *See In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (considering the location of the debtor's nerve center, "including from where the debtor's activities are directed and controlled" as part of the COMI analysis).

18.    In this case, BSGR's COMI is presumed to be Guernsey, its place of registration. *See* 11 U.S.C. 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."). BSGR has been registered at the same address in Guernsey since 2007 – seven (7) years before its joint venture with Vale. *See* Cohen Declaration, Exhibit 2 at 1. BSGR was registered in Guernsey when BSGR and Vale entered into the Joint Venture Framework Agreement. *See* Cohen Declaration, Exhibit 4 at 1 (identifying BSGR as "a company registered under the laws of Guernsey with registered number 46565, with its principal office in West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX," its current address). BSGR remained registered in Guernsey during the LCIA Arbitration. Given the strong statutory presumption that BSGR's COMI is Guernsey, the criteria outlined in *SPhinX* provide fair boundaries for Vale's COMI-related discovery.[9]

19.    Similarly, the Relevant Period (March 6, 2018 to the present) must be the temporal limit of any discovery. Even in extraordinary cases of alleged bad faith and COMI manipulation,

---

[9] To the extent that some courts have considered the expectation of creditors when analyzing a debtor's COMI, *see Serviços de Petróleo Constellation S.A.,* 600 B.R. at 273, Vale should have reasonably expected that BSGR might seek insolvency protection in Guernsey. To the extent Vale requires discovery on this point, Vale presumably has access to documents evidencing its own expectation.

courts have limited the relevant period of analysis to the date the foreign insolvency proceeding

was commenced. *See Creative Fin.,* 543 B.R. at 518 (recognizing that the Second Circuit in

*Fairfield Sentry* noted "concern about possible COMI manipulation," and ruled that a court "may

look at the period between the commencement of the foreign proceeding and the filing of the

Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith.").

### 2.     Historic Allegations of Bad Faith Are Not Relevant

20.     Vale asks this Court to allow Vale unfettered discovery on the basis that Vale is

entitled to explore whether the Guernsey Administration and the chapter 15 case were commenced

in good faith. *See* Vale Opp. at ¶ 40. Section 1517, which mandates recognition of a foreign

insolvency proceeding pending in the country where the debtor has its COMI, is bereft of any

"good faith" qualification. *See* 11 U.S.C. § 1517(a). Likewise, nothing in section 1521, which

outlines the discretionary relief available to a debtor upon recognition of a foreign non-main

proceeding, requires the Court to conduct a good faith analysis. *See* 11 U.S.C. § 1521(a). In fact,

this Court has held that the alleged bad faith of a debtor is "not germane to this Court's recognition

analysis." *Creative Fin.*, 543 B.R. at 522.

21.     Vale misconstrues the various cases that explored whether a debtor or its foreign

representatives manipulated the debtor's COMI in bad faith to suggest that generic allegations of

general "bad faith" on the part of the debtor are ripe for pre-recognition discovery.  Each of the

cases that considered debtor "bad faith" did so in the context of considering whether the debtor

had attempted *to manipulate its COMI* to improperly obtain chapter 15 recognition. *See, e.g.,*

*Creative Fin.,* 543 B.R. at 501 (denying recognition either as a main or non-main proceeding

because debtor lacked an establishment in location where foreign proceeding was pending); *In re*

*Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122 (Bankr.

S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008) (denying recognition of Cayman Islands

insolvency proceeding as foreign main proceeding where the debtor had a principal places of business elsewhere and had done little or no business in the Cayman Islands before recognition was sought); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37 (Bankr. S.D.N.Y. 2008) (same); *see also In re Oi Brasil Holdings Cooperatief U.A.,* 578 B.R. 169, 222 (Bankr. S.D.N.Y. 2017) (considering whether the debtor's COMI had shifted between initial recognition of foreign insolvency proceeding in Brazil and subsequent involuntary insolvency proceeding in Netherlands). Here, there can be no plausible allegation that BSGR or the Joint Administrators have manipulated BSGR's COMI in connection with the chapter 15 case – BSGR's COMI has at all relevant times been and remains Guernsey.

22.    Notably, in *Creative Finance*, the Court questioned whether recognition could be denied on bad faith grounds. 543 B.R. at 501.  Though it ultimately did not determine the issue, the Court suggested bad faith in a chapter 15 case could be addressed post-recognition through means other than dismissal or the denial of recognition, such as seeking relief from the automatic stay. *Id.* ("Whether or not section 305 is an available mechanism to address bad faith (a matter that the Court, given its recognition ruling, does not here need to decide), other mechanisms exist under the Code."). Similarly, the Court concluded that a finding of bad faith was not sufficient to bar recognition pursuant the public policy exception in section 1506 of the Bankruptcy Code. *Id.* ("the Court does not consider it appropriate to invoke section 1506" notwithstanding that this case involved "egregious bad faith").

