# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

D: +1 212-225-2086
jrosenthal@cgsh.com

THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL

WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON

KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
  RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
  RESIDENT COUNSEL

LOUISE M. PARENT
  OF COUNSEL

September 9, 2019

VIA ELECTRONIC MAIL AND ECF

The Honorable Sean H. Lane
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408
shl.chambers@nysb.uscourts.gov

Re:  *In re BSG Resources Limited*, No. 19-11845 (SHL)

Dear Judge Lane:

Pursuant to Your Honor's instructions at the August 29, 2019 conference, we write on behalf of Vale S.A. ("Vale") in the above-captioned proceeding (the "Proceeding") to "explain [Vale's] basis for asking for" the production of documents and communications from Beny Steinmetz ("Steinmetz"), the namesake, founder, principal, and beneficiary of BSG Resources Limited ("BSGR" or the "Debtor"), which are within the Joint Administrator's custody or control and which are responsive to *Vale S.A.'s First Request for Production of Documents to the Joint Administrators Pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure* (the "Request for Production of Documents").[1]

The Joint Administrators take the position that they are not required to search for or produce responsive emails or other documents from Steinmetz, the ultimate beneficial owner of the Debtor and its principal controlling individual, because they assert he holds no formal position or title at BSGR. But as the Court observed, "if [Steinmetz is] out there representing

---

[1] Hr'g Tr. 57:15-18, Aug. 29, 2019. Pursuant to agreement of the parties, the Joint Administrator's Response Brief will be due on September 18, 2019, and Vale's Reply Brief will be due on September 25, 2019, with a hearing to be held on October 2, 2019.

Hon. Sean H. Lane, p. 2

himself and doing things in connection [with BSGR]," including "trying to work out deals" on BSGR's behalf, "then he's part of the conversation about what COMI looks like" such that the Court "ha[s] a good reason to think [his documents] would be relevant."[2]

As set forth below, even the limited evidence available to Vale shows that Steinmetz has historically directed, and continues to direct, BSGR and its principals, representing BSGR in crucial negotiations and imposing his will on the company at every turn. Indeed, at the last conference, when asked directly whether Steinmetz has been involved in negotiations on behalf of BSGR, the Joint Administrators did not deny that Steinmetz was conducting business on behalf of BSGR including from his personal email accounts, stating that they "cannot tell you[r] [Honor] for sure anything."[3]  Vale thus seeks an order compelling the Joint Administrators to search for and produce the responsive documents from Steinmetz, as well as responsive documents from BSGR's current and former directors and officers, which are plainly within at least the Joint Administrators' control.

I. **The Joint Administrators Must Produce All Responsive Documents Held By Its Ultimate Beneficial Owner and Principal Controlling Individual, Beny Steinmetz.**

Despite the Joint Administrators' attempts to characterize Steinmetz as merely an "adviser" or "ambassador" to BSGR – a company that Steinmetz founded and that bears his name (he is the B.S. in *BS*GR) – in reality, Steinmetz is and always has been BSGR's *de facto* CEO and executive decision-maker, as well as the overseer of its business operations.

Prior to the commencement of the administration in Guernsey (the "Guernsey Administration"), Steinmetz repeatedly acted on BSGR's behalf, using the Balda Foundation to control BSGR's decision-making, and playing a direct and critical role in BSGR's business operations, including negotiating BSGR's agreement with Vale (the "Framework Agreement") to enter into a joint venture (the "VBG Joint Venture") to develop the Simandou mining concession in Guinea. Steinmetz's business associates have described him as the "big boss" and BSGR's "Number 1,"[4] and Steinmetz himself has conceded that he "control[s] at least partially" the "Beny Steinmetz Group (BSG)."[5]  Moreover, while the Joint Administrators insist that they now have ultimate authority over BSGR, recent press reports in fact show that Steinmetz continues to hold himself out as BSGR's representative, and has been working on BSGR's behalf, and directing BSGR's efforts, to enter into a settlement with the Government of Guinea.

The Joint Administrators' objection to producing documents from Steinmetz cannot be justified under the relevant case law given the significant and recurrent evidence of Steinmetz's active involvement with, and indeed control over, BSGR. Rules 26 and 34 of the Federal Rules of Civil Procedure, as made applicable to bankruptcy proceedings through Rules

---

[2]    Hr'g Tr. 52:8-9, 53:17-54:10, Aug. 29, 2019.

[3]    *See* Hr'g Tr. 55:1-13, Aug. 29, 2019.

[4]    Ex. A (Excerpts of Exhibit 3, Transcript of FBI Recordings at CGS&H pp. 134, 140).  This transcript was filed by the United States in its criminal prosecution of BSGR associate Frédéric Cilins, who pleaded guilty to obstruction of justice.  *See* Plea, *United States v. Cilins*, No. 1:13-cr-115 (WHP) (S.D.N.Y. Mar. 10, 2014), ECF No. 62.

