

| | | |
|---|---|---|
| NEW YORK | *FIRM and AFFILIATE OFFICES* | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | FREDERICK D. (RICK) HYMAN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 212 692 1063 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 212 208 4521 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* RHyman@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | *www.duanemorris.com* | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

September 13, 2019

*VIA ELECTRONIC MAIL AND CM/ECF*

The Honorable Sean H. Lane
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, NY 10004-1408
shl.chambers@nysb.uscourts.gov

  Re:    *In re BSG Resources Limited, No. 19-11845 (SHL)*

Dear Judge Lane:

    We represent William Callewaert and Malcolm Cohen (the "Joint Administrators") in their capacity as Joint Administrators and Foreign Representatives for the Debtor BSG Resources Limited (in administration) ("BSGR") in the above-referenced proceeding (the "Chapter 15 Case").[1] The Joint Administrators submit this letter along with a proposed protocol (a "Protocol") to be executed between the Joint Administrators and Vale S.A. ("Vale"). The Protocol, when executed, will allow for the production of documents between the parties in compliance with the Data Protection (Bailiwick of Guernsey) Law, 2017 ("Guernsey Data Protection Law") and Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, commonly referred to as the General Data Protection Regulation (the "EU GDPR" and generally with the Guernsey Data Protection Law, "GDPR"). We have also attached a marked version of the Protocol showing changes from the version that Vale has proposed.

    We are in receipt of the letter to Your Honor dated September 12, 2019 from Jeffrey Rosenthal of Cleary Gottlieb Steen & Hamilton LLP on behalf of Vale (the "Vale Letter"). The

---

[1] Capitalized terms not otherwise defined herein are intended to have the meaning set forth in the *Amended Declaration of Malcolm Cohen* [Docket No. 24].



The Honorable Sean H. Lane
September 13, 2019
Page 2

Vale Letter implies that the Joint Administrators committed to provide 320 documents with or
without the existence of an executed Protocol. That is not so, as the protection of a Protocol is
critical for compliance with GDPR. Indeed, Vale's counsel understood this and yesterday
afternoon (following business hours in Guernsey) agreed to accept these documents under the Joint
Administrators' version of the Protocol, pending this Court's ruling on which version should
govern. *The Joint Administrators shall produce those documents to Vale today in reliance on
Vale's agreement.*

Very generally, the Protocol sets forth three categories of personal data that may be
redacted from documents produced in discovery. "Category 1" data includes details that are
deemed to be not relevant to the preparation, assessment, conduct and administration of the
Chapter 15 case (the "Purpose"), including names of spouses, home addresses, dates of birth and
bank account details. "Category 2" data includes details that are deemed to be generally necessary
for the Purpose, including name, job titles, and business email addresses. There are also "Special
Categories" of data, as defined in GDPR, including race and ethnicity, religious beliefs, and
political opinions. The Protocol further sets forth the following redaction principals that the parties
will abide by: (i) Special Categories will be redacted in full; (ii) Category 1 data will generally be
redacted in full unless disclosure in a particular instance is necessary for the Purpose or is already
in the public domain, and (iii) Category 2 data will generally be disclosed without redaction. The
Protocol includes a mechanism for resolving any disputes that may arise regarding the redaction
of personal data including the appointment of a "single point of contact" for each party.

As noted above, the Joint Administrators will deliver today 320 documents to Vale. Each
of these documents has been reviewed by the Joint Administrators' counsel and BDO personnel
to identify and redact personal data for compliance with GDPR. Each is further accompanied by
a log that identifies certain details relating to the document. Where personal data has been redacted
from a document, the log identifies, among other things, the specific type(s) of redacted personal
data (*e.g.*, "home address" or "date of birth"). While the log does not match each redaction (to the
extent there are multiple redactions in a document) to the specific type, the redaction type is plain
from the context and location within the document. A read of the document in conjunction with
the log should allow the reviewer to identify the appropriate category with little difficulty.[2]

Following the exchange of numerous drafts between counsel to the Joint Administrators
and Vale and a number of telephone calls, there remain three unresolved issues. Resolving these
issues in favor of the Joint Administrators may lead to some inconvenience for Vale and its counsel
in reviewing the product of their expansive discovery requests. Resolving these issues in Vale's

---

[2] When personal data is identified in any document, the reviewer will note the type of data by clicking on
a "tick box" for such type. The software used for creating the log lists each type identified in a document
in the order that the "tick boxes" appear, rather than the order of redactions in the document. To adjust that
order in the manner that Vale suggests would require significantly more manual work.



The Honorable Sean H. Lane
September 13, 2019
Page 3

favor will lead to delay in production, the incurrence of significant additional cost, and the possibility of further exposure for breach of GDPR.

