| | **Duane Morris®** | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | FREDERICK D. (RICK) HYMAN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 212 692 1063 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 212 208 4521 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* RHyman@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | *www.duanemorris.com* | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

November 1, 2019

<u>Via CM/ECF and Hand Delivery</u>

The Honorable Sean H. Lane
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
Courtroom: 701
New York, NY 10004-1408

      Re:    **BSG Resources Limited (in administration); Case No.: 19-11845 (SHL)**

Dear Judge Lane and Counsel:

      We write on behalf of William Callewaert and Malcolm Cohen, in their capacity as Joint Administrators and Foreign Representatives (together, the "<u>Joint Administrators</u>") for the debtor BSG Resources Limited (in administration) ("<u>BSGR</u>"). This letter updates the progress made by the Joint Administrators in producing documents responsive to document requests (the "<u>Vale Document Requests</u>") served by Vale S.A. ("<u>Vale</u>"). Initially, however, this letter responds to the letter from Vale's counsel to Your Honor dated October 30, 2019 [Docket No. 71] (the "<u>Vale Letter</u>").

      Without mention of any of the 4,112 documents the Joint Administrators have produced to date, Vale has filed yet another letter with the Court making mischaracterized and unfounded representations that do not stand up to any scrutiny. It is, once again, a deliberate ploy to mislead the Court and yet another attempt to micro-manage the discovery process. This Court has already indicated that it is not inclined to impose such oversight. Oct. 3, 2019 Hr'g Tr. 86:17-87:11.

      The Joint Administrators continue to produce documents responsive to the Vale Document Requests and are, of course, aware that they were not able to complete this effort by October 26, 2019. The Joint Administrators take this obligation very seriously and have advised the Court and Vale as to their progress and target completion date. Despite these good faith efforts, Vale



The Honorable Sean H. Lane
November 1, 2019
Page 2

castigates the Joint Administrators. In the face of Vale complaints, the Court should consider that Vale cannot show *any* prejudice caused by the current pace of discovery. To be sure, the majority of costs incurred by all parties in connection with discovery has been driven by Vale's overzealous pursuit of a broad range of documents and other information well beyond the bounds contemplated in chapter 15 of the Bankruptcy Code and unrelated to the matters that the Court is to consider.

This letter sets out the Joint Administrators' responses to the assertions made in the Vale Letter. To the extent that no response is provided, this should not be taken as the Joint Administrators' acceptance or agreement of any representations made. For ease of reference, the Joint Administrators respond in the same order set out in the Vale Letter.

I. **Continued Delay**

The Vale Letter states that the Joint Administrators have produced only a small fraction of the documents they have been ordered, and committed, to produce. The basis of this assertion is not clear; it implies that Vale and its counsel know the number of documents that should be produced. This is nonsense and is typical of the misleading emotive statements that Vale and its counsel continues to adopt. It should be considered by the Court in this light.

This tone continues in respect of the October 26, 2019 production deadline. *See Discovery Order* [Docket No. 69] (the "Discovery Order") at ¶ 8. The Vale Letter refers to the "The Joint Administrators' *cavalier suggestion* that they are not held to Court ordered production deadlines is untenable and counterproductive to the purposes of Chapter 15." Vale Letter at 2 (emphasis added). This bold statement is made in respect of the Joint Administrators not making a firm commitment on the completion date. A significant factor in the Joint Administrators being unable to make such a commitment is the nature of the Vale Document Requests: these are characterized by wide ranging requests for a broad range of seemingly irrelevant documents that inevitably increases the number of documents that need to be reviewed for responsiveness and which, it follows, takes significantly more time to perform. Further, the imprecise and inconsistent nature of many of the requests means that the Joint Administrators need to spend time actually trying to understand the request itself.

The Joint Administrators, their counsel and their respective staffs have engaged in a herculean, months-long effort to respond to Vale's Document Requests. This effort was undertaken from a starting point which is atypical from most litigation discovery. At the time that the Joint Administrators received the Vale Document Requests, they were largely unfamiliar with the nature and volume of BSGR's documents. For the avoidance of doubt the Court should be aware that it is not typical for an Administrator appointed in a Guernsey insolvency administration to review every single historic document held by a company. They would instead have been able to concentrate efforts on fulfilling the Joint Administrators' mandate of returning BSGR to solvency and of maximizing creditor recoveries. It should also be reiterated that GDPR regulations had recently been enacted and compliance with those regulations presented unique challenges in



The Honorable Sean H. Lane
November 1, 2019
Page 3

interpreting those regulations. Violation of those regulations raises the risk of severe financial penalties (potentially up to 4% of global revenues).

