# EXHIBIT B

**Letter of Request for Benjamin Steinmetz**

**Request for International Judicial Assistance Pursuant to the Hague Convention of
18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Sean H. Lane<br>United States Bankruptcy Court<br>Southern District of New York<br>1 Bowling Green, Courtroom 701<br>New York, NY 10004 |
| **2.** | **Central Authority of the Requested State** | Administration of Courts<br>Legal Assistance to Foreign Countries<br>22 Kanfei Nesharim St.<br>Jerusalem 9546434 Israel<br>E-mail: foreign.countries@court.gov.il |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Sean H. Lane<br>United States Bankruptcy Court<br>Southern District of New York<br>1 Bowling Green, Courtroom 701<br>New York, NY 10004 |

**4.    Specification of the date by which the requesting authority requires receipt of the response to the letter of request**

| | |
|---|---|
| **Date** | In light of the Court's expedience in finalizing discovery prior to the Chapter 15 recognition proceedings, and the time for processing such requests abroad, it is recommended that document production occur by:<br><br>May 14, 2020. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED
APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| **5.** | ***a.* Requesting judicial authority (Article 3,a)** | The Honorable Sean H. Lane<br>United States Bankruptcy Court<br>Southern District of New York<br>1 Bowling Green, Courtroom 701<br>New York, NY 10004 |

*b.* **To the competent
authority of (Article 3,a)**      Israel

6. **Names and addresses of the Parties and their representatives (including
representatives in the requested State) (Article 3,b)**

    *a.* **Joint Administrators for
Debtor**      **Malcolm Cohen and William Callewaert in their
capacity as Joint Administrators for Debtor BSG
Resources Limited**

    **Representatives**      Frederick D. Hyman
Jarret Hitchings
Duane Morris LLP
1540 Broadway
New York, New York 10036
Telephone +1 212 692 1000

    *b.* **Creditor**      **Vale S.A.**

    **Representatives**      Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: +1 212 225 2000

    **Representatives**      Dan Sella
Doni Toledano
Erdinast, Ben Nathan, Toledano & Co.
4 Berkowitz St., Museum Tower
Tel Aviv 6423806
Telephone +972 3 7770111

    *c.* **Additional Custodians**      **Benjamin Steinmetz**
Mul HaYam Street 21,
Arsuf, Israel

    **Representatives**      Asserson Law Offices
Azrieli Centre, Round Tower, 32nd Floor,
132 Menachem Begin Road
Tel Aviv 6701101
+972 (0)3 744 9191

## 7. Nature of the proceedings and summary of claims (Article 3,c)

7.1     This action, captioned *In re BSG Resources Limited*, No. 19-11845 (SHL) (Bankr.

S.D.N.Y.) (the "Action"), is a Chapter 15 bankruptcy proceeding pending before the U.S.

Bankruptcy Court for the Southern District of New York (the "Court" or the "Requesting

Court").  William Callewaert and Malcolm Cohen, in their capacity as Joint Administrators and

Foreign Representatives (together, the "Joint Administrators") for the debtor BSG Resources

Limited (in administration) ("BSGR" or the "Debtor"), filed a petition (the "Verified Petition")

which seeks, among other relief, the recognition of the Debtor's administration proceedings in

Guernsey (the "Guernsey Administration") as a "foreign main proceeding" under sections

1517(a) and 1517(b)(1) of the United States Bankruptcy Code and an order staying, pursuant to

section 362 of the Bankruptcy Code, any action to interfere with the Debtor's assets located in

the United States.

7.2     To be recognized as a "foreign main proceeding" under the Chapter 15

Proceedings, the Joint Administrators bear the burden of proving, among other issues, that the

Debtor has its "center of main interests"  in Guernsey, the jurisdiction where BSGR's

administration proceedings were initiated.  While "center of main interests" is not defined by

statute, U.S. courts apply a broad review of "any relevant activities" of the debtor in performing

a "center of main interests" analysis.[1]  For example, U.S. courts have previously considered,

*inter alia*, (1) the location of the debtor's nerve center, "including from where the debtor's

activities are directed and controlled";[2] (2) the day-to-day management of investments and

---

[1] *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 130, 137 (2d Cir. 2013).
[2] *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation omitted).

