# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

THOMAS J. MOLONEY
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM

MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO

HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212-225-2086
jrosenthal@cgsh.com

May 5, 2020

VIA ELECTRONIC MAIL AND ECF

The Honorable Sean H. Lane
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408
shl.chambers@nysb.uscourts.gov

Re:   *In re BSG Resources Limited*, No. 19-11845 (SHL)

Dear Judge Lane:

We write on behalf of Vale S.A. ("Vale") in response to the Joint Administrators' letter dated May 4, 2020 requesting a pre-motion conference and providing a status update. Given that their letter was not submitted in consultation with us and does not present a complete and accurate picture, we are compelled to provide the Court with our own update and explanation of the current dispute.

**Introduction**

At the outset, the Joint Administrators' letter does not divulge the crux of their intended motion, stating only that "the Joint Administrators intend to move for modification of the Protective Order to provide, among other relief, for reference of this and future confidentiality designation challenges to the Discovery Neutral."[1]  The undisclosed "among other relief" to which the Joint Administrators refer is actually the centerpiece of their intended motion:  the amendment of paragraph 27(a) of the Court-ordered Confidentiality Stipulation and Protective Order (the "Protective Order") [ECF No. 39] to increase the three-day requirement for

---

[1]   See Joint Administrators' Letter to the Court, May 4, 2020 [ECF No. 88] at 4.

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the cities listed above.

Hon. Sean H. Lane, p. 2

a party to move the Court to sustain any claim of confidentiality by as much as ten-fold, to thirty days.

This dispute is the latest example of an entirely "self-inflicted"[2] wound by the Joint Administrators. The reason the Joint Administrators desire to amend the Protective Order is they have so thoroughly violated that order by "designat[ing] nearly all of their production as 'CONFIDENTIAL'" – as the Joint Administrators admit on page 3 of their letter – that they are now overwhelmed by the prospect of having to comply with the agreed-upon, Court-ordered timetable to justify their improper designations.

The Protective Order, which was approved by the Court after month-long negotiations between the parties, contains a procedure (and timetable) for the presentation of confidentiality disputes to the Court that mirrors confidentiality orders entered by courts in the Southern District of New York every day. Critically, the Protective Order did not obviate the Joint Administrators' obligation to be judicious in the use of the confidentiality designation. To the contrary, the parties agreed upon, and Your Honor approved, a narrow definition consistent with public policy.

Not only did the Joint Administrators' designation of nearly every document as confidential violate the unambiguous language of the Protective Order, but Your Honor expressly warned them to use the confidentiality and attorney's eyes only designations "in a fairly surgical way," noting that if it is "slapped on everything that's produced, [] that's not going to be acceptable."[3] The Joint Administrators' statement in their May 4 letter that "[b]ecause the Protective Order allows broad use of 'CONFIDENTIAL' documents in this Chapter 15 Case, Vale is not prejudiced in these proceedings by the Joint Administrators' confidentiality designations" flies in the face of the Court's admonition. Were their argument cognizable, there would *never* be any need to define what constitutes a "confidential" document. This claim of non-prejudice, however, is all the Joint Administrators offer to justify their intentional disregard for the contours of the Protective Order.

Vale has made several overtures since March to persuade the Joint Administrators to rectify this situation and offered several potential cost-effective solutions that would likely eliminate the need for an expensive process.[4] Not only have they refused to reach an amicable resolution, but they have apparently done nothing to correct their improper designations. The challenge procedure was a critical component of the bargain that went into the Protective Order in the first place – an expedited schedule for a party to justify its confidentiality designations is intended to dissuade a party from making confidentiality "a label slapped on

---

[2]     See Hr'g Tr. 4:17-5:22, Nov. 4, 2019.

[3]     Hr'g Tr. 75:16-76:4, Jul. 29, 2019.

[4]     We wrote letters to Duane Morris on March 31 and April 1, met and conferred on April 6, wrote further letters to Duane Morris on April 8 and 9, met and conferred again on April 14, exchanged a series of emails between our UK colleagues on April 15 and 16, held a third meet and confer on April 16, wrote to the Joint Administrators' UK counsel on April 20, held a fourth meet and confer on April 21, wrote an email to Duane Morris on April 23 and wrote one final letter to Duane Morris on April 26.

Hon. Sean H. Lane, p. 3

everything that's produced." It would only reward the Joint Administrators' misconduct to grant them another month before they even have to bring confidentiality disputes to the Court merely because the volume of their own improper designations is so great.[5] And, as discussed below, it would greatly prejudice Vale because we have spent the past few months negotiating with the Joint Administrators without the urgency that would have existed were the challenge procedure in the Protective Order far more drawn out.

