Duane Morris LLP
Frederick D. Hyman (NY 2553832)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

-and-

Jarret P. Hitchings (admitted *pro hac vice*)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen*
*in their capacity as Joint Administrators and Foreign Representatives*
*for the Debtor BSG Resources Limited (in administration)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| BSG RESOURCES LIMITED (in administration), | Case No. 19-11845 (SHL) |
| Debtor in a Foreign Proceeding. | |

**THE JOINT ADMINISTRATORS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER (I) AFFIRMING CONFIDENTIALITY DESIGNATIONS AND (II) MODIFYING THE COURT'S CONFIDENTIALITY STIPULATION**

William Callewaert and Malcolm Cohen (together, the "Joint Administrators"), in their capacity as Joint Administrators and Foreign Representatives for the debtor BSG Resources Limited (in administration) (the "Debtor" or "BSGR"), by and through their undersigned counsel, hereby reply in support of their *Motion for an Order (I) Affirming Confidentiality Designations and (II) Modifying the Court's Confidentially Stipulation* [Docket No. 94] (the "Motion")[1] and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

respond to the *Opposition and Request for Sanctions* [Docket No. 97] (the "Vale Objection") filed by Vale, S.A. ("Vale") as follows:

## Preliminary Statement

1.      The Joint Administrators and Vale appear to agree on one thing: that the Joint Administrators should be allied with Vale in their efforts to return BSGR to solvency. *See* Vale Objection at ¶ 63. Indeed, the Joint Administrators appreciated Vale's significant position in the administration from the outset and reached out to Vale at an early stage in order to try to establish a practical working relationship.[2] Despite these efforts, there has to date been no substantive meeting of minds or agreement which would enable the administration to proceed on a more amicable basis. The Joint Administrators' approaches have all been rebuffed by Vale's counsel in favour of the present confrontational relationship in which Vale pursues its own interests, which in many instances are to the detriment of all other creditors of BSGR's estate.  It is thus evident to the Joint Administrators that Vale is not allied with them.

2.      Vale's rejection of the Joint Administrators' offers of cooperation is disappointing but unsurprising, given Vale's view that it is effectively the only legitimate creditor of BSGR's estate. *See* Vale Objection at ¶ 63 (claiming to be "holder of more than 99% of BSGR's unsecured debt and more than 97% of its overall debt"). In this regard, Vale is wrong both in principle and in number. The relevant fact is that Vale is not the only creditor. And while it appears that the Joint Administrators and Vale now agree that Vale is not BSGR's only creditor,[3] it does not appear to

---

[2] The first meeting with Vale's counsel (Vale itself has consistently refused to have any direct contact with the Joint Administrators) took place on June 4, 2018.  Following that meeting, there has been an on-going exchange of correspondence with Cleary and a number of further meetings, the most recent of which took place on December 17, 2019.

[3] As recently as May 28, 2020, Vale acknowledged that it's percentage share of BSGR's creditor pool is "over 90%." *See* Letter from Cleary Gottlieb Steen & Hamilton LLP to Macfarlanes LLP dated May 28, 2020, annexed hereto as **Exhibit A**.

be the case that Vale is willing to accept that the Joint Administrators owe a duty to *all creditors* in returning BSGR to solvency.

3.       As has been previously stated by the Joint Administrators on more than one occasion, given that the administration is a collective insolvency scheme, their duty is not to the largest individual creditor but to the creditors as a whole, in returning the company to solvency. Vale has also consistently ignored an important fact: its debt is unsecured and, as such, necessarily ranks behind any creditor with a secured debt (there is one creditor with a significant debt that ranks ahead of Vale).  The Joint Administrators must act in the interests of all creditors and would be failing in their duties were they to consider the interests of Vale in isolation.

4.       Beyond these points, unfortunately, the Joint Administrators and Vale are at odds. And while the Joint Administrators have steadfastly worked to carry out their duties as administrators for the benefit of *all* creditors, Vale has taken to attacking the Joint Administrators at every opportunity, including as litigation adversary and professional critic. The instant dispute is simply another regrettable example of Vale's obstinate refusal to work constructively with the Joint Administrators to allow this Chapter 15 Case to proceed to a hearing on the merits.

**The Motion**

5.       The Motion seeks very narrow and specific relief: an order (i) affirming the designation of 73 Confidential Documents and (ii) modifying the Designation Challenge Process to allow for the efficient resolution of what Vale has promised to be a deluge of designation challenges. The Motion does not seek to alter what qualifies for designation as "CONFIDENTIAL" material. The Motion does not seek some type of blanket affirmance of every confidentiality designation made in this case. It simply seeks to resolve the only pending

designation challenge (to the 73 Confidential Documents) and to adjust the process for resolving future challenges now that the current 3-day challenge period has proven unworkable.

6.      In addition, at the invitation of the Court, the Joint Administrators have sought to identify certain additional potential categories of documents which are entitled to be designated as "CONFIDENTIAL." In this regard, the Joint Administrators have not tendered an exhaustive list of the categorical bases for designating every Confidential Document (or any other as-yet-unchallenged document included in the Joint Administrators' document production), nor where the Joint Administrators directed to do so.

7.      Like every other discovery dispute in this case, this current dispute over the designation of 73 Confidential Documents is not one the Joint Administrators have sought. Nor is the Motion a tactic to delay these proceedings.[4] In truth, the Motion is necessitated by the Joint Administrators' need to preserve the confidentiality of documents produced in discovery in order to protect the Joint Administrators and BSGR's estate from litigation or claims alleging wrongful disclosure or breach of confidentiality obligations, and to safeguard the Joint Administrators' chances of success in other pending litigation, both of which will benefit *all* creditors.

---

[4] Vale chides the Joint Administrators for their explanation that they relied on their confidentiality designations in part "to avoid further delays in production that would have otherwise resulted from another layer of review and analysis." *See* Motion at ¶ 5. Vale then dismisses the Court's acknowledgement as to the reasonableness of this explanation by erroneously claiming that the Joint Administrators have, nevertheless, refused to subsequently review any designation to determine whether any particular designation should stand. *See* Vale Objection at 9, n.17 (citing Hr'g Tr. May 11, 2020 at 26:23-27:3 (the Court: "[E]ven if, in the interest of time, certain things were provided that were immediately requested . . . those [confidentiality designations] would still need to be looked at so that you could figure out whether that confidentiality designation should stand.")). This is simply not the case – when Vale raised its initial challenge, the Joint Administrators expeditiously reviewed each of the documents at issue to confirm whether their original designation should stand (or alternatively whether the Joint Administrators had the discretion to lift such designation). *See* Motion at ¶ 27.

