# **EXHIBIT A**

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| NEW YORK | 2 London Wall Place | ROME |
| WASHINGTON, D.C. | London EC2Y 5AU | MILAN |
| PARIS | T: +44 20 7614 2200 | HONG KONG |
| BRUSSELS | F: +44 20 7600 1698 | BEIJING |
| FRANKFURT | clearygottlieb.com | BUENOS AIRES |
| COLOGNE | | SÃO PAULO |
| MOSCOW | | ABU DHABI |
| | | SEOUL |

Your ref: JXB/IHM/667627
Our ref: JK/JB/AG/28205-156

28 May 2020

Macfarlanes LLP
20 Cursitor Street
London                                                                                                                **By email**
EC4A 1LT

Dear Sir or Madam,

**BSG Resources Limited (in Administration) ("BSGR")**

We refer to recent reports that the Guinean Minister of Mines, Abdoulaye Magassouba, is due imminently to present the mining convention between Guinea and the SBM consortium regarding Simandou blocks 1 and 2 for government approval. We enclose a copy of an article published by Africa Intelligence dated 19 May 2020 reporting that this is due to happen "*within the next few days*".

The Africa Intelligence article also states that the rights to Simandou blocks 1 and 2 were awarded to the SBM consortium in November 2019 having been "*put up for sale following settlement of a dispute between their previous owner, Beny Steinmetz Group Resources (BSGR), and the government in Conakry in early 2019*".

We do not understand how these events can be reconciled with the position taken by the Joint Administrators that the settlement of BSGR's claim against the Republic of Guinea is "*non-binding*" and your clients' repeated representations (when we have raised concerns) that the settlement remains subject to the Joint Administrators' diligence and final approval, and the sanction of the Guernsey court. This position has been reiterated over the more than 12 months since the "Settlement Term Sheet" was signed in March 2019.

Your clients' representations have included:

- In a letter to Vale, dated 1 March 2019, the Joint Administrators represented that binding contracts were still to be negotiated and agreed following investigations conducted by the Joint Administrators into the terms of the settlement. The Joint Administrators noted that there were "*recent press reports which incorrectly suggest that a binding consensual settlement with Guinea has been entered into..*". As a

Cleary Gottlieb Steen & Hamilton LLP is a Limited Liability Partnership registered in England and Wales Number OC310280. It is authorised and regulated by the Solicitors Regulation Authority. A list of the members and their professional qualifications is open to inspection at the registered office, 2 London Wall Place, London EC2Y 5AU. Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the cities listed above.

- response to these allegedly false reports, the Joint Administrators undertook to keep Vale updated on the progress of the settlement negotiations.

- In a letter to Vale, dated 27 March 2019, the Joint Administrators assured Vale that "*if a binding settlement is entered into…., it will be on the basis that the Administrators consider the settlement to be in the best interests of BSGR and its creditors.*"

- Even in press reports, the Joint Administrators have maintained that the settlement is non-binding. For example, in May 2019, Global Witness quoted the Joint Administrators as confirming that the "*discontinuance of the ICSID arbitration… should only follow once binding, definitive documentation for the Transaction has been agreed and executed by all relevant parties*".[1]

- Further, in the Chapter 15 proceedings in the United States, the Joint Administrators have repeatedly stated that the agreement signed with Guinea in March 2019 is a "*non-binding agreement*" that "*remains subject to thorough diligence, review, and perhaps termination or renegotiation*".[2]

- The same is true of the Joint Administrators' evidence before the English courts. For example, in Mr Cohen's First Witness Statement in support of BSGR's response to Vale's application of 21 June 2019 for security for costs, Mr Cohen stressed that the ICSID settlement was "*presently non-binding*" and that BSGR would be seeking the "*sanction of the Royal Court in relation to any binding agreement that BSGR may reach with the Republic of Guinea prior to entering into such agreement*". Mr Cohen said that Vale will be given notice of the Joint Administrators' application to the Royal Court for such sanction and have an opportunity to raise any objections at this point.[3]

- Most recently, in the Fourth Progress Report to Creditors, dated 5 March 2020, the Joint Administrators provided an update on the status of the "*non-binding settlement term sheet*" which "*sets out a provisional structure for the potential consensual settlement of the ICSID arbitration, but does not impose binding obligations on any of the parties to it.*" Further, in the same report, the Joint Administrators repeated their intention that prior to any settlement being finalised, they would seek sanction from the Guernsey court (which the Joint Administrators also represented in the Third Progress Report to Creditors, dated 5 September 2019).

The steps that the Government of Guinea appears to be taking are wholly inconsistent with the above representations, apparently on the basis that it considers the settlement agreement to have been finalised and in full force and effect.

The Joint Administrators will not be surprised at our client's concern about these developments. In fact, we wrote in November 2019 raising precisely these issues in response to reports that the rights to Simandou blocks 1 and 2 had been awarded to SBM. The Joint Administrators are also well aware of our client's concerns about the level of scrutiny and/or control that the Joint Administrators appear to have had over the settlement process,

---

[1] Global Witness, "Secret Dealings Tying UK Conservatives' CEO to Bribery Scandal Billionaire" 3 May, 2019
[2] Please see, by way of an example, the transcript of the Hearing on Document Production in connection with the Chapter 15 Proceedings, 3 October 2019.
[3] Please see paragraphs 48-49 of Mr Cohen's First Witness Statement, dated 26 July 2019.

Macfarlanes LLP, Page 3

including the lack of diligence around the true beneficiaries of the settlement and whether it is in fact a mechanism to allow the diversion of value from BSGR (see for example our letter of 9 May 2019).

It appears that the Government of Guinea is now taking irrevocable steps to grant the mining rights to a third party on the basis of the settlement agreement being binding. We therefore request that you provide the following urgently:

1. an explanation of the position regarding the status of the settlement, including (without limitation) whether the purportedly "*non-binding*" settlement is in fact now binding on BSGR, the extent to which the Joint Administrators have been involved in any discussions and finalisation of the same and why we were not informed if the settlement has been made binding;

2. a detailed update on the status of the Joint Administrators' diligence on the settlement, Niron Metals plc and its ownership, including the plan for Mr Steinmetz to become a co-investor, and the dates and nature of all steps that have been taken by the Joint Administrators in this regard since their appointment;

3. to the extent the Joint Administrators maintain that the settlement is non-binding, and to the extent that they continue (as was represented in the Fourth Progress Report in March 2020) to monitor press reports and consider whether any steps should be taken in respect of such reports, confirmation of the steps the Joint Administrators are taking to ensure that the Government of Guinea does not, in fact, take the reported steps to - irrevocably - effectuate the settlement, including by conveying the mining rights to a third party; and

4. confirmation that the Joint Administrators will provide (subject to an appropriate common interest agreement) copies of all relevant documents with regards to the settlement including any assessments of the merits of the ICSID claim. This information is long overdue and is required in order for Vale, as BSGR's most significant (over 90%) creditor to make a proper assessment as to how the Joint Administrators have dealt with what the Joint Administrators have said is one of the "*two major contingent assets*" of BSGR, particularly in light of the fact that the 5 March 2020 report plainly does not address this matter adequately.

Vale reserves all of its rights (including for the avoidance of doubt as regards BSGR and the Joint Administrators).

Yours faithfully,

*[signature: Cleary Gottlieb Steen & Hamilton LLP]*

Cleary Gottlieb Steen & Hamilton LLP

Enc.