# Duane Morris®

*FIRM and AFFILIATE OFFICES*

| NEW YORK | | SHANGHAI |
|---|---|---|
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | | PITTSBURGH |
| SILICON VALLEY | | NEWARK |
| SAN DIEGO | | LAS VEGAS |
| LOS ANGELES | | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

FREDERICK D. (RICK) HYMAN
DIRECT DIAL: +1 212 692 1063
PERSONAL FAX: +1 212 208 4521
*E-MAIL:* RHyman@duanemorris.com

*www.duanemorris.com*

August 28, 2020

*Via CM/ECF and E-mail*

The Honorable Sean H. Lane
United States Bankruptcy Court
Southern District of New York
One Bowling Green
Courtroom: 701
New York, NY 10004-1408

> ***Re:    BSG Resources Limited (in administration); Case No.: 19-11845 (SHL)***

Dear Judge Lane:

It is with regret and frustration that we, on behalf of the Joint Administrators, are obliged to write to respond to the letter of August 27, 2020 to you from Mr. Rosenthal of Cleary Gottlieb Steen & Hamilton LLP [Docket No. 114] (the "August 27 Letter") acting on behalf of Vale S.A ("Vale").  However, it is important that we set out the facts correctly rather than allow Vale's misrepresentations to stand.   Vale continues to make unwarranted assertions regarding the Joint Administrators' actions and motivations, which must be addressed.

Your Honor should be aware that extremely serious and unfounded allegations have been made in correspondence from Vale outside of the case before this Court, culminating in a recent suggestion that *"Over the past 2.5 years,* [the Joint Administrators have] *had no interest in anything other than generating fees and doing Nysco's bidding to frustrate Vale"[1]*. This unwarranted and wholly unsupported attack on the Joint Administrators' integrity and ethics is just one in a myriad of examples of the tactics that have been adopted by Vale in its pursuit of ending the administration, including by intimidation.  It is against this background that the Joint Administrators respond to the August 27 Letter.

---

[1] Email from Jeffrey A. Rosenthal to Frederick D. Hyman dated August 26, 2020 at 5:43 p.m. (Eastern).

The Honorable Sean H. Lane
August 28, 2020
Page 2



First, Vale refers to a lengthy letter that it sent to the Joint Administrators on June 26, 2020 (the "June 26 Letter") in which Vale states that it outlined "exhaustive reasons" why the Guernsey court should discharge BSGR's administration. The Joint Administrators vehemently deny all of the allegations against them and indeed dispute generally much of what was set out in the June 26 Letter.  The Joint Administrators provided a comprehensive response rebutting as needed the assertions made in the June 26 Letter in a letter of their own dated 10 August 2020.  However, the Joint Administrators did agree with Vale that, under the circumstances then presented, the court-ordered purpose of the administration could not be achieved due to a lack of funding.  An important fact that Vale consistently omits, perhaps because it undermines Vale's arguments, is that the Joint Administrators and Vale had different reasons for coming to that conclusion.

To confirm, the Joint Administrators' *sole* reason for concluding that the purpose of the administration cannot be achieved is the lack of funding needed to take the steps necessary to monetize BSGR's contingent assets. In fact, the Joint Administrators and their professionals have not been funded since late 2019. As explained numerous times to Vale and this Court, the Joint Administrators cannot continue to incur costs, both of their own but also of the various legal advisors required to manage Vale's relentless flow of correspondence and objections, in this proceeding, in the United Kingdom and in Guernsey. It has always been, and remains, the case that the Joint Administrators believe that, with sufficient funding, the purpose of the administration, being in effect to return BSGR to solvency, could be achieved through the monetization of BSGR's contingent assets.  Therefore, should the Joint Administrators secure such funding, it follows that they would see no reason to seek a discharge.  This is an entirely logical position.

For Vale to suggest, as it does, that the Joint Administrators have somehow moved or resiled from their position is misleading and a distortion of the truth.  Similarly, to suggest that the Joint Administrators are abusing the Guernsey court process to exert leverage on Nysco Management Corporation ("Nysco") is equally wrong.  Vale goes on to suggest that *"the Joint Administrators' intention now may be to withdraw their petition to discharge the administration if Nysco pays the $1 million"*.  August 27 Letter at 2. This again, is a misrepresentation.  In order to put the record straight for Your Honor, the Joint Administrators feel it necessary and important to set out the facts in respect of the proceedings occurring before the Guernsey court.  Far from being an abuse of the Guernsey court process, if an administrator forms the view that the court-ordered purpose of an administration cannot be achieved, he *should* seek the court's directions.

