**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

THOMAS J. MOLONEY / RICHARD S. LINCER / JAMES A. DUNCAN / STEVEN M. LOEB / CRAIG B. BROD / NICOLAS GRABAR / CHRISTOPHER E. AUSTIN / HOWARD S. ZELBO / DAVID E. BRODSKY / ARTHUR H. KOHN / RICHARD J. COOPER / JEFFREY S. LEWIS / PAUL J. SHIM / STEVEN L. WILNER / ANDRES DE LA CRUZ / DAVID C. LOPEZ / MICHAEL A. GERSTENZANG / LEV L. DASSIN / NEIL Q. WHORISKEY / JORGE U. JUANTORENA / MICHAEL D. WEINBERGER / DAVID LEINWAND / DIANA L. WOLLMAN / JEFFREY A. ROSENTHAL / MICHAEL D. DAYAN / CARMINE D. BOCCUZZI, JR. / JEFFREY D. KARPF / KIMBERLY BROWN BLACKLOW / ROBERT J. RAYMOND / SUNG K. KANG / SANDRA L. FLOW / FRANCISCO L. CESTERO / FRANCESCA L. ODELL / WILLIAM L. MCRAE / JASON FACTOR / JOON H. KIM

MARGARET S. PEPONIS / LISA M. SCHWEITZER / JUAN G. GIRÁLDEZ / DUANE MCLAUGHLIN / BREON S. PEACE / CHANTAL E. KORDULA / BENET J. O'REILLY / ADAM E. FLEISHER / SEAN A. O'NEAL / GLENN P. MCGRORY / MATTHEW P. SALERNO / MICHAEL J. ALBANO / VICTOR L. HOU / ROGER A. COOPER / AMY R. SHAPIRO / JENNIFER KENNEDY PARK / ELIZABETH LENAS / LUKE A. BAREFOOT / JONATHAN S. KOLODNER / DANIEL ILAN / MEYER H. FEDIDA / ADRIAN R. LEIPSIC / ELIZABETH VICENS / ADAM J. BRENNEMAN / ARI D. MACKINNON / JAMES E. LANGSTON / JARED GERBER / COLIN D. LLOYD / COREY M. GOODMAN / RISHI ZUTSHI / JANE VANLARE / DAVID H. HERRINGTON / KIMBERLY R. SPOERRI / AARON J. MEYERS / DANIEL C. REYNOLDS / ABENA A. MAINOO

HUGH C. CONROY, JR. / JOSEPH LANZKRON / MAURICE R. GINDI / KATHERINE R. REAVES / RAHUL MUKHI / ELANA S. BRONSON / MANUEL SILVA / KYLE A. HARRIS / LINA BENSMAN / ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS / JUDITH KASSEL / PENELOPE L. CHRISTOPHOROU / BOAZ S. MORAG / MARY E. ALCOCK / HEIDE H. ILGENFRITZ / KATHLEEN M. EMBERGER / AVRAM E. LUFT / ANDREW WEAVER / HELENA K. GRANNIS / JOHN V. HARRISON / CAROLINE F. HAYDAY / NEIL R. MARKEL / KENNETH S. BLAZEJEWSKI / LAURA BAGARELLA / SHIRLEY M. LO / JONATHAN D.W. GIFFORD / SUSANNA E. PARKER / DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212-225-2086
jrosenthal@cgsh.com

September 2, 2020

VIA ELECTRONIC MAIL AND ECF

The Honorable Sean H. Lane
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408
shl.chambers@nysb.uscourts.gov

Re:    *In re BSG Resources Limited*, No. 19-11845 (SHL)

Dear Judge Lane:

We write on behalf of Vale S.A. ("Vale") to provide an update on the Guernsey proceedings this morning and to respond to one issue in the Joint Administrators' August 28, 2020 Letter to Your Honor [Docket No. 116] (the "August 28 Letter"). While we ordinarily would have waited to address this issue at the September 3, 2020 hearing, the virtual format of that hearing makes it impossible to hand up documents during the hearing, and thus this brief letter is necessary.

