Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-11845-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   BSG RESOURCES LIMITED (IN ADMINISTRATION) AND WILLIAM

8   CALLEWAERT AND MALCOM COHEN, AS JOINT ADMINISTRATORS,

9

10          Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  United States Bankruptcy Court

14                  One Bowling Green

15                  New York, NY   10004

16

17                  September 3, 2020

18                  2:05 PM

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

Page 2

1    HEARING re Status Conference

2

3    HEARING re Doc. #94 Motion For An Order (I) Affirming

4    Confidentiality Designations And (II) Modifying The Court's

5    Confidentially Stipulation

6

7    HEARING re Doc. #95 (Seal) Joint Administrators Motion To

8    File Under Seal: Their Appendix of Confidential Documents

9

10   HEARING re Doc. #99 (Seal) Vale's Motion To File Under Seal:

11   Vale S.A.'s Opposition To The Motion Of The Joint

12   Administrators For An Order (I) Affirming Confidentiality

13   Designations And (II) Modifying The Court's Confidentiality

14   Stipulation And To File Under Seal Certain Exhibits To The

15   Declaration Of Jeffrey A. Rosenthal

16

17   HEARING re Doc. #101 (Seal) Joint Administrator's Motion To

18   File Under Seal: Certain Exhibits To Reply In Support Of

19   Their Motion For An Order (I) Affirming Confidentiality

20   Designations And (II) Modifying The Courts Confidentiality

21   Stipulation

22

23   HEARING re Doc. #108 (Seal) Vale's Motion To File Under

24   Seal: Exhibit A To The Letter Of Jeffrey

25   A. Rosenthal

1    HEARING re Doc. #119 (Seal) Motion To File Under Seal

2    /Motion Of Vale S.A. For Leave To File Under Seal Exhibit To

3    The Letter Of Jeffrey A. Rosenthal

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1   A P P E A R A N C E S :

2

3   DUANE MORRIS LLP

4        Attorneys for Joint Administrators

5        222 Delaware Avenue

6        Wilmington, DE, 19801

7

8   BY   RICK HYMAN (TELEPHONICALLY)

9

10  CLEARLY GOTTLIEB STEEN & HAMILTON LLP

11       Attorneys for Vale

12       One Liberty Plaza

13       New York, NY, 10006

14

15  BY   JEFFREY ROSENTHAL (TELEPHONICALLY)

16

17  ALSO APPEARING:

18  WILLIAM CALLEWAERT (TELEPHONICALLY)

19  JARRET HITCHINGS (TELEPHONICALLY)

20  MALCOLM COHEN (TELEPHONICALLY)

21  LASTOWSKI, MICHAEL (TELEPHONICALLY)

22  NADA NICHOLS (TELEPHONICALLY)

23  STEVE PETERS (TELEPHONICALLY)

24  LISA VICENS (TELEPHONICALLY)

25

1              P R O C E E D I N G S

2              THE COURT:  Good afternoon.  This is Judge Sean

3    Lane in the United States Bankruptcy Court for the Southern

4    District of New York here for a 2:00 hearing and using the

5    Court Solutions service.  And I believe that we have

6    everybody on the line, so let me find out who's here for the

7    foreign representative.

8              MR. HYMAN:  Good morning, Your Honor.  It's Rick

9    Hyman from Duane Morris, and my colleague, Jarret Hitchings

10   is also on the line.

11             THE COURT:  All right.  And who is here from Vale?

12             MR. ROSENTHAL:  Good afternoon, Your Honor.  It's

13   Jeff Rosenthal with Cleary Gottlieb.  I hope you are still

14   doing well.  I am joined by my partner, Lisa Vicens, and my

15   associate, Emma Berdugo.

16             MR. HYMAN:  And, Your Honor, it's Rick Hyman

17   again.  I just want to note that we do have representatives

18   from the joint administrators in BDO on the line:  Will

19   Callewaert, one of the joint administrators; Steve Peters,

20   who you've met in court before, works with BDO and a couple

21   of their colleagues.

22             THE COURT:  All right.  Thank you very much.  So

23   we were here to sort of touch base and follow up on a series

24   of get-togethers that we've had in recent history.  And like

25   every time we meet, I have been prepared in advance with a

Page 6

1    flurry of filings by parties, and I have read all those

2    papers.

3              So I've got to say the more I read the papers back

4    and forth, the more I'm struck by two things.  One is this

5    case is unlike any Chapter 15 I have ever presided over in

6    that there seems to be no interest in recognition, and there

7    never seems to have actually been.

8              And second is that we keep fighting and discussing

9    things that really are not for this Court to decide as an

10   ancillary proceeding, so there's a lot of ink and attorney

11   time that's been spent defending people's honors and

12   complaining about various things across the globe for which

13   I am not presiding over.  And I -- I've just continually be

14   struck -- been struck by the fact that it just doesn't seem

15   to be a productive way to use anybody's time.

16             And so in thinking about issues for today's

17   hearing, I've sort of gone back to first principles, which

18   is what is it that we do here in a Chapter 15 and what is it

19   that we don't?  And I think what we do here in the first

20   instance is people file seeking recognition for -- foreign

21   main or non-main proceeding.  And with that comes an

22   automatic stay upon recognition, but they can ask for

23   preliminary relief, and they can also ask for additional

24   relief.  Additional relief has not been -- ever been an

25   issue here.

1           So recognition has been proceeding exceedingly

2    slowly, and the issue of preliminary relief -- that is what

3    you would get before you file for bankruptcy -- has been

4    complicated by the existence of a district court proceeding

5    to recognize the judgment and which court would ask for a

6    stay, and the party's sort of mooted that issue by reaching

7    an agreement.

8           So my thought is that the way I'm now viewing this

9    case is sort of focused on those two issues, which is

10   recognition and any relief prior to recognition.  The things

11   that I think are worth fighting about is whether this case

12   should proceed at all and -- probably even more importantly

13   -- whether there should be a stay.

14          I don't know what the state of play is on any

15   party's agreements, but we seem to be talking around issues.

16   Again, issues that are very important -- and there's great

17   concern about the dissipation of assets, it's been alleged.

18   And if I were a judge in another court, I would be

19   exceedingly concerned about the information that's been put

20   in front of me, but I don't have those proceedings in front

21   of me, so I find myself sort of frustrated.  I have had very

22   little success in trying to mold and shape and move forward

23   the limited matters I have in front of me.

24          And so I mention this all not to clue you in on

25   anything new.  You're all very smart people, very

Page 8

1    accomplished, know what you're doing, so I'm giving away ice

2    in the winter.  But I'm doing it for the -- for the reason

3    of just trying to figure out the most efficient way to get

4    our proceeding to a conclusion regardless of what goes on

5    overseas and whether that means that there should be a

6    motion to dismiss filed, whether that means people should

7    duke out here or in the district court the issue of the

8    stay.  Those are really the only things that I have in front

9    of me.

10            And if there is no stay and there's no request for

11   recognition, there's really no prejudice in the sense of

12   something that Vale has to worry about because all we have

13   is a proceeding that's going along very slowly.

14            I confess I haven't looked at the caselaw to find

15   out if there are provisions for dismissing in caselaw about

16   dismissing a case for failure to move forward.  But given

17   how old this case is, it's a question that certainly has

18   come to my mind.

19            So I mention this all not to agree or disagree

20   with any of the filings and the issues that we've been

21   talking about recently or to diminish their importance in

22   any way, but just try -- to try to, as a case manager, think

23   about what it is that we actually can be doing here that

24   actually shares the needs of the parties and to try to focus

25   on that and to put a finer point on it in a case -- this

Page 9

1    case is from 2019 and, you know, we're rapidly headed

2    towards 2021, and we don't seem to be that much further

3    along from where we started.

4              So with that, let me hear from the foreign

5    administrator.

6              MR. HYMAN:  Thank you, Your Honor.  And I think

7    that was all very -- that was all very helpful.  This is

8    Rick Hyman from Duane Morris on behalf of the joint

9    administrators and foreign representative in this Chapter

10   15.

11             I think you hit on a point that is an important

12   point, and that is the lack of any prejudice to Vale.  Your

13   Honor will recall -- though I wouldn't expect the Court to

14   recall specifically any of the dates -- that earlier this

15   year the parties had entered into a stipulation in

16   connection with the district court action whereby, among

17   other things, the joint administrators agreed not to further

18   contest the issuance or recognition of the foreign

19   arbitration award, and Vale agreed that it would stand down

20   from exercising rights and remedies with respect to its

21   George -- claim against George Soros and certain of his

22   affiliates, which as Your Honor may recall, was really the

23   only asset -- the only material asset -- perhaps the only

24   asset in the United States owned by BSGR.  That was really -

25   - the protection of that proceeding was really the reasons

Page 10

1   for filing the Chapter 15 case in the -- in the first

2   instance.

3              Obviously, you have read through the papers, so

4   I'm not going to -- I'm not going to walk through them.  I

5   think you understand where we are in terms of case history,

6   certainly.  There have obviously been significant challenges

7   with respect to funding.

8              For many months, the joint administrators and

9   their professionals continued to act with the expectation

10  that funding would be -- would be provided.  It has not been

11  provided.  There is very little assurance, at least as far

12  as we can tell to date, that it will be provided to the

13  satisfaction of the joint administrators.

14             In connection with that, the joint administrators

15  have determined that it was appropriate back in July to

16  bring the parallel applications in Guernsey, and they both

17  did so.  We were before Your Honor on August 6th.  It was

18  shortly before the hearing before Your Honor that the first

19  hearing on the parallel applications accord in Guernsey.

20  That was on July 28th.

21             There was an adjournment of that hearing.  It was

22  primarily due to the lack of notice to interested parties,

23  one being Nysco, who you've heard a lot about during this

24  case, and the other being Standard Chartered Bank, who is

25  the other secured creditor.

Page 11

1           Unfortunately, we had hoped that the applications

2     would be finally determined at the August 11th hearing.

3     Nysco, so to speak, raised its hand and advised that it was

4     going to be objecting.  And for that reason, the proceedings

5     in Guernsey have taken a little bit longer than anybody

6     would have anticipated.

7           You note from our letter last night that there was

8     a hearing yesterday.  I guess our letter was filed this

9     morning.  There was a hearing yesterday in Guernsey.

10    Notwithstanding the fact that both parties continued to

11    advocate for the discharge, and Nysco continued to object,

12    and there was a further adjournment to September 8th.

13          From the joint administrators' perspective, there

14    are really only two, perhaps three, avenues that can occur

15    at that September 8th hearing.  One is that there might be a

16    mutual agreement to fund the administration.  That would be

17    a mutual agreement with Vale and with Nysco.  That had been

18    at the suggestion of the bailiff in Guernsey.

