Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-11845-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   BSG RESOURCES LIMITED (IN ADMINISTRATION) AND WALLACE

8   CALLEWAERT AND MALCOLM COHEN, AS JOINT ADMINISTRATORS,

9

10          Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  United States Bankruptcy Court

14                  One Bowling Green

15                  New York, NY  10004

16

17                  November 12, 2020

18                  2:03 PM

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

Page 2

1    HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:    Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   KATTEN MUCHIN ROSENMAN LLP

 4        Attorneys for New Joint Administrators

 5        575 Madison Avenue

 6        New York, NY, 10022

 7

 8   BY:  SHAYA ROCHESTER (TELEPHONICALLY)

 9        DAVID STAGMAN (TELEPHONICALLY)

10

11   CLEARY GOTTLIEB STEEN & HAMILTON LLP

12        Attorneys for Vale S.A.

13        One Liberty Plaza

14        New York, NY 10006

15

16   BY:  LISA SCHWEITZER (TELEPHONICALLY)

17        JEFF ROSENTHAL (TELEPHONICALLY)

18

19   HUGHES HUBBARD & REED LLP

20        Attorneys for BDO LLP

21        168 Clinton Street

22        Brooklyn, NY 11201

23

24   BY:  DEREK ADLER (TELEPHONICALLY)

25
```

1                  P R O C E E D I N G S

2              THE COURT:  Good afternoon, this is Judge Sean

3     Lane in the United States Bankruptcy Court for the Southern

4     District of New York here for a 2:00 status conference in

5     the Chapter 15 case of in re: BSG Resources Limited.  And

6     we're conducting this hearing using the Court Solutions

7     service, which we've been using consistently as a Court

8     since March.  And so, let me start today's proceedings, as

9     we usually do, which is to get appearances from counsel, so

10    let me start with getting the appearances of the new joint

11    administrators for BSG Resources in the (indiscernible)

12    proceedings.

13              MR. ROCHESTER:  Good afternoon, Your Honor, this

14    is Shaya Rochester with Katten, Muchin, Rosenman LLP for the

15    new joint administrators.  Can you hear me okay?

16              THE COURT:  I can hear you just fine, counsel,

17    thank you.

18              MR. ROCHESTER:  Great, thank you, Your Honor.

19              THE COURT:  How do we find out --

20              MR. STAGMAN:  Your Honor this is David -- oh,

21    sorry.

22              THE COURT:  Oh, go ahead.

23              MR. STAGMAN:  This is David Stagman, from the

24    Chicago Office of Katten, Muchin, Rosenman, also attending

25    on behalf of the new joint administrators.

Page 5

1          THE COURT:  All right, great, good to have you.

2    And let me find out who is here on behalf of Vale SA?

3          MS. SCHWEITZER:  Good afternoon, Your Honor, it's

4    Lisa Schweitzer from Cleary Gottlieb and I'm here with my

5    partner, Mr. Jeff Rosenthal.

6          MR. ROSENTHAL:  Good afternoon, Your Honor.

7          THE COURT:  Good afternoon.  And then let me find

8    out who is here on behalf of the former joint

9    administrators.

10         MR. ADLER:  Hello, Your Honor, it's Derek Adler

11   from Hughes Hubbard.  Technically I guess I'm here on behalf

12   of BDO, I'm not sure it's right to call them the former

13   administrators anymore, them as individuals and on behalf of

14   BDO, their firm.

15         THE COURT:  All right, thank you very much.  All

16   right, it wouldn't be a proceeding in BSG Resources Limited

17   if we hadn't gotten a few letters, and I have taken a look

18   at the letters that have been submitted, including the ones

19   from the new administrators that was filed on November 9th,

20   docket number 126 as well as the letter filed on behalf of

21   BDO Limited and BDO LLP that was filed November 11th at

22   docket number 130.  So, with that, what I thought I would do

23   is turn it over to the new joint administrator's counsel,

24   and you can sort of -- it's a status conference, so you can

25   give us some status and we'll see what we need to chat

Page 6

1    about.

2              MR. ROCHESTER:  Great, thank you, Your Honor.  For

3    the record again, it's Shaya Rochester with Katten, Muchin,

4    Rosenman LLP on behalf of Richard Fleming, Mark Firmin, Carl

5    Bowles and their capacity as the new joint administrators

6    and foreign representative of the debtor, BSG Resources

7    Limited in this Chapter 15 case.  That's kind of a mouthful,

8    so for brevity going forward I'm going to refer to those

9    gentlemen, those three gentlemen as -- simply as the new

10   joint administrators, and I'll refer to BSG Resources

11   Limited simply as BSG.

12             As Your Honor indicated we're here today for a