23.    While Vale may argue that even if the Court were to grant recognition, Vale would subsequently file a motion to dismiss on the grounds of "bad faith" or seek relief from the automatic stay under 11 U.S.C. § 362 (d)(1) (*i.e.*, for "cause" due to alleged bad faith), the Court should be mindful of the procedural posture of this case.  The initial frenetic tempo of this case

DM3\5979629.5

was driven by the possibility that the District Court would recognize the arbitration award. Vale's willingness to refrain from execution until at least September 30, 2019 has mitigated this factor. However, the uncertainty of the timing of the District Court's decision has provided Vale with disproportionate leverage.

24.     Limiting discovery to COMI issues will allow the parties and this Court to hold a prompt hearing on recognition. If Vale were to thereafter pursue post-recognition remedies that require a finding of "bad faith" (consistent with Fed. R. Civ. P. 11), it could do so pursuant to a reasonable discovery schedule. Absent such a limitation, the scope of discovery is almost boundless. The facts set forth in the inadmissible Schweitzer Declaration appear to present a road map of anticipated discovery which would be unlimited in its breadth and global in its reach.

## B.     Vale's Opposition Is Not a Motion Pursuant to Which Vale May Seek Affirmative Relief

25.     In its forty (40) page Opposition, Vale essentially moves to overrule the Objections and to compel the Joint Administrators to respond to the Vale Discovery in full. However, Vale has filed no motion. While the Joint Administrators are eager to discuss with the Court any discovery issues (mindful of the fact that the Court does not share this eagerness and would prefer that the parties compromise), Vale's camouflaged motions are inappropriate. This is especially true since Vale has *de facto* exceeded its own forty (40) page limit (through excessive use of indented quotes and footnotes and by incorporation of a 100-page appendix/declaration) and the Joint Administrator's Reply is limited to twenty (20) pages (one half of the page allotment for a responsive brief). *See* Chambers Rules, Judge Sean H. Lane, Form and Content of Briefs (permitting 40 pages for moving and responsive briefs and 20 pages for reply briefs). Further, some of the issues which Vale raises are not ripe for review.

DM3\5979629.5

26.    In addition to the global request that the Vale Discovery Requests be limited to COMI-related issues during the Relevant Period, the Objections include several other particular objections to the Vale Discovery Requests. In many instances, these Objections are included prospectively inasmuch as the Joint Administrators remain in the process of reviewing the documents and other materials in their possession and control. In any event, however, each of the Objections has a valid legal basis and is made in accordance with this Court's discovery practice.

### 1.    The Joint Administrator's Request That Vale Conduct One Rule 30(b)(6) Deposition

27.    Recognition Hearing discovery should be simple and straightforward – similar to discovery that would be pursued in the context of a motion to dismiss for lack of personal jurisdiction or improper venue.  Within these parameters, there is no reason for Vale to conduct four (4) depositions.  Vale should not require more than one witness to testify as to the location of books and records or the place of employment of BSGR's employees.[10] More than one (1) deposition on this limited topic is excessive. *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.,* 254 F.R.D. 227, 235 (E.D. Pa. 2008) ("Taking serial depositions of a single corporation may be as costly and burdensome"). Accordingly, any information Vale is entitled to seek relating to BSGR's COMI can be established via examination of BSGR's corporate representative designated pursuant to Federal Rule 30(b)(6).

---

[10] Vale notes that the Joint Administrators had earlier agreed to four (4) depositions and has now reneged.  Vale should be reminded that Vale's counsel represented to the Court that Vale would not execute on any judgment until a decision following the Recognition Hearing.  *See* Hr'g Tr. 20:1-7, June 24, 2019 ("My suggestion for the so-called bridging issue is quite simple. [Vale] will commit that if [the District Court] rules in our favor on enforcement, which [the District Court] will only do if [the District Court] doesn't grant the stay, we will not enforce that judgment until Your Honor has dealt with the Chapter 15, *full stop*." (emphasis added). Later, Vale reneged.

### 2. Vale's Objection to the Joint Administrator's Assertion of Privilege Is Premature

28.     The Joint Administrators have properly asserted certain Objections based on the work product doctrine, the attorney-client privilege, or other applicable privileges. As explained above, the Joint Administrators are continuing to review the documents and information in their possession and control. To the extent the Joint Administrators identify material that is responsive but protected from discovery as work product or on privilege grounds, the Joint Administrators will identify such materials in a privilege log consistent with the applicable Federal, Bankruptcy and Local Rules. Indeed, to the extent that the Joint Administrators' initial production included redacted materials, the Joint Administrators included a redaction log describing the redacted information and identifying the basis for the redactions. *See* Redaction Log to June 27, 2019 Production, JA001152 (the "Initial Redaction Log").