[5]    Ex. B (*Procès-verbal* of B. Steinmetz (with translation) at CGS&H pp. 1-2, Oct. 18, 2013).

Hon. Sean H. Lane, p. 3

7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, allow "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" through the production of documents "in the responding party's possession, custody, or control."[6] As the Court recognized during the August 29, 2019 conference, Steinmetz's various apparent actions taken on behalf of BSGR – including his role in negotiating a proposed settlement of a material claim (whether or not the Joint Administrators claim to have an ultimate approval right over what Steinmetz negotiates) – are directly relevant to the determination of BSGR's COMI.[7] And as the *de facto* head of all BSGR's operations, Steinmetz's documents are by definition within the "possession, custody or control" of BSGR.[8] Furthermore, powers bestowed on the Joint Administrators upon their appointment[9] give them the "legal right," the "authority," and the "practical ability" to obtain Steinmetz's communications insofar as they relate to Steinmetz's work for BSGR, meaning they have "control" of those documents for the purposes of discovery.[10] Accordingly, the Court should issue an order compelling the Joint Administrators to produce documents responsive to Vale's Discovery Requests from Beny Steinmetz, including from all email accounts Mr. Steinmetz has used to conduct business on BSGR's behalf during any portion of the relevant period of discovery ordered by the Court at the July 29, 2019 hearing.

    A.    <u>Prior to the Initiation of the Guernsey Administration, Beny Steinmetz Actively Directed the Work of BSGR and its Affiliated Companies.</u>

The Joint Administrators' effort to downplay Steinmetz's role with BSGR, the company that he founded and that bears his name, are belied by evidence that demonstrates that prior to the initiation of the Guernsey Administration (a portion of which is within the Court-ordered discovery period), he was the executive decision-maker for BSGR and the orchestrator

---

[6]    Fed. R. Civ. P. 26(b)(1), 34(a)(1); Fed. R. Bankr. P. 7026, 7034, 9014.

[7]    Hr'g Tr. 50:16-20, Aug. 29, 2019.

[8]    *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 WL 5408171, at *6 (S.D.N.Y. Sept. 27, 2016) ("A corporation may be deemed to have the 'practical ability' to obtain documents from an affiliated non-party," thus constituting control within the meaning of Rule 34, "if there is a continuing economic relationship between the party and the non-party . . . or if the non-party was acting as an 'agent' of the corporation with respect to the events or transactions at issue in the litigation" (internal citations omitted)).

[9]    The Companies (Guernsey) Law, 2008 c. XXI, § 380 ("The administrator shall, on his appointment, take into his custody or under his control all the property to which the company . . . is or appears to be entitled. The administrator shall manage the affairs, business and property of the company . . . in accordance with any directions given by the Court.").

[10]    The Joint Administrators' suggestion that Beny Steinmetz is a third party because he has no formal title at BSGR, even if it were true, is irrelevant. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (explaining that "[u]nder Rule 34 . . . documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." (internal citations omitted)); *see also In re Andover Togs, Inc.*, 231 B.R. 521, 547 (Bankr. S.D.N.Y. 1999) ("A party is deemed to have control over documents that it has the[] right, authority, or ability to obtain upon demand," and even "legal limitations which may limit a party's ability to obtain a requested item do not necessarily preclude a determination that the party does in fact have possession, custody or control over the document or thing." (internal citation omitted)); *Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 96-97 (W.D.N.Y. 2011) ("[I]f the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in possession of a non-party." (internal citations omitted)).

Hon. Sean H. Lane, p. 4

of its business operations.  As described below, Steinmetz managed every aspect of BSGR's business operations as the beneficiary and *de facto* CEO of the company.

BSGR is ultimately beneficially owned and controlled by its namesake, Beny Steinmetz, through an elaborate web of corporate relationships, all of which are structured to allow Steinmetz to both direct BSGR's corporate affairs and funnel the proceeds from BSGR's business to himself.  Specifically, BSGR is wholly owned by a BVI-based holding company called Nysco Management Corp. ("Nysco"), which is in turn wholly owned by the Balda Foundation (the "Balda Foundation" or "Balda").[11]  Steinmetz and his family are the sole beneficiaries of the Balda Foundation, a trust established in the Principality of Liechtenstein whose board is chaired by Steinmetz's personal lawyer, Marc Bonnant.[12]  It is no accident that Steinmetz set up the Balda Foundation as a *stiftung* foundation in Liechtenstein; this type of foundation is expressly designed to allow the founder to retain the benefit of and the effective control over his assets, while purporting to shield the assets from creditors.[13]

The BSGR-Nysco-Balda holding structure allows Steinmetz, its primary beneficiary, to influence every aspect of BSGR's management and day-to-day operations, giving Steinmetz effective control over BSGR through Balda both before and – as discussed in the next section – since the filing of the administration.  For example, BSGR needed "approv[al]" from Balda, *i.e.*, Steinmetz, before entering into the VBG Joint Venture.[14]  Further, when Vale paid BSGR $500 million to enter into the VBG Joint Venture, the *entirety* of that payment was funneled directly from BSGR to Balda.[15]  Steinmetz in turn used the Balda Foundation as his personal ATM, regularly taking out dozens of multi-million dollar payments from Balda for use by himself, his family, and his businesses.[16]

Despite clear evidence that Steinmetz used Balda as a means of controlling and benefitting BSGR, the Joint Administrators seek to downplay Steinmetz's role at BSGR.  In reality, however, he was "No. 1" in BSGR's business.  Indeed, Steinmetz led the BSGR team

---

[11]    Am. Cohen Decl., Ex. 1, ECF No. 24-1.