      First, Vale insists that the type of personal data that has been redacted in each document is identified. The log exported from the discovery software – Relativity – would not be able to provide this information at an individual redaction level. Instead, it will list the types of personal data redacted at a document level. To satisfy Vale's request it would be necessary to manually input the appropriate sub-category of personal data for each individual redaction. The Joint Administrators estimate that this will significantly increase the time taken for the GDPR redaction review and delay production. The Joint Administrators assert that the proposed log will provide Vale sufficient information to match any redaction to the applicable type of data – many of which will, in any event, be readily apparent from the context of the document itself without the need for reference to the log. In the unlikely event that there is some confusion, a party can approach the "single point of contact" of the other party for needed assistance. To require further matching as suggested by Vale would delay the production and increase the already heavy cost burden borne by BSGR in connection with discovery with little, if any, associated benefit.

      Second, Vale insists that (i) personal email addresses[3] and (ii) nationality/association with a country should be included within Category 2, rather Category 1. Unlike Special Categories which are expressly identified in GDPR, other categories which should be redacted in order to ensure compliance with GDPR are not precise. As noted previously, the Joint Administrators retained the law firms Ogier and Fieldfisher LLP to assist them in connection with their duties under GDPR. On the advice of such counsel, the Joint Administrators have placed the types of data above in Category 1 and generally redacted such data from the documents reviewed to date. The Joint Administrators have been advised that, under Article 49(1)(e) of GDPR, a transfer is permitted if "necessary for the establishment or defence of legal claims" and that a showing of necessity is strictly enforced by EU data privacy regulators. Following consultation with their counsel, the Joint Administrators believe that the provision of all personal email addresses and/or all nationalities/associations with a country are not necessary for the litigation and therefore fall outside of the exception under Article 49(1)(e) of GDPR. The redaction of such data will be evident from the log and, to the extent that Vale believes such data is necessary for the Purpose, it should follow the mechanism for resolving disputes in the Protocol rather than expose the Joint Administrators and/or BSGR from exposure for a potential breach of GDPR. For further clarity, "business email

---

[3] The Joint Administrators acknowledge that "personal email address" had not been referenced in earlier drafts of the Protocol. This was an oversight. However, "business email addresses " were in each draft included as Category 2 data. Personal email addresses were added to Category 1 once the omission was identified.



The Honorable Sean H. Lane
September 13, 2019
Page 4

addresses will generally be disclosed and, in the case of responsive, non-privileged personal emails, the emails themselves will not be redacted, only the email addresses.

<u>Third</u>, Vale has suggested that to the extent that any Category 2 data is redacted, such redaction shall be accompanied by an explanation as to its necessity. Vale has asserted that such redactions should only be in "limited and exceptional circumstances." The Joint Administrators agree that brief explanations are appropriate but object to any characterization that such redactions be "limited and exceptional."[4]

The position advanced by the Joint Administrators with respect to each issue above is reasonable and will avoid unnecessary delay, costs and exposure. In turn, these positions will cause no prejudice and little additional burden on Vale in connection with its review. Unfortunately, the Joint Administrators and Vale have been unable to reach agreement and have no alternative but to seek Your Honor's direction. Accordingly, the Joint Administrators respectfully request that the Court adopt the Joint Administrators' proposed version of the Protocol.

Thank you for Your Honor's consideration.

Respectfully submitted,

*/s/ Frederick Hyman*
Frederick Hyman, Esq.

cc:  Jeffrey A. Rosenthal, Esq.
      Lisa Schweitzer, Esq.

---

[4] The attached version of the Protocol includes Paragraph 4 on Schedule 2, although without the reference to "limited and exceptional circumstances." The version of the Joint Administrators' Protocol that is attached to the Vale Letter strikes this paragraph in full.

# Joint Administrators' Proposed GDPR Protocol

Draft for Discussion Purposes - DM comments 09.13.19

This Protocol is made on                                                                                         2019

**BETWEEN**

(1) William Callewaert and Malcolm Cohen in their capacity as Joint Administrators (together "**Joint Administrators**" or "**Foreign Representatives**") of BSG Resources Limited (in administration) ("**BSG**"); and

(2) Vale S.A. ("**Vale**")

The Joint Administrators and BSG on the one hand and Vale on the other hand together being hereinafter referred to the "**Parties**" and each being a "**Party**".

**WHEREAS**

(A)     On June 3, 2019, the Foreign Representatives, on behalf of BSG, filed a *Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief* (ECF No. 5) (the "**Verified Petition for Recognition**") under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") which seeks the recognition of BSG's foreign insolvency proceeding (the "**Guernsey Administration**") as a "foreign main proceeding" (the "**Chapter 15 Proceeding**");

(B)     The Joint Administrators are currently represented in the Chapter 15 Proceeding by Duane Morris LLP ("**Duane Morris**") and Vale is currently represented in the Chapter 15 Proceeding by Cleary Gottlieb Steen & Hamilton LLP ("**Cleary**"; with Duane Morris and Cleary being their respective clients' "**Counsel of Record**");