The Joint Administrators assembled a team (the "BDO Team"), consisting of BDO employees, external specialist paralegals, and other professionals. The BDO Team has devoted at least 1,527 hours to the document production at a cost to the Joint Administrators of at least $950,000. This includes the costs of engaging a team of specialist paralegals of approximately $125,000 to date and legal costs of $90,000 incurred in respect of specialist GDPR advice. The BDO Team has been supplemented by lawyers from Duane Morris LLP (the "Duane Morris Team"). The Duane Morris Team is staffed with over ten attorneys that have collectively devoted over 700 hours to the document production and discovery-related tasks at a cost to the Joint Administrators of over $300,000. The Joint Administrators are now producing documents on a regular, rolling basis. Still, this cost is staggering in the context of any cases, but is especially so in light of the narrow issue of fact that the Court will ultimately have to decide (*i.e.*, the location of BSGR's COMI).

The Joint Administrators had represented to the Court that they would complete the production of certain documents by October 26, 2019. The Court adopted that target in setting the October 26 Deadline. Despite their good faith efforts, the Joint Administrators were unable to meet the deadline for completion of production. However, a significant number of responsive documents have been produced (as summarized below). It should be noted that it is questionable as to whether production could ever be considered as complete due to the inadequacies in Vale's discovery request.

Importantly, the inability to meet the October 26 Deadline was not the result of any intent to frustrate or delay document production. Quite the opposite. Indeed, the Joint Administrators have endeavored to collect documents from all relevant data sources, sort and review those documents for responsiveness to the Document Requests, review and protect GDPR personal data, and review and protect attorney-client or other work-product privileged materials. As noted above, the methodical pace of production is the result of, amongst other things, the magnitude of "hits" that arose during the electronic search of BSGR's database which is a consequence of Vale's unnecessarily wide ranging and far reaching discovery request. These hits, in turn, required careful examination of the underlying documents for personal data, relevance, GDPR issues and privilege.

The Joint Administrators provided detailed updates concerning their progress to Vale's counsel on a weekly basis. When it became clear that the Joint Administrators would not meet the October 26 Deadline, the Joint Administrators wrote to Vale's counsel and the Court (i) to advise that the October 26 Deadline would not be met, (ii) to provide a detailed update on the status of production and remaining tasks, and (iii) to provide a good faith estimate as to when production might be completed. *See* Docket No. 70.



The Honorable Sean H. Lane
November 1, 2019
Page 4

      In their numerous letters to the Court, Vale continually fails to acknowledge what *has* been produced by the Joint Administrators. In fact, these documents provide a wealth of information relevant to the only matters the Court needs to consider at the Recognition Hearing (*i.e.*, the factors to establish BSGR's COMI consistent with the factors set out in *In re SPhinX, Ltd.,* 351 B.R. 103 (Bankr. S.D.N.Y. 2006) and other cases in the district). For example, amongst numerous other documents, the Joint Administrators have produced:

- *Documents relevant to the location of the debtor's headquarters*:
  - BSGR's Guernsey Registry details
  - Subsidiary registry details
  - Guernsey Administration Order
  - Invoices billed to
  - BSGR board of director meeting notices
  - Notice of Annual General Meeting of BSGR shareholders
  - Guernsey income tax documents
  - Guernsey social security tax documents

- *Documents relevant to the location of those who actually manage the debtor*:
  - Register of members
  - BSGR share certificate
  - Migration documentation from Jersey to Guernsey,
  - BSGR's Memorandum of Association
  - Bank account authorization documents
  - BSGR board of director meeting minutes

- *Documents relevant to the location of the debtor's primary assets*:
  - Group structure charts
  - Financial statements for BSGR and certain other direct and indirect subsidiaries including Octea
  - Schedule showing the location of documents of title
  - Bank account statements
  - Cash flow budgets
  - BSGR-Octea management services agreement
  - Roslindale share certificates

- *Documents relevant to the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case*:
  - BSGR-Octea loan agreement
  - Administration creditor reports
  - Invoices billed to BSGR



The Honorable Sean H. Lane
November 1, 2019
Page 5

- *Documents relevant to the location of the jurisdiction whose law would apply to most disputes*:
  - Litigation documents and summons for the Vale Enforcement Action
  - Litigation documents and summonses for the Cunico litigation.

Moreover, the documents produced by the Joint Administrators provide sufficient underlying detail in respect of BSGR's business and operations to allow Vale to take depositions of the Joint Administrators and others that the Court may permit.