business operations;[3] (3) the location of the debtor's board;[4] (4) the activities of the foreign

representative liquidator (or administrator, trustee or other similarly appointed person), including

whether the representative did "any more than the statutory minimum" and ascertained the

location of the debtor's assets;[5] (5) the location of the debtor's investment property and liquid

assets;[6] (6) the location of employees and managers;[7] and (7) the expectations of creditors with

regard to the location of a debtor's "center of main interests."[8]

7.3     Even if the Court finds that Guernsey is BSGR's "center of main interests," an

automatic stay following recognition as a foreign main proceeding is not guaranteed.  The Court

may grant relief from the automatic stay set out in section 362 of the United States Bankruptcy

Code and other similar relief if it finds that BSGR has acted in bad faith, including without

limitation, by taking actions such as (1) redistributing assets "in the face of an imminent adverse

ruling"; (2) attempting to control a foreign representative or other independent fiduciary; (3)

engaging in behavior resulting in the deprivation of the resources needed for a foreign

representative to fulfill his/her duties and/or (4) orchestrating a Chapter 15 case to deprive a

creditor of "much or all of the fruits of its judgments."[9]

7.4     Finally, the Joint Administrators have alternatively sought recognition of the

Guernsey Administration as a foreign non-main proceeding within the meaning of section 1517

of the United States Bankruptcy Code and thereby request discretionary relief under section

1521.  If the Court finds that BSGR has acted in bad faith in seeking recognition of the Guernsey

---

[3] *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 77 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012).
[4] *In re SPhinX, Ltd.*, 351 B.R. 103, 108 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)..
[5] *In re Creative Fin. Ltd.*, 543 B.R. 498, 502 (Bankr. S.D.N.Y. 2016).
[6] *Millennium Glob.*, 458 B.R. at 77.
[7] *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 337 (S.D.N.Y. 2008).
[8] *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 274-75 (S.D.N.Y. 2019).
[9] *In re Creative Fin. Ltd.*, 543 B.R. at 513.

Administration, it may deny any such request for discretionary relief sought by the Joint

Administrators.

7.5     BSGR is a Guernsey-registered corporation that is principally engaged in mining

operations in Africa and Eastern Europe.  BSGR is wholly owned by Nysco Management

Corporation Limited ("Nysco"), a company incorporated in the British Virgin Islands, which is

in turn wholly owned by the Balda Foundation ("Balda"), an irrevocable trust established in the

Principality of Liechtenstein whose primary beneficiaries are Benjamin (Beny) Steinmetz, an

Israeli businessman who ultimately controls BSGR, and his family members.  In this letter of

request, the term "BSGR" is used to refer to BSG Resources Limited as well as any of its

subsidiaries.

7.6     Vale S.A. ("Vale" or "Applicant"), a Brazilian corporation, is one of the world's

largest mining companies.  Vale is a creditor of BSGR, which holds a $2.1 billion London Court

of International Arbitration ("LCIA") arbitral award (the "Award") against BSGR upon the

LCIA Tribunal's finding that, *inter alia*, BSGR made fraudulent misrepresentations that induced

Vale to enter into a joint venture to develop an iron ore mining concession in the Republic of

Guinea that—unbeknownst to Vale—BSGR had acquired through bribery and corruption.  The

English High Court has subsequently upheld the Award against BSGR and dismissed BSGR's

challenge to the Award in a decision dated November 29, 2019.

7.7     On April 23, 2019, Vale applied for recognition and enforcement of the Award in

New York (the "Enforcement Proceeding").  BSGR then filed its Verified Petition on June 3,

2019, more than one year after the Administration was commenced, apparently in response to the

Enforcement Proceeding.  Vale has objected to the recognition of the Guernsey Administration

as a foreign main proceeding and the alternative discretionary relief requested by the Joint

Administrators both on the basis that BSGR's "center of main interests" lies outside of Guernsey and because of BSGR's bad faith, given that the sole purpose of the Chapter 15 Proceedings is to delay paying Vale—BSGR's largest creditor by far—while BSGR, its owners and its affiliates continue to self-deal and further divert their assets away from BSGR's creditors.