To give the Court an objective measure of the magnitude of the Joint Administrators' abuse of the Protective Order, approximately one month ago, we furnished the Joint Administrators with an initial list of 740 documents that we believe are representative of the many thousands that have been improperly designated as confidential. This past Wednesday, April 29, *the Joint Administrators acknowledged that **90% of them do not merit confidential treatment***. The 77 remaining documents over which they continue to claim confidentiality include many documents that on their face cannot be confidential, including the publicly available LCIA Arbitral Award,[6] public filings and even correspondence *written by Vale*. We annex hereto as Exhibit A several examples of these documents over which the Joint Administrators insist on litigating confidentiality. Remarkably, we are compelled to file the exhibits to this letter under seal because the Joint Administrators continue to insist that they are confidential.

The discovery process has revealed documents that have caused Vale to revisit the entire premise of the Joint Administrators' claim that their information and the Guernsey proceedings are entitled to particular confidentiality. As Your Honor may recall, when they filed their Chapter 15 petition, the Joint Administrators unsuccessfully sought this Court's approval to file the Driver Affidavit under seal on the basis that its confidential treatment was mandated by the Guernsey Court. Only on January 31, 2020 when the Joint Administrators finally produced transcripts of the Guernsey proceedings that had been requested at the start of this case[7] did we learn the Guernsey Court's true views about the *Joint Administrators'* insistence on confidentiality. Because the transcript has been produced with a confidentiality stamp, rather than quote the Guernsey Court in this letter and thereby have to file it under seal, we refer the Court to Exhibit C hereto, where we have highlighted the relevant passage.[8]

---

[5] While the Court initially urged the Joint Administrators not to delay their production pending uncertainty over confidentiality, attorneys' eyes only or GDPR issues and thus accept Vale's offer to *provisionally* treat all documents as attorneys' eyes only, see Hr'g Tr. 77:1-77:21, Jul. 29, 2019, the Joint Administrators rejected that suggestion and thus waited until late October 2019 to meaningfully begin their production. In any event, even had the Joint Administrators so designated all of their early-produced documents on that basis, it would have only been provisionally in order to commence production quickly.

[6] Notably, the Joint Administrators attached the LCIA Award to their Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief ("Verified Petition") on June 3, 2019 [ECF No. 5]. See Verified Petition Ex. C.

[7] The Joint Administrators first represented that the hearings were neither recorded nor transcribed and later that they were confidential under Guernsey law.

[8] See Ex. C, JA0135184.

Hon. Sean H. Lane, p. 4

The Joint Administrators' sole explanation to the Guernsey Court in support of confidentiality was to keep the information away from Vale, BSGR's substantially largest creditor.

By letter dated December 3, 2019, the Joint Administrators declared to the Court that their production was "materially complete."[9]  Vale disagreed, and as a result of the engagement of Judge Gropper, *approximately 40% of the Joint Administrators' produced documents* came after their "materially complete" declaration, including some of the most compelling evidence that this Court will see when the recognition hearing is ultimately held. This includes a February 2019 email written by Joint Administrator Malcolm Cohen and produced just a few weeks ago that stands in stark contrast to repeated representations made by the Joint Administrators to this Court, including from BDO partner Stephen Peters on October 3, 2019 when he declared to Your Honor in open court that "I'd just like to make a point regarding the repeated statements about the role that Mr. Steinmetz in negotiating a deal with Guinea. That is just clearly -- that is untrue.  He may -- he may have been involved in assisting discussions, but we got notification from Dag Cramer."[10]  Rather than quote Mr. Cohen's email in this letter, which would require us to file it under seal (as opposed to just the exhibits as we are doing), we simply urge the Court to review for itself both the email and the attachment (annexed as Exhibit B),[11] which is also relevant to the ownership structure of the "new" Guinean investor entity, and the Joint Administrators' knowledge of that structure long before they came to this Court.

**Recent Developments**

Around the time of our last status conference with Your Honor, there were two major developments in England with regard to Vale's efforts to remedy the massive fraud perpetrated against it.  First, on December 5, 2019, we were provided with the Judgment of the English High Court dated November 29, 2019 rejecting BSGR's challenge to the arbitral award and entering judgment in Vale's favor.  Enforcement proceedings in England – where the Joint Administrators have never sought recognition of the Guernsey administration – are ongoing (the "UK Enforcement Proceeding").