DM3\6816714.8

## Misstatements in Vale's Objection

8.       As has been its typical practice throughout this case, Vale attempts to distract this

Court with allegations of bad faith and grand conspiracy perpetrated by the Joint Administrators

with no evidence whatsoever. These allegations should be dismissed for what they are – untrue

attacks on the Joint Administrators by an aggrieved former partner of the Debtor which have no

bearing on the Motion or the relief requested therein. Likewise, Vale's vexatious request for

sanctions against the Joint Administrators should be denied as both procedurally improper and

unsupported by any true facts. In essence, Vale demands the Court sanction the Joint

Administrators simply because the Joint Administrators, in contesting Vale's designation

challenges, availed themselves of the very process required in the Protective Order.

9.       More problematic than Vale's unfounded and futile request for sanctions are the

plain and repeated misstatements of "fact" offered in the Vale Objection in an effort to prejudice

the Court against the Joint Administrators.  While the Vale Objection is replete with blatant

misrepresentations, a few must be addressed in the first instance.

10.       At nearly the outset of the Vale Objection, Vale offers that

> [m]any, if not most, of the Joint Administrators' documents were
> designated because the *Joint Administrators have been unable to*
> *ascertain the reason that this information was provided to BSGR,*
> *prior to their appointment, and do not know whether any*
> *confidentiality obligations, either express or implied, exist between*
> *the parties.*

Vale Objection at ¶ 3 (purporting to quote from the Motion at ¶ 30). Vale claims this purported

admission "is stunning." *Id.* And perhaps it would be, were it to be true or even what is stated in

the Motion. But it is plainly <u>not</u> the statement made in the Motion. To be sure, this is but one of

many of the categorical basis for the "CONFIDENTIAL" designation of some of the 73

Confidential Documents directly at issue in the Motion. *See* Motion at ¶ 30.[5] This statement could not be more clear and cannot plausibly be read to apply to "many, if not most, of the Joint Administrators' documents" writ large.[6] Yet incredibly, Vale purposefully misrepresent this paragraph and then suggests that it is an "admission to sanctionable conduct." Vale Objection at ¶ 3.

11.     Similarly, Vale appears to suggest that it first challenged the Joint Administrators' confidentiality designations as early as December 2019. *See* Vale Objection at ¶ 16. Again, this is simply untrue. Though the majority of the 73 Confidential Documents were produced in October and November 2019, Vale waited until April 2020 to assert its challenge in accordance with the Protective Order.

12.     Vale also purposefully misapprehends the Joint Administrators' motives in contesting confidentially and resulting citation to an irrelevant letter more than two years removed from the matters at issue in the Motion. In this regard, Vale makes an extremely serious allegation that the Joint Administrators' commitment to maintaining confidentiality arises from their concern for the interests of BSGR's parent affiliate and beneficial owners.  As "evidence" of this fact, Vale cites a March 7, 2018 letter from Nysco to the Joint Administrators complaining about publicity surrounding the Joint Administrators' appointment. According to Vale, this complaint amounts to an instruction to "maintain secrecy" at all costs which has resulted in the Joint Administrators' pursuit of the relief requested in the Motion. *See* Vale Objection at ¶ 49 and Exhibit L.

---

[5] Of course, this categorical basis may apply to support the confidentiality designation of other documents produced by the Joint Administrators. But Vale has no basis for presumptively applying this category to "many, if not most" of the Joint Administrators' document production.

[6] "Confidential Documents" is a term defined in the Motion to mean the 73 documents listed on Schedule A to the Motion that are the particular subject of the Motion.

13.     This allegation is as inflammatory as it is irrelevant. It also ignores fully the Joint Administrators' robust response by letter dated March 12, 2018 which roundly asserted the independence of the Joint Administrators and disclaimed any purported instruction to avoid publicity of the administration. *See* Letter from Malcolm Cohen to Nysco Management Corp dated March 12, 2018, annexed hereto as **Exhibit B**. In truth, the Joint Administrators' concern for confidentiality does appropriately consider third parties, but not in an effort to protect the third parties' interest. Rather, the Joint Administrators are obliged to maintain the confidentiality of certain documents in order to avoid exposing themselves and BSGR's estate to liability *from* third parties. Vale fails (willfully or not) to recognize this distinction.

14.     Further, Vale inexplicably casts the negotiations over the Protective Order as a "foot-dragging effort." Vale Objection at ¶ 12. Not only is this characterization completely untrue, it is typical of the disparagements Vale casts at the Joint Administrators anytime they decline to accept fully a dictate from Vale. Yet Vale's frivolous accusation belies Vale's complete disregard for the Joint Administrators' confidentiality concerns. The Joint Administrators have explained in the Motion the reasons for the Joint Administrators' concern for confidentiality of documents produced to BSGR's most aggressive litigation adversary. *See, e.g.,* Motion at ¶ 4. Moreover, as the Court is acutely aware, discovery in this case is one-sided, with BSGR bearing the full weight and cost of the document production effort. The Joint Administrators can hardly be blamed for insisting on a form of confidentiality order that would allow them to protect their legitimate concerns.

15.     The parties were ultimately unable to agree to the final form of the stipulated proposed version of the Protective Order. Consequently, they sought a ruling from the Court. *See* Docket Nos. 35 and 36. The gravamen of that dispute concerned the designation of documents as

7

"OUTSIDE COUNSEL EYES ONLY" and the permitted uses of documents designated as such. During the July 29, 2019 hearing, the Court cautioned counsel for the Joint Administrators against using the "OUTSIDE COUNSEL EYES ONLY" designation as a "label slapped on everything that's being produced, because that is not going to be acceptable." Hr'g Tr. Jul. 29, 2019 at 76:3-4. The Court's comments, like most of the discussions around terms of the Protective Order, did not specifically address designation of materials as "CONFIDENTIAL.", contrary to Vale's assertions.