The Honorable Sean H. Lane
August 28, 2020
Page 3



With the exception of the Soros Claim (which has been funded separately), Nysco is the sole source of funding for all work streams in the administration.[2]  However, since late 2019, Nysco has failed to provide regular and committed funding to BSGR's administration. Therefore, on July 10, 2020, the Joint Administrators informed Vale that (i) they had requested urgent confirmation from Nysco as to the availability of funding, and (ii) in the absence of a satisfactory response (including payment of an amount which is sufficient to fund both historic costs and future work), the Joint Administrators intended to apply to the Guernsey court for directions (which may well have had the result of the administration being discharged). On July, 16, 2020, the Joint Administrators informed Vale that no clarification had been provided by Nysco as to funding and therefore the Joint Administrators intended to apply to the Guernsey court for an order that the administration order be discharged on the basis that the court-ordered purpose of the administration of BSGR could no longer be achieved *due to a lack of funding* (generally, the "Discharge Application"). The Joint Administrators also confirmed that, in the circumstances, they had no objection in principle to Vale's application to appoint liquidators to BSGR and suggested that the most appropriate course of action would be for the Joint Administrators' Discharge Application, and Vale's application to appoint liquidators to BSGR (the "Liquidator Application" and together with the Discharge Application, the "Guernsey Applications"), to be issued and heard by the Guernsey court as a matter of urgency.[3]

The Guernsey Applications were scheduled to be heard on July 28, 2020 (the "July 28 Hearing").  As has already been explained to Your Honor, and as Vale routinely fails to acknowledge, Vale expressly requested that no notice of the Guernsey Applications be provided to BSGR's other creditors including Nysco (which is also its sole shareholder) and SCB, a secured creditor. The Joint Administrators expressed concern to Vale that the Guernsey court would not consider the Guernsey Applications in this manner, but ultimately acceded to Vale's request.

---

[2] It is also highly relevant that both Vale and Standard Chartered Bank ("SCB") (a secured creditor of BSGR) have, on a number of occasions since the outset of the administration, been offered the opportunity to provide funding, but have declined to do so.

[3] Quite properly, the Joint Administrators did not consent to BSGR as the debtor being wound-up by the Guernsey court.  This position was made entirely clear to the Guernsey court and Vale, as were the reasons for taking this position.  In Guernsey, winding-up petitions to the court are an *inter-partes* process and the Joint Administrators would not be in office to represent BSGR as debtor at the time Vale's winding-up petition was heard.  Indeed, the Guernsey court has been keen that Nysco and SCB as shareholder/creditor of BSGR and secured creditor of BSGR, respectively, are involved in, and heard on, the Guernsey court proceedings, including Vale's Liquidator Application, generally.

The Honorable Sean H. Lane
August 28, 2020
Page 4



Unfortunately – though unsurprisingly – at the July 28 Hearing, the Guernsey court determined to adjourn its consideration of the Guernsey Applications to August 11, 2020 (the "August 11 Hearing").  It did so to allow for notice to two additional interested parties: Nysco and SCB.  Had proper notice been provided by Vale, it is conceivable that the Guernsey Applications would have been determined by the Guernsey court at the July 28 Hearing and the Joint Administrators discharged. Instead, counsel to Nysco submitted letters to the Guernsey court indicating that Nysco intended to present evidence to make representations to the Guernsey court and ultimately to challenge the Guernsey Applications.  As a result, the Guernsey court adjourned the August 11 Hearing to August 25, 2020 (the "August 25 Hearing") to allow Nysco to raise any objections to the Guernsey Applications.[4]

In the meantime, the Guernsey court held an interlocutory hearing on August 14, 2020 for the purpose of considering (i) evidence submitted on short notice by Nysco regarding its willingness and ability to fund the administration going forward, and (ii) the Joint Administrators' proposal that Nysco provide limited funding to cover the necessary costs of the administration during the period of the adjournment until the August 25 Hearing.  The Guernsey court ordered Nysco to fund an amount equal to $290,000 to bridge limited costs and expenses of the administration until the August 25 Hearing.  Nysco made that payment on August 19, 2020.