First, as the Court knows from our prior communications, the Guernsey proceedings have been adjourned multiple times since the application to discharge the Joint Administrators was filed in mid-July. The Joint Administrators continue to negotiate additional funding with Nysco, and this morning's hearing was adjourned further until September 8, 2020, pending the Court's further consideration of the administration's funding in light of those discussions and the parties' further submissions to the Court. The Joint Administrators have made clear that, notwithstanding prior representations to the Court, they do not wish to be discharged if they instead are successful in leveraging the discharge application as a basis for obtaining additional funding from Nysco.

We do wish to advise the Court of one significant apparent misstatement made by the Joint Administrators to Your Honor in their efforts to delay performance of their obligations.

On several occasions, the Joint Administrators have represented to the Court that "the Joint Administrators and their professionals have not been funded since late 2019." See, e.g., August 28 Letter at 2. We confronted the Joint Administrators and they admitted to us that they and Duane Morris have received multiple payments this year totaling well over $1 million. Because of confidentiality considerations, we are not attaching the Joint Administrators' letter detailing each one of those payments, but invite them to submit it to the Court in advance of tomorrow's hearing since they obviously would not have the same obstacle with respect to their own letter. Of course, irrespective of the availability of funding from Nysco, the Joint Administrators and their counsel must comply with their discovery obligations. See, e.g., United Parcel Serv. of Am., Inc. v. The Net, Inc., 222 F.R.D. 69, 71 (E.D.N.Y. 2004) (noting that "a party is not usually excused from bearing the cost of responding to a discovery request simply because of a financial hardship"); In re Cuddy, 322 B.R. 12, 18 (D. Mass 2005) (explaining that "[t]he failure of a client to pay for his services does not relieve a lawyer of his duty to perform them *completely and on time*" unless and until the lawyer is relieved of those duties by the court) (emphasis added) (internal citation omitted).

The one issue in the August 28 Letter that we wish to address here concerns the noticed deposition of BSGR director Dag Cramer. For the first time in that Letter, the Joint Administrators declare that Mr. Cramer "is unwilling to submit to a deposition at the current time." August 28 Letter at 7. Mr. Cramer's deposition was initially noticed more than a year ago in June 2019, and never before have the Joint Administrators even suggested that they would not produce him.[1] As an indisputable matter of law, they are required to do so.

As an initial matter, the Joint Administrators' suggestion that they "do not control the willingness of Mr. Cramer to participate," August 28 Letter at 7, is demonstrably wrong. Indeed, the Federal Rules themselves explicitly require a corporation to produce its directors for examination and subjects it to sanctions for not doing so. Fed. R. Civ. P. 37(d)(1)(A)(i) (the Court may order sanctions where "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition"). Indeed, the Joint Administrators implicitly conceded that well-settled principle of law when – after months of battling Vale – they finally produced Mr. Cramer's documents. See Joint Administrators' Weekly Discovery Report, dated May 1, 2020 at 1-2, attached here to as Exhibit A.

Mr. Cramer's testimony is material to the issues before this Court, including whether Guernsey is the center of main interests of BSGR. As Beny Steinmetz's chief lieutenant, the London-based Mr. Cramer has not only directed many of BSGR's and its subsidiaries' actions both before and during the administration, but he can offer critical testimony concerning the dissipation of BSGR's assets since the commencement of the

---

[1] To the contrary, the Joint Administrators have represented to this Court that they would make Mr. Cramer available for a deposition once document production was complete. See, e.g., June 24, 2019 Hr'g Tr. 6:1-10 ("Shortly after the hearing, we did receive from Vale a comprehensive document request along with interrogatories and notices of deposition of the two joint administrators and two of the -- board of members -- members of board of directors. We are working to coordinate timing. I think, you know, we are happy to produce those parties for deposition, whether they'd be in New York or London or Guernsey. We recognize that the lawyers from Cleary Gottlieb, they've been very accommodating on that.").

Hon. Sean H. Lane, p. 3

administration and thus, whether BSGR's activities have truly been directed from Guernsey or elsewhere.