19          I don't think that the joint administrators have

20    reason to believe that there is room for a mutual agreement,

21    but given the urgings of the bailiff, we had sent a letter

22    to the parties that was attached to our letter with some

23    proposal.  Assuming that there will not be a mutual

24    agreement between the parties on September 8th, we expect

25    that the joint administrate -- or the administration will be

Page 12

1    discharged, and a liquidator will be appointed.

2            THE COURT:  Let me -- let me interrupt you there.

3    I have no expectation of what's going to happen on September

4    8th.

5            MR. HYMAN:  I understand.

6            THE COURT:  Because any expectation is about

7    what's happening, which is really folly because there's been

8    a lot of -- I mean, between Nysco's selective involvement

9    and things I'm hearing about people being willing to be

10   deposed or not, there are a lot of people playing a lot of

11   games across the globe.  And again, I'm not the judge with

12   plenary authority over that.  If I was, I'd have a lot to

13   say, and I don't think it would be very difficult to figure

14   out what tact I would take.  But I don't have plenary

15   authority.  I have ancillary jurisdiction as this --

16   somewhat the tail end of the dog in a Chapter 15 case.

17           My question for you is why shouldn't this Chapter

18   15 be dismissed today?  What purpose does it serve other

19   than to be a host organism for a tremendous amount of money

20   that's been spent in an administration overseas that you now

21   tell me is administratively insolvent?

22           So I just -- I -- again, I haven't looked into the

23   issue, but I just have -- I have real trouble -- you know,

24   these things are -- the caselaw tells me as a judge I'm

25   supposed to deal with all deliberate speed with applications

1   for foreign recognition.  But that's likely because the

2   drafters of Chapter 15 never contemplated a case like this,

3   and I just wonder what actual purpose it has.

4           MR. HYMAN:  We believe, Your Honor, that to the

5   extent that there was funding -- and we don't have any

6   expectation to date that there will be funding -- that the

7   reason for bringing the case and continuing with the case

8   would be to protect the Soros claim.

9           Going back -- going back to prejudice, Your Honor,

10  you're absolutely correct.

11          THE COURT:  But why don't -- why don't you just

12  dismiss it, and if you have a reason to -- you or someone

13  else has a reason to refile it, they refile it?  I just -- I

14  just don't understand.  I've been waiting for various things

15  to happen overseas and waiting for things to happen here,

16  and it's like watching paint dry.  And we have not made --

17  again, as an ancillary case, we have become a reflection of

18  conversations occurring and concerns being raised in other

19  places.  And there's a tremendous amount of attorney time

20  being spent in this case, and I have trouble seeing for what

21  end.

22          MR. HYMAN:  And for that reason, Your Honor, the

23  joint administrators brought their discharge application in

24  the first instance.  They didn't want to dismiss the case

25  because they brought their discharge application in

Page 14

1    conjunction with an application by Vale to appoint

2    liquidators -- liquidators of their choosing.

3           It is conceivable that the liquidators would want

4    to continue with the Chapter 15 for some reason.  It is

5    perhaps more likely that the liquidators once appointed

6    would want to terminate the Chapter 15.  But we didn't think

7    that it was in anybody's interest to dismiss the Chapter 15

8    until we allow the Guernsey court to rule with respect to

9    those parallel applications.

10          We don't want to waste this Court's time.  We

11   recognize more than anybody the amount of attorney time that

12   is being spent on this and which has not been -- not been --

13   not been paid for.  I can assure you that that is very close

14   to all of us.

15          THE COURT:  Well, the -- whether it's been paid

16   for, regrettably, is your problem.  Whether it's been

17   fruitful, regrettably, is my problem.  And my problem is it

18   hasn't been fruitful, and we just -- again, I don't want to

19   beat a dead horse, but it's -- I'm not sure there's a legit

20   purpose at this point in time for this Chapter 15.

21          But I'm beating a dead horse, so anything else

22   from the foreign administrators before I hear from Vale?

23          MR. HYMAN:  Yes, Your Honor.  Vale at the moment

24   is free to take any action with respect to the Soros claim.

25   Their agreement to stand still expired in early August.

Page 15

1    They haven't taken such action, but they are entitled to

2    such action.

3           You correctly pointed out that because we haven't

4    gotten to recognition, there is no automatic stay.  What we

5    would suggest, Your Honor, is that we push this off for a

6    period of seven to 10 days so that we can get beyond that

7    September 8th hearing, at which point we will know that

8    either the joint -- or the joint administrators have been

9    discharged, the administration has been discharged, and

10   there either is or is not a liquidator, or alternatively,

11   and perhaps extremely unlikely, that there is funding for

12   past due expense, including what we've represented to be

13   approximately $4 million, in excess of $4 million plus

14   funding for amounts going forward.  We don't anticipate that

15   to be the case.  It's conceivable.

16          If that were the case, we would be able to sit

17   down -- we'd be in a position to sit down with Vale and come

18   up with a scheduling order if we determined that it was

19   appropriate to continue this case.  It may be that we don't

20   have to spend any more time in front of Your Honor because

21   the administration could be discharged and liquidators

22   decide that they don't want to continue it.

23          What we don't think makes a lot of sense is to

24   continue to hear matters at the expense of everybody and at

25   the waste of your time, Your Honor, at a time while Vale

Page 16

1    isn't prejudiced at all by any further short delay in this

2    matter because there is no automatic stay, and they are free

3    to take any action that they want to take.

4            THE COURT:  Well -- but here's the thing.  With

5    the case come obligations, right?  And so I was the one who

6    started to -- and by saying started us off by wondering what

7    the purpose is of the case and whether it should be

8    dismissed.

9            But that said, when you're here, you're here, and

10   that has consequences.  And the only thing I'm sure of on

11   September 8th is that you've told me there's going to be

12   another hearing.  That's all I'm sure of.  And that's all

13   that experience tells me that I can take from that.  If you

14   quote Thomas Paine, I have one lamp to light my feet, and

15   that's experience.  And experience tells me that you're

16   going to have a hearing, and who knows whether there'll be

17   any progress or whether there'll be any decisions made.

18           And so the problem is, a short delay -- we've now

19   -- for this -- even for this particular vignette in this

20   longer play, we've had a series of delays dealing with

21   what's going on in Guernsey and Nysco and all that.  So I'm

22   not -- I'm not as confident as you are that we're going to

23   reach closure any time soon.

24           So all right.  With that, let me hear from Vale.

25           MR. ROSENTHAL:  Thank you, Your Honor.  It's Jeff

Page 17

1    Rosenthal of Cleary, Gottlieb on behalf of Vale.  I think

2    Your Honor's statement at the outset I think was spot on,

3    when you said, you know, we can't really control what's

4    going on overseers, but, you know, we need to kind of think

5    about how to deal with things that are before this Court.

6         And our suggestion, Your Honor, frankly, is given

7    that the joint administration has filed this now 15 months

8    ago, we are close to the finish line, and if they don't want

9    to withdraw it, as Your Honor has just said that they ought

10    to consider, I think that we can do something and also

11    satisfy Mr. Hyman's goal of let's see what happens on the

12    8th, which is there's two more depositions left.  Let's

13    schedule them.  They've offered Mr. Cohen's deposition for

14    September 23rd and 24th.  We've said that's fine with us.

15        If on the 8th they're discharged, wonderful.  We

16    can then presumably adjourn Mr. Cohen's deposition.  But if

17    the 8th is like the last five hearings and no progress is

18    made, then we have Mr. Cohen's deposition on the calendar,

19    and we'll have 15 days to all prepare for it.  We'll hold

20    off our preparation.  They can hold off their preparation

21    until the 8th, and let's see what happens.  So there's no

22    cost in that, and at least it's progress here if this case

23    isn't going to just disappear.

24        The other deposition is Mr. Kramer.  There's a

25    legal issue with regard to Mr. Kramer.  They've said he now

Page 18

1   refuses -- or he told -- they say that Mr. Kramer's counsel

2   told them on June 10th that he would not appear for a

3   deposition, and they actually say that in the letter this

4   morning to justify that they have not withheld information

5   from us about Mr. Kramer.  But we're three months after June

6   10th, and we just heard of this, Your Honor, so we can draw

7   our own conclusions of that.

8           But their explanation with regard to Mr. Kramer is

9   they said that Guernsey law has no enforcement mechanism if

10  Mr. Kramer refuses to be deposed.  And respectfully, Your

11  Honor, the Second Circuit has made it quite clear that the

12  obligation to produce witnesses -- and I'll cite cases, but

13  I don't want to get ahead of myself right now because I

14  think we're just at the overview stage -- but the Second

15  Circuit has made it quite clear that a party coming to court

16  in the United States has to produce witnesses in accordance

17  with U.S. law and the federal rules of civil procedure.  I

18  think there's no dispute at all that a director's obligated

19  to be produced for a deposition under Second Circuit law and

20  the federal rules of civil procedure.

21          But let's get an order.  Let's schedule Mr.

22  Kramer's deposition also sometime after the 8th, and we can

23  let it be a couple weeks after the 8th again so that if they

24  get discharged on the 8th like Mr. Hyman is confident that

25  they'll do -- with I think the same confidence he expressed

1    when we were before you on August 6th a month ago -- but

2    let's schedule that, get a court order for that after the

3    8th.  And again, that could disappear if Mr. Hyman's

4    prediction is correct.  But otherwise, we take these final

5    two depositions, and we move this thing forward if they're

6    not going to just give up on it.

7            And the last thing --

8            THE COURT:  If you're -- let me ask a question.

9    If you're -- under your view of the world, what happens --

10   are you contemplating just you send your notice and if Mr.

11   Kramer doesn't show, then they'll -- then there would be,

12   assuming the case continues, proceedings relating to that?

13   And you wouldn't frontload the legal issue.  You'd wait to

14   see whether he showed for a deposition that's been properly

15   noticed.

16           MR. ROSENTHAL:  Yes.  In fact, we have properly

17   noticed his deposition, and it was only after we noticed it

18   that they then finally told us, oh, by the way, he told us

19   back in June -- although actually they didn't tell us that.

20   They told you this morning, Your Honor, that they told him

21   back in June that he wouldn't appear.  They waited for us to

22   notice it twice.  The first one was actually for today.

23           But yes.  I mean, what I would do is I would

24   notice it, but I think the Court ordering it so that it's

25   clear that they're in contempt if he does not appear for his

Page 20

1    deposition with whatever sanctions are appropriate in the

2    context of a recognition hearing if he doesn't appear.  But

3    I think -- and I'll get to this whenever the Court wants.

4    Second Circuit law is unambiguous on this issue.  And, in

5    fact, in cases involving, for example, the French blocking

6    statute, Second Circuit has said even if it's illegal under

7    foreign law, that doesn't excuse an obligation of a litigant

8    here in the United States.