13   status conference in this Chapter 15 case.  Unless Your

14   Honor had a sort of different -- wanted to proceed in a

15   different manner, there are two main topics that we would

16   like to discuss today.  First is I'd like to provide the

17   Court with a brief update on what has happened since the

18   last hearing before this Court on September 3rd, 2020, and

19   then second, we'd like to discuss the letter that was filed

20   with the Court on behalf of the new administrators that you

21   referenced earlier, (indiscernible) number 126, as well as

22   the response from the former joint administrators, which was

23   filed last night at (indiscernible) number 130.  Is it okay

24   if I proceed in that manner, Your Honor?

25             THE COURT:  That sounds great, thank you very

Page 7

1   much.

2           MR. ROCHESTER:  Okay, thank you.  Okay, so as Your

3   Honor is aware, in September 8th, 2020 after the last

4   hearing, the Guyanese Court presiding over the BSG's

5   (indiscernible) proceeding discharged William Callewaert and

6   Malcom Cohen in their capacity as the former joint

7   administrators for BSG.  On that same date, the Guyanese

8   Court appointed the new joint administrators.  Shortly

9   thereafter, the new joint administrators retained our firm,

10  Katten, Muchin, and Rosenman to advise them in multiple

11  legal proceedings in the US and across the globe, including

12  the Guyanese and (indiscernible) proceeding and this Chapter

13  15 case.

14          Your Honor, since that time, the new joint

15  administrators in Katten have been working extremely hard to

16  get up to speed on the many legal proceedings involving BSG

17  and the matters related thereto in order to determine next

18  steps -- the next steps that BSG should take.  We take our

19  responsibilities very seriously and we are laser focused on

20  (indiscernible) BSG's assets, examining viable claims and

21  causes of action, and maximizing recoveries for all of BSG's

22  creditors.

23          But to perform those duties, we need information

24  and documentation.  And in that regard, our ability to

25  perform our duties has been hampered significantly by the

Page 8

1   fact that the new joint administrators have not yet received

2   the entirety of BSG's books and records from the former to

3   the administrators.  We will turn to that in the second part

4   of the agenda, but I do make that point now.  Turning to the

5   Chapter 15 case itself, since their appointment, the new

6   joint administrators have, among other things, considered

7   whether BSG should continue to seek recognition of the

8   currency and (indiscernible) proceeding in this Chapter 15

9   case, and we've had discussions with BSG's largest creditor,

10  Vale.

11          In that regard, I want to note for the record that

12  we've had very constructive discussions with Vale's counsel

13  at Cleary Gottlieb who are on the line regarding the Chapter

14  15 case and other matters related to the Chapter 15 case,

15  and we're working hard together to try to resolve disputes

16  in a consensual basis and without engaging in wasteful

17  litigation.  As Your Honor's aware, one of the main reasons

18  why the Chapter 15 case was filed in the first place was to

19  preserve and protect BSG's litigation claims against George

20  (indiscernible) and certain affiliated entities in person in

21  litigation pending in the US District Court for the Southern

22  District of New York for Judge Keenan.

23          And we have some updates to report regarding the

24  source litigation.  Last month on October 26th, BSG filed

25  its response to the source defendant's motion to dismiss.

Page 9

1    On November 9th, or this past Monday, the source defendants

2    filed their reply in support of their motion to dismiss.

3    All argument in the motion to dismiss is scheduled for later

4    this month, on November 24th.  We believe, and obviously,

5    this is not before Your Honor, but we believe that the

6    source defendant's motion to dismiss is without merit and

7    should be denied, and we're hopeful that Judge Keenan will

8    reach the same conclusion after oral argument is concluded

9    later this month.

10           Unless Your Honor has any questions about that

11   report, that status report, we would like then to turn to

12   the second part of the agenda, which is the letter that we

13   filed the Court and the former joint administrators'

14   response.

15           THE COURT:  All right, please go ahead, counsel,

16   thank you.

17           MR. ROCHESTER:  Okay.  So, for the second part of

18   the agenda, I'm going to turn that over to my partner David

19   Stagman, who's on the line.

20           MR. STAGMAN:  Good morning again, Your Honor.  Or