29.     Counsel for the parties have engaged in continuing dialogue concerning discovery issues.  In one conference call, Vale's counsel questioned the validity of certain privileges and the applicability of certain privileges in this case.  The Joint Administrators' counsel assured them that except as identified and explained in the Initial Redaction Log no other document or information has been withheld on the basis of privilege.  Further, to the extent that any such information were to be withheld, a privilege log would be provided and Vale would have an opportunity to challenge specific assertions.  This is the common practice in all jurisdictions and should be followed in this case.

### 3. The Joint Administrators Do Not Possess or Control Documents of BSGR's Parent-Affiliates

30.     The Joint Administrators are appointed as the joint administrators and foreign representatives of BSGR. Their appointment does not extend to any other company or entity, including any parent or upstream affiliate of BSGR.

31.    The Joint Administrators do not have any authority over BSGR's direct or indirect parent-affiliates. The Joint Administrators do not have access or any right to access any documents of BSGR's direct or indirect parent-affiliates. To the extent the Joint Administrators may have come into possession of documents belonging to any of BSGR's parent-affiliates upon gaining access and authority over BSGR's books and records, such possession was inadvertent.  The Joint Administrators lack authority over any such parent-affiliate documents including any ability or right to disclose such documents to Vale or any other third party.  *See Gerling Int'l Ins. Co. v. Comm'r Gerling Int'l Ins. Co.,* 839 F.2d 131, 140 (3d Cir. 1988) (cited with approval in *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000)) ("In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce."); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) ("A subsidiary, by definition, does not control its parent corporation.").

### 4.    Narrative Responses to Certain Vale Discovery Requests Are Appropriate

32.    The Joint Administrators intend to provide narrative responses to several of the Vale Discovery Requests. *See, e.g.,* Objection Nos. 3, 6, 12, 13-15, 22, 64, 66 and 67. Narrative responses are appropriate and will serve to efficiently and directly respond to the subject requests. For example, Document Request No. 3 seeks

> Documents sufficient to identify (i) all directors, board members, and officers; (ii) the frequency of board of director meetings; and (iii) the locations of such meetings for BSGR, and other entities associated with BSGR including but not limited to, the Balda Foundation, Onyx Financial Advisors, and Nysco Management Corp.

Subject to and without waiver of any Objections, the Joint Administrators have responded that they "will provide a narrative response to this Document Request only as it related to BSGR." *See* Motion, Exhibit B, Objection No. 3.

33.     Ostensibly, the purpose of this Document Request is to identify BSGR's officers and directors, and to obtain information concerning the frequency and location of its board meetings. Production of documents "sufficient to identify" these individuals is superfluous when the Joint Administrators can simply provide their names. Likewise, the Joint Administrators can identify the dates and locations of BSGR's board meetings during the Relevant Period. Narrative responses in this fashion (as to this and each of the other Document Requests to which the Joint Administrators propose to respond in narrative) will provide Vale with the information it ultimately seeks and avoid the time and cost that the Joint Administrators would otherwise be required to incur to identify all potentially responsive information, and redact or designate on privilege grounds. *Compare Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 96-97 (W.D.N.Y. 2011) (holding that narratives were insufficient where document requests sought particular medical records and treatment documents).   Further, the production of a narrative will satisfy any request that seeks a document "sufficient" to provide specific information.  A narrative would be such a document.

### 5.     Discovery Concerning Non-COMI Issues Will Impose an Unnecessary and Disproportionate Burden on the Joint Administrators

34.     Federal Rule 26(b) governs the scope of discovery. A party may obtain discovery on matters that are (i) relevant to any party's claim or defense and (ii) proportional to the needs of the case considering several factors including whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). While relevant may be a broad concept, it is not unlimited. *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004).

DM3\5979629.5

35.     For the reasons set forth in the Motion and above, any discovery beyond the strict COMI criteria is not relevant the Recognition Hearing Issues. As such, discovery outside these boundaries will be of no benefit in this case, yet will impose upon BSGR and the Joint Administrators a significant and disproportional burden in both time and expense.

36.     The Joint Administrators estimate that after removing duplicate documents and applying keyword searches, it would take almost 6,000 hours and cost at least $2 million to review and identify potentially responsive documents. Such estimates are conservative and consider just a first-pass review of potentially responsive documents. Coupled with higher-level review (including reviews for privilege and compliance with EU GDPR), the time and costs involved in responding to the Vale Discovery Request could be significantly greater.