[12]    *See* Award ¶ 175, Pet. Ex. C, ECF Nos. 5-3 and 5-4.

[13]    *See* Ex. C (Marxer & Partner, The Liechtenstein Foundation at 5, 2010).  The law firm that produced this document, Marxer & Partner Rechtsanwälte, lists Dr. Peter Goop as Of Counsel.  Goop is himself a part of the three member foundation council of the Balda Foundation, along with Bonnant and Rothschild Trust Guernsey Limited.  The last is presumably a corporate nominee director of many such trusts.

[14]    *See* Ex. D (Excerpts of Balda Foundation Documents at CGS&H p. 27, Apr. 28, 2010) (stating that Balda has to "approve the entering into by BSG Resources Ltd into a joint venture with Vale S.A. with respect to the Balda Foundations' [sic] wholly (indirectly) owned subsidiary BSG Resources (Guinea) Limited in relation to the designing, financing, development and operation of certain iron ore mines in the Republic of Guinea.").

[15]    *See* Ex. D (Excerpts of Balda Foundation Documents at CGS&H pp. 19, 22, July 1, 2010).

[16]    *See, e.g.*, Ex. D (Excerpts of Balda Foundation Documents at CGS&H p. 6, Oct. 15, 2010) (requesting a distribution from Balda "to support me with my housing cost and living expenses in general"); *id.* at CGS&H p. 8 (granting Steinmetz a distribution of $1 million pursuant to his request from 15 October 2010); Ex. E (Excerpt of Balda Foundation Resolutions at CGS&H p. 52, Mar. 22, 2011) (requesting a USD$20 million distribution from Balda to "support me to assist Scorpio Real Estate (an Israeli company under my private ownership) with its commitments"); *id.* at CGS&H p. 51 (granting Steinmetz a distribution of $20 million pursuant to his request from 22 March 2011).

Hon. Sean H. Lane, p. 5

that negotiated the terms of the VBG Joint Venture agreements with Vale,[17] agreements that expressly name Steinmetz as one of the "BSGR Principals" and provide that *Steinmetz's personal knowledge of an event shall be construed as BSGR's knowledge or awareness* of that event.[18] Steinmetz was involved in all aspects of the deal, from engaging in one-on-one talks with Vale's CEO at the time, Roger Agnelli,[19] to liaising with his bankers and lawyers about the details of the offtake agreement, the loan agreement, and the marketing fee as the negotiations progressed.[20] In his witness statement from the arbitration proceedings initiated by Vale against BSGR (the "LCIA Arbitration"), Steinmetz admits to being involved in the negotiation, noting that "[n]egotiating and getting deals done is one of the areas where I am able to provide real value for the BSG group and I accordingly played a role in these negotiations with Vale."[21] Furthermore, during due diligence leading up to the VBG Joint Venture, Steinmetz personally represented and warranted to Vale on multiple occasions that BSGR had lawfully obtained its mining rights in Guinea, that it had not used any undisclosed consultants or intermediaries and that it had disclosed all material documents and information. Recognizing his own critical role at BSGR, Steinmetz even took the extraordinary step of providing a personal anti-bribery certification to Vale a few weeks before the deal's closing.[22] Notably, in light of these facts, in the LCIA Arbitration, the arbitral tribunal found that Steinmetz was not, as he represented, merely an "external advisor" to BSGR, but was instead a "senior member[] of BSGR's management."[23]

This designation of Steinmetz as a "senior member[] of BSGR's management" is sufficient to obligate the Joint Administrators to produce Steinmetz's documents.[24] But in actuality, it, if anything, understates Steinmetz's role at BSGR, as Steinmetz himself recognized. In Steinmetz's testimony to Swiss prosecutors in the course of Swiss criminal proceedings, for example, Steinmetz described himself as "control[ling] at least partially" the "Beny Steinmetz Group (BSG) and Onyx Financial Advisors SA."[25] And, in one of Steinmetz's few interviews with the media, he described BSGR's entering Guinea as his own decision, and the Guinean

---

[17] Ex. F (Excerpt of Steinmetz WS ¶¶ 69-78, June 29, 2015).