(C)     The Parties have served or will serve each other with, or have received from the other Party, documents, depositions, deposition exhibits, interrogatories and responses, admissions, and any other information produced, given, or exchanged by and among the Parties and any non-parties in the Chapter 15 Proceeding ("**Discovery Materials**");

(D)     The Parties, acting through their respective Counsel of Record, have agreed to a Confidentiality Stipulation and Protective Order, which the Bankruptcy Court entered on 6 August 2019 ("**Order**") (ECF No. 39) to assist the flow of Discovery Materials between them;

(E)     The Order confirms, amongst others, the categories of third parties with whom the Parties are permitted to share confidential Discovery Materials, including but not limited to the respective Counsel of Record; and

(F)     By this protocol ("**Protocol**"), the Parties wish to agree upon procedures for the production of documents subject to the EU General Data Protection Regulation 2016/679 ("**GDPR**").

**THE PROTOCOL SHALL BE AS FOLLOWS:**

1.  The following definitions apply to this Protocol:

    a.  **Business Days** means a day when banks are open for general business in both London and New York, other than Saturday, Sunday or public holiday;

    b.  **Data Protection Legislation** means the GDPR and all data protection and privacy legislation in force from time to time to which either Party is subject;

    c.  **Redacted** means anonymised, deleted or otherwise made illegible, as determined by the Party delivering the relevant Discovery Materials to the other Party;

    d.  **Supervisory Authority** means the relevant data protection supervisory authority in the territories where the Parties to this Protocol are established.

    e.  **Controller**, **Processor**, **Data Subject** and **Personal Data**, **Special Categories of Personal Data**, **Processing** and "appropriate technical and organizational measures" shall have the meaning given to them in the GDPR.

**Redaction of Discovery Materials**

2.  The Joint Administrators, acting on behalf of BSG, have identified that Discovery Materials to be provided by them or on their behalf to Vale and/or Cleary ("**BSG Discovery Material**") will in any event contain the categories of Personal Data set out in Part 1 and Part 2 of Schedule 1 and may, from time to time, contain additional categories of Personal Data. The Joint Administrators, acting on behalf of BSG, represent that they are subject to the GDPR and that all Personal Data contained in BSG Discovery Material constitutes Personal Data, the processing of which is regulated by the GDPR ("**EU GDPR Information**").

3.  The Joint Administrators, acting on behalf of BSG, represent that they have established legal grounds upon which Personal Data can be disclosed to Vale and/or Cleary in compliance with applicable Data Protection Laws and intend to redact certain Personal Data contained in BSG Discovery Materials in accordance with the redaction principles set out in Schedule 2 ("**BSG Redaction Principles**").

4.  If Vale should identify any categories of Personal Data that are EU GDPR Information contained in Discovery Materials to be provided by them or on their behalf to the Joint Administrators, BSG and/or Duane Morris ("**Vale Discovery Material**"), it shall notify the Joint Administrators and BSG accordingly and shall apply the same BSG Redaction Principles to such categories of Personal Data and this Protocol shall apply to the Vale Discovery Material, *mutatis mutandis*.

5.  Where Personal Data contained in any Discovery Materials provided by or on behalf of one Party to the other Party has been Redacted ("**Redacted Personal Data**"), the redaction on the relevant Discovery Materials will contain the wording "Redacted – GDPR – Personal Data."  For each document with Redacted Personal Data, an accompanying log exported from Relativity will identify the categories of personal data

2

set forth on Schedule 1, as well as any "special category" data, that have been redacted from such document by name or reference to the relevant code.

6.  If a Party should consider the disclosure of any specific Redacted Personal Data to be necessary for the purpose of the Chapter 15 Proceeding, such Party shall notify the other Party to that effect (i) identifying the Discovery Materials and Redacted Personal Data in question and (ii) stating, in reasonable detail, the reasons why the Party receiving the Discovery Materials considers the disclosure to be necessary ("**Disclosure Notice**").

7.  A Party receiving a Disclosure Notice shall promptly advise the other Party in writing if some or all of the Redacted Personal Data cannot be provided, confirming the applicable Data Privacy Law upon which it relies and provide a brief explanation of its decision ("**Reply**").

8.  If a Party receiving a Reply should not be satisfied with the Reply, such Party may (within 3 Business Days) by notice refer the matter to the single point of contact ("**SPoC**") of the other Party or resolution. If the matter is not resolved by the SPoCs within 3 Business Days from receipt of such notice, either Party may refer the matter to the Bankruptcy Court for resolution.

**Appointment of Single Point of Contact**

9.  Each Party shall appoint an SPoC who will work together to seek an agreement with regard to any issue arising in connection with this Protocol, such contact to have a suitable degree of experience in data protection matters.

10. The SPOCs for the Parties shall be:

    a.  For the Joint Administrators:

        [Stephen Peters
        55 Baker Street
        London W1U 7EU
        Email:  Stephen.Peters @bdo.co.uk
        Tel.:    44 (0)20 7893 2790]

    b.  For Vale:

        Samuel Levander
        One Liberty Plaza
        New York, NY 10006
        Email: slevander@cgsh.com
        Tel: 1 212 225 2951

or such other persons as may be notified by one Party to the respective other in writing from time to time.