## II. Deficient Searches for Responsive Documents

The Vale Letter suggests that the Joint Administrators have failed to meet and confer with Vale in good faith concerning the Joint Administrators' search terms and methodologies. This is plainly untrue. The parties convened at the October 25 Meet and Confer. Vale's counsel prepared a self-serving memorial of that discussion that over-stated or misconstrued points discussed. The Joint Administrators' counsel clarified those points, and Vale's counsel disagreed. The correspondence annexed to the Vale Letter speaks for itself, but certainly does not show that either party failed to meet and confer in good faith.

Further, the objections to the search terms used by the Joint Administrators that were raised by Vale's counsel were ill-informed and the alternatives proposed were inappropriate for a variety of reasons. The purpose of the objection was not, as suggested by Vale, a good faith attempt to resolve the disagreement between the parties. It was exactly the opposite. It was a thinly veiled disingenuous attempt to put obstacles in the way of the Joint Administrators' production process by imposing additional and inappropriate search terms designed to increase the number of hits. It was anything but good faith.

### A. The Joint Administrators' Continued Failure To Produce Easily-Identifiable Documents

The Vale Letter asserts that a number of Vale's discovery requests seek basic information that, according to Vale's counsel should be readily available and refers, as an example, to a request for the production of the Joint Administrators' filings and other communications with the Guernsey Court. It is noteworthy that Vale chose this as the example for documents that, in its view, are easy to identify, locate and produce. This is not the case for the Guernsey filings. Vale has requested all filings and other correspondences with the Guernsey Court. The Joint Administrators will produce such documents to the extent they are not privileged or otherwise barred from disclosure. The Guernsey Court has directed that all submissions in the Guernsey Administration be sealed. The Joint Administrators are working with their Guernsey counsel to obtain these documents and the necessary relief to disclose such documents.[1]

---

[1] The cases cited by Vale on this point are inapposite. For example, in *In re Platinum Partners Value Arbitrage Fund, L.P.*, 583 B.R. 803 (Bankr. S.D.N.Y. 2018), the Court overruled an objection to a subpoena where the objecting party



The Honorable Sean H. Lane
November 1, 2019
Page 6

      The Joint Administrators have produced documents responsive to the Vale Requests where such documents are "easily-identifiable" and where the requests are proportionate and limited. However, the very way in which the Vale Requests are written does not limit the production to basic information and requires, in most respects, that the Joint Administrators *still* conduct a broad search-term based review of their data sources to ensure compliance with their discovery obligations. For example, Vale has requested financial statements for various entities. The Joint Administrators have produced available financial statements for BSGR, Octea, two of Octea's operating subsidiaries, Boroma Limited and Toguma Limited, and West African Power Limited. But the Vale Requests do not stop with the specific documents themselves – instead, they seek "*any and all*" financial statements including any draft and copy statements. *See* Vale Document Request, Instructions Paragraphs 3 and 7. Keyword searches and review are therefore necessary to comply with the expansive scope of the Vale Requests.

      The same point applies to Vale's request for retainer agreements between BSGR and Nicolas Sarkozy. *See* Vale Request No. 56. While the Joint Administrators can be certain that they have never entered into such an agreement and that a retainer agreement does not exist within their working files, they need to run a keyword search across company documents to reliably ensure no such retainer agreement exists in company documents (as unlikely as it is in respect of the context of the request).

      Finally, as concerns BSGR's interest in Roslindale (and thus their access to, and control over any books and records or other corporate documents), the company's interests are limited to the ownership of Roslindale preference shares. However, to the extent that the Joint Administrators, through their search methodologies identify financial statements in their possession, custody or control, such documents will be produced.

### B. Arbitrary and Overly Narrow Search Terms

      Vale complains that the search terms the Joint Administrators have employed to cull and winnow over 3.7 million documents are arbitrary and overly narrow. During the October 25 Meet and Confer, Joint Administrators' counsel explained that the search terms and methodologies were

---

failed to show in the first instance that documents were protected from discovery under Cayman Island law. Similarly, in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522 (1987), the court considered, *inter alia*, whether the Hague Evidence Convention provided exclusive and mandatory procedure for obtaining documents and information located within France, a foreign signatory nation. In the footnote cited by Vale, the Court discussed the applicability of a French statute that limited the types of foreign discovery that could be sought in France absent compliance with international treaty obligations. There, the court determined that the existence of such a "blocking" statute was a relevant, but not a dispositive, factor in determining the reach of discovery emanating from the United States. In this case, there is no dispute that the entirety of the Guernsey Administration is under seal.