7.8     At the First Day hearing of the Chapter 15 Proceedings, Vale advised the Court that it intended to challenge the recognition of the Guernsey Administration.  The Joint Administrators represented that they anticipated they would produce "significant discovery" in advance of a July 10, 2019 status conference.[10]  Consequently, three days after the filing of the Verified Petition, on June 6, 2019, Vale sent informal document requests to the Joint Administrators.  On June 14, 2019, Vale followed these informal requests with formal document requests and interrogatories and noticed depositions for certain witnesses.

7.9     In the ensuing months, the Joint Administrators did not produce any material amount of documents.  The Requesting Court has repeatedly ordered the Joint Administrators to produce documents and denied their requests for protective orders.

7.10     On August 22, 2019, the Joint Administrators' continued failure to produce any documents in the prior weeks prompted the Court to issue an order making clear that BSGR's failure to produce documents could result in sanctions.[11]

7.11     Based on the Joint Administrators' August 27, 2019, letter to the Court describing their discovery process, it became clear that the Joint Administrators had not been searching for documents and communications from either Steinmetz, the namesake, founder, principal and ultimate beneficiary of BSGR, BSGR's current and former directors and officers or BSGR's corporate parents, Nysco and Balda.

---

[10] Hr'g Tr. 59:12-16, Dkt. No. 55, June 4, 2019.
[11] Memorandum Endorsed Order at 2, Dkt. No. 42.

7.12    The Joint Administrators initially argued that they did not have the practical

ability to obtain these documents.  At an October 3, 2019 hearing, the Court informed the Joint

Administrators that they were required to produce documents under their possession, custody or

control, including documents from Steinmetz, whom the Court noted was "involved up to his

eyeballs in the business of BSG[R]."[12]  On October 21, 2019, the Court issued a discovery order

(the "Discovery Order") that concluded, among other findings, that Steinmetz has a financial

interest in BSGR, that he has acted on behalf of BSGR and continues to hold himself out as

BSGR in connection with settlement negotiations with the Republic of Guinea and that he has

voluntarily participated in discovery on behalf of BSGR in the past.[13]  Specifically, the Court

also ordered the Joint Administrators to produce all documents responsive to Vale's requests

"that are in [the Joint Administrators'] possession, custody or control with respect to Beny

Steinmetz including without limitation such documents from Mr. Steinmetz's business or

personal email accounts," noting that such discovery was "appropriate given its potential

relevance to determining BSGR's center of main interests."[14]

7.13    The Joint Administrators represented that  by October 23, 2019, they had reached

out to Beny Steinmetz, as well as other custodians, for document productions to Vale as part of

the Chapter 15 Proceedings.

7.14    Since then, Steinmetz has produced a total of 52 documents, although he has not

produced a single email from any of his multiple email accounts.  Among his failure to produce

any documents with respect to all but two of the required categories approved by the Court,

Steinmetz has produced no documents concerning the proposed settlement of an International

---

[12] Hr'g Tr. 16:10-22, 44:5-46:22, Dkt. No. 64, Oct. 3, 2019.
[13] Discovery Order ¶ 2, Dkt. No. 69.
[14] *See id.* ¶¶ 1-6.

Centre for Settlement of Investment Disputes ("ICSID") arbitration between BSGR and the Republic of Guinea even though the Joint Administrators have (i) identified the ICSID arbitration claim as one of BSGR's valuable assets and (ii) provided sworn testimony to the Court stating that Steinmetz negotiated the proposed settlement.[15]  Indeed, Steinmetz's document production to date has not included *any* documents requested by Vale, aside from a very narrow and limited set of documents relating to BSGR's litigation of fraud claims in the Netherlands relating to Cunico Resources NV ("Cunico").  BSGR is a respondent in a claim amongst Cunico's shareholders regarding the dilution of Cunico's assets and, thus, the diminution of its value.

7.15    Similarly, Steinmetz has not produced any documents pertaining to his relationship, if any, with Niron Metals Plc ("Niron"), which has reportedly been involved in the ICSID settlement negotiations with the Republic of Guinea and stands to benefit materially from the proposed settlement.  Niron is a mining company that is reportedly set to receive rights to the Republic of Guinea's Zogota iron ore deposit as part of BSGR's settlement in the ICSID arbitration with the Republic of Guinea.