Second, Vale commenced an action against Beny Steinmetz, Balda Foundation, Nysco Management Corp. ("Nysco") and five other individuals for fraud and other claims arising out of their roles in connection with BSGR's fraud and their receipt of proceeds of that fraud (the "UK Fraud Proceeding" and together with the UK Enforcement Proceeding, the "UK Proceedings").  After being presented with extensive evidence in support of Vale's claims in the UK Fraud Proceeding, on December 3, 2019, the English High Court entered a worldwide freezing order ("WFO") against the assets of all eight defendants.  The defendants were given an opportunity to challenge the WFO; that deadline has now passed without challenge by a single defendant.

---

[9]    Letter from Joint Administrators to Vale Discovery Update, Dec. 3, 2019 [ECF No. 78].

[10]   Hr'g Tr. 40: 19-24, Oct. 3, 2019.

[11]   See Ex. B, JA0145745.

On March 5, 2020, Judge Broderick enforced Vale's arbitration award and entered judgment against BSGR in excess of $2 billion (the "<u>SDNY Enforcement Proceeding</u>"). In exchange for Vale's agreement to refrain from serving discovery on BSGR for 150 days (but not on third parties), the Joint Administrators stipulated – and Judge Broderick ordered – that Vale would have the right to use in the SDNY Enforcement Proceeding any and all documents produced by the Joint Administrators in this Chapter 15 proceeding.

**<u>The Path Forward: Document Sharing Is Cost Efficient and May Obviate This Dispute</u>**

As document discovery is permitted in each of the UK Enforcement Proceeding, the UK Fraud Proceeding and the SDNY Enforcement Proceeding, it was readily apparent that substantial efficiency and cost savings (to both Vale and the BSGR estate) could be afforded through Vale's use of these same documents in the other proceedings rather than requiring separate reviews and productions.[12] As a result, beginning in December 2019, Vale has repeatedly reached out to the Joint Administrators seeking their consent to the use of a single set of produced documents across all of the proceedings.

Vale's interest in eliminating the need for duplicative document discovery is shared by BSGR director Dag Cramer. Specifically, on February 13, 2020, the English High Court in the UK Enforcement Proceeding ordered Cramer, as a current director of BSGR, to produce documents relating to BSGR's means of paying the judgment debt. Cramer's counsel has taken the position that Vale ought to be able to obtain the majority of documents sought from the Chapter 15 Proceedings.[13] Unfortunately, while Vale is amenable to reducing Cramer's duty to produce documents by using the documents already produced in this proceeding to avoid the production of duplicative documents by Cramer, the Joint Administrators have refused to consent. They have proposed an absurd procedure in which *Vale* would review the Joint Administrators' entire production and identify all documents that are subject to Cramer's production obligation. While this is backwards – it is Cramer who bears the burden to the extent he wishes to reduce his responsibility to produce documents – but for the Joint Administrators' refusal to consent, nobody should have to undertake such an expensive and wasteful exercise.

We also note that the UK Fraud Proceedings, if successful, would be an enormous benefit to the administration of BSGR because every dollar that Vale collects from the eight defendants could potentially reduce BSGR's liability. Indeed, but for the fact that the Joint Administrators' benefactor, Nysco, has prohibited the Joint Administrators from taking any steps even to investigate claims against Steinmetz and his fellow wrongdoers responsible for BSGR's predicament, actions similar to the UK Fraud Proceedings would ordinarily be pursued by the Joint Administrators themselves. Purporting to be independent of Steinmetz, the Joint Administrators have never explained why they would not embrace – let alone attempt to thwart,

---

[12] This is particularly important to Vale given that, as BSGR's largest creditor by far, the incurrence of unnecessary expenses by the Joint Administrators will likely come out of Vale's own pocket. Moreover, the Joint Administrators have cited cost concerns to justify their limited searches for responsive documents in this Chapter 15 proceeding.

[13] Ex. D, DC0008407.

Pg 6 of 7

Hon. Sean H. Lane, p. 6

as they are doing by refusing to consent to our use of the produced documents (which would remain confidential) – Vale's willingness to pursue justice at its own expense.

The Joint Administrators initially proposed that Vale disclose to the Joint Administrators all of the documents it identified through its work product as being of interest for potential use in UK Fraud Proceedings and then, even with respect to documents that we believe were not properly designated as confidential in the first place, pay the Joint Administrators' UK counsel to review all of those documents in order to consider providing consent. Vale declined that "offer." The Joint Administrators then granted consent to Vale's use of all Chapter 15 documents conditioned upon the protection of the English confidentiality procedures, only to attempt to withdraw such consent after Vale confirmed their acceptance of that condition.