16.    Finally, Vale wrongly suggests that the Discovery Neutral has been critical of the Joint Administrators' adversity toward Vale "at virtually every conference before him." *See* Vale Objection at ¶ 63. Vale's implication that the Discovery Neutral has consistently admonished the Joint Administrators is misleading and plainly incorrect. While the Joint Administrators will not presume to speak for the Discovery Neutral, suffice it to say that the Joint Administrators have been pleased to work with the Discovery Neutral and expect that the Discovery Neutral will agree that the Joint Administrators have worked with Vale in good faith to resolve a number of disputed issues.

### Argument in Reply

17.    Although this Court maintains "a strong public policy favoring open access to court records, it is not unlimited." *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 42 (Bankr. S.D.N.Y. 2016). Indeed, section 107(b)(1)of the Bankruptcy Code provides that the bankruptcy court may protect from public disclosure "confidential research, development, or commercial information." *Id.* (citing 11 U.S.C. § 107(b)(1)). "The moving party bears the burden of showing that the information is confidential" which can be met upon a showing of extraordinary circumstance or compelling need.

8

*Id.* (citing *In re Borders Grp., Inc.*, 462 B.R. 42, 46-47 (Bankr. S.D.N.Y. 2011)) (internal citation omitted). As concerns each of the 73 Confidential Documents, the Joint Administrators have met this burden.

18.    Before addressing each of the specific categorical bases supporting the Joint Administrators' confidentiality designations, it is necessary once again to correct Vale's misstatement of the record in this case: the Court made no order that the Motion was to be "the Joint Administrators' one and only bite at the apple to set forth all categories of documents over which they wanted the Court to sustain confidentiality." Vale Objection at ¶ 23. Quite the opposite – the Court appreciated that the Joint Administrators would identify categorical bases for their confidentiality designations in an iterative process as appropriate in light of designation challenges raised by Vale or as disputes over such categories arise. The Court's comments at the May 11 Conference anticipate that the categorical bases included in the Motion would be *a starting point* considering first the categories applicable to the 73 Confidential Documents or perhaps other identifiable or priority categories:

> *We have to start somewhere*, but I'm just letting people know that when I make rulings on various things that they will be applied to other documents.

Hr'g Tr. May 11, 2019 at 49:2-3 (emphasis added). The Court continued:

> And so what I'm saying is that when you file your motion, what's going to happen is you're going to say, for example, document number 1 is confidential for the following three reasons: EU regulations, attorney/client, deliberative process -- whatever it is. And so what I'm trying to get at is that these themes and your justifications will no doubt recur in different documents and some of them will be much more prevalent than others, and so my thought is that it probably makes sense, although you all can talk about it and think about it, to try to identify among the more popular basis for withholding as matters to address for a second or third. Now, it may be that you have a conversation with Vale and they say these are the documents that we want to be public the most in this case,

DM3\6816714.8

> and therefore, the issues raised in those documents *make sense to tee
> up first*.

*Id.* at 45:25-46:15 (emphasis added). There is simply nothing in the Court's comments directing the Joint Administrators to once and for all set forth every categorical bases supporting their confidentially designations.[7]

## I.    Each of the Categorical Bases Identified by the Joint Administrators Meet the Protective Order's "CONFIDENTIALITY" Standard.

19.    The Court did not require the Joint Administrators to set forth *every* categorical basis upon which they would rely in order to sustain the confidentiality designation of *every* document produced by the Joint Administrators in discovery. Rather, the Court instructed the Joint Administrators to identify categorical bases within the Confidential Documents – *i.e.*, the specific set of 73 documents subject to an actual designation challenge – which, once ruled upon by the Court, could serve to inform *future* challenges to other documents that Vale might bring.

20.    The seven categorical bases for confidentially identified in the Motion are intended to address the 73 Confidential Documents at issue. In addition, mindful of the Court's comments at the May 11 Status Conference, the Joint Administrators identified other clear categorical bases for confidentiality upon which the Court could determine the appropriateness of a particular designation without need to review the particular document. *See* Motion at ¶ 31. Of course, these additional categories were intended to be illustrative and informative, and certainly not exhaustive. *Id.* (noting that the "bases for the 'CONFIDENTIAL' designations of documents include several

---

[7] At the May 26, 2020 status conference (the "May 26 Conference"), the Court again anticipated an iterative process:

> I think we may be going down a path where this is not -- *this is the first but not
> the last of these kinds of motions* and so -- but even if it's a one-off and this is
> the only kind of motion like this that we address[.]

Hr'g Tr. May 26, 2020 at 7:20-24 (emphasis added).

additional categories including, *but not limited to*," the identified categorical bases) (emphasis added).

A.    **Litigation documents which contain information protected from disclosure under federal, state, or other applicable law.**

1.    **LCIA Documents**

21.    The Confidential Documents include 12 documents from the LCIA arbitration between Vale and BSGR.[8] Each of these documents is confidential pursuant to both a specific order of the LCIA tribunal, as well as the general rules of the LCIA. Specifically, in paragraph 15 of *Procedural Order No. 2*, the LCIA tribunal directed that the entire arbitration proceedings are considered confidential. *See* Procedural Order No. 2, *Vale S.A. v. BSG Resources Limited,* LCIA Arb. No. 142683 (Nov. 5, 2014), annexed hereto as **Exhibit C**. In addition, Article 30 of the LCIA rules provide, in relevant part:

> **Article 30    Confidentiality**
>
> 30.1    Unless the parties expressly agree in writing to the contrary, the parties undertake as a general principle to keep confidential all awards in their arbitration, *together with all materials in the proceedings created for the purpose of the arbitration* and all other documents produced by another party in the proceedings not otherwise in the public domain - save and to the extent that disclosure may be required of a party by legal duty, to protect or pursue a legal right or to enforce or challenge an award in bona fide legal proceedings before a state court or other judicial authority.

Article 30.1 (emphasis added). Given the LCIA confidentiality requirements applicable to each of these documents (and all other LCIA documents designated as "CONFIDENTIAL" by the Joint Administrators), these documents are properly designated as confidential under Paragraph 6(ii) of

---

[8] These 12 documents are actually 8 unique documents which have been produced in different instances. Notably, they do not include the LCIA arbitration award in favor of Vale. A representative sample of these documents include JA0056847 and JA0056289 which will be submitted to Court under seal. These document are specifically identified on **Schedule A** to the Motion along with the basis for their confidentially designations.

the Protective Order. *See* Protective Order at ¶ 6(ii) (defining "CONFIDENTIAL Material" as documents containing "information protected from disclosure under federal, state, *or other applicable law*, regulation, or court order.") (emphasis added).