The Guernsey court also made an order that Nysco had until noon on August 20, 2020 to file any evidence and argument in response to the Guernsey Applications. Nysco submitted such evidence, including affidavits describing (i) the funding arrangement by which Nysco proposes to address outstanding amounts owed to the Joint Administrators and their professionals and (ii) the reasons Nysco believes BSGR can be returned to solvency and hence achieve the court-ordered purpose of the administration.  The Guernsey court then ordered at a further interlocutory hearing held on August 21, 2020 that Vale and the Joint Administrators respond to Nysco's evidence by August 24, 2020.  Both Vale and the Joint Administrators submitted responses (albeit Vale filed its response more than three hours after the Guernsey court's deadline). Significantly, in their submission, the Joint Administrators made clear that they *wished to proceed with the Discharge Application* at the August 25 Hearing as the evidence which Nysco had submitted did not address the funding issues to the Joint Administrators' satisfaction.

Given the manner in which matters have proceeded before the Guernsey court, the Joint Administrators fail to understand how Vale or its counsel can paint such a misleading picture for this Court. Indeed, the recitation set forth in Vale's August 27 Letter (and its various prior letters to this Court, among others) is so misrepresentative that it would be reasonable for an objective observer to form the view that Vale has purposely sought to mislead this Court and to gravely prejudice the Joint Administrators in these proceedings.

---

[4] SCB have to date not chosen to become involved.

The Honorable Sean H. Lane
August 28, 2020
Page 5



To be clear – since such clarity is not reflected in Vale's August 27 Letter and seems to escape Vale in whole – the Joint Administrators' Discharge Application has been adjourned twice (with certain interlocutory hearings also taking place, for the purpose of interim directions from the Guernsey Court). In each instance, however, the Joint Administrators have pressed for an immediate determination of the Discharge Application. Yet, each hearing was adjourned *at the direction of the Guernsey court.* Most recently, the Discharge Application was heard in part at the August 25 Hearing but then adjourned until September 2, 2020 to be fully heard.

Although absent from the August 27 Letter, we have been advised that the August 25 Hearing commenced with counsel for the Joint Administrators making further submissions *in support* of the Discharge Application. The Joint Administrators' Guernsey counsel has explained that the hearing proceeded in person for approximately an hour at which point the Guernsey court realised that its remote hearing technology (by which certain non-court parties were viewing the hearing) had stopped working. As a result, the Guernsey court adjourned for approximately 5 minutes to address the technology issue. During this break, counsel for the Joint Administrators was approached by counsel for Nysco, who relayed a message from his client regarding a potential resolution to the funding problem. As a result of this approach, counsel for the Joint Administrators then asked the Guernsey court for a 30 minute adjournment to enable discussions between Nysco and the Joint Administrators to take place, which the court granted.

Ultimately, we are advised that the adjournment took longer than anticipated (taking approximately an hour) and, when the hearing resumed, in the light of the discussions that had taken place (which, as stated, were initiated by Nysco) counsel for the Joint Administrators asked the court for either (i) a conditional discharge unless Nysco pays $1 million within a week and provides a satisfactory proposal for paying outstanding expenses of the administration as well as for funding future administration expenses, or (ii) an adjournment for the same period. The Guernsey court judge said that it would not in any event be possible to complete the hearing of the Discharge Application on August 25 because there was insufficient time, and so he adjourned the matter. Once again, Vale omits this final point from its August 27 Letter.

As the matter stands currently, the Discharge Application is adjourned until September 2, 2020, having been partially heard. At that point, we expect that the Guernsey court will resume the proceedings where they were left at the end of the August 25 Hearing. In the meantime, Vale was given the option by the Guernsey court to come back before the court today (August 28, 2020) for further directions, if it wished. Vale chose not to take that opportunity.