BSGR has only two directors – Mr. Cramer and Peter Driver – who have served very different roles. As Mr. Driver testified, he is the "independent director" and Mr. Cramer is a "non-executive director." Peter Driver Deposition Transcript at 114:12-115:1, an excerpt is attached hereto as Exhibit B. When asked whether Mr. Cramer was the director with the more frequent contact with Mr. Steinmetz, Mr. Driver testified, "[y]ou have to ask Mr. Cramer that question." Id. at 269:17-18. Evidence reveals that Mr. Cramer from London – not the Joint Administrator from Guernsey or Mr. Driver, BSGR's sole employee in Guernsey – has been running the operations of BSGR's most valuable assets, its diamond mining subsidiary, Octea, and that he has implemented a number of measures to siphon its value to himself and members of Steinmetz's family. Indeed, it was Mr. Cramer who publicly characterized the Guernsey Administration as an attempt at "drawing up the drawbridge, filling up the moat, [and] putting some sharks in the moat, to make sure [BSGR] can stay the distance . . . even if there are adverse awards" against it. Thomas Biesheuvel, *Beny Steinmetz Puts Mining Company BSGR into Administration*, Bloomberg (Mar. 7, 2018).

In a meeting note produced by the Joint Administrators, Mr. Cramer was reportedly (and erroneously) told by the Joint Administrators in July 2019 that his deposition may not be required, to which the note reflects that "[REDACTED]" See BDO File Note of Meeting/Call, July 1, 2019 (JA0133020), attached hereto as Exhibit C.[2]

The Joint Administrators claim that Mr. Cramer changed his mind because he was named a defendant in an English lawsuit filed last December against Steinmetz and others responsible for defrauding Vale. August 28 Letter at 7. But in the nine months since that time, not only have the Joint Administrators never suggested to Vale that they would no longer produce Mr. Cramer, they have acknowledged this his deposition *would* occur, including for example, in a summary of discovery issues presented to Judge Gropper on March 24, 2020.

This is not the first time that Mr. Cramer has resisted his obligation to be examined by Vale in connection with his role as director of BSGR. In response to Part 71 proceedings in England – whereby a judgment creditor is entitled to receive documents from and examine a representative of the debtor – Mr. Cramer spent more than a quarter of a million pounds seeking to avoid his obligations, including on the basis that Vale had sued him in separate proceedings. We enclose herewith as Exhibit D a copy of the English court's ruling (the "English Court's Order") against Mr. Cramer in every respect and draw Your Honor's attention in particular to paragraph 63, where the English court wrote:

> The points taken on Mr Cramer's behalf were not a mixture of good and bad; they were all bad. Further, the language of the correspondence and submissions was inappropriate to Mr Cramer's situation. He is an officer of a company which owes the claimant a sum in excess of US$2 billion, none of which has been paid. He has been made the subject of

---

[2] Once again, because of the Joint Administrators' improper confidentiality designations, we are compelled to file this document under seal and redact the quote in this paragraph.

Hon. Sean H. Lane, p. 4

>a routine procedure which the claimant was entitled to follow and to which he could not reasonably object. Some recognition of that would have been preferable to the tones of outrage and indignation which were employed. The expenditure [by Mr Cramer] of £254,465 on this application was inappropriate and disproportionate both in amount and object. Whilst in form offering cooperation, the substance and reality of Mr Cramer's approach has been quite the opposite. Where the precise responsibility for these matters lies is not something that I can or need determine. All I will say is that parties to litigation and their professional advisors are not bound to take bad or hopeless points; they are not bound to adopt a needlessly antagonistic stance to their opponents, and both things are likely in the end to operate directly contrary to their interests.

In ordering Mr. Cramer to sit for examination, the English court observed that the "issues relating to enforcement and the issues arising in the 2019 proceedings [in which Mr. Cramer is a defendant] are not the same." English Court's Order ¶ 43.[3] The same is equally true here. While the issues of COMI and good faith focus largely on events that have transpired since the Guernsey administration was commenced in early 2018 (particularly around the time the Chapter 15 petition was filed in mid-2019), the lawsuit against Mr. Cramer concerns primarily the fraud that was committed against Vale in 2014. The latter most certainly does not excuse Mr. Cramer's legal duty as a current director of BSGR to provide testimony on issues before this Court on which he appears to have unique knowledge, and thus not surprisingly, the Federal Rules themselves defeat the objection of the Joint Administrators.

We look forward to addressing this and the other issues with Your Honor tomorrow.

Respectfully submitted,

Jeffrey A. Rosenthal

cc:    Frederick Hyman, Esq.

---

[3] Mr. Cramer was also ordered by the English court to pay £120,000 in Vale's costs.