9             So that's exactly how we were going to proceed

10   with respect to Mr. Kramer and Mr. Cohen.

11            I think with regard to the issue that actually was

12   noticed by the joint administrators for today with regard to

13   confidentiality, again, that's an issue that needs to be

14   resolved as part of the recognition process.  We're not

15   looking to bring ancillary issues to this Court.  We want to

16   get this thing moving to a decision one way or the other.

17            And with respect to confidentiality, there is

18   prejudice to their tactics in Vale because we've now

19   prepared multiple times for oral arguments before this Court

20   on an issue that's been fully briefed.  We spent a lot of

21   money briefing it, and now they're saying to us don't have

22   it heard today, Your Honor, even though we, the joint

23   administrators, noticed it for today.  But let's schedule

24   another hearing sometime in the future where I'll have to

25   spend a few more hours preparing for a hearing and wasting

Page 21

1    Vale's time and money to do that.

2              And I think that the issues are very

3    straightforward with respect to that, and if we're all

4    prepared and the Court is prepared to address it, there's no

5    reason why we shouldn't go forward and get an order because

6    I think, frankly, and I'm shocked that after the last turn

7    we had before Your Honor in which they argued vehemently

8    about the confidentiality of our letter and the documents

9    and required us to go seek sealing in Guernsey, that they

10   basically advised us that they weren't even going to bother

11   to do that, and therefore it can be publicly filed in

12   Guernsey.

13             I think in light of that and the briefing that's

14   been submitted, there's no confidentiality over these

15   documents here, and I think that we can get that resolved

16   quickly and efficiently and move on, so that's one more

17   issue off everybody's plate as we move towards a recognition

18   hearing.

19             And the last thing --

20             THE COURT:  So are you suggesting to do that on

21   another date but to -- some date after the 8th?

22             MR. ROSENTHAL:  No.  I think with respect, Your

23   Honor, we're all prepared to do it today.  I don't know

24   whether the Court is, but it's been noticed by the joint

25   administrators for hearing today.  It's been briefed.  I am

1    prepared to argue it.  I'm confident Mr. Hyman is prepared

2    to argue it because he served the notice of the hearing on

3    this motion.  And I think that therefore there's no cost to

4    any party.

5              Certainly the joint administrators aren't going to

6    wind up spending more money if they argue this issue right

7    now in the next hour than they would if it put off.  So I'm

8    suggesting the confidentiality be done and disposed with

9    today.

10             THE COURT:  So, Mr. Rosenthal, let me -- let me

11   ask you a question.  I'm going to ask you to take a leap of

12   -- in thinking for a moment, and put aside the history that

13   we have in this case, and to treat this like a law school

14   exam question --

15             MR. ROSENTHAL:  Sure.

16             THE COURT:  -- in the sort of matter of a thought

17   experiment, which is if there is a question that the foreign

18   administrator in a Chapter 15 case doesn't want to proceed

19   with its case and it hasn't -- it doesn't currently have or

20   hasn't asked for or currently doesn't have any stay relief

21   pending recognition, that is the interim relief, what

22   authority do I have to force them to prosecute the case?

23             And again, this is not the kind of issue that

24   comes up normally because folks come into Chapter 15 cases

25   seeking relief, and so you have a natural mechanism to sort

Page 23

1    of timely tee up issues.

2           And again, I understand the history here, and I

3    certainly am as frustrated as anyone -- or I think I am, but

4    frankly I've spent less time on it than you all have, so I

5    may not be as frustrated as all of you.  But I'm close.

6           But there is a certain level of -- there's a

7    certain legitimate question about the ability to force

8    somebody to go ahead with the prospect of a Chapter 15 where

9    there is a pending request for those foreign administrators

10   to be discharged.

11          MR. ROSENTHAL:  Your Honor, I think that's an

12   excellent question, and I think the answer to that -- again,

13   I haven't researched this issue, but I presume it's the same

14   as any standard litigation with their plaintiffs and

15   defendants, which is you can't force them to proceed with a

16   Chapter 15 if they want to withdraw the Chapter 15 petition.

17          I mean, you do have some mechanism insofar as

18   they've made Vale spend millions of dollars on this.  And I

19   think some level of sanctions would certainly be within your

20   jurisdiction and would be appropriate here were they to seek

21   to just walk away from this and say never mind after 15

22   months and millions of dollars.

23          But no.  You can't otherwise force them, in my

24   view, again off the cuff without researching, to proceed

25   with a Chapter 15 if they want to withdraw.  But they don't

Page 24

1    want to withdraw right now.  All they're saying to you is

2    essentially they want a stay.  They want a stay of the

3    proceeding and, just like any lawsuit where a plaintiff goes

4    and asks for a stay, that's within the Court's sound

5    discretion whether it's appropriate to grant a stay or not.

6              They haven't actually moved for one, but I think

7    that there are plenty of cases, including, frankly, the

8    Soros litigation has been stayed for a while by BSGR because

9    we believe it was actually just filed for publicity purpose

10   without any intent to litigate it.

11             But after three years, the district court judge

12   said enough is enough and set a deadline, and the motion to

13   dismiss was filed last month, and the answer to the motion

14   to dismiss is going to be filed I think later this month.

15             And my understanding is that the district judge

16   did that even though the plaintiffs didn't want to proceed

17   at that time, but the plaintiff wasn't prepared to actually

18   dismiss its case, so the judge said okay.  Well, then let's

19   get it on.

20             And I think that you certainly have the same right

21   here is to say if they don't want to dismiss it, then in

22   controlling your calendar to say, well, then let's get these

23   depositions done.  Let's get these documents that you're

24   withholding produced, and let's get a recognition hearing on

25   the calendar.  And if they want to withdraw it, then go

Page 25

1    ahead.  Maybe they will if the Court orders that.

2           THE COURT:  All right.  All right.  Thank you,

3    Counsel.

4           So any short response by the joint administrators?

5           MR. ROSENTHAL:  Actually, Your Honor, there were a

6    couple of things that I didn't get the chance to address in

7    answering your question.  And that was just to say that

8    there is -- there is a third issue with regard to, again,

9    just moving this case towards conclusion, which is Judge

10   Gropper, as you know, back in early July rendered decisions

11   on some privileged documents.  It was after we complained to

12   Your Honor that they finally produced the documents ordered

13   by Judge Gropper.  But they've promised us and Judge Gropper

14   back in July that we would have responses to our challenges

15   under the privilege log in July, and they've just decided

16   not to.

17          And I think again, we're just looking for -- and

18   the deadline can be after the 8th.  I would suggest the 9th

19   is -- we're entitled to a response on the privilege log

20   challenges we've given them.  They haven't asked for them.

21   They haven't received the stay, and therefore they have a

22   duty to us and a duty to the Court to continue.

23          THE COURT:  All right.  Thank you.

24          MR. HYMAN:  Thank you, Your Honor.

25          THE COURT:  Go ahead.

Page 26

1              MR. HYMAN:  I will keep it brief since that was

2       your suggestion.  On the point of Mr. Kramer, yes, we're

3       having issues with Mr. Kramer.  While we found from Mr.

4       Kramer on June 10th, I think it was, that he had indicated

5       initial unwillingness to be deposed, that isn't to mean that

6       we didn't continue back and forth with his counsel to change

7       his mind and to convince him that the deposition was

8       critical.  So I don't --

9              THE COURT:  Well, I -- at this point, I don't care

10      about the history of that.  He's a director, and if his

11      deposition is noticed and -- properly noticed and you choose

12      not to produce him, then we can fight about that in the

13      fullness of time.

14             MR. HYMAN:  And we understand that.  I just wanted

15      to -- I just wanted to make the point on the record, Your

16      Honor.

17             THE COURT:  Again, we've spent a lot -- we've

18      spent an inordinate amount of time defending various

19      people's honor in the context of this proceeding where we

20      haven't gotten to recognition, and so I'm becoming

21      progressively less concerned about that.  So what else do

22      you want to tell me?

23             MR. HYMAN:  Your Honor, again, we think that there

24      is going to be a resolution on September 8th.  Obviously we

25      can't provide any assurance that there will be.  What I've

Page 27

1    been advised and Cleary's -- Vale's counsel was on the

2    hearing yesterday as well -- was that the Court implied that

3    there would be a final resolution on the 8th.  Again,

4    whether it would be some joint funding, which would seem

5    unlikely; whether it would be some funding for the entirety

6    of the administration by Nysco, which would also seem

7    unlikely; or alternatively, the result should be a discharge

8    of the administration and deployment of a liquidator.

9            The reason why we have not -- again, have not

10   dismissed the case in the interim period is because in the

11   unlikely event that funding is provided, there may be a

12   determination to go forward, notwithstanding the fact that

13   we will --

14           THE COURT:  But this is --

15           MR. HYMAN:  -- (indiscernible).

16           THE COURT:  To use the doctrine -- you know, this

17   is something that is capable of being repeated over and over

18   again.  Nysco decides to fund for 24 hours, one week, two

19   weeks, 10 days, a quarter, just decides to fund X month of

20   money, and it's used to pay back bills or whatever it is.

21   We're not going to -- I'm not going to let this Chapter 15

22   be done or not done at the whims of a party who, from my

23   perspective, is playing games.

24           And so we've been doing this case for a long time,

25   much longer than any Chapter 15 should be allowed to

Page 28

1    proceed.  And I'm not going to do that.  So this -- so this

2    notion of waiting until we get an answer, there's always

3    something.  There seems to always be something in this case.

4    And I -- again, there clearly has been some significant

5    progress as to getting discovery done, but we're not done,

6    and it is not an unreasonable thing to say after -- at this

7    point in time -- that we're either going to get it done, or

8    the case is going to be dismissed.

9            So my thought is that I'm going -- why shouldn't

10   we pick a date by which you have a chance to get things

11   sorted out in Guernsey and decide whether to proceed with

12   this Chapter 15 case?  And if you don't have it sorted out

13   in Gurney by a certain point, you know, it's up to you and

14   your clients and the exercise of their responsibility as

15   joint administrators what they should do or not do with this

16   case.  But that's -- with all its intended challenges,

17   that's what you're signed up for.  So it's not Nysco's

18   decision.  Nsyco's decision is whether to fund.  Your

19   client's decision is whether to proceed with the case.

20   Nysco doesn't make that decision.

21           So what I'm hearing from the other side is to pick

22   a date by which -- and they say September 9th -- by which,

23   you know, it either gets dismissed, in which case it gets

24   discharged, in which case this case is not going to proceed,

25   and everyone understands that; or if that's not the case at

Page 29

1    that point, then people have to step up to the plate to

2    honor their obligations as litigants in this proceeding.  So

3    what's your response to that?