21   this afternoon.  So, we were very pleased to see that there

22   was a response from the former joint administrators, and of

23   course, we asked the Court for three topics of relief at

24   this hearing, one was affirmation of -- that we are, as the

25   new joint administrators, in control of the confidentiality

Page 10

1    and privilege designations or withdrawals.  I -- none of the

2    parties now, this last letter from BDO confirms it, have any

3    dispute as to that principle.  We then asked for a

4    production of the documents that we had sought, that had

5    been sought in discovery.  We've actually been asking BDO

6    for books and records since September, and so, while we

7    appreciate that BDO has now confirmed that it no longer has

8    confidentiality designations or concerns with respect to the

9    populations of documents that were in their records -- in

10   the letter, we don't actually have those records yet in

11   total.

12          We have, and we will need some clarification

13   hopefully on the record today from counsel for BDO, we have

14   received, as of yesterday, 20,890 documents and our belief,

15   although we would like confirmation from counsel, is that

16   those represent 20,890 of the 24,000 outstanding documents

17   to be reviewed that were referenced in the letter to Your

18   Honor from BDO.  But, it was clear -- it would be otherwise

19   coincidental because on the same day that BDO sent a letter

20   to the Court discussing the confidentiality over the 73

21   documents, the 43 documents from Mr. (indiscernible)'s part

22   71 examination and their review of 24,000 documents, we at -

23   - our client received a letter also from BDO saying they

24   were in the process of reviewing these 24,000, 20,000 are

25   going to be the "released documents" as in a (indiscernible)

Page 11

1    term and they would be getting us those 20,000 documents,

2    and then lo and behold, yesterday evening, just a few hours

3    after receiving that letter we got 20,000 documents.

4           So, if indeed those 20,890 documents are part of

5    the 24, we're really only talking about an additional three

6    or 4,000 documents that would remain to be reviewed.  We

7    don't have any information yet on those documents, we

8    haven't had an opportunity to review them, and obviously, we

9    haven't seen the additional documents that are yet to be

10   produced.  So, if counsel is able to confirm that on the

11   record, either at the conclusion of my remarks or if Your

12   Honor wants to hear an answer right now from BDO's counsel,

13   we can move on, but otherwise my remarks are just --

14          THE COURT:  Well, it sounds like it probably makes

15   sense to do this as we go rather than have too many long

16   lists, so let's hear from BDO's counsel now, and I did read

17   the letter from BDO's counsel where they basically say that

18   they're not asserting any continuing interest as former

19   administrators, and I just wanted to make sure that's the

20   case because the -- shortly the quotation that's in the

21   letter from the counsel for the new joint administrators

22   doesn't appear to be consistent with that.

23          It talks about the former joint administrators are

24   currently in -- taking review of these documents to ensure

25   any documents in respect to which privilege belongs to the

Page 12

1    former joint administrators themselves, and also as to

2    whether designated documents contain confidential

3    proprietary information from the joint administrators or BDO

4    rather than the company, so I'm assuming that I should take

5    the letter at docket number 130 to be a revision or update,

6    whatever you want to call it, to the position that was set

7    forth by counsel in the letter of September 23rd, sent by

8    Malcom Cohen, so let me hear from counsel from BDO Limited

9    and BDO LLC.

10            MR. ADLER:  Sure, Your Honor, once again it's

11   Derek Adler from Hughes Hubbard for BDO and the former joint

12   administrators.  So, the -- as I said in the letter, the

13   joint administrators, generally speaking agree that the new

14   joint administrators as successors to them inherit -- step

15   into their shoes under the confidentiality agreement and in

16   relation to all aspects of the present proceedings.  But

17   with respect to the 24,000 documents that were produced to

18   Vale in this case, there's a very, very small population of

19   documents that contain information because the joint

20   administrators function in tandem with the BDO firm and

21   because Vale requested that documents that were in BDO's

22   custody, possession be turned over as part of the document

23   production, there's a very small population of documents