**C.      All Discovery Must Include Safeguards That Comply With the Requirements of the EU GDPR**

37.     In discussions among counsel, Vale has recognized that cross-border discovery in this case implicates the EU GDPR.  In fact, Vale's counsel has nominated a colleague to interface with the Joint Administrators' counsel on EU GDPR issues.   Surprisingly, despite earlier discussions which evidenced cooperation and good will, Vale states that the Joint Administrators "fleetingly and generally reference the EU GDPR without any explanation of how it interferes with their capacity to produce documents."  Vale Opp. 25 n.45.   Some documents may have to be redacted under EU GDPR.  Vale will be made aware of such redactions and will be able to present any challenges to this Court.[11]

---

[11] Presumably, Vale's counsel appreciates this point as it revised an early draft of the stipulated protective order to include as material that may be designated "Outside Attorney's Eyes Only" (i) personal information, including personally identifying information or information of a uniquely personal nature; (ii) non-public information reasonably likely to cause undue harm to the reputation of, or embarrassment to, any individual. Yet inexplicably, Vale's counsel has sought to remove from later draft versions of the stipulated protective order the very language they added.

DM3\5979629.5

**D.**     **The Protective Order Adequately Defines the Scope of Permissible Discovery**

38.     The proposed form of Protective Order annexed to the Motion is appropriate and provides sufficient guidance as to the scope of appropriate, permissible discovery. Specifically the Protective Order establishes the material and temporal bounds of discovery Vale shall be permitted to take: (i) documents and information relating to BSGR's COMI, (ii) during the period March 6, 2018 to the present. *See* Motion, Exhibit A at ¶ 2. The Protective Order further provides that Vale shall be permitted to take the deposition of BSGR's corporate representative on topics within these boundaries. *See* Motion, Exhibit A at ¶ 3. The language of the Protective Order is sufficient (and indeed necessary) to narrow the exceedingly broad "swathe of different issues and inquires" Vale is attempting to pursue through the Vale Discovery Requests. *See* Vale Opp. at ¶ 77.

<b>Conclusion</b>

39.     For these reasons, and the reasons set forth in the Motion, the Court should enter a protective order, limiting the scope of discovery to COMI issues and limiting the methods of discovery to those which impose the least burden on the Joint Administrators.

17

WHEREFORE, the Joint Administrators respectfully request that the Court (i) enter the Protective Order attached to the Motion as Exhibit A; and (ii) grant such other and further relief as the Court may deem proper.

Dated: July 24, 2019
  New York, NY

          DUANE MORRIS LLP

          */s/ Frederick D. Hyman*
          Frederick D. Hyman (NY 2553832)
          Michael R. Lastowski (NY 4214847)
          1540 Broadway
          New York, New York 10036
          Telephone: (212) 692-1000
          RHyman@duanemorris.com
          MLastowski@duanemorris.com

          -and-

          Jarret P. Hitchings (DE 5564)
          222 Delaware Avenue, Ste. 1600
          Wilmington, Delaware 19801
          Telephone: (302) 657-4952
          JPHitchings@duanemorris.com

          *Attorneys for William Callewaert and*
          *Malcolm Cohen in their capacity as Joint*
          *Administrators and Foreign Representatives*
          *for the Debtor BSG Resources Limited (in*
          *administration)*

18

Duane Morris LLP
Frederick D. Hyman (NY 2553832)
Michael R. Lastowski (NY 4214847)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com
MLastowski@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen*
*in their capacity as Joint Administrators and Foreign Representatives*
*for the Debtor BSG Resources Limited (in administration)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BSG RESOURCES LIMITED (in administration), | Case No. 19-11845 (SHL) |
| Debtor in a Foreign Proceeding. | |

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael R. Lastowski, hereby certify that on July 24, 2019, I caused a true and correct copy of the *Joint Administrators' Reply in Support of Their Motion for a Protective Order* to be served upon the below listed parties as indicated:

<u>**Via 1st Class Mail**</u>
Lisa M. Schweitzer
Jonathan I. Blackman
Jeffrey A. Rosenthal
One Liberty Plaza
New York, New York 10006


Dated: July 24, 2019                                     DUANE MORRIS LLP
      New York, NY

*/s/ Michael R. Lastowski*
Frederick D. Hyman (NY 2553832)
Michael R. Lastowski (NY 4214847)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com
MLastowski@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen in their capacity as Joint Administrators and Foreign Representatives for the Debtor BSG Resources Limited (in administration)*