[18] Ex. G (Excerpt of Framework Agreement § 1.8, Apr. 30, 2010). In a similar fashion, the introduction to BSGR's Statement of Defence that it filed in the LCIA Arbitration equates Vale's interest in opening a conversation with Steinmetz with its interest in forming a joint venture with BSGR.

[19] Ex. F (Excerpt of Steinmetz WS ¶ 69, June 29, 2015); Ex. H (Excerpt of Monteiro First WS ¶ 9, Jan. 29, 2015).

[20] Ex. I (Email from Beny Steinmetz (beny@onyx-suisse.com) to David Trafford of Standard Chartered Bank, Apr. 12, 2010).

[21] Ex. F (Excerpt of Steinmetz WS ¶ 71, June 29, 2015).

[22] Ex. K (Anti-Bribery Certification of Beny Steinmetz, Apr. 9, 2010).

[23] Award ¶¶ 700, 712, Pet. Ex. C, ECF Nos. 5-3 and 5-4.

[24] *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 984 (2d Cir. 1983) ("[A corporation's] records are usually available to others within the entity and may not be treated as the private confidential papers of any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records, moreover, do not belong to him but to the organization."); *see also Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) (applying the rationale from *In re Grand Jury Subpoenas* within the context of civil discovery).

[25] Ex. B (*Procès-verbal* of B. Steinmetz (with translation) at CGS&H p. 1, Oct. 18, 2013).

mining concessions as belonging to him: discussing Guinea's investigation of BSGR, Steinmetz equated his interests with BSGR's, declaring, "We are businessmen. We are fighters, we are at war and we will win. We will not give these concessions back."[26] BSGR also has described Steinmetz as the company's manager and ultimate decision-maker. In court filings in the Criminal Court in Paris, BSGR repeatedly referred to itself as "Mr. Beny Steinmetz and his group," and stated, "*Mr. STEINMETZ's group* – and, therefore, *Mr. STEINMETZ himself* – is also accused of having transferred '*several million dollars*' to the account of the Guinean head of state's widow."[27]

Thus, Steinmetz was far more than just BSGR's beneficial owner or a member of its senior management team; in addition to those things, he was also BSGR's *de facto* chief executive, its leading negotiator and dealmaker, and its public face. Steinmetz's email correspondence related to BSGR and its assets and liabilities, as well as documents related to BSGR's business that Steinmetz chooses to keep in "his" files are, therefore, just as much in the possession, custody and control of BSGR as those that he chose to keep in "BSGR's" files. Any claim of a distinction is purely fictitious and therefore, to the extent they are relevant to COMI – such as those documents responsive to Vale's requests already sustained by the Court on July 29 – they are subject to production by the Joint Administrators.

    B.    <u>Steinmetz Has Retained His Role as BSGR's *De Facto* Chief Executive During The Guernsey Administration.</u>

It is accordingly beyond peradventure that prior to the Guernsey Administration, Steinmetz served as BSGR's *de facto* executive, and furthermore exercised control over BSGR. Moreover, although the Joint Administrators purport to now have ultimate authority, Steinmetz appears to have retained an active role even during the Guernsey Administration. Media reports and publicly available documents show that Steinmetz continues to wield substantial power over BSGR's affairs, including by negotiating a settlement of BSGR's arbitration against the Republic of Guinea before the International Centre of Settlement of Investment Disputes (thee "ICSID Arbitration") and controlling the funding arrangements underlying the Guernsey administration.

The Joint Administrators claim to be in control of BSGR and oversee its affairs, but have provided few specifics as to what that has entailed.[28] The public evidence suggests, however, that the Joint Administrators were not involved in negotiating BSGR's settlement of the ICSID Arbitration. Rather, the announced settlement appears to have been initiated and negotiated by Steinmetz (together with Dag Cramer) on behalf of BSGR, with no sign of any involvement of or even prior knowledge by the Joint Administrators. In fact, Steinmetz himself gave an interview following the settlement, in which he referred to the company's actions in the first person – "*We* were enemies. Now *we* are friends and partners with the Guinean

---

[26]    Ex. L (Tsach Shpitsen, *Beny Steinmetz Reveals All Cards*, YNET News, June 30, 2013).

[27]    Ex. M (Direct Summons to Appear before the Criminal Court of Paris at CGS&H pp. 5, 8, 2013) (emphasis in original).

[28]    Only three progress reports have been provided to creditors since the Guernsey Administration was commenced (the last of which was provided three days ago) and the Joint Administrators have not produced to Vale copies of any Guernsey court filings, beyond the Dag Cramer affidavit that was sought to be filed with the Court and then withdrawn.