**Treatment of Personal Data Contained in Discovery Materials**

3

11. Where Discovery Materials contain GDPR Information, the transfer of the relevant Personal Data ("**Transferred Personal Data**") from or on behalf of one Party to the other Party (or such Party's Counsel of Record):

    a.  shall be done using secure methods and in accordance with the provisions of the Order; and

    b.  shall be deemed a transfer between independent Controllers.

12. A Party receiving Transferred Personal Data ("**Transferee**") shall:

    a.  process the Transferred Personal Data only for the purpose of the preparation, assessment, conduct and administration of the Chapter 15 Proceeding ("**Purpose**") and shall not process Transferred Personal Data in a way that is incompatible with the Purpose;

    b.  ensure that it has a lawful basis under applicable Data Protection Legislation for the processing of any Transferred Personal Data;

    c.  have in place appropriate technical and organizational security measures to:

        i.  prevent:

            1.  unauthorized or unlawful access to, processing and disclosure of the Transferred Data; and

            2.  the accidental loss, alteration or destruction of Transferred Personal Data;

        ii.  ensure a level of security appropriate to:

            1.  the harm that might result from such unauthorized or unlawful access, processing or disclosure; and

            2.  the nature of the Transferred Personal Data to be protected,

such measures to in any event including the minimum security requirements set out in Schedule 3;

    d.  ensure that its staff members are appropriately trained to handle and process the Transferred Personal Data in accordance with applicable Data Protection Legislation and are under a duty of confidentiality relating to the processing of Personal Data. The level, content and regularity of training referred to in this clause shall be proportionate to the staff members' role, responsibility and frequency with respect to their handling of Personal Data;

    e.  not retain or process Personal Data for longer than permitted by the Order and as is necessary to carry out the Purpose always provided that the Transferee shall

4

continue to retain Transferred Personal Data in accordance with any statutory or
professional retention periods applicable in their respective country and/or
industry;

    f.   ensure that Transferred Personal Data is, at the election of the Party holding the
Transferred Personal Data, either returned to the Party that transferred such
Personal Data or destroyed once processing of the Transferred Personal Data is no
longer necessary for the Purpose. Where the Party receiving Transferred Personal
data elects to destroy such Transferred Personal Data it shall upon request without
delay provide a certificate of destruction signed by an officer of such Party or
Counsel of Record.

13. A Transferee may transfer Transferred Personal Data to third parties in accordance with
the Order provided that the Transferee has in place procedures that any third party it so
authorizes to have access to the Transferred Personal Data will comply with the
provisions of this Protocol as if they were the Transferee (other than persons authorized
or required by law or regulation to have access to the Transferred Personal Data). For the
purpose of this clause 13 "transfer" shall mean any sharing of Transferred Personal Data
by the Transferee with a third party, and shall include, but is not limited to subcontracting
the processing of Transferred Personal Data and granting a third party controller access to
the Transferred Personal Data.  Cleary shall be deemed a third party of Vale under this
Protocol and Vale hereby authorizes the Joint Administrators to deliver Discovery
Materials directly to Cleary on Vale's behalf.

14. If a Transferee appoints a third party processor to process the Transferred Personal Data
it shall comply with Article 28 and 30 of the GDPR and shall remain liable to the Party
that transferred the Transferred Personal Data to it for the acts and/or omissions of the
processor.

15. The Transferee may not transfer Transferred Personal Data to a third party located
outside the EEA unless it ensures that:

    a.   The transfer is to a country approved by the European Commission as providing
adequate protection pursuant to Article 45 of the GDPR;

    b.   There are appropriate safeguards in place pursuant to Article 46 of the GDPR; or

    c.   One of the derogations for specific situations in Article 49 of the GDPR applies to
the transfer.

16. The Parties agree to promptly, and in any event within 10 Business Days, provide such
assistance as is reasonably required to enable the other Party to comply with requests
from Data Subjects to exercise their rights under the Data Protection Legislation within
the time limits imposed by the Data Protection Legislation (subject to the foregoing not
causing a Party to be in breach of its obligations under the GDPR or any other applicable
law, regulations or duties of confidentiality).

5

17. The SpoC of each Party shall be responsible for maintaining their own record in connection with requests from Data Subjects to exercise their rights under the Data Protection Legislation.

18. The Parties:

    a.  shall each (i) comply with their respective obligation to report a Personal Data Breach to the appropriate Supervisory Authority and (where applicable) data subjects under Article 33 GDPR and (ii) inform the other Party of any Personal Data Breach irrespective of whether there is a requirements to notify any Supervisory Authority or data subjects (subject to the foregoing clause (ii) not causing a Party to be in breach of its obligations under the GDPR or any other applicable law, regulations or duties of confidentiality); and

    b.  agree to provide reasonable assistance as is necessary to each other to facilitate the handling of a Personal Data Breach in an expeditious and compliant manner.