The Honorable Sean H. Lane
November 1, 2019
Page 7

deliberately formulated to return potentially responsive documents while avoiding incidental, superfluous, or irrelevant documents. Vale demands a different approach that would employ single proposed keywords that, unmodified, would return thousands of more documents. While these documents might include the particular keyword, it is not any more likely that such a search will return a document *responsive* to the particular Vale Request. Vale's approach is thus akin to fishing with dynamite. The table below illustrates this: it can be seen that certain of the terms proposed by Vale significantly increase the number of hits.

| Request No. | Bdo proposed search term(s) | Docs hit by search | Docs hit by search, including family | Broader search term | Docs hit by search | Docs hit by search, including family |
|---|---|---|---|---|---|---|
| 3, 21 | "Balda Foundation" | 5,081 | 11,939 | "Balda" | 5,982 | 13,545 |
| 3, 52 | "nysco management corp" | 6,612 | 13,879 | "Nysco" | 16,462 | 76,784 |
| 3 | "onyx financial advisors" | 18,071 | 34,750 | "Onyx" | 32,428 | 68,729 |
| 28, 33 | "Octea Limited" | 35,606 | 56,846 | "Octea" | 91,142 | 182,277 |
| 33 | "Star West Limited" | 58 | 171 | "Star West" | 5,784 | 11,908 |
| 36, 37 | "standard chartered plc" | 4,849 | 8,542 | "Standard Chartered" | 25,769 | 104,128 |
| 36, 37 | "standard chartered plc" | 4,849 | 8,542 | "SCB" | 29,204 | 107,039 |
| 42, 43, 44 | "Roslindale PTE" | 3,827 | 7,101 | "Roslindale" | 4,835 | 9,964 |
| 51 | "litigation solutions limited" | 989 | 2,092 | "LSL" | 945 | 3,284 |
| 51 | "litigation solutions ltd" | 12 | 20 | "Litigation Solutions" | 1,090 | 2,238 |
| 53 | "tiffany & co" | 1308 | 3208 | "Tiffany" | 10,425 | 19,690 |
| 53 | "tiffany and co" | 138 | 445 | "Tiffany's" | 1,306 | 2,893 |

The approach employed by the Joint Administrators avoids this problem because the search terms, as modified and in conjunction with each other, are tailored to return documents likely to be responsive. If Vale is serious about seeing this production effort complete, it must accept that narrowed and modified search terms must be used.

In respect of the above, the Vale Letter refers to Balda as an example and suggests that the narrowing of the search term to Balda Foundation artificially narrows the scope of responsive documents. This is correct in one aspect: it reduces the amount of *irrelevant* documents. However, reference to the particular Vale Document Requests is necessary in order to understand the context of the search term adopted. For example, Request No. 3 asks for the production of

DuaneMorris

The Honorable Sean H. Lane
November 1, 2019
Page 8

> Documents sufficient to identify (i) all directors, board members, and officers; (ii) the frequency of board of director meetings; and (iii) the locations of such meetings for BSGR, and other entities associated with BSGR including but not limited to, the Balda Foundation, Onyx Financial Advisors, and Nysco Management Corp.

The Joint Administrators are not aware that they or BSGR maintain documents responsive to this request. Indeed, the Joint Administrators made enquiries with and obtained confirmation from one of the former directors of BSGR that it held no board minutes for Balda Foundation. However, rather than accepting this at face value the Joint Administrators performed keyword searches. But the Joint Administrators anticipate that any responsive documents are likely to refer to the formal entity name, Balda Foundation, as opposed simply to the shortened term "Balda." While the parties may disagree as to the reasonableness of this approach, the approach is necessary for an efficient review of the data sources: that said, a search for "Balda Foundation" yields 11,939 potentially responsive documents (with families), while a search for "Balda" yields 13,545 documents.

Similarly, Request No. 21 asks for

> Any and all documents showing any direct or indirect relationship of Beny Steinmetz, any member of his family, and/or the Balda Foundation in any entity that the Joint Administrators believe may be a current or contingent creditor of BSGR, including Litigation Solutions Limited, Star West and GSOL.

In this case, replacing the term "Balda Foundation" with the shortened term "Balda" in the current search (keeping everything else the same), returns a mere 29 additional documents. All of which, upon review, are not responsive to the Vale's Request (*i.e.,* they are false positives).