7.16    According to subsequent correspondence produced by the Joint Administrators, on November 21, 2019, counsel for the Joint Administrations in the Chapter 15 Proceedings renewed their request to Steinmetz, specifically focusing on Vale's requests regarding the involvement of Niron in the ICSID settlement proceedings with the Republic of Guinea.[16]  To date, there has not been any production of documents pertaining to Vale's requests and no further follow-up correspondence with Steinmetz.

---

[15] *See* Amended Declaration of Malcolm Cohen ¶ 44, Dkt. No. 24; Declaration of William Callewaert ¶ 18, Dkt. No. 54-1.
[16] Ex. D, Letter from Duane Morris to Cleary Gottlieb dated Nov. 22, 2019.

7.17    In light of the delay in document production from Steinmetz and other parties
related to BSGR, on December 4, 2019, the Court suggested that Vale may want to consider
pursuing additional avenues for discovery, including letters of request, to further assist and
expedite the discovery process.[17]  Similarly, in subsequent proceedings before the Court-
appointed Discovery Neutral, retired Bankruptcy Judge Allan Gropper, the Joint Administrators
have suggested that Vale pursue letters of request in light of their failure to obtain the
cooperation of Steinmetz and other parties.  In the contested Chapter 15 Proceedings, including
at the hearing to consider the Joint Administrators' request for recognition, the Joint
Administrators and Vale will present competing evidence at a hearing before Judge Lane, who,
based on the documents and testimony presented to him, will determine whether the Guernsey
Administration should be recognized as a foreign main or non-main proceeding by U.S. courts
and whether discretionary relief should be granted.

7.18    The Discovery Order requires the Joint Administrators to produce documents
from the additional custodians that are in their possession, custody or control and further requires
the Joint Administrators to "use their best efforts to complete discovery as soon as possible."[18]
This letter of request seeks to obtain evidence that the Joint Administrators have not obtained
voluntarily from Steinmetz over the last several months.  Without detracting from the Joint
Administrators' court-ordered obligation to produce Steinmetz's documents, or any sanctions
Vale may seek for their failure to comply with such obligation, Vale now seeks to reinforce the
Joint Administrators' request by seeking international assistance from the Administration of
Courts of Israel, Legal Assistance to Foreign Countries, in an effort to complement the Joint
Administrators' attempts to obtain such documents.

---

[17] Hr'g Tr. 15:7-18:6, Dkt. No. 80, Dec. 4, 2019.
[18] Discovery Order ¶ 9.

**8.      Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1      Vale submits this letter of request for documents and oral testimony from Steinmetz as an additional custodian who to date has not produced virtually any relevant documents pursuant to the Requesting Court's Discovery Order dated October 21, 2019, believed to be in his possession, custody or control.

8.2      The information sought is relevant to the determination of BSGR's "center of main interests," which is a key consideration in determining whether the Guernsey Administration should be recognized as a "foreign main proceeding" in connection with the Chapter 15 Proceedings.  Moreover, Vale seeks evidence to establish the Joint Administrators' and BSGR's bad faith in the conduct of its business and in pursuing Chapter 15 recognition so as to delay BSGR's financial and legal obligations while assets are being diverted away from BSGR's largest creditor, Vale, including as such evidence relates to the Joint Administrators' requests for relief from the Court.

8.3      Mr. Benjamin (Beny) Steinmetz ("Steinmetz" or "Witness") possesses ultimate control and beneficial ownership of BSGR.  He has knowledge of facts bearing on key issues in this case.

8.4      It is accordingly requested, for the purpose of justice and for due determination of the matters in dispute between the parties, that you direct Steinmetz to produce documents and to provide oral testimony for use at trial (if appropriate) to counsel for the Applicant, subject to any applicable privileges that may apply under the rules and procedures of Israel's Administration of Courts.  The Witness's unique importance to the claims and defenses is described both above and in the subject matter as to which he is to be examined and the documents sought to be inspected, detailed in Sections 10 and 11 below.

| 9. | **Identity and address of person subject to the letter of request (Article 3,e)** | Benjamin Steinmetz<br>Mul HaYam Street 21,<br>Arsuf, Israel |
|----|------|------|

**10.    Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)**

It is requested that Steinmetz be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of Israel's Administration of Courts, on the following subjects:

10.1    BSGR's business and operations, day-to-day management and relationship with its parents and affiliates, including, but not limited to, Nysco, Balda, Onyx Resources Limited ("Onyx") and BSG Capital Markets PCC Limited ("BSGCM"), including the geographical location of its assets and operations and the conduct of its business at all times since January 1, 2014 and continuing during the Guernsey Administration.