Vale's need to obtain the Joint Administrators' consent to use these documents presupposes that they are confidential in the first place. While we would obviously prefer not to waste Vale's time and money, or the Court's resources, litigating the Joint Administrators' blatant abuse of the confidentiality designation to restrict Vale's use of objectively non-confidential documents – and have sought for more than four months to negotiate an agreement that obviates that need for now (and perhaps forever) – Cramer's position that he should not be required to produce documents produced by the Joint Administrators coupled with the Joint Administrators' refusal to provide their consent leaves us with little choice in order to ensure that Vale's efforts to enforce the arbitration award can continue efficiently and without becoming beset by wasteful collateral disputes over document production. If the Joint Administrators wish to prohibit Vale from using confidential documents in the UK Proceedings (even under procedures that protect their confidentiality), they give us no choice but to ensure that that prohibition applies only to documents that are appropriately designated confidential in the first place since the Joint Administrators have no right – nor do they claim one – to restrict Vale's use of non-confidential documents.

While putting the Joint Administrators on notice more than a month ago that Vale would challenge the Joint Administrators' abuse of the Protective Order by designating nearly every document as confidential notwithstanding the Court's admonition, Vale has patiently sought to negotiate a resolution. We are, regrettably, no closer to a resolution today than we were when we began, but the need for a resolution has become more pressing; we and Mr. Cramer will soon be forced to litigate in the English High Court his obligation to produce documents that includes documents we already have but which the Joint Administrators forbid us to use. And the UK Fraud Proceedings are moving forward without our having the use of documents in our possession which would advance Vale's claims to the benefit of Vale and the BSGR estate unless either confidentiality is lifted over documents that are not confidential or we pay substantial sums to the Joint Administrators' counsel to review our work product on a document-by-document basis. The Joint Administrators' 11th hour request to this Court (which they never suggested to us once during our negotiations) to modify the Protective Order to drag out the timetable set forth therein by as much as *ten-fold* not only rewards the Joint Administrators for the magnitude of their mis-designations in the first place, but it would penalize Vale for having sought to work things out since December confident that it could attempt to negotiate a reasonable resolution before involving the Court because when the clock

Hon. Sean H. Lane, p. 7

ran low, the Court-ordered procedure was explicitly designed to be swift. Moving the goalposts now would prejudice Vale for its patience.[14]

Given that the Joint Administrators *have* stipulated to Vale's unconditional use of every document produced in the Chapter 15 proceeding in the SDNY Enforcement Action, there is truly no principled basis on which they now refuse to permit Vale to use these documents in the UK Proceedings, particularly since English court procedures have protections against the public disclosure of confidential documents and we have offered to abide by those protections.

With regard to the relief actually disclosed in the Joint Administrators' May 4 letter, the Discovery Neutral appointment order makes clear that only matters that are the subject of the consent of both parties may be referred to Judge Gropper. We believe that the Joint Administrators seek to refer this issue to the Discovery Neutral to keep Your Honor unaware of the extent of their abuse of process, for which Vale intends to seek sanctions from the Joint Administrators themselves if they continue to reject our efforts at an amicable resolution and force Vale to litigate over thousands of documents that they improperly designated.

There is one final issue raised by the Joint Administrators' letter, namely their request for a pre-motion conference to file their application pursuant to paragraph 27(a) of the Protective Order. Respectfully, this is a ruse intended by the Joint Administrators to circumvent the existing Court-ordered deadline. The Protective Order *already* contains the Court-sanctioned procedure for confidentiality disputes: the Designating Party is *obligated* to file a motion to uphold their designations over challenged documents *within three days*. Seeking further delay, the Joint Administrators waited until the evening of the third day (after having been granted a month of extensions by Vale) to advise us that they would seek the Court's approval simply to follow the procedure the Court already mandated. Such gamesmanship should not be countenanced.

Thank you for Your Honor's consideration.

Respectfully submitted,

/s/ Jeffrey A. Rosenthal

Enclosures

cc:    Frederick Hyman, Esq.

---

[14]    In correspondence with us, the Joint Administrators suggested that Vale had waived its confidentiality objections by not litigating them earlier, but they have since wisely resiled from that position in recognition that it would have wasted party and Court resources to litigate hypothetical confidentiality disputes over thousands of produced documents while an amicable resolution was being sought.