22.     The Court's comments in *Veleron Holding, B.V. v. Stanley*, 2014 U.S. Dist. LEXIS 55246, at *28 (S.D.N.Y. Apr. 2, 2014) are not directly germane to this issue. In *Veleron*, the Court held that its decision whether or not to unseal certain documents previously filed under seal was not controlled by LCIA rules governing confidentiality in the first instance. *Id.* ("To the extent that a party contends that some document is confidential, this Court will be the arbiter—unbound by any agreement to which it is not a party and by the rules of any other tribunal, public or private."). Nevertheless, the Court in *Veleron* allowed the LCIA to remain under seal since "the issues here [in the US Court] and there [before the LCIA] are sufficiently different so that much in the [confidential document] is of only marginal interest—and no real relevance—to the resolution of the matter before [the US Court]." *Id.* The Court continued:

> Nothing in the [confidential document] is dispositive of any issue being litigated here . . . , and no public policy of the United States will be violated by respecting the [LCIA] Tribunal's rule that an award is a confidential document as between and relating only to the two parties that litigated it

*Id.* The same rationale applies in this case. As to the 12 LCIA Confidential Documents, none are dispositive of the particular issues this Court will consider at Recognition[9], and no public policy of the United States would be violated by respecting the LCIA rules on confidentiality as to these particular documents.[10] Moreover, unlike the Court in *Veleron*, this Court in this Case has already

---

[9] The same can be said of many of the Challenged Documents, that is, they are not dispositive of the particular issues this Court will consider at Recognition.

[10] This logic does not extend to the LCIA arbitration award, hence the Joint Administrators determination not to contest Vale's challenge to its original designation.

determined that documents containing "information protected from disclosure under . . . *other applicable law*" is entitled to designation as "CONFIDENTIAL" material. *See* Protective Order at ¶ 6(ii).

23.     Even without relying on the LCIA confidentiality rules, the LCIA documents are still properly designated "CONFIDENTIAL." While the LCIA materials do not bear directly on the matters at issue in this Chapter 15 Case, they do directly concern the nearly the same or similar matters at issue in the Soros litigation which remains pending before the District Court. As set out in the Callewaert Declaration, public disclosure of these documents could seriously undermine the Joint Administrators' chances of success in the Soros litigation, which in turn will threaten the Joint Administrators' ability to return BSGR to solvency. *See* Callewaert Declaration at ¶ 17 and Exhibit 2; *see also* Section I.B, *infra*.

24.     To be clear, the Joint Administrators are not seeking to limit Vale's ability to use its own documents or other versions of the Confidential Documents Vale may have obtained outside of this Chapter 15 Case. The Joint Administrators only purpose in insisting on the confidentiality designation of these documents is to comply with the company's obligations under the LCIA rules. If Vale, as a party to the underlying LCIA proceedings, wants to seek relief from the LCIA obligations, it can certainly seek appropriate relief in that Court – but it is not for the Joint Administrators to go to the LCIA tribunal to obtain such relief for the benefit of Vale in this and other proceedings.

### 2.    Dutch Legal Documents

25.     The Confidential Documents include 46 documents from Dutch legal proceedings involving BSGR.[11] As with the LCIA documents, the Dutch litigation Confidential Documents

---

[11] These 46 documents are in the main 6 unique documents (though translated in both English and Dutch), which have been produced in different instances. A representative sample of these documents include JA0014831 and JA0005811

DM3\6816714.8

(and all other Dutch litigation documents designated as "CONFIDENTIAL" by the Joint Administrators), are properly designated as confidential under Paragraph 6(ii) of the Protective Order because they are subject to applicable law requiring such designation. *See* Motion at ¶ 41; Callewaert Declaration at ¶ 14 and Exhibit 1 (identifying the specific Dutch statutory basis for treating as confidential the Dutch litigation documents).

26.     Vale all but concedes this point. *See* Vale Objection at ¶ 30 ("the Dutch system is somewhat unique insofar as pleadings are often not publically available."). Vale then pivots to suggest that instead of designating these documents as "CONFIDENTIAL", "narrowly tailored redactions" could be applied to the documents as in *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169 (Bankr. S.D.N.Y. 2017). But this is a different issue concerning the mechanics of using particular confidential documents in filings and before the Court.

27.     The Joint Administrators appreciate the Court's concern that the Recognition hearing be held in an open and transparent way. But the designation of documents as "CONFIDENTIAL" will not result in a secret trial. In fact, the Protective Order does not bar a party from using designated material at trial or other court hearing. *See* Protective Order at ¶ 19. In that event, a party "seeking to use the Designated Material must provide notice to the Designating Party so that the Designating Party or Producing Party has a reasonable opportunity to take appropriate action to prevent or limit disclosure of the Designated Material." *Id.* If Vale's true concern is the transparency of the Recognition hearing, Vale will agree this issue is more efficiently resolved once the parties have identified their anticipated trial exhibits.

---

which will be submitted to Court under seal. These document are specifically identified on **Schedule A** to the Motion along with the basis for their confidentially designations.

28.     Vale cites *Oi Brasil* in support of the proposition that this Court has "ruled" that documents claimed to be confidential under Dutch law do not "justify blanket designations, as opposed to narrowly tailored redactions." Vale Objection at ¶ 30. In addition, Vale asserts that the *Oi Brasil* court "required confidential documents to be redacted but specified that '[r]edactions [were to be] kept to a minimum . . . given the interest of transparency.'" *Id*. But *Oi Brasil* does not stand for either proposition. As an initial matter, *Oi Brasil* did not concern a confidentiality dispute. Moreover, the Court in *Oi Brasil* did not reach the issue of – much less "rule" on – whether confidentiality designations under Dutch law justify blanket designations "as opposed to narrowly tailored redactions" as Vale claims. Rather, this Court recognized that

> [c]ertain information relevant to the Court's determination in this case is sensitive commercial information or subject to confidentiality restrictions under Dutch law. Such confidential information has been redacted *from this Decision*. Redactions have been kept to a minimum, however, given the interest of transparency in these proceedings.

578 B.R. at 176, n.2 (emphasis added). Thus, this Court in *Oi Brasil* did not "require" the *parties* to redact documents rather than apply a confidentiality designation. Rather, the court redacted *its own opinion* with respect to the information that was subject to confidentiality restrictions under Dutch law.