The Honorable Sean H. Lane
August 28, 2020
Page 6



        Considering the facts not through Vale's misrepresentative lens, but as they are, it is plain that the Joint Administrators are acting in compliance with the requirements of the Guernsey court, not due to their lack of "desire" that the administration be discharged.[5] *To be clear, at this time, the Joint Administrators still anticipate that they will be discharged given the position as to funding as it currently stands.* However, in the event that Nysco were to provide adequate immediate funding, together with providing evidence that it will commit to the significant future funding requirements to allow the Joint Administrators to continue their work without impediment, *then* the Joint Administrators believe that the purpose of the administration could be achieved. In that event, there would be no need for them to be discharged. This position is consistent and logical.

        Vale has suggested that the Joint Administrators have *"made clear that they will not abide by any of their obligations in this Chapter 15 proceeding until Nysco provides additional funding"*. August 27 Letter at 2. This is not correct. As a threshold point, the Joint Administrators have highlighted the fact that they and their professionals have not been funded since late 2019 and that their current arrears exceed $4 million. Every task the Joint Administrators are forced to undertake increases this amount which – absent third-party funding – will ultimately accrue against BSGR's estate to the detriment of all of its creditors. As this Court has recognized and the Joint Administrators certainly appreciate, this Chapter 15 case is an *ancillary* proceeding in support of the principal proceeding in Guernsey. *See* Hr'g Tr. dated Aug. 6, 2020 at 5:17-18 ("this Chapter 15 . . . is ancillary to a foreign proceeding"). Accordingly, the Joint Administrators have sought to defer as much work as possible in an effort to avoid increasing the already substantial funding hole and further impairing BSGR's estate.  This is all the more a proper approach to take in circumstances where Vale's chosen liquidators may soon be in office who may take a different view in the Chapter 15 proceedings before this Court from the Joint Administrators or may wish to re-perform the relevant work themselves.  This Court should be aware in this regard that the Joint Administrators understand that Vale is funding its chosen liquidators on terms that prevent those liquidators from taking positions against Vale.

        As to the specific issue of depositions in this proceeding, the Joint Administrators have not refused to participate. Since the filing of the August 27 Letter, the Joint Administrators have advised counsel for Vale that Mr. Cohen is available to be deposed on September 23-24 provided that the Joint Administrators have not been discharged by that time and adequate funding has been arranged. The Joint Administrators suggest that funding be secured before September 10, 2020 to allow Mr. Cohen to be deposed without risk of accruing further unpaid time. Of course, if the Joint Administrators are discharged by this time, the need for his deposition will be moot. There is simply no need for Vale to demand Mr. Cohen be deposed in the immediate time while the Discharge Application is pending. Vale has agreed to the dates but has rejected any condition that funding shall have been arranged in an effort to avoid unnecessary cost and expense.  Of course, if Mr. Cohen's deposition is ordered for September 13-14 as currently (and unilaterally) noticed,

---

[5] Again, on two occasions the Joint Administrators have pressed for the Discharge Application to be granted and, as explained above, acceded to Vale's request that no notice of the Guernsey Applications be provided to Nysco.

The Honorable Sean H. Lane
August 28, 2020
Page 7



all parties run the risk of preparing and incurring costs for a deposition that may never be needed. By analogy, the same is true in relation to the noticed deposition of Mr. Cramer. In any case, Vale is well-aware that the Joint Administrators do not control the willingness of Mr. Cramer to participate. We have been advised by his counsel that, due to Vale's litigation against him in the context of the fraud complaint, he is unwilling to submit to a deposition at the current time. Mr. Cramer has indicated a willingness to be deposed following the examination by Vale in connection with the CPR 71 Proceeding later this year subject to certain conditions.

Vale's stance does not appear to be aimed at expediting these Chapter 15 proceedings, but rather aimed at intimidating and pressuring the Joint Administrators for its own tactical ends. The Joint Administrators, rightly, note in this regard two factors. First, the Joint Administrators are at a loss to understand why Vale would fight so aggressively Chapter 15 proceedings rightly intended to preserve the *pari passu* principle in collective insolvency proceedings to protect BSGR's only asset in the United States, namely the Soros litigation, when Vale's avowed view (with which the Joint Administrators do not agree) is that the Soros litigation is hopeless and hence worthless. Second, it is implicit that Vale takes issues with the Joint Administrators' position in these Chapter 15 proceedings before this Court that BSGR's center-of-main-interest is Guernsey. Notwithstanding Vale's exhaustive and aggressive efforts in this regard to deny the Chapter 15 relief sought from this Court by the Joint Administrators, Vale has nevertheless been content to seek relief in the Guernsey courts to appoint a liquidator of its choosing. Vale is, on this issue and others, riding more than one horse. One is left with the impression that Vale is simply intent on closing down the Soros litigation (and the same is equally true for other litigation) for reasons which are not clear to the Joint Administrators.