4              MR. HYMAN:  We -- with the exception of the date,

5    Your Honor, we don't think that's a bad suggestion at all,

6    because if this does extend beyond September 8th, it will

7    only extend beyond September 8th because there is funding.

8    Again, we think it's unlikely --

9              THE COURT:  I'm not -- I -- you know --

10             MR. HYMAN:  Yeah.

11             THE COURT:  I'm not so sure that's the case, but I

12   -- again, I don't have any independent knowledge.  But just

13   -- I'm not sure that we're done with our detours.  So what I

14   hear you saying is that you don't necessarily disagree with

15   that approach, but you disagree with the date.  So what's

16   your proposal for a date?

17             MR. HYMAN:  Later in September, September 23rd, to

18   give parties time after the 8th.  It may very well be that a

19   motion to dismiss is filed by the liquidator before then,

20   and we wouldn't have to waste any more of this Court's time.

21             THE COURT:  So when is the deposition, the one

22   deposition, currently scheduled for?

23             MR. HYMAN:  We had scheduled it for September

24   23rd.  That's deposition of Malcolm Cohen.  We had obviously

25   hoped when we had scheduled that deposition that we would be

Page 30

1   assured there would be funding in advance of that.

2              THE COURT:  All right.  So can you make any --

3              MR. ROSENTHAL:  For clarity, Your Honor --

4              THE COURT:  Yes.

5              MR. ROSENTHAL:  Your Honor, just so the -- just so

6   the record is clear, it's the 23rd and 24th because of the

7   overseas and the technological issues, we've agreed that --

8              THE COURT:  All right.

9              MR. ROSENTHAL:  -- the deposition would be -- I

10  just don't want the record to be corrupt.

11             THE COURT:  Fair enough.  So let me ask you this

12  question.  Is Mr. Cohen -- can you commit to making Mr.

13  Cohen available the first two -- sometime during the first

14  two weeks of November?

15             MR. HYMAN:  Mr. Cohen unfortunately is not on the

16  phone, but if one of the -- if Mr. Callewaert or Mr. Peters,

17  if perhaps you could comment on that.  I know that he has

18  issues with the Jewish holidays, although I think that's

19  beyond them.

20             MR. ROSENTHAL:  Your Honor, can you clarify

21  whether you misspoke, Your Honor?  Did you say put off the

22  deposition from September 23rd to November?

23             THE COURT:  Well, here's -- let me share a more

24  fulsome view of what I'm thinking, which is I don't want to

25  have a fake fire drill trying to figure out what happened on

Page 31

1    the 8th and what the fallout is of the 8th, and things of

2    that nature, and then have a lot of flurry of additional

3    letters back and forth dealing with the 23rd and what's

4    happening and what's not happening, and some level of

5    Schrödinger's cat where we don't quite know what the outcome

6    is until the outcome occurs.

7              So -- but I am not willing to adjourn the

8    obligations in this case sine die, so I do not want to

9    adjourn or sort of give an excuse to adjourn the 23rd

10   without a commitment that it can be -- that deposition can

11   be -- and other obligations will be honored shortly

12   thereafter, essentially granting effectively a short

13   adjournment of obligations to the extent that there's

14   fallout from the 8th in order to clean things up.  But I am

15   not willing to say to cancel it, then hear that somebody's

16   not available, for example, for the month of November, or

17   December, or whatever it is.  I'm not -- I'm not -- I don't

18   think that would be appropriate.  So I'm trying to work out

19   essentially an effective postponement of basically a couple

20   of weeks so that the 8th and whatever fallout comes from the

21   8th can be addressed in some kind of orderly fashion.  So

22   that's where I'm headed.

23              MR. ROSENTHAL:  Your Honor, we're okay with

24   pushing it a couple weeks from the 23rd to the first week of

25   October, which is a couple weeks later.  That's why I was

Page 32

1    wondering whether you misspoke when you said November.

2             THE COURT:  Oh, I did.  I'm sorry.  I'm in the

3    wrong -- I'm in the wrong month.  I have my calendar flipped

4    --

5             MR. ROSENTHAL:  Okay.

6             THE COURT:  -- open to the wrong month.  You are

7    entirely correct.  I was not talking about a month and a

8    half.  We have a lot of things going on in the courthouse

9    this month.  So the 23rd is a Wednesday, and so yeah.  So

10   I'm really talking about pushing things off for a couple of

11   weeks provided there's an assurance that that's how it will

12   actually work as opposed to opening the door for further

13   delay if the case is not dismissed.

14            MR. ROSENTHAL:  Okay.  That's what I thought Your

15   Honor was implying.  So we're okay with pushing it off to

16   the week of October 5th.  We know that that weeks is Sukkot,

17   although the middle of that week are not religious holidays.

18   Work is permitted, you know, the 5th, 6th, you know, and so

19   if the joint administrators can commit to sometime then, I'm

20   okay with pushing a couple weeks.

21            And I'm okay with scheduling Mr. Kramer's

22   deposition for around that time, again, to give them the

23   opportunity to see exactly what happens in the fallout from

24   the 8th, but, you know, with a firm deadline on that, and if

25   they -- if they don't have Mr. Kramer show up, they have the

Page 33

1    consequences that the Second Circuit has said a party has

2    when it doesn't produce a director.

3            THE COURT:  So here's what I'm going to do.  I'm

4    going to assume that there is no impediment of a nature that

5    would excuse a deposition attendance -- somebody's ill,

6    somebody is out of the country -- but absent something like

7    that, which you'd have to discuss and we might have to have

8    a further call on -- I would -- I will stay my hand on

9    anything dealing with the joint administrators' obligations

10   today with the understanding that the obligations that are

11   -- exist that are already in the queue, that is the two

12   depositions and the other responses, that the time for

13   addressing those will be sometime between October 5th, which

14   is a Monday, and October 16th.  And that includes dates for

15   the two depositions.

16           And I'm not factoring in, you know -- Mr. Kramer's

17   deposition will be scheduled.  If he says he's never

18   available because he's not going to appear, then that will

19   be just something that will be scheduled by Vale and at a

20   date that it finds convenient, and we'll see what happens,

21   and all parties reserve all rights.

22           And then the other obligations that are out there

23   we'll address, and then that gives you two weeks to work

24   through some things, and then we would get together sometime

25   after that to address any other remaining issues, so

Page 34

1    probably in the second half of October or the beginning of

2    November.

3          So that's what I think, you know, is an

4    appropriate way to handle it.  That gives the joint

5    administrators some chance to get this -- to get things

6    addressed in September 8th, or shortly thereafter, without

7    having to worry about the 23rd, which is obviously rapidly

8    approaching.  But again, either this case -- it's either --

9    it's -- we live in a -- in a sort of binary world.  It's

10   either here or it's not here.  If it's here, it needs to be

11   wrapped up.  And so that's how we're going to deal with it.

12         So with that, I don't think I need any sort of

13   written order.  I'll so order this on the record, and I

14   think that'll give us a guide for the next month and a half.

15   And if the case is dismissed, then this will all become

16   moot.  If the case is not dismissed, I think I've been

17   pretty clear about how to handle the remaining obligations,

18   but in a second I'll open it up to Vale to see if there's

19   anything else that we should specifically address.

20         But otherwise I would say that we should schedule

21   something for probably the last week in October or the first

22   week in November after there's a chance to address the

23   depositions and other issues.

24         MR. HYMAN:  Your Honor, can I just jump in for one

25   moment because I'm getting a message from the folks at BDO.

Page 35

1   Apparently, Mr. Cohen's diary is showing that he's away for

2   the first two weeks of October.

3           THE COURT:  You've got to be kidding me, right?

4           MR. HYMAN:  He --

5           THE COURT:  I mean --

6           MR. HYMAN:  He is an observant Jew, and he does go

7   away to Israel for a period of time.  I don't know whether

8   that's the reason for it.

9           THE COURT:  Well, the only holiday that I have on

10  my calendar, which tends to list all the holidays, is

11  Columbus Day that second week of October.  So I see Yom

12  Kippur.  I see Sukkot.  And I -- I'm -- is there a

13  particular Jewish holiday the week of October 12th that you

14  can tell me about?

15          MR. HYMAN:  I confess I cannot, Your Honor.

16          MR. ROSENTHAL:  Your Honor --

17          THE COURT:  Then I'm not -- then I don't care.

18  That's the offer on the table.  You can either take it or

19  leave it, and he can just be deposed on the 23rd before the

20  Jewish holidays.

21          MR. HYMAN:  We understand, Your Honor.

22          THE COURT:  So --

23          MR. ROSENTHAL:  Your Honor, I don't know if this

24  is the time.  You said at the end you were going to turn it

25  over to me to see if that takes care of everything.  If you

Page 36

1    want to hear from me now or not yet?

2            THE COURT:  Well, I'll say yes with some degree of

3    trepidation, but --

4            MR. ROSENTHAL:  No.  No trepidation at all, Your

5    Honor.  The only -- the only two things that are kind of

6    lingering, one is with regard to just getting their response

7    to our privilege log issues that was promised back for July,

8    I think that would be very helpful to have before the

9    deposition so that --

10            THE COURT:  Well, I was trying to include that and

11   anything else that you mentioned as an outlasting obligation

12   that would have to be addressed in that period of October

13   5th through October 16th.

14            MR. ROSENTHAL:  Okay.  Well, that's fine as long

15   as we get that because I don't want to have to leave a

16   deposition open because they're ordered afterwards to

17   produce documents they've improperly withheld, so we'll try

18   to resolve those with the joint administrators before that

19   period.

20            And the last thing is with regard to the

21   confidentiality issue which I presume is the primary issue

22   that the Court has been kicking over to our next conference

23   for late July or early -- late October or early November.  I

24   would -- I would just ask that the Court admonish the

25   parties that at the next conference if the administration is

Page 37

1    still proceeding that that issue get resolved so we don't

2    have to prepare again and not have it -- not have it

3    addressed because the joint administrators don't want to go

4    forward with that.

5                THE COURT:  I would agree.  I've prepared for it

6    several times myself.  I wasn't sure today whether it was

7    going forward or not, so I have all my notes out from the

8    last few times we've been talking about it, and so I would

9    agree.  The next time we get together, there'll be rulings

10   and -- argument and rulings.  So I would agree.

11               MR. ROSENTHAL:  That's all I have then, Your

12   Honor.  Thank you.

13               THE COURT:  All right.  So as to the obligations

14   that are outstanding that will have to be addressed between

15   October 5th and October 16th, I will just say that obviously

16   some of those things need to be done for other of those

17   things to occur.  So obviously to the extent that there's

18   some addressing of some documents, and those documents are

19   going to be used in depositions, I would presume that those

20   issues would be addressed in advance of the depositions, and

21   certainly this gives plenty of time since September 8th for

22   folks to address if there's no resolution or there is -- if

23   there's funding to address all those issues in September.