24   that contain BDO protected information, so internal

25   financial information, personnel information, work programs,

Page 13

1    and things that are clearly protectable by BDO itself versus

2    by the BSG organization, which was the basis for the

3    original confidentiality --

4          THE COURT:  So, am I -- I'll take your failure to

5    tackle the particular question I had about the September

6    23rd letter to be an agreement that you're not -- the former

7    administrators are no longer asserting that right, but as to

8    BDO, and I'll just use that term generally as to the two BDO

9    entities, I assume we're talking about documents that would

10   have -- that aren't historical documents, that they reflect

11   BDO's work or opinions or other things, so in other words,

12   that there would be no privilege that BDO is asserting that

13   would somehow shield a document that was created before

14   BDO's involvement that would essentially be what you'd call

15   sort of a historical document dealing with the business of

16   the debtors.

17         MR. ADLER:  I -- absolutely none of them are BSG

18   documents, you know documents from the books or records of

19   BSG or prior to or indeed really during the administration.

20   They're internal documents so -- of BDO's.  And it's a very

21   small population, but we do maintain that there is -- that

22   out of the 24,000 documents that were disclosed to Vale,

23   there is a small number of documents that contain that type

24   of information that have been produced and redacted form

25   designated as confidential, and as to that small population,

Page 14

1    which I'm not in a position to list for you today, BDO will

2    assert that there is a continuing confidentiality

3    obligation, and that they shouldn't be produced in

4    unredacted form or be allowed to use -- be used for

5    anything, but I don't believe that any of these documents

6    are ones that Mr. Rosenthal and his team have been

7    particularly interested in, or would be particularly

8    interested in for Vale's purposes.  And --

9           THE COURT:  All right, well, then let me ask you

10   the other question, which is it sounds like there was 20,000

11   documents that were turned over and counsel is trying to get

12   a sense of how those -- that 20,000, is that a subset of the

13   24,000, so that would leave only 4,000 or so documents that

14   are still being looked at.  Is that a correct statement?

15          MR. ADLER:  That is a correct statement.  Just to

16   clarify the record, the new joint administrators' have had

17   the full 24,000 document set in the redacted form, in the

18   form that it was produced to Vale.  My understanding is that

19   they've had that full set for some time now.  What we're

20   talking about is providing them with the unredacted set so

21   they have full access to it, and yes --

22          THE COURT:  All right, well, that's important,

23   obviously, because nobody wants to review 20 or 24,000

24   documents twice and compare and contrast and not -- it

25   sounds like there's -- I mean, I've looked at the samples

Page 15

1    that I've been given about things that are redacted, so that

2    -- it's important to get that resolved, because it's just

3    not efficient to start doing piecemeal review of documents.

4    It's incredibly expensive and this case has already been

5    incredibly expensive.  So, that seems to be a reasonable

6    thing to do.

7            So, I did see in the letter there was a

8    disagreement, or seems to be a differing view about the

9    timing to get through the remaining 4,000 documents, so any

10   updates on that?

11           MR. ADLER:  Yeah, so I mean, they had proposed

12   basically another, I think, two weeks setting a deadline in

13   two weeks.  First of all, we have now released 20,000 of

14   them, that's the vast majority of them.  And so, for the

15   remaining ones we're asking for an additional four weeks,

16   and we've also said that if you -- if Cleary or the new

17   joint administrators need to know whether BDO objects to the

18   disclosure or the de-designation of any particular document

19   is confidential from the set, we will get them an answer to

20   that within 48 hours, you know in the next four weeks.  So,

21   if this issue comes up again, like with Mr. Cramer's

22   examination that's coming up, if Cleary and/or the new joint

23   administrators send us a document, we'll let them know

24   within two business days whether we have any issue with that

25   particular document being disclosed in unredacted form or

1    de-designated as confidential.

2            And we said we'll endeavor to do it, my only