Hon. Sean H. Lane, p. 7

government" – and addressed BSGR's future plans for developing the concession.[29] Likewise, the President of Guinea, Alpha Condé, has explained that the negotiations began following "several months" of "insiste[nce]" by Steinmetz, and that President Condé personally met with Steinmetz in Conakry to negotiate the deal following "several confidential meetings . . . held in the rooms of the Plaza Athénée, the Parisian palace that Beny Steinmetz frequents."[30] And, despite the Joint Administrators' assertions to the contrary, BSGR's "parent company," *i.e.*, Nysco told reporters on August 4, 2019, that the settlement was "a done deal between Guinea and BSGR."[31] While the Joint Administrators have argued they have final approval authority over any settlement, even if that were true it would not negate the relevance or significance of Steinmetz's influence to this proceeding and the relief being sought by the Joint Administrators.

Not only was Steinmetz "the person in the room where it happens" during BSGR's negotiations with Guinea,[32] but the deal itself bestows significant benefits on Steinmetz. Indeed, the purported settlement would divert proceeds from the mining concession to a "new group of investors (presented by and including Mr. Beny Steinmetz),"[33] organized through a new U.K.-registered company called Niron Metals plc ("Niron"). While the ownership of Niron is opaque, Niron itself confirmed in April 2019 that Steinmetz "may have a minority participation directly in Niron in the future," presumably if he successfully arranges for Niron to acquire rights to the concession.[34] And, indeed, on August 13, 2019, in a *Financial Times* article reporting on Steinmetz's indictment on criminal bribery charges in Switzerland, Marc Bonnant (Steinmetz's personal attorney) reportedly named Steinmetz as one of Niron's shareholders.[35] Thus, even on its face, the settlement deal appears structured to benefit Steinmetz personally.

Another personal benefit that Steinmetz appears to have extracted from BSGR's purported settlement with Guinea is Guinea's commitment not to cooperate in any prosecution of Steinmetz. When the Swiss public prosecutor announced criminal charges against Steinmetz in August 2019, Guinea's minister of mines, Abdoulaye Magassouba, told Reuters that the government was not involved in trying to prosecute Steinmetz because "[w]e have signed

---

[29]     Ex. N (Franz Wild and Thomas Biesheuvel, *Mining Billionaire Ends Bitter Guinea Dispute After Months of Secret Negotiations*, Bloomberg, Feb. 25, 2019) (emphasis added).

[30]     Ex. O (*Quand Nicolas Sarkozy joue les intermédiaires d'affaires*, Le Monde, Aug. 23, 2019 (translated)).

[31]     Ex. P (*Mick the Miner in a Hole Over Guinea Ore; Administrators Threaten to Thwart Xtrata Boss's Return*, The Sunday Times (London), Aug. 4, 2019).

[32]     Hr'g Tr. 28:23-29:3, July 29, 2019.

[33]     Ex. Q (Business Wire, *Settlement of the Dispute Between the Republic of Guinea and BSG Resources*, Feb. 25, 2019).

[34]     Ex. R (Neil Hume and David Sheppard, *Mick Davis Comeback Orchestrated by Beny Steinmetz's Group*, Financial Times, Apr. 15, 2019).

[35]     *See* Ex. S (Neil Munshi and Sam Jones, *Beny Steinmetz Denies Swiss Bribery Charges Over Mining Deal*, Financial Times, Aug. 13, 2019).

specific agreements with Steinmetz and we will fully respect the terms of the agreement. It is not possible for a hostile action against BSGR to come from the government."[36]

Steinmetz's continued reach over BSGR since the commencement of the Guernsey Administration is further evidenced by the funding arrangements underpinning that proceeding.  Nysco – the intervening company through which the Balda Foundation owns BSGR – is the sole provider of all funding for the Guernsey Administration, which gives it (*i.e.*, Steinmetz) significant control over the Joint Administrators' actions.  Because BSGR purports to have no liquid assets, every action undertaken by the Joint Administrators depends entirely on funding from Nysco.  That funding is allocated through a December 18, 2018 agreement between Nysco, BSGR and the Joint Administrators (the "Funding Agreement"), one of the few documents that the Joint Administrators have produced to Vale.[37]  The Funding Agreement is striking for the degree of control it affords Nysco and, by extension, Steinmetz.  For example, the Funding Agreement stipulates that:

- The Joint Administrators must submit an itemized budget for the administration to Nysco annually, whose terms must then be negotiated by the Joint Administrators and Nysco (clause 4.1).

- The administrators cannot incur costs outside their budget in excess of £25,000 and, in any event, must notify Nysco and provide details of all the costs they incur (clauses 4.3-4.4).

- Each drawdown request must be sent to Marc Bonnant, who is also Steinmetz's personal attorney, specifying the purposes for which the funds will be used (clause 5.1).  Nysco may then object to the drawdown in respect of either the purpose or amount (clause 5.3).

- Any litigation fees or expenses incurred by the Joint Administrators must also be sent to Nysco for final approval (clauses 6.1 and 6.5-6.7).

- Nysco can cancel the Funding Agreement on three months' notice, but the Joint Administrators have no power to withdraw from the Funding Agreement (clause 8.1).

- If the Joint Administrators cease to act or Nysco cancels the agreement, any advance payments must be repaid by BSGR to Nysco, with interest, and will rank in priority to other claims (clauses 9 and 10).