19. In the event of a dispute or claim brought by a Data Subject or a Supervisory Authority concerning the processing of Transferred Personal Data against either or both Parties, the Parties will inform each other about any such disputes or claims, and will co-operate with a view to settling them amicably (subject to the foregoing not causing a Party to be in breach of its obligations under the GDPR or any other applicable law, regulations or duties of confidentiality).

20. Each Party shall abide by a decision of a competent court of the country of establishment of the Party transferring the relevant Transferred Personal Data or a relevant Supervisory Authority.

**General Provisions**

21. This Protocol is drafted in the English language. If it is translated into any other language, the English language version shall prevail.

22. Any notice given to a Party under or in connection with this Protocol shall be in the English language, in writing, addressed to the SPoCs and shall be sent by email to the relevant SPoC.

23. Any notice shall be deemed to have been received by an SPoC at the time of transmission of the relevant email, or this time falls outside business hours in the place of receipt, when business hours resume. In this section 23, business hours means 9:00 am to 05:00 pm Monday to Friday on a day that is not a public holiday in the place of receipt.

24. No variation of this Protocol shall be effective unless it is in writing and signed by the Parties (or their authorised representatives).

25. For the avoidance of doubt, the Parties' agreement to enter into this Protocol does not constitute an agreement to produce discovery in any other action or waive any defenses thereto.

6

Draft for Discussion Purposes - DM comments 09.13.19

**Schedule 1**

**Categories of Personal Data**

**Part 1 – Category 1 Personal Data**

| *Personal Data Type:* | *Code:* |
|---|---|
| Names of Spouse/Partner/Family Members | **1.a** |
| Home Address | **1.b** |
| Date of Birth | **1.c** |
| ID Document details (including drivers license and/or passport details) | **1.d** |
| Bank Account details (personal) | **1.e** |
| Telephone numbers (home) | **1.f** |
| Fax Numbers (home) | **1.g** |
| Cheque Details (personal) | **1.h** |
| Personal Email Addresses | **1.i** |
| Nationality/Association with a Country | **1.j** |
| Data Subject's Signature | **1.k** |

**Part 2 – Category 2 Personal Data**

| *Personal Data Type:* | *Code:* |
|---|---|
| Name | **2.a** |
| Position / Job Title / Association / Occupation / Profession | **2.b** |

| Business Name / Company Name/ Government Affiliation / Jurisdiction / Firm Name | **2.c** |
|---|---|
| Directorships – Director business details | **2.d** |
| Business bio / Firm bio | **2.e** |
| Business email address | **2.f** |
| Business address | **2.g** |
| Data Subject's Initials | **2.h** |
| Telephone Number (business) | **2.i** |
| Fax Number (business) | **2.j** |

2

**Schedule 2**

**BSG Redaction Principles**

1. Special Categories (as defined under GDPR) of Personal Data will generally be Redacted in full.

2. The categories of Personal Data set out in Part 1 of Schedule 1 will generally be Redacted in full unless disclosure of such Personal Data is necessary for the Purpose, or the Personal Data is already in the public domain.

3. The categories of Personal Data set out in Part 2 of Schedule 1 will generally not be Redacted.

4. If a Party considers it is necessary to redact any Personal Data set out in Part 2 of Schedule1, such redaction must be accompanied by an explanation as to its necessity, set out in the Relativity log which shall accompany each such redaction.

3

**Schedule 3**

**Minimum Security Requirements**

- Access controls (limited to those involved in the Chapter 15 Proceeding); File restrictions (locked-down folder access)

- Destruction controls (ensuring anything excessive is destroyed at the conclusion of the Chapter 15 Proceeding and only data necessary and required is kept otherwise)

4

# **Blackline**

This Protocol is made on                                                        2019

**BETWEEN**

(1) William Callewaert and Malcolm Cohen in their capacity as Joint Administrators (together "**Joint Administrators**" or "**Foreign Representatives**") of BSG Resources Limited (in administration) ("**BSG**"); and

(2)  Vale S.A. ("**Vale**")

The Joint Administrators and BSG on the one hand and Vale on the other hand together being hereinafter referred to the "**Parties**" and each being a "**Party**".