Next, Vale refer to searches where, in its view, it believes that a domain name should be used as a search term. It uses Ernst & Young as its principal example. Firstly, restricting the search to domain name as suggested by Vale will inevitably restrict the responsive documents to emails and potentially excludes correspondence that is not emailed. Secondly, as is common for most professional services firms, emails comprise a footer which includes the full name. Therefore, Vale's suggestion should be rejected.

In addition to the terms themselves, Vale criticizes the use of proximity connectors in searches. Proximity connectors are a commonly used tool in e-disclosure and are used to capture results more relevant to the issue at hand than by just typing in desired keywords. Referring back again to Request No. 21, removal of the proximity connector whilst keep everything else the same results in 9,883 potentially responsive documents (with families) compared to 2,681 with the proximity connector.



The Honorable Sean H. Lane
November 1, 2019
Page 9

The Vale Letter points to what it refers to as an egregious example and accuse the Joint Administrators of manipulating search terms to withhold responsive documents. This is presumably in respect of Vale Request No. 20 which demands

> Documents sufficient to identify the ownership structure of and beneficial interests in the Balda Foundation.

Vale raises an issue with the search including the word "Agnes." The Vale Letter states that "Searching only for "Agnes . . . assumes a conclusion that Agnes Steinmetz is the sole beneficiary of the Balda Foundation….". Vale Letter at 6. This is plainly wrong. The basis of the search is that Agnes Steinmetz was *a* beneficiary (but not necessarily the *sole beneficiary*). Accordingly, it is reasonable to require that she be listed in any potentially responsive document.

To be clear, the Joint Administrators have never indicated that they are unwilling to negotiate or compromise on search terms. In fact, the Joint Administrators provided a list of search terms to Vale's counsel in their initial production report. Vale's counsel has raised concerns with the employment of some of those terms, and the Joint Administrators' counsel has agreed to provide further explanation as to why certain terms and modifiers are used, as well as statistics showing how the search terms proposed by Vale will prolong the review and production process. But Vale wants to have it both ways – it wants the Joint Administrators to review an ever-widening universe of documents, but at the same time demand immediate completion of that process.

### C. Pending Issues

Faced with the fact that the Joint Administrators are nearing the substantial completion of their discovery obligations, Vale in the final section of the Vale Letter attempts to raise new complaints. The trifling nature of these complaints belies Vale's true strategy in this case, which is plainly to impose the greatest discovery burden possible upon the Joint Administrators. While Vale have been successful in this regard to date, these new complaints are invalid:

*Privilege log*. The Joint Administrators will provide a complete privilege log when their production is complete. Vale requests that the Joint Administrators provide their privilege log on a piecemeal basis. This request is extraordinary and unreasonable. While privilege designations are made throughout the course of the review, the final privilege log will require exporting a report from the electronic document review platform accounting for all documents withheld or redacted on the basis of privilege. Thereafter, the Joint Administrators will be required to format the report, ensure the completeness and accuracy of the metadata associated with each privilege document, and draft a summary of the privileged information either withheld or redacted from the previous productions to the extent not otherwise reflected in the metadata or other export materials.

*Prior Redactions*. The Joint Administrators will remove "commercially sensitive" redactions made to a certain set of document produced early in this process. The Joint Administrators and their review teams have been focused on meeting other production deadlines, but will reproduce these documents as soon as possible.



The Honorable Sean H. Lane
November 1, 2019
Page 10

*Third Party Requests*. As described more fully below, the Joint Administrators requested that certain third-parties turn over BSGR documents responsive to the Vale Discovery Requests to the extent such third parties may have such material in their possession. The Joint Administrators have received documents from only one party – Beny Steinmetz – and such documents were only provided on October 31, 2019. The Joint Administrators will undertake a preliminary review of these documents and will provide Vale and the Court with an anticipated timeline for the production of responsive documents. A further status update concerning the Joint Administrators' efforts to recover documents from third-parties is provided below.

### III.    *Conclusion.*

As evidenced above, the Joint Administrators' production process is on-going, proceeding in good faith, and substantially complete. However, despite their best efforts, the Joint Administrators could not meet the October 26 Deadline for completion of the production of certain documents. Accordingly, the Joint Administrators have respectfully requested an extension of the October 26 Deadline so that they may complete this production. While the Joint Administrators originally requested an extension through November 8, 2019, the Joint Administrators and their teams have had to divert much of their attention to responding to the Vale Letter. Consequently, the Joint Administrators respectfully request an extension through an including December 2, 2019. In the meantime, the Joint Administrators will continue to provide progress reports to Vale and continue their efforts to obtain responsive documents from relevant third parties.

Very truly yours,

*/s/ Frederick D. Hyman*
Frederick D. (Rick) Hyman