10.2    Steinmetz's communications with directors and officers of BSGR, including but not limited to Mr. Dag Lars Cramer ("Cramer") and Mr. Peter Driver ("Driver"), and representatives of and advisors to BSGR, if any, regarding the Guernsey Administration, the Chapter 15 Proceedings, Vale's enforcement of its Award against BSGR, the ICSID arbitration settlement, claims against George Soros and the Open Society Foundations in the United States (the "Soros Claims")[19] and/or the transfer of any interest in BSGR's assets to any of Steinmetz, his family members, BSGR's parents or affiliates or any other entity in which Steinmetz or his family members have any ownership or other beneficial interest.

---

[19] *BSG Resources Ltd. v. Soros*, No. 17-cv-02726-JFK-OTW (S.D.N.Y. Apr. 14, 2017).  The Joint Administrators have presented this claim as one of BSGR's most valuable assets and its only asset in the United States.

10.3    Steinmetz's knowledge of the motive and impetus for the commencement of the

Guernsey Administration and subsequent Chapter 15 Proceedings.

10.4    Steinmetz's role and responsibilities in his capacity as an advisor to BSGR, as

well as any advisory services provided by Steinmetz to BSGR or its affiliates.

10.5    Steinmetz's current or prior, direct or indirect ownership or beneficial interest in

or affiliation or relationship, if any, with Nysco.

10.6    Steinmetz's status as a beneficiary of the Balda Foundation and any information

regarding the identity of its other beneficiaries.

10.7    BSGR's and/or Steinmetz's engagement or use of public relations and reputation

management firms with respect to matters related to BSGR or that were paid for by BSGR

between January 1, 2014 and today, including but not limited to the engagement of Powerscourt

Group and Buchanan Consulting LLC.

10.8    The payment of any of Steinmetz or his family's expenses from BSGR's accounts

between January 1, 2014 and today, including any approvals sought or obtained for such

payments.

10.9    Steinmetz's role in and/or knowledge of the transfer of BSGR assets to its parents

or affiliates or any other entity in which Steinmetz or his family members have an ownership or

beneficial interest, including, without limitation, the disposition of the funds to any recipient

(whether or not affiliated with Steinmetz) that relate to an April 2010 payment of $500 million

from Vale to BSGR.

10.10    Steinmetz's participation in and/or knowledge of discussions and negotiations

regarding the proposed or actual settlement of BSGR's ICSID arbitration dispute with the

Republic of Guinea.

10.11    Steinmetz's participation in and/or knowledge of discussions and negotiations with Niron regarding any agreements or any other relationships between BSGR and Niron, including, without limitation, relating to the Zogota mining concession in the Republic of Guinea.

10.12    Steinmetz's or his family members' current, prior, future or potential future, direct or indirect ownership or beneficial interest in or affiliation or relationship, if any, with Niron or any of its affiliates.

10.13    Steinmetz's or his family members' current or prior, future or potential future, direct or indirect ownership or beneficial interest in or affiliation or relationship, if any, with Global Special Opportunities Limited ("GSOL"), a purported shareholder of Niron, or any of its affiliates.

10.14    Steinmetz's or his family members' current or prior, direct or indirect ownership or beneficial interest in or affiliation or relationship, if any, with Litigation Solutions Limited ("LSL"), the purported litigation funder of the Soros Claims, or any of its affiliates.

10.15    Steinmetz's or his family members' current or prior, direct or indirect ownership or beneficial interest in or affiliation or relationship, if any, with Star West Investments ("Star West"), a purported current creditor to BSGR, or any of its affiliates.