29.     Assuming the Dutch litigation Confidential Documents are properly designated (which they are) and then assuming that Vale actually determines to rely on these documents in filings or before this Court in connection with Recognition (which is unlikely given their peripheral relevance to the matters actually at issue in this Chapter 15 Case), the Joint Administrators would be willing to work with Vale at that time to ensure reasonable and efficient means by which to have the documents submitted to and considered by the Court, including by redactions if appropriate.

30.    The Joint Administrators are perplexed at Vale's sudden willingness to accept confidentiality redactions since very early in this Chapter 15 Case Vale castigated the Joint Administrations for attempting to redact commercially sensitive information and sought Court instruction to have those redactions removed. Hr'g Tr. Oct. 3, 2019 at 107:17-22.

### B.    Litigation documents, which if disclosed to third parties would likely threaten or undermine the Joint Administrators' likelihood of success.

31.    In addition to the bases described in Section I.A.1, *supra*, the 12 LCIA arbitration documents are also properly designed "CONFIDENTIAL" because if made public or provided to third parties, the disclosure would likely threaten or undermine the Joint Administrators' ability to succeed in other pending litigation.[12] This is not merely an issue of "leverage" against a creditor of the Debtor's estate or another party that has sued the company. *See, e.g., Geltzer v. Andersen Worldwide, S.C.,* 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007). Rather, it is a matter of preserving the Joint Administrators' ability to pursue an offensive litigation claim that is perhaps the most valuable estate asset. Disclosure of this information to BSGR's litigation adversary would harm BSGR's interest in that litigation inasmuch as they reveal various features of the company's internal dealings and business arrangements and disclose otherwise confidential details about the LCIA arbitration proceedings and prejudicial claims against BSGR. *See* Callewaert Declaration at ¶¶ 17-18 and Exhibit 2. The fact that BSGR's litigation adversary in that litigation, *i.e.*, the Soros defendants, might at some future point in those proceeding be able to obtain in discovery the same documents is irrelevant to whether these documents are properly designated "CONFIDENTIAL" by the Joint Administrators in the course of their production to Vale in this Chapter 15 Case.

---

[12] A representative sample of these documents include JA0056289, JA0056847, and JA0020409 which will be submitted to Court under seal. These document are specifically identified on **Schedule A** to the Motion along with the basis for their confidentiality designations.

### C.    Documents which contain non-public, commercially sensitive information relating to a third party

32.      As explained in Paragraph 12, *supra*, Vale misstates the Joint Administrators' purpose in preserving the confidentiality of documents relating to third parties. This is not, as Vale wrongly recites, in order to protect or serve the interests of the relevant third party. Rather, it is in order to protect the Joint Administrators and BSGR's estate from litigation or claims alleging wrongful disclosure breach of confidentiality obligations by third parties having an interest or right in the confidential document.[13] Tellingly, Vale only contests this issue as to entities related to Mr. Steinmetz – Vale does not object to the interests of Global Special Opportunities Ltd. (Bahamas)*, see* JA0026133, or Star West Investments Limited, *see* JA0026134 and JA0026135. Rather, Vale prefers to cast the specter of Mr. Steinmetz as far as it can in order to distract this Court from the legitimate interest put forth by the Joint Administrators.

33.      Though it is clear that the Joint Administrators' purpose in preserving the confidentiality designation of these documents is to protect themselves and BSGR's estate from liability *from* third parties, Vale mischaracterizes the Court's comments in an effort to accuse the Joint Administrators of using estate resources to protect third parties. *See* Vale Objection at ¶ 35. Vale misstates both the Joint Administrators' argument on this point and distorts the Court record in order to advance its own hollow argument.

34.      In similar fashion, Vale cavalierly suggests that the Joint Administrators expend estate resources to chase every third party able to enforce confidentiality obligations against the Joint Administrators and BSGR's estate to "notify them and invite them to litigate this issue on

---

[13] A representative sample of these documents include JA0010140, and JA0026135 which will be submitted to Court under seal. These document are specifically identified on **Schedule A** to the Motion along with the basis for their confidentially designations.

DM3\6816714.8

their own behalf, rather than spending estate (and ultimately Vale's) resources litigating this issue[.]" Vale Objection at ¶ 38. Vale's critique is illogical and would simply to a waste of more estate resources for no meaningful purpose.

**D.**    **Documents which contain non-public, commercially sensitive information relating to a related company that were comingled with BSGR data**

35.    Certain of the Confidential Documents are documents which do not belong to BSGR but were comingled on its data server.[14] As with other third party documents discussed above, the Joint Administrators are unable to determine for certain that the documents are not subject to any confidentiality restrictions, and thus must maintain the confidentiality designations of these documents in order to mitigate any risk to BSGR's estate and/or themselves.[15]

*    *    *

36.    The Joint Administrators identified the remaining bases for the designation of documents as categorical examples where, upon a challenge to a document falling within such category, the Court could make a ruling that could then be applied to other documents without further need to litigate the same issue for a different document. As explained above, and contrary to Vale's misstatement of the record, this was not required or intended to be an exhaustive list covering all documents produced by the Joint Administrators.

37.    As concerns each of these example categories, Vale has not challenged the confidentially designation of any document within these categories. Presumably, this is because

---

[14] A representative sample of these documents include JA0013041 which will be submitted to Court under seal. This document are specifically identified on **Schedule A** to the Motion along with the basis for its confidentially designation.

[15] Instead of attempting to claw these documents back as inadvertently produced non-responsive documents – which all but certainly have prompted litigation from Vale – the Joint Administrators determined, as a practical matter, that these documents could remain with Vale so long as they remained subject to the disclosure and use restrictions of the Protective Order.

DM3\6816714.8

the confidential nature of such documents is clear. Consequently, the Joint Administrators have not identified any particular document as a sample. Not only would doing so potentially expose an un-challenged confidential document to be re-designated (should the Court disagree with the designation for any particular reason), but it would turn the responsibility of lodging a confidentiality challenge on its head in the first instance, shifting to the Joint Administrators the burden of identifying those documents and confidentiality designations Vale might at some point disagree with and requiring the Joint Administrators to brief a dispute that might not actually exist.