In respect of the pending confidentiality issues, Vale has correctly identified that the parties have fully briefed their positions and will be making their arguments to Your Honor at the hearing scheduled for September 3, 2020 (the "September 3 Hearing") in the event that the Joint Administrators shall not have been discharged the prior day. The Joint Administrators therefore fail to see why Vale feels entitled to make further arguments about these points, except in order to continue their unwarranted attack on the Joint Administrators and their professionals. Nevertheless, the Joint Administrators note that Vale has not moved to lift the confidentiality designation from all documents so designated by the Joint Administrators, nor is there any basis for the court to grant such relief. The September 3, 2020 hearing will address the *Motion of the Joint Administrators for an Order (I) Affirming Confidentiality Designations and (II) Modifying the Court's Confidentiality Stipulation* [Docket No. 94] (the "Confidentiality Motion"). The Confidentiality Motion seeks, among other limited relief, the affirmance of confidentiality designations as to a specific set of 73 documents together with a recognition from this Court that certain other illustrative categories of documents are entitled to be designated as confidential. The Joint Administrators further reject Vale's suggestion that the Joint Administrators spend considerable time and expenses (which again, is currently unfunded) to reconsider confidentiality designations that Vale has not even challenged.

The Honorable Sean H. Lane
August 28, 2020
Page 8



Finally, the Joint Administrators are not in default of any current discovery obligation in these proceedings. While the Joint Administrators were in the process of preparing responses to certain challenges raised by Vale to the Joint Administrators' privilege assertions, those efforts were not completed due to lack of funding and the anticipated discharge of the Joint Administrators (which at the time appeared to be imminent). Importantly, the Joint Administrators are under no order to provide responses to Vale's challenges, but instead have engaged with Vale in a good faith effort to resolve these issues appropriate to the circumstances. Should the Joint Administrators receive funding such that their role continues and they are not discharged by the Guernsey court, the Joint Administrators remain willing to continue to engage with Vale in this regard. With respect to the documents determined by Judge Gropper not to be privileged, the Joint Administrators have produced those documents.

Vale's accusation that the Joint Administrators have "opted out" of their duty to work with Vale to resolve outstanding discovery issues is absurd and offensive. As this Court must be painfully aware, the Joint Administrators have now spent over a year working to respond to Vale's expansive discovery effort – an effort that is indisputably intended to obtain documents and information for matters well beyond these proceedings. We repeat the illogical position expressed above which Vale takes in relation to the Chapter 15 proceedings, given its avowed view of the worth of the Soros litigation asset which the recognition is intended to protect. Vale's stance itself begs a pertinent question as to their true motivations.

At every opportunity, Vale has complained and brought new challenges which have demanded the time and attention of the Joint Administrators at steep cost to BSGR's estate and to the neglect of other material issues in this administration. As their discharge appeared imminent in July, the Joint Administrators reasonably determined to pause their voluntary engagement with Vale on the remaining discovery issues in order to preserve resources while matters concerning the future of their position and BSGR's administration are resolved in the Guernsey court. Yet now in its August 27 Letter, Vale asks this Court to *waive completely* all of the Joint Administrators' privilege assertions. As Vale recognizes, such a sanction is an extreme remedy and is here completely unjustified.  This is all the more so in circumstances where Vale may well be able to liaise with its chosen liquidator on the point.

In conclusion, the Joint Administrators are that Vale is, once again, seeking to divert the hearing scheduled for September 3 away from the only matter properly noticed, in an effort to cause further delay to these proceedings and burden the Joint Administrators with additional costs for which Vale knows they currently have no funding.  The Joint Administrators respectfully request that Your Honor restrict the forthcoming hearing to dealing with specific issues presented in the pending Confidentiality Motion.

Respectfully,

*/s/ Frederick D. Hyman*
Frederick D. (Rick) Hyman

DM3\7021795.4