24   And so I'm not -- I'm not going to be -- I'm not going to be

25   receptive to excuses about why that didn't happen when we

1    next get together.

2              And there are remedies for that.  The remedies are

3    sort of all across the board, but certainly remedies would

4    include inferences and any discovery, inferences from

5    failure to comply with discovery or other requirements under

6    applicable law.  So -- because again, if we're still here in

7    October, this case is getting done.

8              So, all right.  So you'll work with Miss Ebanks.

9    You'll get a couple of proposed dates shortly to her for

10   some time the end of October, beginning of November, and

11   we'll address things at that time.

12             So, with that, is there anything else that the

13   foreign administrators -- the foreign representatives want

14   to address at today's hearing?

15             MR. HYMAN:  Not from us, Your Honor.

16             THE COURT:  All right.  Anything from Vale?

17             MR. ROSENTHAL:  No, nothing from Vale, Your Honor.

18   Thank you.

19             THE COURT:  All right.  Thank you very much.  Have

20   a good day, and good luck in the court in Guernsey.  Thank

21   you.

22             MR. HYMAN:  Thank you, Your Honor.

23

24             (Whereupon these proceedings were concluded at

25   2:56 PM)

Page 39

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 8, 2020

[& - applications]                                                                      Page 1

| & | |
|---|---|
| **&** 4:10 | |

**1**

**10** 15:6 27:19
**10004** 1:15
**10006** 4:13
**101** 2:17
**108** 2:23
**10th** 18:2,6 26:4
**11501** 39:23
**119** 3:1
**11th** 11:2
**12th** 35:13
**15** 6:5,18 9:10
  10:1 12:16,18
  13:2 14:4,6,7,20
  17:7,19 22:18,24
  23:8,16,16,21,25
  27:21,25 28:12
**16th** 33:14 36:13
  37:15
**19-11845** 1:3
**19801** 4:6

**2**

**2019** 9:1
**2020** 1:17 39:25
**2021** 9:2
**222** 4:5
**23rd** 17:14 29:17
  29:24 30:6,22
  31:3,9,24 32:9
  34:7 35:19
**24** 27:18
**24th** 17:14 30:6
**28th** 10:20
**2:00** 5:4
**2:05** 1:18
**2:56** 38:25

**3**

**3** 1:17
**300** 39:22

**330** 39:21

**4**

**4** 15:13,13

**5**

**5th** 32:16,18
  33:13 36:13 37:15

**6**

**6th** 10:17 19:1
  32:18

**8**

**8** 39:25
**8th** 11:12,15,24
  12:4 15:7 16:11
  17:12,15,17,21
  18:22,23,24 19:3
  21:21 25:18 26:24
  27:3 29:6,7,18
  31:1,1,14,20,21
  32:24 34:6 37:21

**9**

**94** 2:3
**95** 2:7
**99** 2:10
**9th** 25:18 28:22

**a**

**ability** 23:7
**able** 15:16
**absent** 33:6
**absolutely** 13:10
**accomplished** 8:1
**accord** 10:19
**accurate** 39:4
**act** 10:9
**action** 9:16 14:24
  15:1,2 16:3
**actual** 13:3
**additional** 6:23,24
  31:2
**address** 21:4 25:6
  33:23,25 34:19,22
  37:22,23 38:11,14

**addressed** 31:21
  34:6 36:12 37:3
  37:14,20
**addressing** 33:13
  37:18
**adjourn** 17:16
  31:7,9,9
**adjournment**
  10:21 11:12 31:13
**administrate**
  11:25
**administration**
  1:7 11:16,25
  12:20 15:9,21
  17:7 27:6,8 36:25
**administratively**
  12:21
**administrator** 9:5
  22:18
**administrator's**
  2:17
**administrators**
  1:8 2:7,12 4:4
  5:18,19 9:9,17
  10:8,13,14 11:13
  11:19 13:23 14:22
  15:8 20:12,23
  21:25 22:5 23:9
  25:4 28:15 32:19
  34:5 36:18 37:3
  38:13
**administrators'**
  33:9
**admonish** 36:24
**advance** 5:25 30:1
  37:20
**advised** 11:3
  21:10 27:1
**advocate** 11:11
**affiliates** 9:22
**affirming** 2:3,12
  2:19

**afternoon** 5:2,12
**ago** 17:8 19:1
**agree** 8:19 37:5,9
  37:10
**agreed** 9:17,19
  30:7
**agreement** 7:7
  11:16,17,20,24
  14:25
**agreements** 7:15
**ahead** 18:13 23:8
  25:1,25
**alleged** 7:17
**allow** 14:8
**allowed** 27:25
**alternatively**
  15:10 27:7
**amount** 12:19
  13:19 14:11 26:18
**amounts** 15:14
**ancillary** 6:10
  12:15 13:17 20:15
**answer** 23:12
  24:13 28:2
**answering** 25:7
**anticipate** 15:14
**anticipated** 11:6
**anybody** 11:5
  14:11
**anybody's** 6:15
  14:7
**apparently** 35:1
**appear** 18:2 19:21
  19:25 20:2 33:18
**appearing** 4:17
**appendix** 2:8
**applicable** 38:6
**application** 13:23
  13:25 14:1
**applications**
  10:16,19 11:1
  12:25 14:9

appoint 14:1
appointed 12:1
  14:5
approach 29:15
approaching 34:8
appropriate
  10:15 15:19 20:1
  23:20 24:5 31:18
  34:4
approximately
  15:13
arbitration 9:19
argue 22:1,2,6
argued 21:7
argument 37:10
arguments 20:19
aside 22:12
asked 22:20 25:20
asks 24:4
asset 9:23,23,24
assets 7:17
associate 5:15
assume 33:4
assuming 11:23
  19:12
assurance 10:11
  26:25 32:11
assure 14:13
assured 30:1
attached 11:22
attendance 33:5
attorney 6:10
  13:19 14:11
attorneys 4:4,11
august 10:17 11:2
  14:25 19:1
authority 12:12
  12:15 22:22
automatic 6:22
  15:4 16:2
available 30:13
  31:16 33:18

avenue 4:5
avenues 11:14
award 9:19

**b**

b 1:21
back 6:3,17 10:15
  13:9,9 19:19,21
  25:10,14 26:6
  27:20 31:3 36:7
bad 29:5
bailiff 11:18,21
bank 10:24
bankruptcy 1:1
  1:13,23 5:3 7:3
base 5:23
basically 21:10
  31:19
bdo 5:18,20 34:25
beat 14:19
beating 14:21
becoming 26:20
beginning 34:1
  38:10
behalf 9:8 17:1
believe 5:5 11:20
  13:4 24:9
berdugo 5:15
beyond 15:6 29:6
  29:7 30:19
bills 27:20
binary 34:9
bit 11:5
blocking 20:5
board 38:3
bother 21:10
bowling 1:14
brief 26:1
briefed 20:20
  21:25
briefing 20:21
  21:13
bring 10:16 20:15

bringing 13:7
brought 13:23,25
bsg 1:7
bsgr 9:24 24:8

**c**

c 4:1 5:1 39:1,1
calendar 17:18
  24:22,25 32:3
  35:10
call 33:8
callewaert 1:8
  4:18 5:19 30:16
cancel 31:15
capable 27:17
care 26:9 35:17
  35:25
case 1:3 6:5 7:9,11
  8:16,17,22,25 9:1
  10:1,5,24 12:16
  13:2,7,7,17,20,24
  15:15,16,19 16:5
  16:7 17:22 19:12
  22:13,18,19,22
  24:18 25:9 27:10
  27:24 28:3,8,12
  28:16,19,23,24,24
  28:25 29:11 31:8
  32:13 34:8,15,16
  38:7
caselaw 8:14,15
  12:24
cases 18:12 20:5
  22:24 24:7
cat 31:5
certain 2:14,18
  9:21 23:6,7 28:13
certainly 8:17
  10:6 22:5 23:3,19
  24:20 37:21 38:3
certified 39:3
challenges 10:6
  25:14,20 28:16

chance 25:6 28:10
  34:5,22
change 26:6
chapter 6:5,18 9:9
  10:1 12:16,17
  13:2 14:4,6,7,20
  22:18,24 23:8,16
  23:16,25 27:21,25
  28:12
chartered 10:24
choose 26:11
choosing 14:2
circuit 18:11,15
  18:19 20:4,6 33:1
cite 18:12
civil 18:17,20
claim 9:21 13:8
  14:24
clarify 30:20
clarity 30:3
clean 31:14
clear 18:11,15
  19:25 30:6 34:17
clearly 4:10 28:4
cleary 5:13 17:1
cleary's 27:1
client's 28:19
clients 28:14
close 14:13 17:8
  23:5
closure 16:23
clue 7:24
cohen 1:8 4:20
  20:10 29:24 30:12
  30:13,15
cohen's 17:13,16
  17:18 35:1
colleague 5:9
colleagues 5:21
columbus 35:11
come 8:18 15:17
  16:5 22:24

comes  6:21 22:24
  31:20
coming  18:15
comment  30:17
commit  30:12
  32:19
commitment
  31:10
complained  25:11
complaining  6:12
complicated  7:4
comply  38:5
conceivable  14:3
  15:15
concern  7:17
concerned  7:19
  26:21
concerns  13:18
concluded  38:24
conclusion  8:4
  25:9
conclusions  18:7
conference  2:1
  36:22,25
confess  8:14 35:15
confidence  18:25
confident  16:22
  18:24 22:1
confidential  2:8
confidentiality
  2:4,12,13,19,20
  20:13,17 21:8,14
  22:8 36:21
confidentially  2:5
conjunction  14:1
connection  9:16
  10:14
consequences
  16:10 33:1
consider  17:10
contemplated
  13:2

contemplating
  19:10
contempt  19:25
contest  9:18
context  20:2
  26:19
continually  6:13
continue  14:4
  15:19,22,24 25:22
  26:6
continued  10:9
  11:10,11
continues  19:12
continuing  13:7
control  17:3
controlling  24:22
convenient  33:20
conversations
  13:18
convince  26:7
correct  13:10 19:4
  32:7
correctly  15:3
corrupt  30:10
cost  17:22 22:3
counsel  18:1 25:3
  26:6 27:1
country  33:6
  39:21
couple  5:20 18:23
  25:6 31:19,24,25
  32:10,20 38:9
court  1:1,13 5:2,3
  5:5,11,20,22 6:9
  7:4,5,18 8:7 9:13
  9:16 12:2,6 13:11
  14:8,15 16:4 17:5
  18:15 19:2,8,24
  20:3,15,19 21:4
  21:20,24 22:10,16
  24:11 25:1,2,22
  25:23,25 26:9,17
  27:2,14,16 29:9