3    concern is that if they give us 4,000 all at once, obviously

4    we're not going to be able to do it within two business

5    days, but if there something that is a small number of

6    documents, we'll get it done and we'll get them an answer

7    within two business days, but otherwise we would like until

8    December 10th or we can confirm that by December 10th we

9    will have got -- addressed all of this, and advised us as to

10   what the small number of additional documents that BDO is

11   maintaining its own confidentiality/privilege protection on.

12           THE COURT:  All right.  All right, with that, let

13   me return to the counsel for the new joint administrators.

14   And (overlapping conversation) continue any follow-up or

15   continued status.

16           MR. STAGMAN:  Yeah, thank you, Your Honor.  With

17   respect to the timing production of the remaining 4,000, I -

18   - we do appreciate that counsel is working cooperatively

19   with us and is new to the matter.  We would say that one way

20   to possibly prevent having a dump request for many documents

21   that all have to be reviewed in lump sum, as counsel just

22   suggested would be to be providing us documents on a rolling

23   basis as they are reviewed and the confidentiality

24   terminations are made.  So, we have a definite interest in

25   having the documents as soon as possible.  We have -- our

Page 17

1    client is facing their own pressures and so, we do not want

2    to just get a dump of 4,000 documents either on December

3    10th, and I would propose that if Your Honor's going to

4    consider their request for additional time that the parties

5    be agreeing that they are going to be produced on a rolling

6    basis.

7              The other reason (indiscernible) obviously, if you

8    want to have counsel respond, the other reason we would want

9    the rolling basis done is we would like to have a follow-up

10   conference with the Court shortly after that December 10th

11   production so -- or end -- production end date.  So as to

12   discuss any issues that may have arisen, and we will not be

13   in any position to do that if suddenly we get 4,000

14   documents on the 10th, whereas if we've been looking at them

15   over the month that they've come in, we could kind of

16   finalize the deal relatively quickly.

17             THE COURT:  All right, so let me ask counsel for

18   BDO to comment on the request for rolling production.

19             MR. ADLER:  Your Honor, I have to say I'm not

20   personally involved in the mechanics of this production.  I

21   imagine that would be fine, but I assume that would be fine.

22             THE COURT:  All right.  All right.  It sounds like

23   a reasonable and fair request to me, this is a 2019 case,

24   and as we all are getting ready to exit 2020, much to

25   everybody's enormous relief, and we're -- we'll be entering

Page 18

1   2021 this case is getting long in the tooth for a Chapter 15

2   case.  I've had cases with Chapter 15 cases with trials and

3   it's taken less time than this case.  So, all right.  So,

4   I'm going to consider that request for rolling production to

5   be unopposed and granted, and I appreciate the flexibility

6   to get this to conclusion.

7           So, anything else from status from the new joint

8   administrators?

9           MR. STAGMAN:  Well Your Honor, just a couple of

10  more remarks, because they are addressed in the letters.

11  First of all, we were encouraged to see that the 73

12  documents which, from our review of the history of this case

13  are to represent categories that the Court had previously

14  addressed with the parties, that those were de-designated as

15  confidential which gives us I think some good guidance going

16  forward in terms of how to approach those documents,

17  although we haven't had the opportunity to ascertain that

18  ourselves, we just want to do our remark on the record that

19  we believe that very helpful that those 72 documents

20  representing categories have now been determined by BDO not

21  to be confidential.

22          With respect to the 43 documents to which BDO

23  refers, the 43 documents that are anticipated to be used for

24  the examination of Mr. Cramer, we are now in possession of

25  those 43 documents, and we still are examining them, but we

Page 19

1   do not think that there is anything that the Court would

2   have to address on those.  We will be able to deal with that

3   relatively quickly with Cleary and proceed forward with

4   respect to those documents.

5           We would ask, and this may be more in the vein of

6   what the clients are -- or to respective clients, BDO and

7   ANM can do, ANM does have page numbers of documents for

8   example, the 72 documents they can go to the base numbers