---

[36] Ex. GG (Stephanie Nebehay, *Steinmetz Will Fight Corruption Charges in Geneva Court – Lawyer*, Reuters, Aug. 13, 2019).  These agreements would be covered by Vale's document requests.  Mot. for Protective Order, Ex. B ¶ 54, ECF No. 27-2.

[37] Ex. T (Funding Agreement Between NYSCO Management Corp. and BSG Resources Limited (in administration), Dec. 15, 2018).  In addition to the copy of the Funding Agreement produced by BSGR in this proceeding with an Attorneys' Eyes Only designation, BSGR provided a copy to Vale's U.K. counsel, and it has since been referenced in the public hearing in the U.K. on September 4, 2019, and thus is no longer subject to confidentiality.  *See* Confidentiality Stipulation & Protective Order ¶¶ 6-7, ECF No. 39.

Hon. Sean H. Lane, p. 9

       This arrangement gives Nysco (and ultimately Steinmetz) control over the funding available to the Joint Administrators. The Joint Administrators must provide Nysco with detailed budgets and drawdown requests. Nysco (or Steinmetz, as its beneficial owner) then makes the ultimate decision as to whether to include any given expenditure in the budget and give the Joint Administrators access to the drawdown of funds.

       In sum, Steinmetz's control over BSGR did not cease when his company entered into administration. Steinmetz has remained BSGR's *de facto* chief executive, continues to control the company's finances, and continues to act on its behalf. Regardless of Steinmetz's control, however, the fact that he has acted on behalf of BSGR since the commencement of the administration (whether or not with the knowledge, approval and oversight of the Joint Administrators) in at least the areas described herein renders his documents equally subject to discovery.

    C.    <u>Steinmetz Has Used Numerous Email Accounts to Conduct BSGR's Business, All of Which Should Be Searched by the Joint Administrators for Discoverable Materials.</u>

       The evidence currently available to Vale indicates that Steinmetz used multiple non-BSGR email addresses – including (i) beny@onyx-suisse.com; (ii) beny@bsg-investments.com; and (iii) advisor@onyxfa.com – to conduct business on behalf of BSGR. For example:

- Steinmetz used his beny@onyx-suisse.com address to communicate with BSGR's former CEO, Asher Avidan and BSGR Director, Dag Cramer concerning strategy in responding to the Government of Guinea's investigation into BSGR's bribery. Steinmetz, referring to BSGR as "we," provided a game plan on how the company should respond to Guinea's allegations and provided a full page of comments on a draft press release concerning the investigation.[38]

- Steinmetz used his beny@onyx-suisse.com address to discuss business related to the VBG Joint Venture, such as disagreements between Vale and BSGR on communication strategy and corporate branding under the VBG Joint Venture.[39]

---

[38]    Ex. U (Email from Beny Steinmetz (beny@onyx-suisse.com) to Ben Brewerton of FTI Consulting at CGS&H pp. 1-2, Apr. 11, 2012).

[39]    Ex. V (Emails from Beny Steinmetz (beny@onyx-suisse.com) to Asher Avidan and David Barnett at CGS&H p. 1, May 9, 2011) (telling Avidan to "leave it with [him]" so that he could sort out the communication strategy issue with the CEO of Vale); Ex. W (Emails between Beny Steinmetz (beny@onyx-suisse.com) and Asher Avidan at CGS&H p. 1, May 9, 2011) (Steinmetz directing Avidan to not "speak about the conseceanse [sic]" in a draft email to Vale on issues related to advertising and corporate branding).

- Steinmetz used his beny@onyx-suisse.com address to communicate with outside parties such as Standard Chartered Bank to discuss financing for the VBG Joint Venture [40] and Guinean officials regarding BSGR's planned mining project in Simandou. [41]

- Steinmetz used his beny@bsg-investments.com address to communicate with BSGR's directors and officers, including Asher Avidan, Dag Cramer, and Marc Struik, regarding BSGR's dealings in Guinea and its plans to obtain the Simandou mining concession. For example, in one email Steinmetz warned his associates not to discuss the mining concession "in any written paper . . . [as] it can come back to us as a bomerag [sic]!" [42] Steinmetz also used this email to issue requests to BSGR's outside consultants. [43]

- Steinmetz used his advisor@onyxfa.com address to communicate with Daniel Pollack, BSGR's Business Development Manager, regarding documents used to conceal BSGR's bribery scheme. [44]

This Court should order that the above email accounts, which have all demonstrably been used by Steinmetz to conduct business for BSGR, be searched to comply with Vale's discovery requests. *See CA, Inc. v. AppDynamics, Inc.*, No. CV 13-2111 (WFK) (SIL), 2014 WL 12860591, at *3-4 (E.D.N.Y. Sept. 8, 2014) (ordering corporate defendant to produce documents from the personal email accounts of its CEO and Vice President of Engineering, who together co-founded company, since "where an individual creates documents in furtherance of his functions as a corporate officer, those documents are within the corporation's control for Rule 34 purposes and must be disclosed in response to a proper notice for production" (internal citation omitted)); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) ("Where [documents or things] [a]re created in connection with [an] officer's functions as a corporate employee, the corporation has a proprietary interest in them and the officer has a fiduciary duty to turn them over on demand."). While documents provided in the LCIA Arbitration have already revealed the use of the above addresses, the discovery produced in that arbitration only covers the period up to 2015. Steinmetz also may have used additional email addresses at the same or later times, and BSGR should be ordered to inquire into and identify what those email addresses are and produce responsive documents from those addresses as well.