**WHEREAS**

(A)     On June 3, 2019, the Foreign Representatives, on behalf of BSG, filed a *Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief* (ECF No. 5) (the "**Verified Petition for Recognition**") under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") which seeks the recognition of BSG's foreign insolvency proceeding (the "**Guernsey Administration**") as a "foreign main proceeding" (the "**Chapter 15 Proceeding**");

(B)     The Joint Administrators are currently represented in the Chapter 15 Proceeding by Duane Morris LLP ("**Duane Morris**") and Vale is currently represented in the Chapter 15 Proceeding by Cleary Gottlieb Steen & Hamilton LLP ("**Cleary**"; with Duane Morris and Cleary being their respective clients' "**Counsel of Record**");

(C)     The Parties have served or will serve each other with, or have received from the other Party, documents, depositions, deposition exhibits, interrogatories and responses, admissions, and any other information produced, given, or exchanged by and among the Parties and any non-parties in the Chapter 15 Proceeding ("**Discovery Materials**");

(D)     The Parties, acting through their respective Counsel of Record, have agreed to a Confidentiality Stipulation and Protective Order, which the Bankruptcy Court entered on 6 August 2019 ("**Order**") (ECF No. 39) to assist the flow of Discovery Materials between them;

(E)     The Order confirms, amongst others, the categories of third parties with whom the Parties are permitted to share confidential Discovery Materials, including but not limited to the respective Counsel of Record; and

(F)     By this protocol ("**Protocol**"), the Parties wish to agree upon procedures for the production of documents subject to the EU General Data Protection Regulation 2016/679 ("**GDPR**").

**THE PROTOCOL SHALL BE AS FOLLOWS:**

1.  The following definitions apply to this Protocol:

    a.  **Business Days** means a day when banks are open for general business in both London and New York, other than Saturday, Sunday or public holiday;

    b.  **Data Protection Legislation** means the GDPR and all data protection and privacy legislation in force from time to time to which either Party is subject;

    c.  **Redacted** means anonymised, deleted or otherwise made illegible, as determined by the Party delivering the relevant Discovery Materials to the other Party;

    d.  **Supervisory Authority** means the relevant data protection supervisory authority in the territories where the Parties to this Protocol are established.

    e.  **Controller**, **Processor**, **Data Subject** and **Personal Data**, **Special Categories of Personal Data**, **Processing** and "appropriate technical and organizational measures" shall have the meaning given to them in the GDPR.

**Redaction of Discovery Materials**

2.  The Joint Administrators, acting on behalf of BSG, have identified that Discovery Materials to be provided by them or on their behalf to Vale and/or Cleary ("**BSG Discovery Material**") will in any event contain the categories of Personal Data set out in Part 1 and Part 2 of Schedule 1 and may, from time to time, contain additional categories of Personal Data. The Joint Administrators, acting on behalf of BSG, represent that they are subject to the GDPR and that all Personal Data contained in BSG Discovery Material constitutes Personal Data, the processing of which is regulated by the GDPR ("**EU GDPR Information**").

3.  The Joint Administrators, acting on behalf of BSG, represent that they have established legal grounds upon which Personal Data can be disclosed to Vale and/or Cleary in compliance with applicable Data Protection Laws and intend to redact certain Personal Data contained in BSG Discovery Materials in accordance with the redaction principles set out in Schedule 2 ("**BSG Redaction Principles**").

4.  If Vale should identify any categories of Personal Data that are EU GDPR Information contained in Discovery Materials to be provided by them or on their behalf to the Joint Administrators, BSG and/or Duane Morris ("**Vale Discovery Material**"), it shall notify the Joint Administrators and BSG accordingly and shall apply the same BSG Redaction Principles to such categories of Personal Data and this Protocol shall apply to the Vale Discovery Material, *mutatis mutandis*.

5.  Where Personal Data contained in any Discovery Materials provided by or on behalf of one Party to the other Party has been Redacted ("**Redacted Personal Data**"), the redaction on the relevant Discovery Materials will ~~be tagged in Relativity with a principle tag,~~contain the wording "Redacted – GDPR – Personal Data,~~"~~ ~~and an accompanying sub-tag identifying the particular category and type of~~ For each document with Redacted Personal Data, ~~by reference to the relevant code provided in Schedule 1 (or, where~~

~~Redacted Personal Data is a "*special category*" of Person Data under the GDPR, by reference to the code "*SC*"). An~~an accompanying log exported from Relativity will ~~reflect these tags alongside the Relativity document numbers/exported Bates Numbers particular to each Redacted.~~ identify the categories of personal data set forth on Schedule 1, as well as any "special category" data, that have been redacted from such document by name or reference to the relevant code.

6.  If a Party should consider the disclosure of any specific Redacted Personal Data to be necessary for the purpose of the Chapter 15 Proceeding, such Party shall notify the other Party to that effect (i) identifying the Discovery Materials and Redacted Personal Data in question and (ii) stating, in reasonable detail, the reasons why the Party receiving the Discovery Materials considers the disclosure to be necessary ("**Disclosure Notice**").

7.  A Party receiving a Disclosure Notice shall promptly advise the other Party in writing if some or all of the Redacted Personal Data cannot be provided, confirming the applicable Data Privacy Law upon which it relies and provide a brief explanation of its decision ("**Reply**").

8.  If a Party receiving a Reply should not be satisfied with the Reply, such Party may (within 3 Business Days) by notice refer the matter to the single point of contact ("**SPoC**") of the other Party or resolution. If the matter is not resolved by the SPoCs within 3 Business Days from receipt of such notice, either Party may refer the matter to the Bankruptcy Court for resolution.