10.16    Steinmetz's or his family members' current or prior, direct or indirect ownership or beneficial interest in or affiliation or relationship, if any, with Onyx, a company for which Cramer served as CEO and which has provided advisory services to BSGR, or any of its affiliates.

10.17    Steinmetz's or his family members' current or prior, direct or indirect ownership or beneficial interest in or affiliation or relationship, if any, with Heimdal Holdings Limited

(f/k/a DLC Advisors Limited) ("Heimdal"), Lansdell Partners ("Lansdell") or Invicta Advisory

SA ("Invicta"), advisory service and consultancy companies affiliated with both Cramer and

BSGR, or any of their affiliates.

10.18   Steinmetz's or his family members' current or prior, direct or indirect ownership

or beneficial interest in or affiliation or relationship, if any, with West African Power Limited

("West African Power"), a subsidiary of BSGR, or any of its affiliates, and any negotiations by

Steinmetz purportedly on West African Power's behalf with Forte Oil plc ("Forte Oil") and

Amperion Power Distribution Company Limited ("Amperion"), or any of their affiliates.

10.19   Steinmetz's or his family members' current or prior, direct or indirect ownership

or beneficial interest in or affiliation or relationship, if any, with Roslindale PTE Limited

("Roslindale"), a company of which BSGR owns preference shares, or any of its affiliates.

10.20   Steinmetz's or his family members' current or prior, direct or indirect ownership

or beneficial interest in or affiliation or relationship, if any, with Nammax Oil & Gas Limited

("Nammax"), a subsidiary of Roslindale, or any of its affiliates.

10.21   The transfer or assignment by Standard Chartered Bank of any outstanding debt

owed by BSGR to Standard Chartered Bank in connection with the Octea Limited ("Octea"), a

subsidiary of BSGR, facility agreement to Star West, its affiliates, or any other entities between

August 1, 2016 and today, including any actions taken or approvals or consents granted by or on

behalf of Steinmetz or any family member or entity in which Steinmetz or such family member

has a current or prior, direct or indirect ownership or beneficial interest in connection therewith.

10.22   Steinmetz's or any family members' role in and/or knowledge of the sale of

diamonds from Octea and/or any of its subsidiaries to any third parties, including but not limited

to Penford (Israel) Limited, Laurelton Diamonds Inc., Infinite Diam Limited or Patrick Saada

(Steinmetz's brother-in-law).

10.23   Steinmetz's role in and/or knowledge of actions and decisions taken by BSGR to

transfer BSGR's assets either directly or indirectly to other entities associated with or directly or

indirectly owned by or that have a beneficial intersest held by Steinmetz or any family member,

and the current locations of such assets.

## 11.    Documents or other property to be inspected (Article 3,g)

It is requested that Steinmetz be required to produce the specified documents

described herein as are believed to exist in his power, possession, custody or control.  Such

documents are necessary for the purposes of justice and for the due determination of the matters

in dispute between the parties.

11.1    Documents sufficient to identify Steinmetz's current residence(s) and any

residences held by Steinmetz between January 1, 2014 and today.

11.2    Bank statements, invoices, payment receipts, wire transfer receipts and

comparable records reflecting any direct or indirect transfers or payments from BSGR accounts

to Steinmetz or his family members, including for any expenses, between January 1, 2014 and

today.

11.3    Documents reflecting any approvals sought or obtained for any direct or indirect

transfers or payments from BSGR accounts to Steinmetz or his family members, including for

any expenses, between January 1, 2014 and today.

11.4    Employment agreements, agency agreements, memoranda of understanding,

correspondence, retainer agreements and any other contractual arrangements identifying any

advisory services provided by Steinmetz to BSGR or its affiliates between January 1, 2014 and

today.

11.5    Bank statements, invoices, payment receipts, wire transfer receipts and comparable records reflecting compensation, including but not limited to salaries, bonuses or other forms of compensation or reimbursement of expenses to Steinmetz for rendering advisory services to BSGR or its affiliates between January 1, 2014 and today.

11.6    Balda Foundation board meeting minutes between January 1, 2014 and today.

11.7    Correspondence, meeting minutes, notes and other documents demonstrating negotiations by Steinmetz on behalf of West African Power with Forte Oil and/or Amperion between January 1, 2014 and today.