### E.   Transaction documents and others which themselves contain confidentiality restrictions or are subject to confidentiality obligations

38.   Vale would have the Joint Administrators breach the terms of confidentiality restrictions included in produced documents simply to afford Vale unrestricted use of such documents. Much like the documents in which a third party might have a confidentiality interest, improper disclosure or breach of these direct confidentiality obligations could unreasonably expose the Joint Administrators and BSGR's estate to liability to the transaction counter-party. As a consequence, the Joint Administrators are necessarily required to designate these types of documents "CONFIDENTIAL."

39.   Vale is critical of the Joint Administrators reference to a certain Implementation Agreement dated September 20, 2016, *see* JA004550, as an example of a document containing a confidentiality provision thus requiring the Joint Administrators to designate the document as "CONFIDENTIAL." Vale's critique is meritless – the fact that the existence of a particular document is publicly known or disclosed surely does not mean that the entirety of the document itself loses any confidentiality protections it might otherwise be entitled to receive. Applying Vale's logic, it would be inappropriate to redact information concerning an individual's medical history simply because the individual was seen entering the office of a particular doctor. Moreover,

as concerns the Implementation Agreement, that document includes far more information than simply the fact of BSGR's debt facility restructuring – which is exactly the point. The document does not lose its confidential nature simply because a "salient" term may have been disclosed in a separate context.

### F. Materials prepared by the Joint Administrators in the course of their duties and in furtherance of their efforts to return the Debtor to solvency

40.    A great number of the documents produced by the Joint Administrators are materials prepared by them in the course of their duties and in furtherance of their efforts to return BSGR to solvency. Given that BSGR's principal assets (and many of its liabilities) are pending litigation actions, the Joint Administrators' working papers and internal files necessarily concern, amongst other types of items, litigation analysis and strategies, administration strategies, budgets, personnel and staffing information.[16] These types of documents are precisely the type of confidential material courts have found deserving of protective orders limiting use and disclosure. *See, e.g., Wilson v. Pharmerica Corporation Long Term Disability Plan,* 2015 WL 4572833 (D. Mass. July 29, 2015) ("Where documents contain things such as "business strategies, cost saving measures, operational trends, pricing, parts, item costs, purchasing, vendor information, confidential personnel data, litigation strategies, budget information, and sales volume" then good cause has been established as disclosure of such documents would "cause a clearly defined and serious injury"); s*ee also Irizarry-Santiago v. Essilor Industries,* 293 F.R.D. 100, 104 (D.P.R. Aug. 28, 2013) (finding that documents concerning party's business and litigation strategies were entitled to confidential protection under a protective order in part because these types of documents

---

[16] As noted above, Vale has not challenged the confidentiality designation to any of these types of documents, presumably because their confidential nature is clear.

DM3\6816714.8

were covered by the party's internal confidentiality policy and disclosure would cause a clearly defined and serious injury).

### G.   Documents containing personal email addresses

41.    Vale's objection to this categorical basis for the designation of documents is nonsensical. Indeed, Vale's argument – that redactions of personal email addresses would be more appropriate than designation of the entire document as "CONFIDENTIAL" – is almost precisely how the Joint Administrators proposed to treat personal email addresses under the GDPR protocol. Yet Vale *rejected* this proposal, instead insisting that personal email addresses should be unredacted. *See, e.g.,* Hr'g Tr. Oct. 3, 2019 at 73:1-9. Having insisted that personal email addresses be disclosed in the first instance, Vale should not now be able to demand the exact opposite treatment. And in any event, this Court has already ruled on this issue, holding that documents containing personal email addressed should be treated confidentially "as things under seal for purposes of th[is] case." Hr'g Tr. Oct. 3, 2019 at 80:3-8.

### H.   Vale's Allegation Concerning Third Party Interest Is Inflammatory and Lacks Merit

42.    The Joint Administrators are appointed officers of the Guernsey Court. In this regard, they are accountable only to the Guernsey Court. They do not answer to or take instruction from the beneficial owner(s) of BSGR. At the same time, the Joint Administrators are in possession of millions of documents constituting the business records of the company for which they are appointed, the vast majority of which are not relevant to them achieving the statutory purpose of the administration. They are, therefore, strangers to nearly all of these documents. Yet, as appointed administrators for the company, they are obliged to honor any confidentially provisions to which any particular record of the company might be subject. And, they are subject to any liability that might be imposed upon the breach of such confidentiality provisions. In short, the

Joint Administrators do not have unlimited or unilateral discretion to lift or waive confidentiality as to any particular document and may risk liability should they fail to take appropriate steps to preserve such confidentiality.

43.     It is not surprising that an order from this Court requiring the Joint Administrators to abandon their confidentiality designation of any particular Confidential Document may serve to insulate the Joint Administrators from subsequent liability or claims asserting wrongful disclosure of confidential information. But for Vale to suggest that the Joint Administrators have taken particular action in connection with the Motion or the dispute over confidentially more broadly at the implicit instruction or for the benefit of the Debtors' parent affiliate is outrageous – and to do so without evidence is contemptible. Yet Vale goes further, and instead of offering any real evidence in support of its allegation (which it cannot), Vale presents an irrelevant letter from March 2018 between Nysco and the Joint Administrators concerning a public relations announcement about the Joint Administrators' appointment. Vale also ignores the Joint Administrators' strenuous response which negates the specious argument for which Vale cites this letter to begin with. Plainly, these statements by Vale serve no purpose other than to distract the Court from the narrow matters presented in the Motion and to inflame and prejudice the Court against the Joint Administrators.

## II.     The Protective Order Should Be Amended to Allow Challenge Disputes to Be Determined in an Efficient Manner

44.     The Joint Administrators are eager for this Chapter 15 Case to reach a hearing on Recognition. Yet despite its protestations, it is *Vale* that continues to raise picayune discovery complaints at every opportunity in an effort to prolong these proceedings so as to preserve a venue in which Vale can continue its discovery-in-aid-of-execution efforts.

DM3\6816714.8

45. The Joint Administrators accept Vale's agreement that future confidentially challenges should be referred to the Discovery Neutral. *See* Vale Objection at ¶ 55. The benefit of this concession is tempered however by Vale's intimation that the Joint Administrators would use the Discovery Neutral to delay this process. *Id.* This suggestion is perplexing given that Vale has recently abandoned months of engagement with the Discovery Neutral concerning the Joint Administrators' efforts to obtain documents from certain third party custodians at the very moment the Discovery Neutral was set to consider the issue.[17] Accordingly, the Joint Administrators respectfully request that any order referring any designation challenge to the Discovery Neutral expressly prohibit Vale from unilaterally abandoning the process.