29:11,21 30:2,4,8
  30:11,23 32:2,6
  33:3 35:3,5,9,17
  35:22 36:2,10,22
  36:24 37:5,13
  38:16,19,20
court's  2:4,13
  14:10 24:4 29:20
courthouse  32:8
courts  2:20
creditor  10:25
critical  26:8
cuff  23:24
currently  22:19
  22:20 29:22

**d**

d  5:1
date  10:12 13:6
  21:21,21 28:10,22
  29:4,15,16 33:20
  39:25
dates  9:14 33:14
  38:9
day  35:11 38:20
days  15:6 17:19
  27:19
de  4:6
dead  14:19,21
deadline  24:12
  25:18 32:24
deal  12:25 17:5
  34:11
dealing  16:20
  31:3 33:9
debtors  1:10
december  31:17
decide  6:9 15:22
  28:11
decided  25:15
decides  27:18,19
decision  20:16
  28:18,18,19,20

decisions  16:17
  25:10
declaration  2:15
defendants  23:15
defending  6:11
  26:18
degree  36:2
delaware  4:5
delay  16:1,18
  32:13
delays  16:20
deliberate  12:25
deployment  27:8
deposed  12:10
  18:10 26:5 35:19
deposition  17:13
  17:16,18,24 18:3
  18:19,22 19:14,17
  20:1 26:7,11
  29:21,22,24,25
  30:9,22 31:10
  32:22 33:5,17
  36:9,16
depositions  17:12
  19:5 24:23 33:12
  33:15 34:23 37:19
  37:20
designations  2:4
  2:13,20
determination
  27:12
determined  10:15
  11:2 15:18
detours  29:13
diary  35:1
die  31:8
difficult  12:13
diminish  8:21
director  26:10
  33:2
director's  18:18
disagree  8:19
  29:14,15

disappear 17:23
  19:3
discharge 11:11
  13:23,25 27:7
discharged 12:1
  15:9,9,21 17:15
  18:24 23:10 28:24
discovery 28:5
  38:4,5
discretion 24:5
discuss 33:7
discussing 6:8
dismiss 8:6 13:12
  13:24 14:7 24:13
  24:14,18,21 29:19
dismissed 12:18
  16:8 27:10 28:8
  28:23 32:13 34:15
  34:16
dismissing 8:15
  8:16
disposed 22:8
dispute 18:18
dissipation 7:17
district 1:2 5:4
  7:4 8:7 9:16 24:11
  24:15
doc 2:3,7,10,17,23
  3:1
doctrine 27:16
documents 2:8
  21:8,15 24:23
  25:11,12 36:17
  37:18,18
dog 12:16
doing 5:14 8:1,2
  8:23 27:24
dollars 23:18,22
door 32:12
drafters 13:2
draw 18:6
drill 30:25

dry 13:16
duane 4:3 5:9 9:8
due 10:22 15:12
duke 8:7
duty 25:22,22

**e**

e 1:21,21 4:1,1 5:1
  5:1 39:1
earlier 9:14
early 14:25 25:10
  36:23,23
ebanks 38:8
ecro 1:25
effective 31:19
effectively 31:12
efficient 8:3
efficiently 21:16
either 15:8,10
  28:7,23 34:8,8,10
  35:18
emma 5:15
enforcement 18:9
entered 9:15
entirely 32:7
entirety 27:5
entitled 15:1
  25:19
essentially 24:2
  31:12,19
event 27:11
everybody 5:6
  15:24
everybody's
  21:17
exactly 20:9 32:23
exam 22:14
example 20:5
  31:16
exceedingly 7:1
  7:19
excellent 23:12
exception 29:4

excess 15:13
excuse 20:7 31:9
  33:5
excuses 37:25
exercise 28:14
exercising 9:20
exhibit 2:24 3:2
exhibits 2:14,18
exist 33:11
existence 7:4
expect 9:13 11:24
expectation 10:9
  12:3,6 13:6
expense 15:12,24
experience 16:13
  16:15,15
experiment 22:17
expired 14:25
explanation 18:8
expressed 18:25
extend 29:6,7
extent 13:5 31:13
  37:17
extremely 15:11

**f**

f 1:21 39:1
fact 6:14 11:10
  19:16 20:5 27:12
factoring 33:16
failure 8:16 38:5
fair 30:11
fake 30:25
fallout 31:1,14,20
  32:23
far 10:11
fashion 31:21
federal 18:17,20
feet 16:14
fight 26:12
fighting 6:8 7:11
figure 8:3 12:13
  30:25

file 2:8,10,14,18
  2:23 3:1,2 6:20
  7:3
filed 8:6 11:8 17:7
  21:11 24:9,13,14
  29:19
filing 10:1
filings 6:1 8:20
final 19:4 27:3
finally 11:2 19:18
  25:12
find 5:6 7:21 8:14
finds 33:20
fine 17:14 36:14
finer 8:25
finish 17:8
fire 30:25
firm 32:24
first 6:17,19 10:1
  10:18 13:24 19:22
  30:13,13 31:24
  34:21 35:2
five 17:17
flipped 32:3
flurry 6:1 31:2
focus 8:24
focused 7:9
folks 22:24 34:25
  37:22
follow 5:23
folly 12:7
force 22:22 23:7
  23:15,23
foregoing 39:3
foreign 5:7 6:20
  9:4,9,18 13:1
  14:22 20:7 22:17
  23:9 38:13,13
forth 6:4 26:6
  31:3
forward 7:22 8:16
  15:14 19:5 21:5
  27:12 37:4,7

[found - indiscernible]                                                           Page 5

| | | | |
|---|---|---|---|
| **found** 26:3 | **goal** 17:11 | **happens** 17:11,21 | **honored** 31:11 |
| **frankly** 17:6 21:6 | **goes** 8:4 24:3 | 19:9 32:23 33:20 | **honors** 6:11 |
| 23:4 24:7 | **going** 8:13 10:4,4 | **headed** 9:1 31:22 | **hope** 5:13 |
| **free** 14:24 16:2 | 11:4 12:3 13:9,9 | **hear** 9:4 14:22 | **hoped** 11:1 29:25 |
| **french** 20:5 | 15:14 16:11,16,21 | 15:24 16:24 29:14 | **horse** 14:19,21 |
| **front** 7:20,20,23 | 16:22 17:4,23 | 31:15 36:1 | **host** 12:19 |
| 8:8 15:20 | 19:6 20:9 21:10 | **heard** 10:23 18:6 | **hour** 22:7 |
| **frontload** 19:13 | 22:5,11 24:14 | 20:22 | **hours** 20:25 27:18 |
| **fruitful** 14:17,18 | 26:24 27:21,21 | **hearing** 2:1,3,7,10 | **hyde** 3:25 39:3,8 |
| **frustrated** 7:21 | 28:1,7,8,9,24 32:8 | 2:17,23 3:1 5:4 | **hyman** 4:8 5:8,9 |
| 23:3,5 | 33:3,4,18 34:11 | 6:17 10:18,19,21 | 5:16,16 9:6,8 12:5 |
| **fullness** 26:13 | 35:24 37:7,19,24 | 11:2,8,9,15 12:9 | 13:4,22 14:23 |
| **fully** 20:20 | 37:24 | 15:7 16:12,16 | 18:24 22:1 25:24 |
| **fulsome** 30:24 | **good** 5:2,8,12 | 20:2,24,25 21:18 | 26:1,14,23 27:15 |
| **fund** 11:16 27:18 | 38:20,20 | 21:25 22:2 24:24 | 29:4,10,17,23 |
| 27:19 28:18 | **gotten** 15:4 26:20 | 27:2 28:21 38:14 | 30:15 34:24 35:4 |
| **funding** 10:7,10 | **gottlieb** 4:10 5:13 | **hearings** 17:17 | 35:6,15,21 38:15 |
| 13:5,6 15:11,14 | 17:1 | **helpful** 9:7 36:8 | 38:22 |
| 27:4,5,11 29:7 | **grant** 24:5 | **history** 5:24 10:5 | **hyman's** 17:11 |
| 30:1 37:23 | **granting** 31:12 | 22:12 23:2 26:10 | 19:3 |
| **further** 9:2,17 | **great** 7:16 | **hit** 9:11 | |
| 11:12 16:1 32:12 | **green** 1:14 | **hitchings** 4:19 5:9 | **i** |
| 33:8 | **gropper** 25:10,13 | **hold** 17:19,20 | |
| **future** 20:24 | 25:13 | **holiday** 35:9,13 | **ice** 8:1 |
| | **guernsey** 10:16,19 | **holidays** 30:18 | **ii** 2:4,13,20 |
| **g** | 11:5,9,18 14:8 | 32:17 35:10,20 | **illegal** 20:6 |
| | 16:21 18:9 21:9 | **hon** 1:22 | **impediment** 33:4 |
| **g** 5:1 | 21:12 28:11 38:20 | **honor** 5:8,12,16 | **implied** 27:2 |
| **games** 12:11 | **guess** 11:8 | 9:6,13,22 10:17 | **implying** 32:15 |
| 27:23 | **guide** 34:14 | 10:18 13:4,9,22 | **importance** 8:21 |
| **george** 9:21,21 | **gurney** 28:13 | 14:23 15:5,20,25 | **important** 7:16 |
| **getting** 28:5 34:25 | | 16:25 17:6,9 18:6 | 9:11 |
| 36:6 38:7 | **h** | 18:11 19:20 20:22 | **importantly** 7:12 |
| **give** 19:6 29:18 | | 21:7,23 23:11 | **improperly** 36:17 |
| 31:9 32:22 34:14 | **h** 1:22 | 25:5,12,24 26:16 | **include** 36:10 |
| **given** 8:16 11:21 | **half** 32:8 34:1,14 | 26:19,23 29:2,5 | 38:4 |
| 17:6 25:20 | **hamilton** 4:10 | 30:3,5,20,21 | **includes** 33:14 |
| **gives** 33:23 34:4 | **hand** 11:3 33:8 | 31:23 32:15 34:24 | **including** 15:12 |
| 37:21 | **handle** 34:4,17 | 35:15,16,21,23 | 24:7 |
| **giving** 8:1 | **happen** 12:3 | 36:5 37:12 38:15 | **independent** |
| **globe** 6:12 12:11 | 13:15,15 37:25 | 38:17,22 | 29:12 |
| **go** 21:5,9 23:8 | **happened** 30:25 | **honor's** 17:2 | **indicated** 26:4 |
| 24:25 25:25 27:12 | **happening** 12:7 | | **indiscernible** |
| 35:6 37:3 | 31:4,4 | | 27:15 |