9   and see if they actually have those 72 documents.  We would

10  request also from BDO's counsel on this call that they relay

11  to the client if we could get the base numbers of the

12  remaining 4,000 odd documents that are being reviewed, so we

13  know which ones are still outstanding as this review

14  progresses, if we can get a re -- a number of that, that

15  would help us to get our arms around the sorts of things

16  that we are going to be reviewing over the next month.

17          THE COURT:  All right, let me ask BDO's counsel,

18  can you get that information?  In terms of the --

19          MR. ADLER:  (overlapping conversation) I have to

20  say once again, I'm not -- I don't have my hands on the

21  relevant database, so I assume we can generate that and I'll

22  be happy to confer with Mr. Stagman and see what we can do

23  about that.  I'll just need to consult with the --

24          THE COURT:  All right.

25          MR. ADLER:  -- the technical people.

1          THE COURT:  All right.  Thank you.  I understand

2     that that -- you're not the person who's in the weeds on

3     this, but it certainly seems like a task that can be

4     accomplished in terms of just getting those numbers so

5     people can avoid having to have a twice over review of

6     documents and to do this efficiently, so all right.  I'll

7     assume that that issue will be addressed and that

8     information can be provided.

9          All right, anything else from the joint

10    administrators?  New joint administrators, I should say?

11          MR. STAGMAN:  That concludes my remarks on the

12    document issues and confidentiality issues, Your Honor, and

13    thank you for your time.

14          THE COURT:  Thank you.

15          MR. ROCHESTER:  Your Honor, Shaya Rochester for

16    the new joint administrators.  One comment made by Mr.

17    Stagman was trying to maybe schedule a status conference in

18    the middle of December after the December 10th production

19    date.  Is that something that you'd like me to coordinate

20    with your chambers or is that something we should try to

21    schedule now?

22          THE COURT:  Yeah, so I -- what I would do is you

23    have a little bit of -- you have some things that you're

24    trying to get done and the wisdom of a date may not be clear

25    until you have a few more discussions, but I -- what I would

Page 21

1     do is reach out to chambers at the appropriate time to get a

2     date in early December, and I would think that that's fine.

3     I'd rather have a date that we can use for any issues rather

4     than something where we end up saying well, we're not quite

5     sure how some of these things are working out just to be

6     respectful of everybody's time, but yeah, reach out to

7     chambers and let us know you -- what you can do is just

8     caucus among the parties and get some proposed dates and

9     then send them over to chambers by email and we'll get you

10    on the schedule.

11            MR. ROCHESTER:  Great, thank you very much, Your

12    Honor, we'll do that.

13            THE COURT:  All right.

14            MR. ROCHESTER:  I do not have any further remarks.

15            THE COURT:  All right, thank you.  Anything from

16    Vale?

17            MS. SCHWEITZER:  No, Your Honor, this has been

18    very constructive.  We appreciate your time.

19            THE COURT:  All right.  Well, it has been very

20    constructive, I would agree, and I'm very happy to be able

21    to make that observation.  I fervently look forward to the

22    day when the two binders of documents that I have stored

23    here in my home that are the confidential -- the documents

24    relating to the confidentiality dispute of -- that those can

25    be appropriately shredded, but you'll let me know when we

Page 22

1   get there.  And in the meantime, good luck with your

2   continued progress, and I look forward to talking to you in

3   December, in the meanwhile, all of you have a safe and happy

4   Thanksgiving, and be well.

5         MS. SCHWEITZER:  Thank you, Your Honor.

6         MR. ROCHESTER:  Thank you very much, Your Honor.

7         MR. ADLER:  Thank you, Your Honor.

8         MR. STAGMAN:  Same to you.

9         THE COURT:  Thank you very much.  All right, and

10  the next matter on for Court is on for 3:00, so the Court

11  will be adjourned until that time.  Thank you.

12        MS. SCHWEITZER:  Thank you.

13        MR. STAGMAN:  Thank you.

14        (Whereupon these proceedings were concluded at

15  2:32 PM)

16

17

18

19

20

21

22

23

24

25

Page 23

```
 1                    C E R T I F I C A T I O N

 2

 3      I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  November 18, 2020
```