---

[40]     Ex. I (Email from Beny Steinmetz (beny@onyx-suisse.com) to David Trafford of Standard Chartered Bank at CGS&H pp. 1-2, Apr. 12, 2010) (Steinmetz coordinating financing for the VBG Joint Venture and asking Trafford "what is the right number (%) for an off take agreement").

[41]     Ex. X (Email from Beny Steinmetz (beny@onyx-suisse.com) to Minister of Mines Mahmoud Thiam, May 26, 2009). Thiam was later convicted of receiving bribes in the Southern District of New York. Jury Verdict, *United States v. Thiam*, No. 1:17-cr-00047-DLC (S.D.N.Y. May 8, 2017).

[42]     Ex. Y (Emails between Beny Steinmetz (beny@bsg-investments.com), Asher Avidan, and Marc Struik at CGS&H p. 1, Sept. 18, 2007).

[43]     Ex. Z (Email from Beny Steinmetz (beny@bsg-investments.com) to Jon Simmons et al. at CGS&H p. 1, Oct. 3, 2010).

[44]     Ex. AA (Email from Beny Steinmetz (advisor@onyxfa.com) to Daniel Pollak (with translation) at CGS&H p. 1, Apr. 5, 2013).

**II.     The Joint Administrators Must Search For and Produce All Responsive Documents Held By Its Other Former and Current Directors and Officers, as well as Onyx, Nysco and Balda.**

Vale's discovery requests also require BSGR to search for and produce responsive documents from its directors and executive officers, other than Beny Steinmetz, BSGR's "Number One."[45] The Joint Administrators' have possession, custody, or control of emails and documents from BSGR's current and former officers and directors because they have the "authority" and the "practical ability" to obtain communications of former and current directors acting on behalf of BSGR, and accordingly documents from these individuals must be produced. *Montesa v. Schwartz*, No. 12 Civ. 6057 (CS)(JCM), 2015 WL 13173164, at *1 (S.D.N.Y. Feb. 20, 2015) (ordering defendant school district to search "any employee's personal email account and personal device used to conduct the school district's business," and clarifying that the defendant's obligation extended to all "former and current employees, which term includes board members").

The Joint Administrators are thus required to search for responsive documents from at least the following custodians, who are current or former directors or officers of BSGR, and whose documents are critical to determining whether Guernsey is BSGR's center of main interest:

- Dag Cramer (Director of BSGR from November 2008 to present);[46]

- Sandra Merloni-Horemans (Director of BSGR from November 2008 to January 2016; Director and Secretary of Onyx from 1998 to December 2014);[47]

---

[45]   On July 29, 2019 this Court ordered BSGR to produce documents in response to Vale's document requests other than request number 38, including disclosure of documents responsive to some of those categories dating back to 2014. Hr'g Tr. 61:22-23, July 29, 2019. BSGR therefore must produce responsive documents from its directors and officers from and after 2014.

[46]   Ex. BB (BSGR Statement of the Register, Guernsey Registry at 2, Feb. 26, 2018). Like Steinmetz, Cramer has continued to act on behalf of BSGR and conduct its business while BSGR has been in administration. Indeed, immediately upon BSGR's decision to enter into administration in March 2018, Cramer told Bloomberg that by entering into administration, BSGR was "drawing up the drawbridge, filling up the moat, [and] putting some sharks in the moat, to make sure [BSGR] can stay the distance . . . even if there are adverse awards [against us]." Ex. CC (Thomas Biesheuvel, *Beny Steinmetz Puts Mining Company BSGR into Administration*, Bloomberg, Mar. 7, 2018). That language is not simply a colorful characterization by a rogue actor – it reflects the statement of a key BSGR director who is intimately involved in BSGR's operations regarding BSGR's motivation for initiating these proceedings. In fact, Cramer also told Reuters that he would be "sta[ying] on as director" and that this "technical procedure would not affect daily operations of subsidiaries." Ex. DD (Barbara Lewis, *Administrators Seek to Return Steinmetz's Mining Firm BSGR to Solvency*, Reuters, Mar. 8, 2018). Furthermore, along with Steinmetz, *see supra* Part I.B, Cramer has reportedly played a substantial role in negotiations with Guinea to settle the ICSID Arbitration, under which BSGR relinquished its claims to its claimed mining rights in Guinea.