**Appointment of Single Point of Contact**

9.  Each Party shall appoint an SPoC who will work together to seek an agreement with regard to any issue arising in connection with this Protocol, such contact to have a suitable degree of experience in data protection matters.

10. The SPoCs for the Parties shall be:

    a.  For the Joint Administrators:

        [Stephen Peters
        55 Baker Street
        London W1U 7EU
        Email:  Stephen.Peters @bdo.co.uk
        Tel.:    44 (0)20 7893 2790]

    b.  For Vale:

        Samuel Levander
        One Liberty Plaza
        New York, NY 10006
        Email: slevander@cgsh.com
        Tel: 1 212 225 2951

or such other persons as may be notified by one Party to the respective other in writing from time to time.

**Treatment of Personal Data Contained in Discovery Materials**

11. Where Discovery Materials contain GDPR Information, the transfer of the relevant Personal Data ("**Transferred Personal Data**") from or on behalf of one Party to the other Party (or such Party's Counsel of Record):

   a. shall be done using secure methods and in accordance with the provisions of the Order; and

   b. shall be deemed a transfer between independent Controllers.

12. A Party receiving Transferred Personal Data ("**Transferee**") shall:

   a. process the Transferred Personal Data only for the purpose of the preparation, assessment, conduct and administration of the Chapter 15 Proceeding ("**Purpose**") and shall not process Transferred Personal Data in a way that is incompatible with the Purpose;

   b. ensure that it has a lawful basis under applicable Data Protection Legislation for the processing of any Transferred Personal Data;

   c. have in place appropriate technical and organizational security measures to:

      i.  prevent:

         1. unauthorized or unlawful access to, processing and disclosure of the Transferred Data; and

         2. the accidental loss, alteration or destruction of Transferred Personal Data;

      ii. ensure a level of security appropriate to:

         1. the harm that might result from such unauthorized or unlawful access, processing or disclosure; and

         2. the nature of the Transferred Personal Data to be protected,

      such measures to in any event including the minimum security requirements set out in Schedule 3;

   d. ensure that its staff members are appropriately trained to handle and process the Transferred Personal Data in accordance with applicable Data Protection Legislation and are under a duty of confidentiality relating to the processing of Personal Data. The level, content and regularity of training referred to in this

4

clause shall be proportionate to the staff members' role, responsibility and frequency with respect to their handling of Personal Data;

e.  not retain or process Personal Data for longer than permitted by the Order and as is necessary to carry out the Purpose always provided that the Transferee shall continue to retain Transferred Personal Data in accordance with any statutory or professional retention periods applicable in their respective country and/or industry;

f.  ensure that Transferred Personal Data is, at the election of the Party holding the Transferred Personal Data, either returned to the Party that transferred such Personal Data or destroyed once processing of the Transferred Personal Data is no longer necessary for the Purpose. Where the Party receiving Transferred Personal data elects to destroy such Transferred Personal Data it shall upon request without delay provide a certificate of destruction signed by an officer of such Party or Counsel of Record.

13. A Transferee may transfer Transferred Personal Data to third parties in accordance with the Order provided that the Transferee has in place procedures that any third party it so authorizes to have access to the Transferred Personal Data will comply with the provisions of this Protocol as if they were the Transferee (other than persons authorized or required by law or regulation to have access to the Transferred Personal Data). For the purpose of this clause 13 "transfer" shall mean any sharing of Transferred Personal Data by the Transferee with a third party, and shall include, but is not limited to subcontracting the processing of Transferred Personal Data and granting a third party controller access to the Transferred Personal Data.  Cleary shall be deemed a third party of Vale under this Protocol and Vale hereby authorizes the Joint Administrators to deliver Discovery Materials directly to Cleary on Vale's behalf.

14. If a Transferee appoints a third party processor to process the Transferred Personal Data it shall comply with Article 28 and 30 of the GDPR and shall remain liable to the Party that transferred the Transferred Personal Data to it for the acts and/or omissions of the processor.

15. The Transferee may not transfer Transferred Personal Data to a third party located outside the EEA unless it ensures that:

a.  The transfer is to a country approved by the European Commission as providing adequate protection pursuant to Article 45 of the GDPR;

b.  There are appropriate safeguards in place pursuant to Article 46 of the GDPR; or

c.  One of the derogations for specific situations in Article 49 of the GDPR applies to the transfer.

16. The Parties agree to promptly, and in any event within 10 Business Days, provide such assistance as is reasonably required to enable the other Party to comply with requests from Data Subjects to exercise their rights under the Data Protection Legislation within

5

the time limits imposed by the Data Protection Legislation (subject to the foregoing not causing a Party to be in breach of its obligations under the GDPR or any other applicable law, regulations or duties of confidentiality).

17. The SpoC of each Party shall be responsible for maintaining their own record in connection with requests from Data Subjects to exercise their rights under the Data Protection Legislation.