11.8    Bank statements, invoices, payment receipts, wire transfer receipts and comparable records reflecting any direct or indirect transfers or payments since January 1, 2014, between BSGR or its affiliates and:

11.8.1    LSL or its affiliates, if any;

11.8.2    Star West or its affiliates, if any;

11.8.3    Niron or its affiliates, if any;

11.8.4    GSOL or its affiliates, if any;

11.8.5    Onyx or its affiliates, if any;

11.8.6    Norn Verdandi Limited ("Norn Verdandi"), a company believed to be wholly owned by Cramer, or its affiliates, if any;

11.8.7    BSGCM or its affiliates, including but not limited to Gabriel Resources, a subsidiary of BSGCM, if any;

11.8.8    Heimdal or its affiliates, if any;

11.8.9    Lansdell or its affiliates, if any;

11.8.10    Invicta or its affiliates, if any.

11.9    Bank statements, invoices, payment receipts, wire transfer receipts and comparable records reflecting any direct or indirect transfers or payments from BSGR to Nysco, Balda or BSGR affiliates from funds that relate to Vale's payment of $500 million to BSGR in April 2010.

11.10    Emails, letters, meeting minutes, call summaries and/or other documents and communications concerning the Soros Claims exchanged with any BSGR employees, directors or officers, including without limitation Cramer and Driver, or the Joint Administrators or their representatives between April 1, 2017 and today.

11.11    Organizational charts, corporate registers, incorporation documents, articles of association and other similar official records sufficient to identify any present or past, future or potential future, direct or indirect financial or ownership or beneficial interests, including contingent interests, Steinmetz or his family members hold or have held in Niron or its affiliates between January 1, 2018 and today.

11.12    Organizational charts, corporate registers, incorporation documents, articles of association and other similar official records sufficient to identify any present or past, direct or indirect financial or ownership or beneficial interests, including contingent interests, Steinmetz or his family members hold or have held in GSOL or its affiliates between January 1, 2018 and today.

11.13    Organizational charts, corporate registers, incorporation documents, articles of association and other similar official records sufficient to identify any present or past, direct or indirect financial or ownership or beneficial interests, including contingent interests, Steinmetz

or his family members hold or have held in Roslindale or its affiliates between January 1, 2018
and today.

11.14    Organizational charts, corporate registers, incorporation documents, articles of
association and other similar official records sufficient to identify any present or past, direct or
indirect financial or ownership or beneficial interests, including contingent interests, Steinmetz
or his family members hold or have held in Nammax or its affiliates between January 1, 2018
and today.

11.15    Settlement agreements, binding or non-binding settlement term sheets and any
other contractual arrangements, including drafts and unexecuted versions, between or among any
of BSGR, Steinmetz, Cramer, Niron and the Republic of Guinea relating to the ICSID arbitration
*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL v.
Republic of Guinea*, ICSID Case No. ARB/14/22, and/or the claims asserted therein, dated or
created between January 1, 2018 and today, and any other documents related thereto.

11.16    Settlement agreements, binding or non-binding settlement term sheets and any
other contractual arrangements, including drafts and unexecuted versions, between or among any
of BSGR, Steinmetz, Cramer, Niron and the Republic of Guinea relating to the Zogota mining
concession in the Republic of Guinea, dated or created between January 1, 2018 and today, and
any other documents related thereto.

11.17    Records of attendance, meeting minutes and notes taken by individuals present
during any settlement discussions between or among any of Steinmetz, Cramer, the Joint
Administrators or other BDO personnel, BSGR representatives, Niron representatives and
representatives of the Republic of Guinea, including but not limited to any meetings involving

Steinmetz, Nicholas Sarkozy, Alpha Condé, Cramer and any other agents or representatives of BSGR that took place between January 1, 2018 and today.

11.18   Employment agreements, agency agreements, correspondence, retainer agreements and any other contractual arrangements to which BSGR and/or Steinmetz is a party, authorizing any agents, representatives or intermediaries to negotiate any settlement of the ICSID arbitration with the Republic of Guinea on behalf of BSGR, dated or created between January 1, 2018 and today.