46. Similarly, the Protective Order must be modified to fix the date by which Vale must bring any remaining challenges to the Joint Administrators' confidentiality designations. Vale cannot be permitted to sit idle only to raise its next challenge, either as leverage against its next unreasonable demand upon the Joint Administrators or in order to further delay these proceedings. The Joint Administrators' production largely concluded by April 30, 2020 and Vale has now had the Joint Administrators' documents for at least a month (but for the majority of documents more than five months). Certainly, any challenge made beyond at this point is no longer made "as soon

---

[17] Since at least October 2019, the Joint Administrators and their counsel have worked to obtain documents from certain third party custodians responsive to the Vale Document Requests. Vale has criticized this effort, demanding the Joint Administrators take certain steps the Joint Administrators maintain are unreasonable and contrary to their duties as appointed officers of the Guernsey Court. This Court wisely referred this dispute to the Discovery Neutral. Despite months of engagement on this matter, the parties were unable to resolve their dispute and therefore determined on May 14, 2020 to make written submissions to the Discovery Neutral seeking a determinative recommendation. On May 15, 2020 the Discovery Neutral directed the parties to make their submissions by May 22, 2020. In doing so, the Discovery Neutral rejected Vale's proposed deadline and accepted the deadline proposed by the Joint Administrators. For reasons as to which the Joint Administrators can only speculate, on May 19, 2020, Vale unilaterally abandoned the process before the Discovery Neutral. While the Joint Administrators proceeded to make their submission to the Discovery Neutral as instructed (and as previously agreed by the parties), Vale's abandonment of the Discovery Neutral process has potentially left this issue largely unresolved wasting months of time and expense. *See* Letter from Frederick Hyman to Hon. Allan Gropper (ret.) dated May 22, 2020.

as practicable" and will serve only to prejudice the Joint Administrators and their ability to finally

reach a hearing on Recognition.

III.   **The Protective Order Prohibits Vale's Use of Confidential Documents For Purposes Other Than This Chapter 15 Case**

47.    The Protective Order prohibits use of confidential documents produced in this

Chapter 15 Case for any other purpose. *See* Protective Order at ¶ 16 ("Receiving Party is permitted

to use Designated Material *only for purposes of this case* and is prohibited from disclosing)

(emphasis added). Plainly, if Vale intends to use Designated Material in foreign proceedings or

other undisclosed adventures – *i.e.*, for other purposes beyond this Chapter 15 case – such use

would be prohibited. While the Joint Administrators could potentially seek a limitation on the use

of such documents in the foreign action(s) (assuming they had notice of such action and standing

to appear), surely this Court is the more appropriate venue in which to enforce the prohibition

established in its own Protective Order.

48.    Despite the clear terms of use set out in the Protective Order, Vale belatedly claims

that it should be permitted to use confidential documents produced in this Chapter 15 Case in

furtherance of the English Proceedings in order to "promote efficiency" and to avoid the potential

expense of re-production of documents. But, of course, this presumes that Vale would have an

entitlement to receive in the English proceedings the same documents produced in this Chapter 15

Case. Vale has not established this is the case.

49.    In sum, the Joint Administrators cannot agree to Vale's demand that it be permitted

to use *every* document produced in these cases in the English Proceedings  (in which BSGR is *not*

a party in one of the cases) or other foreign proceedings (currently know or unknown) without

limitation preserving their legitimate confidentiality interests. Still, the Joint Administrators

attempted to craft a workable framework, *i.e.,* the English CPR 31.22 condition, that would

24

preserve their legitimate interests in maintaining the confidentiality of documents produced in this

Chapter 15 Case while allowing Vale use of the documents in the English Proceedings. The parties

reached an impasse concerning future designation challenges in this proceeding: the Joint

Administrators required that Vale agree not to assert further designations challenges. The Joint

Administrators required this agreement in an effort to avoid further delay caused by the inevitable

litigation which would result from such challenges.

## IV.    Vale's Request for Sanctions Against the Joint Administrators Is Improper and Should Be Denied.

50.    Vale's request for sanctions against the Joint Administrators is another example of

Vale's attempt to bully the Joint Administrators when it does not get its way. Not only is Vale's

request – made at the end of a responsive pleading – procedurally improper, but there is no basis

to impose sanctions against the Joint Administrators under Rule 37(b) as requested by Vale. This

is particularly since the Joint Administrators have acted in good faith and in accordance with the

requirements of the Protective Order. Further, sanctions as requested by Vale are inappropriate

given the lack of any real prejudice suffered by Vale on account of the Joint Administrators'

confidentiality designations and the substantial justification for the Joint Administrators' action.

51.    As a threshold matter, Vale's sanctions request is procedurally improper.  A request

for sanctions constitutes a contested matter governed by Federal Rule of Bankruptcy Procedure

9014.  *See* Fed. R. Bankr. P. 9014(c) (applying Fed. R. Bankr. P. 7037, and thus Fed. R. Civ. P.

37, to contested matters). Rule 9014 commands "relief shall be requested by motion, and

reasonable notice and opportunity for hearing shall be afforded the party against whom relief is

sought." Fed. R. Bankr. P. 9014(a).[18]  This mandate is necessary in order to provide the party

---

[18] This Court's Local Rules further specify the procedure required for a party seeking discovery sanctions.  First, no "discovery-related motion under Bankruptcy Rules 7026 through 7037 may be heard unless counsel for the moving party files with the Court, at or prior to the hearing, an affirmation certifying that such counsel has conferred with

subject to any sanctions request with sufficient due process in the form of notice of the possibility

that sanctions will be imposed and a meaningful opportunity to respond.  *See Satcorp Int'l Grp. v.*

*China Nat. Silk Imp. & Exp. Corp.*, 101 F.3d 3, 6 (2d Cir. 1996)  ("[r]egardless of the authority

under which the district court was proceeding, and regardless of whether or not its sanction was

premised on an implicit finding of contempt . . . due process requires . . . that the delinquent party

be provided with notice of the possibility that sanctions will be imposed and with an opportunity

to present evidence or arguments against their imposition.") (internal citation and quotation marks

omitted).