**inferences** 38:4,4
**information** 7:19
  18:4
**initial** 26:5
**ink** 6:10
**inordinate** 26:18
**insofar** 23:17
**insolvent** 12:21
**instance** 6:20 10:2
  13:24
**intended** 28:16
**intent** 24:10
**interest** 6:6 14:7
**interested** 10:22
**interim** 22:21
  27:10
**interrupt** 12:2
**involvement** 12:8
**involving** 20:5
**israel** 35:7
**issuance** 9:18
**issue** 6:25 7:2,6
  8:7 12:23 17:25
  19:13 20:4,11,13
  20:20 21:17 22:6
  22:23 23:13 25:8
  36:21,21 37:1
**issues** 6:16 7:9,15
  7:16 8:20 20:15
  21:2 23:1 26:3
  30:7,18 33:25
  34:23 36:7 37:20
  37:23

**j**

**jarret** 4:19 5:9
**jeff** 5:13 16:25
**jeffrey** 2:15,24
  3:3 4:15
**jew** 35:6
**jewish** 30:18
  35:13,20
**joined** 5:14

**joint** 1:8 2:7,11,17
  4:4 5:18,19 9:8,17
  10:8,13,14 11:13
  11:19,25 13:23
  15:8,8 17:7 20:12
  20:22 21:24 22:5
  25:4 27:4 28:15
  32:19 33:9 34:4
  36:18 37:3
**judge** 1:23 5:2
  7:18 12:11,24
  24:11,15,18 25:9
  25:13,13
**judgment** 7:5
**july** 10:15,20
  25:10,14,15 36:7
  36:23
**jump** 34:24
**june** 18:2,5 19:19
  19:21 26:4
**jurisdiction** 12:15
  23:20
**justify** 18:4

**k**

**keep** 6:8 26:1
**kicking** 36:22
**kidding** 35:3
**kind** 17:4 22:23
  31:21 36:5
**kippur** 35:12
**know** 7:14 8:1 9:1
  12:23 15:7 17:3,4
  21:23 25:10 27:16
  28:13,23 29:9
  30:17 31:5 32:16
  32:18,18,24 33:16
  34:3 35:7,23
**knowledge** 29:12
**knows** 16:16
**kramer** 17:24,25
  18:5,8,10 19:11
  20:10 26:2,3,4
  32:25

**kramer's** 18:1,22
  32:21 33:16

**l**

**lack** 9:12 10:22
**lamp** 16:14
**lane** 1:22 5:3
**lastowski** 4:21
**late** 36:23,23
**law** 18:9,17,19
  20:4,7 22:13 38:6
**lawsuit** 24:3
**leap** 22:11
**leave** 3:2 35:19
  36:15
**ledanski** 3:25 39:3
  39:8
**left** 17:12
**legal** 17:25 19:13
  39:20
**legit** 14:19
**legitimate** 23:7
**letter** 2:24 3:3
  11:7,8,21,22 18:3
  21:8
**letters** 31:3
**level** 23:6,19 31:4
**liberty** 4:12
**light** 16:14 21:13
**limited** 1:7 7:23
**line** 5:6,10,18 17:8
**lingering** 36:6
**liquidator** 12:1
  15:10 27:8 29:19
**liquidators** 14:2,2
  14:3,5 15:21
**lisa** 4:24 5:14
**list** 35:10
**litigant** 20:7
**litigants** 29:2
**litigate** 24:10
**litigation** 23:14
  24:8

**little** 7:22 10:11
  11:5
**live** 34:9
**llp** 4:3,10
**log** 25:15,19 36:7
**long** 27:24 36:14
**longer** 11:5 16:20
  27:25
**looked** 8:14 12:22
**looking** 20:15
  25:17
**lot** 6:10 10:23
  12:8,10,10,12
  15:23 20:20 26:17
  31:2 32:8
**luck** 38:20

**m**

**main** 6:21,21
**making** 30:12
**malcolm** 4:20
  29:24
**malcom** 1:8
**manager** 8:22
**material** 9:23
**matter** 1:5 16:2
  22:16
**matters** 7:23
  15:24
**mean** 12:8 19:23
  23:17 26:5 35:5
**means** 8:5,6
**mechanism** 18:9
  22:25 23:17
**meet** 5:25
**mention** 7:24 8:19
**mentioned** 36:11
**message** 34:25
**met** 5:20
**michael** 4:21
**middle** 32:17
**million** 15:13,13
**millions** 23:18,22

**mind**  8:18 23:21 26:7
**mineola**  39:23
**misspoke**  30:21 32:1
**modifying**  2:4,13 2:20
**mold**  7:22
**moment**  14:23 22:12 34:25
**monday**  33:14
**money**  12:19 20:21 21:1 22:6 27:20
**month**  19:1 24:13 24:14 27:19 31:16 32:3,6,7,9 34:14
**months**  10:8 17:7 18:5 23:22
**moot**  34:16
**mooted**  7:6
**morning**  5:8 11:9 18:4 19:20
**morris**  4:3 5:9 9:8
**motion**  2:3,7,10 2:11,17,19,23 3:1 3:2 8:6 22:3 24:12 24:13 29:19
**move**  7:22 8:16 19:5 21:16,17
**moved**  24:6
**moving**  20:16 25:9
**multiple**  20:19
**mutual**  11:16,17 11:20,23

**n**

**n**  4:1 5:1 39:1
**nada**  4:22
**natural**  22:25
**nature**  31:2 33:4
**necessarily**  29:14

**need**  17:4 34:12 37:16
**needs**  8:24 20:13 34:10
**never**  6:7 13:2 23:21 33:17
**new**  1:2,15 4:13 5:4 7:25
**nichols**  4:22
**night**  11:7
**non**  6:21
**normally**  22:24
**note**  5:17 11:7
**notes**  37:7
**notice**  10:22 19:10 19:22,24 22:2
**noticed**  19:15,17 19:17 20:12,23 21:24 26:11,11
**notion**  28:2
**notwithstanding** 11:10 27:12
**november**  30:14 30:22 31:16 32:1 34:2,22 36:23 38:10
**nsyco's**  28:18
**ny**  1:15 4:13 39:23
**nysco**  10:23 11:3 11:11,17 16:21 27:6,18 28:20
**nysco's**  12:8 28:17

**o**

**o**  1:21 5:1 39:1
**object**  11:11
**objecting**  11:4
**obligated**  18:18
**obligation**  18:12 20:7 36:11
**obligations**  16:5 29:2 31:8,11,13 33:9,10,22 34:17

37:13
**observant**  35:6
**obviously**  10:3,6 26:24 29:24 34:7 37:15,17
**occur**  11:14 37:17
**occurring**  13:18
**occurs**  31:6
**october**  31:25 32:16 33:13,14 34:1,21 35:2,11 35:13 36:12,13,23 37:15,15 38:7,10
**offer**  35:18
**offered**  17:13
**oh**  19:18 32:2
**okay**  24:18 31:23 32:5,14,15,20,21 36:14
**old**  8:17 39:21
**once**  14:5
**open**  32:6 34:18 36:16
**opening**  32:12
**opportunity** 32:23
**opposed**  32:12
**opposition**  2:11
**oral**  20:19
**order**  2:3,12,19 15:18 18:21 19:2 21:5 31:14 34:13 34:13
**ordered**  25:12 36:16
**ordering**  19:24
**orderly**  31:21
**orders**  25:1
**organism**  12:19
**ought**  17:9
**outcome**  31:5,6
**outlasting**  36:11

**outset**  17:2
**outstanding**  37:14
**overseas**  8:5 12:20 13:15 30:7
**overseers**  17:4
**overview**  18:14
**owned**  9:24

**p**

**p**  4:1,1 5:1
**paid**  14:13,15
**paine**  16:14
**paint**  13:16
**papers**  6:2,3 10:3
**parallel**  10:16,19 14:9
**part**  20:14
**particular**  16:19 35:13
**parties**  6:1 8:24 9:15 10:22 11:10 11:22,24 29:18 33:21 36:25
**partner**  5:14
**party**  18:15 22:4 27:22 33:1
**party's**  7:6,15
**pay**  27:20
**pending**  22:21 23:9
**people**  6:20 7:25 8:6 12:9,10 29:1
**people's**  6:11 26:19
**period**  15:6 27:10 35:7 36:12,19
**permitted**  32:18
**perspective**  11:13 27:23
**peters**  4:23 5:19 30:16
**petition**  23:16
**phone**  30:16

pick  28:10,21
places  13:19
plaintiff  24:3,17
plaintiffs  23:14
  24:16
plate  21:17 29:1
play  7:14 16:20
playing  12:10
  27:23
plaza  4:12
plenary  12:12,14
plenty  24:7 37:21
plus  15:13
pm  1:18 38:25
point  8:25 9:11,12
  14:20 15:7 26:2,9
  26:15 28:7,13
  29:1
pointed  15:3
position  15:17
postponement
  31:19
prediction  19:4
prejudice  8:11
  9:12 13:9 20:18
prejudiced  16:1
preliminary  6:23
  7:2
preparation
  17:20,20
prepare  17:19
  37:2
prepared  5:25
  20:19 21:4,4,23
  22:1,1 24:17 37:5
preparing  20:25
presided  6:5
presiding  6:13
presumably  17:16
presume  23:13
  36:21 37:19
pretty  34:17

primarily  10:22
primary  36:21
principles  6:17
prior  7:10
privilege  25:15,19
  36:7
privileged  25:11
probably  7:12
  34:1,21
problem  14:16,17
  14:17 16:18
procedure  18:17
  18:20
proceed  7:12 20:9
  22:18 23:15,24
  24:16 28:1,11,19
  28:24
proceeding  6:10
  6:21 7:1,4 8:4,13
  9:25 24:3 26:19
  29:2 37:1
proceedings  7:20
  11:4 19:12 38:24
  39:4
process  20:14
produce  18:12,16
  26:12 33:2 36:17
produced  18:19
  24:24 25:12
productive  6:15
professionals  10:9
progress  16:17
  17:17,22 28:5
progressively
  26:21
promised  25:13
  36:7
properly  19:14,16
  26:11
proposal  11:23
  29:16
proposed  38:9

prosecute  22:22
prospect  23:8
protect  13:8
protection  9:25
provide  26:25
provided  10:10,11
  10:12 27:11 32:11
provisions  8:15
publicity  24:9
publicly  21:11
purpose  12:18
  13:3 14:20 16:7
  24:9
push  15:5
pushing  31:24
  32:10,15,20
put  7:19 8:25 22:7
  22:12 30:21

**q**

quarter  27:19
question  8:17
  12:17 19:8 22:11
  22:14,17 23:7,12
  25:7 30:12
queue  33:11
quickly  21:16
quite  18:11,15
  31:5
quote  16:14