[47]   Ex. BB (BSGR Statement of the Register, Guernsey Registry at 2, Feb. 26, 2018); Ex. EE (Excerpt of Merloni-Horemans First WS ¶ 5, June 30, 2015).

- Peter Driver (Director of BSGR from April 2014 to present);[48]

- Yossie Tchelet (Chief Financial Officer of BSGR from April 2010 to present);[49]

- Asher Avidan (President & Chief Executive Officer BSGR Guinea from May 2010 to at least 2016);[50] and

- Marc Struik (Chief Operating Officer of BSGR from 2005 to 2007).[51]

It is possible that the above individuals have continued to act for BSGR even outside of the dates of the above periods; to the extent they have, any search should not be artificially limited by reference to the dates on which they held the above identified official positions. As with Steinmetz, the Joint Administrators are deemed to have control over and thus must produce documents from any non-BSGR email address or server used by these individuals with respect to BSGR business.

        BSGR also must produce documents in the possession, custody, and control of Onyx, which until recently operated as BSGR's corporate "back office" for all financial and administrative purposes. Onyx, whose U.K. operation was formerly known as "BSG Management Services Limited," shares a company address with BSGR, is run by the same directors and officers as BSGR,[52] was BSGR's "authorized agent for service of process in England" in BSGR's agreements with Vale, and appears to have existed exclusively to provide management services and business support to companies owned or controlled by Steinmetz. Award ¶¶ 24(h), 175-76, Pet. Ex. C, ECF Nos. 5-3 and 5-4. Indeed, even the compliance department of Mossack Fonesca – the notorious Panamanian law firm that BSGR used to create shell companies for its various questionable schemes – concluded of Onyx and BSGR: "They are the same."[53] Furthermore, Onyx did not just help BSGR carry out its daily affairs by maintaining its documents, processing its payments and executing most of the BSG Group's documents; it was Onyx's practice to hold "shelf companies" in letterbox jurisdictions that it deployed to help BSGR play corporate shell games. *See id.* ¶ 195. Given that BSGR's affairs are deeply intertwined with those of Onyx, and documents appear to flow freely between them, it

---

[48]     Ex. BB (BSGR Statement of the Register, Guernsey Registry at 2, Feb. 26, 2018).

[49]     Award ¶ 320, Pet. Ex. C, ECF Nos. 5-3 and 5-4. Tchelet continues to act as "Strategic Financial Specialist" for Octea Ltd., BSGR's wholly owned subsidiary. Ex. HH (Yossie Tchelet, LinkedIn, Sept. 9, 2019).

[50]     Award ¶ 225, Pet. Ex. C, ECF Nos. 5-3 and 5-4; *see also* Ex. J (Global Witness, *Damning Video and Contracts Show BSGR was Lying in Guinea Mining Scandal*, Apr. 19, 2013).

[51]     Ex. J (Global Witness, *Damning Video and Contracts Show BSGR was Lying in Guinea Mining Scandal*, Apr. 19, 2013).

[52]     BSGR director Dag Cramer was CEO of Onyx and Sandra Merloni-Horemans, who ran the Onyx business in Switzerland, also sat on the boards of most BSGR-affiliated companies and served as Secretary of the Balda Foundation Council. *See* Award ¶ 176, Pet. Ex. C, ECF Nos. 5-3 and 5-4.

[53]     Ex. FF (Monica Mark, *The Panama Papers May Help Unravel the Corruption 'Deal of the Century'* at 9, BuzzfeedNews, Apr. 7, 2016).

Hon. Sean H. Lane, p. 13

is apparent that BSGR has the "practical ability" to obtain documents from Onyx.[54] Vale specifically identified Onyx, as well as Nysco and Balda, as companies whose relevant documents should be included in any production by the Joint Administrators in *Vale S.A.'s Opposition to the Motion of the Joint Administrators for a Protective Order* ¶ 60, ECF No. 30. The Joint Administrators did not obtain a protective order against such production and accordingly should confirm responsive documents in the possession, custody or control of all three related entities are being searched and produced.

******

For the foregoing reasons, Vale respectfully requests that the Court order the Joint Administrators to immediately collect and produce all responsive documents held by Beny Steinmetz, BSGR's other current and former directors and officers, and Onyx, Nysco and Balda.

Respectfully submitted,

/s/ Jeffrey A. Rosenthal

Enclosures

cc:   Frederick Hyman, Esq.
      Michael R. Lastowski, Esq.

---

[54] *See, e.g.*, *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988) ("Where the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party" (citing *First Nat'l City Bank v. Internal Revenue Serv.*, 271 F.2d 616, 618 (2d Cir. 1959))); *Hunter Douglas, Inc. v. Comfortex Corp.*, No. CIV. A. M8-85 (WHP), 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) (requiring disclosure of relevant documents by overseas parent of subsidiary defendant because "documents ordinarily flow[ed] freely between them").