18. The Parties:

   a. shall each (i) comply with their respective obligation to report a Personal Data Breach to the appropriate Supervisory Authority and (where applicable) data subjects under Article 33 GDPR and ~~shall each~~(ii) inform the other Party of any Personal Data Breach irrespective of whether there is a requirements to notify any Supervisory Authority or data subjects (subject to the foregoing clause (ii) not causing a Party to be in breach of its obligations under the GDPR or any other applicable law, regulations or duties of confidentiality); and

   b. agree to provide reasonable assistance as is necessary to each other to facilitate the handling of a Personal Data Breach in an expeditious and compliant manner.

19. In the event of a dispute or claim brought by a Data Subject or a Supervisory Authority concerning the processing of Transferred Personal Data against either or both Parties, the Parties will inform each other about any such disputes or claims, and will co-operate with a view to settling them amicably (subject to the foregoing not causing a Party to be in breach of its obligations under the GDPR or any other applicable law, regulations or duties of confidentiality).

20. Each Party shall abide by a decision of a competent court of the country of establishment of the Party transferring the relevant Transferred Personal Data or a relevant Supervisory Authority.

**General Provisions**

21. This Protocol is drafted in the English language. If it is translated into any other language, the English language version shall prevail.

22. Any notice given to a Party under or in connection with this Protocol shall be in the English language, in writing, addressed to the SPoCs and shall be sent by email to the relevant SPoC.

23. Any notice shall be deemed to have been received by an SPoC at the time of transmission of the relevant email, or this time falls outside business hours in the place of receipt, when business hours resume. In this section 23, business hours means 9:00 am to 05:00 pm Monday to Friday on a day that is not a public holiday in the place of receipt.

24. No variation of this Protocol shall be effective unless it is in writing and signed by the Parties (or their authorised representatives).

6

25. For the avoidance of doubt, the Parties' agreement to enter into this Protocol does not constitute an agreement to produce discovery in any other action or waive any defenses thereto.

[AM_ACTIVE 401597045_5]

**Schedule 1**

**Categories of Personal Data**

**Part 1 – Category 1 Personal Data**

| *Personal Data Type:* | *Code:* |
|---|---|
| Names of Spouse/Partner/Family Members | **1.a** |
| Home Address | **1.b** |
| Date of Birth | **1.c** |
| ID Document details (including drivers license and/or passport details) | **1.d** |
| Bank Account details (personal) | **1.e** |
| Telephone numbers (home) | **1.f** |
| Fax Numbers (home) | **1.g** |
| Cheque Details (personal) | **1.h** |
| Personal Email Addresses | **1.i** |
| Nationality/Association with a Country | **1.j** |
| Data Subject's Signature | **1.k** |

**Part 2 – Category 2 Personal Data**

| *Personal Data Type:* | *Code:* |
|---|---|
| Name | **2.a** |
| Position / Job Title / Association / Occupation / Profession | **2.b** |

| | |
|---|---|
| Business Name / Company Name/ Government Affiliation / Jurisdiction / Firm Name | **2.c** |
| Directorships – Director business details | **2.d** |
| Business bio / Firm bio | **2.e** |
| Business email address | **2.f** |
| Business address | **2.g** |
| Data Subject's Initials | **2.h** |
| Telephone Number (business) | **2.i** |
| Fax Number (business) | **2.j** |
| ~~Nationality/Association with a Country~~ | **~~2.k~~** |
| ~~Data Subject's Signature~~ | **~~2.l~~** |

2

**Schedule 2**

**BSG Redaction Principles**

1. Special Categories (as defined under GDPR) of Personal Data will generally be Redacted in full.

2. The categories of Personal Data set out in Part 1 of Schedule 1 will generally be Redacted in full unless disclosure of such Personal Data is necessary for the Purpose, or the Personal Data is already in the public domain.

3. The categories of Personal Data set out in Part 2 of Schedule 1 will generally not be Redacted.

4. If ~~in limited and exceptional circumstances~~ a Party considers it is necessary to redact any Personal Data set out in Part 2 of Schedule1, such redaction must be accompanied by an explanation as to its necessity, set out in the Relativity log which shall accompany each such redaction.

3

**Schedule 3**

**Minimum Security Requirements**

- Access controls (limited to those involved in the Chapter 15 Proceeding); File restrictions (locked-down folder access)

- Destruction controls (ensuring anything excessive is destroyed at the conclusion of the Chapter 15 Proceeding and only data necessary and required is kept otherwise)

4

| Summary report: Litéra® Change-Pro TDC 7.5.0.196 Document comparison done on 9/13/2019 11:56:42 AM | |
|---|---|
| **Style name:** DM - Double Underline Strikethrough | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** BSGR - GDPR Protocol - CGSH Draft 09.05.2019.docx | |
| **Modified DMS:** iw://DM/DM3/6057490/3 | |
| **Changes:** | |
| Add | 16 |
| Delete | 11 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 3 |
| Table Delete | 2 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 34 |