11.19   Emails, letters, meeting minutes, call summaries and other documents and communications with Niron or its agents or representatives concerning the negotiation or settlement of BSGR's ICSID arbitration, revenue-sharing agreements, relationship to the Zogota mine, Vale's LCIA arbitral award against BSGR or the enforcement of the Award dated or created between January 1, 2018 and today.

11.20   Agreements, memoranda of understanding, correspondence and any other contractual arrangements concerning any interest or potential interest in Niron, of Steinmetz or any other entity in which Steinmetz or his family members have any ownership or other beneficial interest.

11.21   Agreements, memoranda of understanding, correspondence and any other contractual arrangements concerning the sale of diamonds by Octea or its subsidiaries to any third parties, including but not limited to Penford (Israel) Limited, Laurelton Diamonds, Infinite Diam or Patrick Saada (Steinmetz's brother-in-law), dated or created between April 1, 2014 and today.

**12.    Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of Erdinast, Ben Nathan, Toledano & Co., Museum Tower, 4 Berkowitz St., Tel Aviv, 6423806, or such other place as the parties may agree.

**13.    Special methods or procedures to be followed (Articles 3,i and 9)**

13.1    The Requesting Court further requests that Jeffrey A. Rosenthal, Lisa M. Schweitzer and Lisa Vicens, who are representatives of Vale and who are qualified to question witnesses and represent parties in the United States under the laws of the United States, be appointed as Commissioners pursuant to Article 17 of the Convention and be authorized to question the Witness on the subjects identified above and elicit his sworn or solemnly-affirmed testimony.

13.2    Pursuant to Article 9 of the Convention, it is requested that the legal representatives of Vale be permitted to conduct the examination of each Witness in Israel before an impartial attorney registered under the Israeli Bar Association Law, 5721-1961, who has been practicing law for more than five years and in Israel for more than two years (the "Examiner"), and who shall preside over the taking of the evidence and act as referee.  Vale designates Reuven Behar of Fischer Behar Chen Well Orion & Co., 3 Daniel Frisch St., Tel Aviv 6473104, Israel, to act as the Examiner for purposes of the requested U.S.-style deposition.  It is requested that the Witness be placed under oath or solemn affirmation in accordance with whatever procedure Israeli law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above, which are put to them by the legal representatives referred to above.

13.3    The Requesting Court believes that the procedure of having these attorneys
appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with
the relevant events and transactions in this complex matter.  Accordingly, they will be able to
elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the
questioning were to be done by someone not familiar with the relevant facts, there is a strong
possibility that complete and accurate testimony would not be obtained.

13.4    The Requesting Court respectfully requests that the representatives of Vale be
allotted a total of seven hours for their examination, exclusive of breaks.  To the extent an
interpreter is used for translation into/from the English language, the time allotted set forth above
shall be doubled.  Counsel for these parties will consult with the Witness's legal representatives
in order to determine a mutually convenient date to conduct the examination on or before June
15, 2020, as approved by you.

13.5    The Requesting Court also respectfully requests that the questions and the
responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript.
The verbatim transcript of the Witness's responses to questions under oath taken pursuant to the
letter of request issued or endorsed by the Courts will be admissible at trial in certain
circumstances to be agreed among the parties (or, failing agreement, as directed by the
Requesting Court), except to the extent that the content of such transcript of the examination
would, for reasons other than the fact that it was obtained in an out-of-court examination,
otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at
trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause
the testimony of the Witness to be duly marked for authentication and that you further
authenticate the examination by the seal of your Court or in such other way in accordance with

your procedure and return the written evidence and documents produced or identified to Jeffrey A. Rosenthal of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 under cover duly sealed.  The Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of Israel.

13.7    The appearance of the Witness for his testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the Witness to give evidence in response to this letter of request if the Witness is uncooperative.

**14.    Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)**

Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York, NY 10006
Telephone +1 212 225 2086
jrosenthal@cgsh.com

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None

**16.    Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or Israel or would disclose a privileged communication.

**17.** **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

The fees and costs incurred, which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this letter of request for the service of process necessary to secure the appearance of the Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by Vale. The payment of any such fees and costs is without prejudice to the Applicant's right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST

…………………………………..

SIGNATURE AND SEAL OF THE                  ……………………………………….
REQUESTING AUTHORITY