52.    Here, Vale's sanction request is made not in an affirmative motion, but included in

its *objection* to the Joint Administrators' Motion.  Pursuant to agreement between the parties

reached *before* the Vale Objection was filed, the Joint Administrators' reply – and thus its response

to the sanction request – is due within three (3) days. This period is well short of the notice required

to satisfy due process or even this Court's standard notice for motion papers. *See* L.R. 9006-1.[19]

53.    In any event, even if it were properly lodged, Vale's request that this Court sanction

the Joint Administrators under Rule 37(b) should be denied simply because the Joint

Administrators cannot plausibly be held to have violated an existing Court order.  "Provided that

there is a clearly articulated order of the court requiring specific discovery," Rule 37(b) authorizes

courts authority sanction parties for noncompliance with such an order. *Daval Steel Products, a*

---

counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without
the intervention of the Court and that counsel have been unable to reach an agreement." L.R. 7007-1.  Second, "all
motion papers under Bankruptcy Rules 7026 through 7037 shall be served at least seven (7) days before the return
date." L.R. 9006-1.

[19] Given this procedural deficiency, the Joint Administrators will not herein address in full the merits (or, rather, the
lack of merit) of Vale's sanction request. Of course, the Joint Administrators reserve all of their rights to respond in
full detail to any request for sanctions in the appropriate manner and upon sufficient notice.

*Division of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1363 (2d Cir. 1991); Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."). "Before determining whether the sanction the plaintiff seeks is warranted, it is incumbent on the Court to determine what orders, if any, [the party] has violated." *Ulyanenko v. Metro. Life Ins. Co.*, 275 F.R.D. 179, 183 (S.D.N.Y. 2011).

54.    As concerns the Confidential Documents, the Joint Administrators have not violated or failed to comply with any clearly articulated Court order. At the very most, the Protective Order guides a party producing documents to "use reasonable care when designating Discovery Material as CONFIDENTIAL and/or OUTSIDE COUNSEL EYES ONLY." *See* Protective Order at ¶ 27(a). Despite its disparagement of the Joint Administrators' production efforts, Vale has provided no actual evidence that the Joint Administrators violated this provision of the Protective Order. Instead, Vale points to a skewed sample of documents it selected for the express purpose of undermining the Joint Administrators' confidentiality designations to suggest that the Joint Administrators' confidentiality designations are wholly improper. The Joint Administrators have already explained why this sample is not representative of their document production as a whole and why they agreed not to contest Vale's challenge to the designation of a majority of the Confidential Documents.

55.    Even if it this Court could determine that the Joint Administrators over-designated certain portions of its document production as confidential, before it could award sanctions under Rule 37(b), this Court would still need to find that the Joint Administrators did so with a purposeful absence of reasonable care so as to have violated the terms of the Protective Order. Again, there is no evidence that this is the case. To the contrary, the weight of the evidence – and indeed the very

DM3\6816714.8

fact of the need for the Motion and the resulting detailed briefings to this Court – would establish that the Joint Administrators exercised a great amount of care in considering and maintaining their confidentiality designations.  Put simply, the Joint Administrators have not violated any order for this Court sufficient to warrant sanctions under Rule 37(b).

56.    The Joint Administrators reiterate that they have not deliberately used the Protective Order or confidentiality designation process to delay this Chapter 15 Case and that they have, at all times in relation therewith, acted in good faith. Yet absent any actual evidence that the Joint Administrators violated any clear order of this Court, Vale would have this Court assess against the Joint Administrators Vale's fees incurred in connection with responding to this Motion. In other words, Vale asks this Court to punish the Joint Administrators simply for *complying* with the Protective Order's Designation Challenges Process. The Joint Administrators should not be punished simply for resisting the unreasonable demands of an adverse party.

57.    Finally, even if the Joint Administrators can be considered to have failed to comply an order of this Court (which they have not), their non-compliance is substantially justified and did not result in any actual harm to Vale. *See also Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n,* 319 F.R.D. 122, 126 (S.D.N.Y. 2016) ("Prejudice to the moving party may also be a significant consideration, though not an absolute prerequisite in all circumstances.").  And even then, the Court may not award attorney's fees if the purported "failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citation and internal quotation marks omitted).  "The test of substantial justification is satisfied if

DM3\6816714.8

there exists a genuine dispute concerning compliance." *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).

58.     Here, there is a genuine dispute between the parties as to whether the Confidential Documents are properly designated. The mechanism for addressing that dispute is set forth in the Protective Order and does not involve or entitle a party to seek sanctions.  The Protective Order is clear that where a party disagrees with any confidentiality designation, it may challenge the designation as soon as practicable following production. *See* Protective Order at ¶ 27(a). If the parties are not able to resolve a designation challenge between themselves, the designating party is required to file a motion to preserve the challenged confidentiality designation. *Id.* In the event a receiving/challenging party is successful in challenging a designation, the receiving/challenging party is permitted use of the document on a non-confidential basis – the Protective Order provides no other reward for overturning a designation or punishing the designating party. Thus even if Vale is successful in lifting the confidential designation for any of the Confidential Documents, it is not entitled to recover its costs in doing so.

59.     For each of these reasons, together with the facts and arguments set forth in the Motion, Vale's request this this Court sanction the Joint Administrators pursuant to Rule 37(b) should be denied.

*[Remainder of Page Left Intentionally Blank]*

DM3\6816714.8

WHEREFORE, the Joint Administrators respectfully request that the Court enter an order (a) preserving the "CONFIDENTIAL" designation of the Confidential Documents identified on **Schedule A**; (b) modifying Paragraph 27 of the Protective Order to (i) establish the deadline by which a party challenging the confidentiality designation of any document produced in this Chapter 15 Case must bring such challenge; (ii) provide additional time for the parties to meet and confer and to seek judicial relief to preserve confidentiality; and (iii) refer determination of such disputes to the Discovery Neutral; and (c) granting such other relief as the Court deems just and proper, including but not limited to denying Vale's request that the Court sanction the Joint Administrators.

Dated: May 29, 2020
      New York, NY

DUANE MORRIS LLP

*/s/ Frederick D. Hyman*
Frederick D. Hyman (NY 2553832)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

-and-

Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Ste. 1600
Wilmington, Delaware 19801
Telephone: (302) 657-4952
JPHitchings@duanemorris.com

*Attorneys for William Callewaert and Malcolm Cohen in their capacity as Joint Administrators and Foreign Representatives for the Debtor BSG Resources Limited (in administration*