**r**

r  1:21 4:1 5:1 39:1
raised  11:3 13:18
rapidly  9:1 34:7
reach  16:23
reaching  7:6
read  6:1,3 10:3
real  12:23
really  6:9 8:8,11
  9:22,24,25 11:14
  12:7 17:3 32:10
reason  8:2 11:4
  11:20 13:7,12,13
  13:22 14:4 21:5

27:9 35:8
reasons  9:25
recall  9:13,14,22
received  25:21
receptive  37:25
recognition  6:6,20
  6:22 7:1,10,10
  8:11 9:18 13:1
  15:4 20:2,14
  21:17 22:21 24:24
  26:20
recognize  7:5
  14:11
record  26:15 30:6
  30:10 34:13 39:4
refile  13:13,13
reflection  13:17
refuses  18:1,10
regard  17:25 18:8
  20:11,12 25:8
  36:6,20
regardless  8:4
regrettably  14:16
  14:17
relating  19:12
relief  6:23,24,24
  7:2,10 22:20,21
  22:25
religious  32:17
remaining  33:25
  34:17
remedies  9:20
  38:2,2,3
rendered  25:10
repeated  27:17
reply  2:18
representative
  5:7 9:9
representatives
  5:17 38:13
represented  15:12
request  8:10 23:9

[required - stipulation]                                                    Page 9

required  21:9
requirements
  38:5
researched  23:13
researching  23:24
reserve  33:21
resolution  26:24
  27:3 37:22
resolve  36:18
resolved  20:14
  21:15 37:1
resources  1:7
respect  9:20 10:7
  14:8,24 20:10,17
  21:3,22
respectfully  18:10
response  25:4,19
  29:3 36:6
responses  25:14
  33:12
responsibility
  28:14
result  27:7
rick  4:8 5:8,16 9:8
right  5:11,22 16:5
  16:24 18:13 22:6
  24:1,20 25:2,2,23
  30:2,8 35:3 37:13
  38:8,16,19
rights  9:20 33:21
road  39:21
room  11:20
rosenthal  2:15,25
  3:3 4:15 5:12,13
  16:25 17:1 19:16
  21:22 22:10,15
  23:11 25:5 30:3,5
  30:9,20 31:23
  32:5,14 35:16,23
  36:4,14 37:11
  38:17
rule  14:8

rules  18:17,20
rulings  37:9,10

**s**

s  4:1 5:1
s.a.  3:2
s.a.'s  2:11
sanctions  20:1
  23:19
satisfaction  10:13
satisfy  17:11
saying  16:6 20:21
  24:1 29:14
says  33:17
schedule  17:13
  18:21 19:2 20:23
  34:20
scheduled  29:22
  29:23,25 33:17,19
scheduling  15:18
  32:21
school  22:13
schrödinger's
  31:5
seal  2:7,8,10,10
  2:14,17,18,23,24
  3:1,1,2
sealing  21:9
sean  1:22 5:2
second  6:8 18:11
  18:14,19 20:4,6
  33:1 34:1,18
  35:11
secured  10:25
see  17:11,21 19:14
  32:23 33:20 34:18
  35:11,12,25
seeing  13:20
seek  21:9 23:20
seeking  6:20
  22:25
selective  12:8
send  19:10

sense  8:11 15:23
sent  11:21
september  1:17
  11:12,15,24 12:3
  15:7 16:11 17:14
  26:24 28:22 29:6
  29:7,17,17,23
  30:22 34:6 37:21
  37:23 39:25
series  5:23 16:20
serve  12:18
served  22:2
service  5:5
set  24:12
seven  15:6
shape  7:22
share  30:23
shares  8:24
shl  1:3
shocked  21:6
short  16:1,18 25:4
  31:12
shortly  10:18
  31:11 34:6 38:9
show  19:11 32:25
showed  19:14
showing  35:1
side  28:21
signed  28:17
significant  10:6
  28:4
sine  31:8
sit  15:16,17
slowly  7:2 8:13
smart  7:25
solutions  5:5
  39:20
somebody  23:8
  33:6
somebody's  31:15
  33:5
somewhat  12:16

sonya  3:25 39:3,8
soon  16:23
soros  9:21 13:8
  14:24 24:8
sorry  32:2
sort  5:23 6:17 7:6
  7:9,21 22:16,25
  31:9 34:9,12 38:3
sorted  28:11,12
sound  24:4
southern  1:2 5:3
speak  11:3
specifically  9:14
  34:19
speed  12:25
spend  15:20 20:25
  23:18
spending  22:6
spent  6:11 12:20
  13:20 14:12 20:20
  23:4 26:17,18
spot  17:2
stage  18:14
stand  9:19 14:25
standard  10:24
  23:14
started  9:3 16:6,6
state  7:14
statement  17:2
states  1:1,13 5:3
  9:24 18:16 20:8
status  2:1
statute  20:6
stay  6:22 7:6,13
  8:8,10 15:4 16:2
  22:20 24:2,2,4,5
  25:21 33:8
stayed  24:8
steen  4:10
step  29:1
steve  4:23 5:19
stipulation  2:5,14
  2:21 9:15

**straightforward**
21:3
**struck** 6:4,14,14
**submitted** 21:14
**success** 7:22
**suggest** 15:5
25:18
**suggesting** 21:20
22:8
**suggestion** 11:18
17:6 26:2 29:5
**suite** 39:22
**sukkot** 32:16
35:12
**support** 2:18
**supposed** 12:25
**sure** 14:19 16:10
16:12 22:15 29:11
29:13 37:6

**t**

**t** 39:1,1
**table** 35:18
**tact** 12:14
**tactics** 20:18
**tail** 12:16
**take** 12:14 14:24
16:3,3,13 19:4
22:11 35:18
**taken** 11:5 15:1
**takes** 35:25
**talking** 7:15 8:21
32:7,10 37:8
**technological**
30:7
**tee** 23:1
**telephonically** 4:8
4:15,18,19,20,21
4:22,23,24
**tell** 10:12 12:21
19:19 26:22 35:14
**tells** 12:24 16:13
16:15

**tends** 35:10
**terminate** 14:6
**terms** 10:5
**thank** 5:22 9:6
16:25 25:2,23,24
37:12 38:18,19,20
38:22
**thing** 16:4,10 19:5
19:7 20:16 21:19
28:6 36:20
**things** 6:4,9,12
7:10 8:8 9:17 12:9
12:24 13:14,15
17:5 25:6 28:10
31:1,14 32:8,10
33:24 34:5 36:5
37:16,17 38:11
**think** 6:19 7:11
8:22 9:6,11 10:5
11:19 12:13 14:6
15:23 17:1,2,4,10
18:14,18,25 19:24
20:3,11 21:2,6,13
21:15,22 22:3
23:3,11,12,19
24:6,14,20 25:17
26:4,23 29:5,8
30:18 31:18 34:3
34:12,14,16 36:8
**thinking** 6:16
22:12 30:24
**third** 25:8
**thomas** 16:14
**thought** 7:8 22:16
28:9 32:14
**three** 11:14 18:5
24:11
**time** 5:25 6:11,15
13:19 14:10,11,20
15:20,25,25 16:23
21:1 23:4 24:17
26:13,18 27:24
28:7 29:18,20

32:22 33:12 35:7
35:24 37:9,21
38:10,11
**timely** 23:1
**times** 20:19 37:6,8
**today** 12:18 19:22
20:12,22,23 21:23
21:25 22:9 33:10
37:6
**today's** 6:16 38:14
**togethers** 5:24
**told** 16:11 18:1,2
19:18,18,20,20
**touch** 5:23
**transcribed** 3:25
**transcript** 39:4
**treat** 22:13
**tremendous** 12:19
13:19
**trepidation** 36:3,4
**trouble** 12:23
13:20
**true** 39:4
**try** 8:22,22,24
36:17
**trying** 7:22 8:3
30:25 31:18 36:10
**turn** 21:6 35:24
**twice** 19:22
**two** 6:4 7:9 11:14
17:12 19:5 27:18
30:13,14 33:11,15
33:23 35:2 36:5

**u**

**u.s.** 1:23 18:17
**unambiguous**
20:4
**understand** 10:5
12:5 13:14 23:2
26:14 35:21
**understanding**
24:15 33:10

**understands**
28:25
**unfortunately**
11:1 30:15
**united** 1:1,13 5:3
9:24 18:16 20:8
**unknown** 1:25
**unreasonable**
28:6
**unwillingness**
26:5
**urgings** 11:21
**use** 6:15 27:16

**v**

**vale** 2:11 3:2 4:11
5:11 8:12 9:12,19
11:17 14:1,22,23
15:17,25 16:24
17:1 20:18 23:18
33:19 34:18 38:16
38:17
**vale's** 2:10,23
21:1 27:1
**various** 6:12
13:14 26:18
**vehemently** 21:2
**veritext** 39:20
**vicens** 4:24 5:14
**view** 19:9 23:24
30:24
**viewing** 7:8
**vignette** 16:19

**w**

**wait** 19:13
**waited** 19:21
**waiting** 13:14,15
28:2
**walk** 10:4 23:21
**want** 5:17 13:24
14:3,6,10,18
15:22 16:3 17:8
18:13 20:15 22:18
23:16,25 24:1,2,2

24:16,21,25 26:22
30:10,24 31:8
36:1,15 37:3
38:13
**wanted**   26:14,15
**wants**   20:3
**waste**   14:10 15:25
29:20
**wasting**   20:25
**watching**   13:16
**way**   6:15 7:8 8:3
8:22 19:18 20:16
34:4
**we've**   5:24 8:20
15:12 16:18,20
17:14 20:18 25:20
26:17,17 27:24
30:7 37:8
**wednesday**   32:9
**week**   27:18 31:24
32:16,17 34:21,22
35:11,13
**weeks**   18:23 27:19
30:14 31:20,24,25
32:11,16,20 33:23
35:2
**whims**   27:22
**william**   1:7 4:18
**willing**   12:9 31:7
31:15
**wilmington**   4:6
**wind**   22:6
**winter**   8:2
**withdraw**   17:9
23:16,25 24:1,25
**withheld**   18:4
36:17
**withholding**
24:24
**witnesses**   18:12
18:16
**wonder**   13:3

**wonderful**   17:15
**wondering**   16:6
32:1
**work**   31:18 32:12
32:18 33:23 38:8
**works**   5:20
**world**   19:9 34:9
**worry**   8:12 34:7
**worth**   7:11
**wrapped**   34:11
**written**   34:13
**wrong**   32:3,3,6

| x |
|---|

**x**   1:4,11 27:19

| y |
|---|

**yeah**   29:10 32:9
**year**   9:15
**years**   24:11
**yesterday**   11:8,9
27:2
**yom**   35:11
**york**   1:2,15 4:13
5:4
**you're**   28:17